## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Bk. Case No. 02-11125 (KJC) |
| EXIDE TECHNOLOGIES, INC., *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | C.A. No.  05-561- SLR |
| PACIFIC DUNLOP HOLDINGS | ) | |
| (EUROPE) LTD, *et al.*, | ) | |
| Appellants, | ) | Bankruptcy Adv. Pro. No. 04-51299-KJC; |
| v. | ) | |
| | ) | Removed From Circuit Court of Cook |
| EXIDE HOLDING EUROPE, *et al.* | ) | County, Ill. Civ. Action No.: 01L 008460 |
| | ) | |

## APPELLANTS' OPENING BRIEF
## ON APPEAL FROM BANKRUPTCY COURT

MORRIS, JAMES, HITCHENS & WILLIAMS LLP
Brett D. Fallon (ID No. 2480)
Douglas N. Candeub (ID No. 4211)
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, Delaware 19899
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

-and-

GOODELL, DEVRIES, LEECH & DANN, LLP
Linda Woolf, Esquire
Paula Krahn Merkle, Esquire
One South Street, 20th Floor
Baltimore, Maryland 21202
Telephone: (410) 783-4000
Facsimile: (410) 783-4040

Dated:  February 13, 2006

Attorneys for the Appellants, Pacific Dunlop Holdings
(USA), Inc., Pacific Dunlop Holdings (Europe) Limited, P.D.
International Pty Limited, Pacific Dunlop Holdings (Hong Kong)
Limited, and Pacific Dunlop Holdings (Singapore) PTE. Ltd.

---

[1]     Apart from the lead debtor, Exide Technologies, Inc., f/k/a Exide Corporation, the debtors in these proceedings were Exide Delaware, L.L.C.; Exide Illinois, Inc.; RBD Liquidation, L.L.C.; Dixie Metals Company; and Refined Metals Corporation.  The cases of these subsidiary debtors were closed by order entered June 18, 2004 (Bankr. docket No. 4599).

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION.................................................................................. 1

STANDARD OF APPELLATE REVIEW ........................................................................ 1

STATEMENT OF ISSUES ON APPEAL........................................................................ 2

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................ 3

STATEMENT OF FACTS ................................................................................................ 7

    *A.*     *The Sales Agreements and the Coordinating Agreement* .......................... 7

    *B.*     *The Disputes Arising Under the Sales Agreements* ................................. 11

ARGUMENT .................................................................................................................. 14

  I.     THE BANKRUPTCY COURT'S RULINGS WERE JURISDICTIONALLY
       DEFECTIVE ...................................................................................................... 14

    *A.*     *The Dispute Between the PDH Foreign Entities and the Exide Foreign Entities
        Is Not "Related to" the Exide Case and, In Any Event, Is Not Core* ...................... 14

       1.     Because the Causes of Action Asserted By the PDH Foreign Entities
           Against the Exide Foreign Entities Are Not "Related to" the Bankruptcy
           Case, the Bankruptcy Court Lacked Authority to Decide Whether the
           PDH Foreign Entities Could Pursue Them ....................................................... 15

       2.     Because the Causes of Action Asserted By the PDH Foreign Entities
           Against the Exide Foreign Entities Are Not "Core" Matters, the
           Bankruptcy Court Lacked Authority to Enter a Final Ruling Without
           Reference to the District Court ........................................................................ 19

  II.     THE PDH ENTITIES' MOTION FOR RECONSIDERATION SHOULD HAVE
       BEEN GRANTED TO PREVENT MANIFEST INJUSTICE...................................... 21

    *A.*     *The Court's Ruling Determined Issues Not Presented in the PDH Entities'
        Remand Motion* ................................................................................................ 21

       1.     Reconsideration Under Rules 7052 and 9023 ................................................ 22

       2.     Reconsideration Under Rule 3008 .................................................................. 23

    *B.*     *The Evidence the PDH Entities Presented in the Motion for Reconsideration
        Supported a Contrary Outcome* ...................................................................... 24

       1.     Latent Ambiguity ........................................................................................... 25

       2.     Mutual Mistake .............................................................................................. 27

  III.     THE BANKRUPTCY COURT ERRED IN DENYING THE REMAND MOTION
       ON ITS MERITS ................................................................................................. 28

    *A.*     *The Bankruptcy Court Erred By Not Enforcing The Forum Selection Clause Of
        The Contracting Parties* .................................................................................. 28

    *B.*     *Assuming Arguendo the Bankruptcy Court Has "Related to" Jurisdiction, The
        Various Factors To Be Considered Favor Equitable Remand Of The State Court
        Actions To Illinois State Court* ....................................................................... 30

    *C.*     *Assuming Arguendo the Bankruptcy Court Has "Related to" Jurisdiction,
        Remand Of PDH Foreign Entities' Claims Against the Exide Foreign Entities in
        the State Court Actions is Mandated Under Section 1334(c)(2)* ....................... 34

i

D.     *Since the Debtor's Plan Was Confirmed, the Automatic Stay Is No Longer In Force, and the PDH Foreign Entities Should be Allowed to Proceed Against the Exide Foreign Entities In Illinois State Court* ......................................................... 35

CONCLUSION ............................................................................................................................ 36

DNC/106873-0001/1260274/3

# TABLE OF AUTHORITIES

## Federal Cases

*Balcor/Morristown Ltd. Partnership v. Vector Whippany Assocs.*,
181 B.R. 781 (D.N.J. 1995) ................................................................................................. 31

*Beard v. Braunstein*, 914 F.2d 434 (3d Cir. 1990)..................................................................... 34

*Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3d Cir. 1994).................................. 18

*Boyer v. Snap-on Tools Corp.*, 913 F.2d 108 (3d Cir. 1990) ..................................................... 32

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir. 1983),
overruled on other grounds by *Lauro Lines v. Chasser*, 490 U.S. 495 (1989) ..................... 29

*Copelin v. Spirco, Inc.*, 182 F.3d 174 (3d Cir. 1999) .................................................................. 19

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*,
130 B.R. 405 (S.D.N.Y. 1991) .................................................................................... 31, 32

*Envirolite Enterprises, Inc., v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.*,
53 B.R. 1007 (S.D.N.Y. 1985)............................................................................................ 30

*Gorse v. Long Neck, Ltd.*, 107 B.R. 479 (D. Del. 1989) ........................................................ 31, 32

*Guiterrez & Sachs, Chartered v. Havens*, 245 B.R. 180 (D.D.C. 2000) ............................... 18, 36

*Gutierrez v. Gonzales*, 125 Fed. Appx. 406 (3d Cir. 2005) ......................................................... 22

*HA-LO Industries, Inc.*, 330 B.R. 663 (Bankr. N.D. Ill. 2005) .................................................. 20

*Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999) ......................................................................... 19

*Hatcher v. Lloyd's of London*, 204 B.R. 227 (M.D. Ala. 1997)................................................... 33

*Hickox v. Leeward Isles Resorts, Ltd.*, 224 B.R. 533 (S.D.N.Y.1998) ....................................... 20

*In re Asousa Partnership*, 264 B.R. 376 (Bankr. E.D. Pa. 2001) ................................. 20, 31, 32

*In re Athos Steel and Aluminum, Inc.*, 71 B.R. 525 (Bankr. E.D. Pa. 1987)................................ 20

*In re Bridgestone/Firestone, Inc Tires Products Liability Litigation*, 205 F.R.D. 503 (S.D.
Ind. 2001), *rev'd on other grounds*, 288 F.3d 1012 (7th Cir. 2002) ...................................... 23

*In re Chicago, Milwaukee, St. Paul & Pacific RR Co.*, 6 F.3d 1184 (7th Cir. 1993) .................... 31

*In re Combustion Engineering, Inc*, 391 F.3d 190 (3d Cir. 2005).................................................. 15

*In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000) .............................................................. 1

*In re Diaz Contracting, Inc.*, 817 F.2d 1047 (3d Cir. 1987) .......................................................... 29

*In re eToys, Inc.*, 331 B.R. 176 (Bankr. D. Del. 2005) ................................................................ 16

*In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002) ................................................. 15

*In re G-I Holdings, Inc.*, 278 B.R. 376 (Bankr. D.N.J. 2002)................................................. 19, 20

*In re Kamine/Besicorp Allegany, L.P.*, 214 B.R. 953 (Bankr. D.N.J. 1997) ................................ 30

*In re Micro Design, Inc.*, 120 B.R. 363 (E.D. Pa. 1990)............................................................. 30

*In re N. Parent, Inc.*, 221 B.R. 609 (Bankr. D. Mass. 1998) ....................................................... 30

*In re OMNA Medical Partners, Inc.*, 2000 WL 33712302
    (Bankr. D. Del. June 12, 2000) ........................................................................... 29

*In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004) ............................................. 16

*In re Riverside Nursing Home*, 144 B.R. 951 (S.D.N.Y. 1992) .............................. 31

*In re Selig*, 1994 WL 90049 (Bankr. E.D. Pa. Mar. 15, 1994) .............................. 32

*In re Southern Technical College, Inc.*, 144 B.R. 421 (Bankr. E.D. Ark. 1992) .......... 32

*In re Spree.Com Corp.*, 295 B.R. 762 (Bankr. E.D. Pa. 2003) ............................... 16

*In re Top Grade Sausage, Inc.*, 227 F.3d 123 (3d Cir. 2000) ................................... 1

*In re Vision Metals, Inc.*, 327 B.R. 719 (Bankr. D. Del. 2005) .............................. 22

*In re Winstar Communications, Inc.*, 284 B.R. 40 (Bankr. D. Del. 2002) .................. 15

*Insilco Technologies, Inc.*, 330 B.R. 512 (Bankr. D. Del. 2005) ........................ 17, 20

*Kabacinski v. Bostrom Seating, Inc.*, 98 Fed. Appx. 78 (3d Cir. 2004) .................... 22

*Lone Star Indus., Inc. v. Liberty Mut. Ins.*, 131 B.R. 269 (D. Del. 1991) ............ 31, 32

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ............................... 28, 29

*Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1991) ....... 18, 35, 36

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,
    176 F.3d 669 (3d Cir.1999) ................................................................................. 1

*Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72 (3d Cir. 2003) ................................. 16

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) ............ 14

*Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984) ............................................... 15, 16

*RGC International Investors, LDC v. ARI Network Services, Inc.*,
    2003 WL 21843637 (D. Del. July 31, 2003) ..................................................... 29

*S.T.S. Transport Service, Inc. v. Volvo White Truck Corp.*,
    766 F.2d 1089 (7th Cir.1985) ............................................................................ 27

*Sav-a-Trip v. Belfort*, 164 F.3d 1137 (8th Cir. 1999) ........................................ 18, 35

*Stanziale v. Nachtomi*, 2004 WL 1812705 (D. Del. Aug. 6, 2004) ........................... 22

*Steinman v. Spencer (In re Argus Group, Inc.)*,
    206 B.R. 737 (Bankr. E.D. Pa. 1996), *aff'd,* 206 B.R. 757 (E.D. Pa. 1997) .......... 18

*Stoe v. Flaherty,* __F.3d __, 2006 WL 156985 (3d Cir. Jan. 23, 2006) ...................... 35

*Touray v. Middlesex County*, 2005 WL 1662125 (3d Cir. July 18, 2005) ................... 22

*Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994) ............................. 19

**State Cases**

*Dean Management, Inc. v. TBS Const., Inc.*,
    339 Ill. App. 3d 263, 790 N.E.2d 934 (Ill. App. 2 Dist. 2003) ............................. 25

*Diaz v. Home Federal Sav. and Loan Ass'n of Elgin*,
    337 Ill. App. 3d 722, 786 N.E.2d 1033 (Ill. App. 2 Dist. 2002) ........................... 25

*Hessler v. Crystal Lake Chrysler-Plymouth, Inc.,*
    38 Ill. App. 3d 1010, 788 N.E.2d 405 (Ill. App. 2 Dist. 2003) ............................................. 26

*In re Marriage of Johnson,*
    237 Ill. App. 3d 381, 604 N.E.2d 378 (Ill. App. 4 Dist. 1992) ............................................. 27

*Pepper Construction Co. v. Transcontinental Insurance Co.,*
    285 Ill. App. 3d 573, 673 N.E.2d 1128 (1996) ............................................. 25

*Schaffner v. 514 West Grant Place Condominium Ass'n, Inc.,*
    324 Ill. App. 3d 1033, 756 N.E.2d 854 (Ill. App. 1 Dist. 2001) ............................................. 27

*Warren-Boynton State Bank v. Wallbaum,*
    123 Ill. 2d 429, 123 Ill. Dec. 936, 528 N.E.2d 640 (1988) ............................................. 25

**Statutes**

11 U.S.C. § 105(a) ............................................. 36

11 U.S.C. § 1452(b) ............................................. 3, 28, 31, 34

11 U.S.C. § 362(c)(2)(C) ............................................. 36

28 U.S.C. § 1334 ............................................. passim

28 U.S.C. § 157 ............................................. passim

28 U.S.C. § 158(a) ............................................. 1

**Rules**

Bankruptcy Rule 3008 ............................................. 21, 23, 24

Bankruptcy Rule 7052 ............................................. 21, 22

Bankruptcy Rule 9023 ............................................. 21, 22

Delaware Local Bankruptcy Court Rule 9006-1(d) ............................................. 21

Fed. R. Civ. P. 52 ............................................. 21

Fed. R. Civ. P. 59 ............................................. 21

**Treatises**

*Collier on Bankruptcy* ¶ 362.03[3][d] (15th ed. 2005) ............................................. 18

DNC/106873-0001/1260274/3

## STATEMENT OF JURISDICTION

This Court has jurisdiction to hear this appeal from the orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a).

## STANDARD OF APPELLATE REVIEW

This Court reviews the bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof. *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 125 (3d Cir. 2000); *In re Continental Airlines*, 203 F.3d 203, 208 (3d Cir. 2000). For the matter on review in this appeal, there were no factual findings by the bankruptcy court.

In the review of motions for reconsideration, an issue presenting a question of law is subject to plenary review; an issue presenting a mixed question of law and fact, raised for the first time in a motion for reconsideration, is generally reviewed under an abuse of discretion standard; to the extent that the denial of reconsideration is predicated on an issue of law, such an issue is reviewed *de novo;* and to the extent that the lower court's disposition of the reconsideration motion is based upon a factual finding, it is reviewed for clear error. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir.1999). The abuse of discretion standard applies to equitable issues. *Id.*

## STATEMENT OF ISSUES ON APPEAL

1.      Did the bankruptcy court err in concluding that it had subject matter jurisdiction

to address, resolve and reject the causes of action asserted in prepetition litigation by the

nondebtor PDH Foreign Entities[2] against the nondebtor Exide Foreign Entities[3]?

2.      In rejecting the causes of action asserted by the PDH Foreign Entities in

prepetition litigation against the nondebtor Exide Foreign Entities, did the bankruptcy court err in

concluding that the dispute between those nondebtor entities was a core proceeding within 28

U.S.C. § 157(b)?

3.      Did the bankruptcy court apply an incorrect standard for motions for

reconsideration, or otherwise misapply the standards for motions for reconsideration, in failing to

consider that the preceding motion of the PDH Entities did not present to the Court any basis for

determining the merits of the causes of action of the PDH Foreign Entities against the nondebtor

Exide Foreign Entities?

4.      Did the bankruptcy court err by failing to address the merits of the PDH Entities'

argument grounded on mutual mistake, a theory which they did not have cause to raise

affirmatively in their Motion for Remand of State Court Action or, In the Alternative, for

Abstention and for an Order Granting Relief from the Automatic Stay?

5.      Did the bankruptcy court err by  failing to consider any extrinsic evidence,

including the affidavits of James McDonough and Martin Hudson, in connection with the

interpretation of the agreements at issue between the parties?

---

[2]      The three Appellants *other than* Pacific Dunlop Holdings (USA), Inc.  –  *i.e.*., Pacific
Dunlop Holdings (Europe) Limited, P.D. International Pty Limited, Pacific Dunlop Holdings
(Hong Kong) Limited and Pacific Dunlop Holdings (Singapore) PTE. Ltd. –  are hereafter
referred to as the "PDH Foreign Entities".
[3]      Three *nondebtor* Exide affiliates (or their successors in interest) – specifically, (i) Exide
Holding Europe, a French company; (ii) Exide Holding Asia Pte. Limited, a Singapore
corporation; and (iii) Exide Singapore Pte. Limited (formerly Bluewall Pte. Ltd), a Singapore
corporation -- are  herein collectively referred to as the "Exide Foreign Entities."

2

6. Did the bankruptcy court err by failing to find even latent ambiguity in the agreements at issue between the parties, and failing to give due regard to the agreements as a whole in rendering its interpretation of the agreements?

7. Did the bankruptcy court err by failing to enforce the forum selection clauses in the parties' contracts?

8. Did the bankruptcy court err by failing to remand, at a minimum, the dispute between the PDH Foreign Entities and the nondebtor Exide Foreign Entities to the Illinois state court pursuant to 11 U.S.C. § 1452(b)?

9. Assuming *arguendo* that the bankruptcy court has subject matter jurisdiction over the dispute, did the bankruptcy court err by failing to abstain from hearing the dispute between the PDH Foreign Entities and the nondebtor Exide Foreign Entities pursuant to 28 U.S.C. § 1334(c)(1) or (c)(2)?

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Appellants Pacific Dunlop Holdings (USA), Inc. (hereafter, "PDH USA"), Pacific Dunlop Holdings (Europe) Limited, P.D. International Pty Limited, Pacific Dunlop Holdings (Hong Kong) Limited, and Pacific Dunlop Holdings (Singapore) PTE. Ltd. (collectively, "Appellants" or the "PDH Entities"), appeal from the December 15, 2003 Order[4] of the Honorable Kevin J. Carey, Bankruptcy Judge, denying the PDH Entities' Remand Motion[5] with

---

[4]    The bankruptcy court's December 15, 2003 Order was titled: "Order Denying the Motion of the Pacific Dunlop Holdings Entities for Remand of State Law Action or, In the Alternative, for Abstention and for an Order Granting Relief from the Automatic Stay to Proceed to Liquidate Claim in State Court" (docket no. 3325). A-0001-0002 (citations in the form "A-___" are to the Appendix being filed herewith). Appeal was taken from the Court's decision as reflected in the Transcript of the Hearing on November 19, 2003 before the Honorable Kevin J. Carey, U. S. Bankruptcy Judge, pertaining to the December 15, 2003 Order (docket no. 3293).
[5]    The Motion of Pacific Dunlop Holdings (USA), Inc., Pacific Dunlop Holdings (Europe) Limited, P.D. International PTY Limited, Pacific Dunlop Holdings (Hong Kong) Limited and Pacific Dunlop Holdings (Singapore) PTE. Ltd. for Remand of State Law Action or, in the Alternative, for Abstention and for an Order Granting Relief from the Automatic Stay to Proceed to Liquidate Claim in State Court, filed on 10/3/2003, with accompanying Exhibits A through D (docket no. 2507) (hereafter, *"Remand Motion"*). A-0106-0307.

3

respect to the litigation that the PDH Entities had been pursuing, prior to the bankruptcy case, against both the debtor, Exide Technologies, Inc. (formerly known as Exide Corporation, and hereafter, "Exide" or "Debtor") and the nondebtor Exide Foreign Entities.  Appellants also appeal from the bankruptcy court's June 20, 2005 Order and Opinion[6] denying their Motion for Reconsideration[7] of the December 15, 2003 Order.  The appellee herein is the debtor, Exide.

On July 17, 2001, the PDH Entities filed a complaint (the "Complaint") commencing litigation in the Circuit Court of Cook County, Illinois in connection with some of these disputes, and sought damages against all the Exide Entities[8] under theories of breach of contract, conversion and unjust enrichment, arising out of their sale to the Exide Entities of their respective interests in the global GNB battery business.  A-0138-0149.  *See* Memorandum Opinon, Adv. No. 02-A-01106 (Bankr. N.D. Ill. Feb. 4, 2003) (Sonderby, B.J.)) (hereafter, the "Sonderby Opinion").  A-0361-0373.  A second complaint was filed by PDH USA only against Exide in December 2001, relating to certain letters of credit (A-0151-0209), and the actions were subsequently consolidated.[9]  A-0973.  Discovery proceeded in the consolidated lawsuits, and the presiding Judge held several hearings on pretrial issues that were raised in the case.  *See, e.g.*, Transcript of Hearing (Circuit Ct., Cook Co. Ill., July 8, 2002).  A-0310-A360.

On April 15, 2002, Exide and certain of its subsidiaries and affiliates filed voluntary Chapter 11 bankruptcy petitions in the District of Delaware.  A-0451.  The Exide Foreign Entities were not among the Exide affiliates that filed Chapter 11 petitions, and they remained as

---

[6]    The bankruptcy court's June 20, 2005 "Order Denying Motion of Pacific Dunlop Holdings Entities for Reconsideration" (docket no. 5104) (A-0003-0004), along with the bankruptcy court's Memorandum Opinion entered on June 20, 2005 (docket no. 5103).  A-0005-0016.

[7]    The Motion of Pacific Dunlop Holdings Entities for Reconsideration of Order Denying Their Motion to Remand or For Abstention and Stay Relief, and Dismissing Their Causes of Action Against the Non-Debtor, Foreign Exide Entities, filed on 12/26/2003, with accompanying Exhibits A through L (docket no. 3385) (hereafter, "*Motion for Reconsideration*").  A-0017-0102.

[8]    Exide and the Exide Foreign Entities are collectively referred to as the "Exide Entities."

[9]    The two Illinois state court actions (the "State Court Actions") were docketed as No. 01 L 08460 and 01 L 15589, and were consolidated before Circuit Judge Sheldon Gardner.  *See* docket no. 1 in Adv. Pro. No. 04-51299-KJC.  A-0308.

4

nondebtors. A-0362. Following an initial stay order, the state court allowed discovery in the state court actions to proceed only against the nondebtor co-defendants. A-0252-0364. On August 21, 2002, one day before a scheduled hearing in state court on a motion on which the Exide Entities had reason to expect an adverse ruling[10], Exide removed the state court actions in their entirety to the Illinois bankruptcy court, and then succeeded in having them transferred to the Delaware bankruptcy court.[11] A-0361-0376.

Prior to the Exide's bankruptcy filing, Exide and the Exide Foreign Entities were jointly represented by the same counsel. A-0227. Because of the bankruptcy filing, however, debtor's counsel could not also represent nondebtor affiliates. Although Exide's transfer motion was made jointly by all, the defendant Exide Entities (A-0250), the Exide Foreign Entities have at no time obtained local counsel or entered an appearance in the *Exide* bankruptcy case in Delaware.

In opposing Exide's transfer motion, the PDH Entities also moved for the Illinois bankruptcy court to remand the dispute back to state court. A-0229-0248. In transferring the actions to Delaware, the Illinois bankruptcy court expressly deferred a ruling on that remand motion. A-0361.

Once in Delaware, the PDH Entities filed a renewed Remand Motion. A-0106-0136. The relief sought in the Remand Motion was alternatively to remand the lawsuits to Illinois state court, or for stay relief from[12] or abstention by the bankruptcy court, to permit the PDH Entities to

---

[10]     *See* the PDH Entities' motion for remand filed in the Illinois bankruptcy court, attached as an exhibit to the Remand Motion (the Exide Entities had moved to dismiss for lack of a necessary party, but Judge Gardner had already rejected that contention). A-0229-0248.
[11]     These are contained in the case file that was later transferred from Illinois to the bankruptcy court in Delaware, where it was entered as the first entry in *Pacific Dunlop Holding Europe, et al. v. Exide Holding Europe, et al.,* Adv. Pro. No. 04-51299-KJC on 01/14/2004. A-0308. The entry refers to the order. *See* Docket entry No. 1, dated 1/14/2004, transferring Adversary from another District. (Circuit Court, Cook County Civil action #01-L 008460) Northern District of Illinois Eastern Division. A-0361.
[12]     With respect to stay relief, the automatic stay by its terms would not have applied to the claims against the nondebtor Exide Foreign Entities. Circuit Judge Gardner recognized this, ruling at the July 8, 2002 hearing that he would not stay "the remainder of the case." A-0328. The Debtors did not make a motion, with notice to all interested parties, seeking application of the stay to these nondebtors.

5

proceed with their litigation outside of bankruptcy court. A-0134. The Remand Motion did not,

however, request the bankruptcy court to determine any state law questions concerning whether

the nondebtor PDH Foreign Entities did or did not have contract remedies available to them

against the nondebtor Exide Foreign Entities. *See* Excerpt from 1/22/04 Hearing Transcript, A-

0974-0985.

The bankruptcy court denied the Remand Motion by its Order dated December 15, 2003

(the "2003 Order"). A-0001. In denying the Remand Motion, the bankruptcy court opined upon

the Coordinating Agreement, one of the agreements entered into by the parties, ruling that the

PDH Foreign Entities do not have a right of recovery available to them against the nondebtor

Exide Foreign Entities, but instead have claims only against the debtor Exide. A-0002. In its

response papers,[13] Exide had proffered the construction of the Coordinating Agreement that the

bankruptcy court adopted, but pursuant to Local Rules, the PDH Entities did not have a right to

submit a reply. The bankruptcy court's short, two-paragraph ruling stated that the proceedings in

their entirety were "core proceedings", with jurisdiction founded under 28 U.S.C. § 157(b)(2)(B)

and (C), even as to the disputes that were solely between and among nondebtors. A-0001-02.

The PDH Entities promptly and timely filed their Motion for Reconsideration, focusing

on the causes of action of the PDH Foreign Entities against the Exide Foreign Entities. *See* A-

0017-0032. The Motion for Reconsideration attached affidavits from two of the principal authors

of the Coordinating Agreement, addressing the matter of the interpretation of the Coordinating

Agreement, as well as the legal grounds upon which the court should consider those affidavits.

*See generally* Motion for Reconsideration. A-0043-0046; A-0103-0105. A hearing was held on

---

[13]    Debtors' Opposition to Motion of Pacific Dunlop Holdings (USA) Inc., Pacific Dunlop Holdings (Europe) Limited, P.D. International PTY Limited, Pacific Dunlop Holdings (Hong Kong) Limited and Pacific Dunlop Holdings (Singapore) PTE. LTD for Remand of State Law Action or, In the Alternative, for Abstention and for an Order Granting Relief from the Automatic Stay to Proceed to Liquidate Claims in State Court filed by Exide Technologies, filed on 10/27/2003 (docket no. 2942) is contained in the Record on appeal (hereafter, the "Record").

the Motion for Reconsideration on January 22, 2004.[14]  However, the bankruptcy court withheld

any ruling upon it for an extended period of time.

In the meantime, Exide, jointly with the Creditors' Committee, filed a joint amended Plan

of Reorganization[15] in March 2004, along with a Disclosure Statement.[16]  The bankruptcy court

confirmed[17] the Plan on April 21, 2004.  A-0545.

Fourteen months after the Plan was confirmed, on June 20, 2005, the bankruptcy court

issued its Order and Opinion denying the PDH Entities' Motion for Reconsideration (the "2005

Order" and "2005 Opinion", respectively).  A-0003.  This appeal followed.[18]

## STATEMENT OF FACTS

A.     The Sales Agreements and the Coordinating Agreement

In May and June of 2000, the PDH Entities entered into a set of Sale Agreements to sell

their respective interests in the global GNB battery business.  A-0362-0363.  PDH USA sold its

interests in the GNB business to Exide (the "US Agreement").  A-0650.  The PDH Foreign

Entities sold their respective interests in the business to their analogous Exide entities, the three

Exide Foreign Entities.  As set forth in the Complaint, Pacific Dunlop Holdings (Europe) Limited

entered into a Stock Purchase Agreement with Exide Holding Europe (the "UK Agreement") (A-

0707); Pacific Dunlop Holdings (Europe) Limited and P.D. International Pty Limited jointly

---

[14]     The Transcript of Hearing on January 22, 2004 at 2:15 p.m., was docketed on 2/11/2004 (docket no. 3596).  *See* A-0974.

[15]     The Amended Joint Plan Of  Reorganization Of The Official Committee Of Unsecured Creditors and The Debtors, filed on 3/15/2004 (docket no. 3918) (hereafter, the "Plan").  A-0377-0441.

[16]     Amended Disclosure Statement for Joint Plan of Reorganization of the Official Committee of Unsecured Creditors and the Debtors, Filed on 3/15/2004, with Exhibits (docket no. 3919) (hereafter, the "Disclosure Statement")  (exhibits omitted from the appendix).  A-0442-0544.

[17]     *See* Order Confirming Joint Plan of Reorganization of the Official Committee of Unsecured Creditors and the Debtors entered on 4/21/2004 (docket no. 4341).  A-0545.  *See also* Findings Of Fact, Conclusions Of Law Relating to Confirmation of the Joint Plan of Reorganization of the Official Committee of Unsecured Creditors and the Debtors, entered on 4/21/2004 (docket no. 4340).  A-0546-0600.

[18]     *See* Amended Notice of Appeal, filed on 6/30/2005 (docket no. 5125).  A-0601-0604.

entered into a Stock Purchase Agreement with Exide Holding Europe (the "European

Agreement") (A-0757);  Pacific Dunlop Holdings (Hong Kong) Limited entered into a Stock

Purchase Agreement with Exide Holding Asia Pte. Limited (the "Hong Kong/PRC Agreement")

(A-0812);  Pacific Dunlop Holdings (Singapore) PTE. Ltd. entered into a Stock Purchase

Agreement with Exide Holding Asia Pte. Limited (the "India Agreement") (A-0871), and

separately, an Asset Purchase Agreement with Exide Singapore Pte. Limited (the "Singapore

Agreement") (A-0915).[19]

On May 9, 2000, PDH USA and Exide also entered into a Coordinating Agreement,[20]

which was assented to by the various foreign entities,[21] containing provisions intended to address

the remedies available to all the parties to the separate Sales Agreements.  A-0605.  Article 10 of

each of the Sales Agreements cross-references the Coordinating Agreement, as being the

document setting forth each separate Buyer's and Seller's indemnification obligations.  *E.g.*, A-

0740-0741; A-0793.  Thus, for example, in the June 28, 2000 Stock Purchase Agreement between

Pacific Dunlop Holdings (Europe) Ltd., as Seller, and the nondebtor Exide Holding Europe, as

Buyer, it provides that "[t]he Seller's sole and exclusive indemnification obligations under this

Agreement are set forth in the Coordinating Agreement" [Section 10.1], and that  "[t]he Buyer's

sole and exclusive indemnification obligations under this Agreement are set forth in the

Coordinating Agreement" [Section 10.2].  A-0793.

In the Coordinating Agreement, the remedies available to PDH USA (i.e., the "Seller")

and the PDH Foreign Entities (the "International Sellers") against the Buyer Exide or the other

Buyers are set forth in Section 4.2(a).  A-0619-0620.  It provides:

---

[19]    These Sales Agreements, separately included in the Appendix, were attached within the
exhibits in Debtor's opposition to the Remand Motion.
[20]    The Coordinating Agreement is contained in the Record , *inter alia*, in the Remand
Motion, Exhibit B, and is in the Appendix at A-0605-0649.
[21]    *See* Coordinating Agreement, § 5.5 (A-0624-0626); *see also* Transcript of Hearing before
Honorable Sheldon Gardner (Circuit Ct., Cook Co. Ill,. July 8, 2002), p. 33.  A-0342.

8

Section 4.2.  Indemnification by Buyer.

(a)  Subject to Sections 4.2(b), 4.2(c), and 4.2(d),  Buyer agrees to indemnify and hold Seller and the International Sellers and their Affiliates harmless from and against any and all Losses and Expenses incurred by Seller or the International Sellers and their Affiliates in connection with or arising from:

(i)  any breach by Buyer of any of its covenants or agreements in the Sale Agreements or in this Agreement;

(ii)  any breach of any warranty or the inaccuracy of any representation of Buyer contained in the Sale Agreements, in each case without regard to "materiality" or Material Adverse Effect; or

(iii)  any breach by Buyer of any covenant contained in Section 11.1 or Section 12.2 of the U.S. Agreement[22] or the corresponding provisions in the other Sale Agreements.

Importantly, the Coordinating Agreement includes an expansive definition of "Buyer" in the Definitions Section.  It provides that, for purposes of all of the Articles of the Coordinating Agreement, except Article 2 (and thus including Article 4), "Buyer shall be deemed to mean Buyer and/or (as the context may require) any International Buyer," where the International Buyers are the Exide Foreign Entities.  Coordinating Agreement, § 1.1 (emphasis added).  A-0607.  The Coordinating Agreement does not have an analogously broad definition of the term "Seller."  A-0606-09.

Based on that definition of "Buyer", it was understood that any of the International Buyers could be held to indemnify the Sellers from any breach by that International Buyer of a covenant or warranty.[23]  A-0105 (Declaration of Martin Hudson); A-0045 (Affidavit of James D.

---

[22]  The "U.S. Agreement" refers to the Sale Agreement between PDH(USA) and Exide. *See* A-0609.

[23]  Inserting the Coordinating Agreement's definition of "Buyer" into Article 4.2 where that term appears, Section 4.2(a) would effectively read as follows:

Indemnification by Buyer *and/or any International Buyer*.

(a)  Subject to Sections 4.2(b), 4.2(c), and 4.2(d),  Buyer *and/or any International Buyer* agrees to indemnify and hold Seller and the International Sellers and their Affiliates harmless from and against any and all Losses and

9

McDonough).

The Coordinating Agreement, incorporated by reference in the Sales Agreements between all the foreign entities, includes a forum selection provision pursuant to which all claims and disputes are to be brought in Cook County, Illinois, and the parties agreed to submit to the jurisdiction of courts of that state. *See* Coordinating Agreement, § 5.2.[24] A-0623. The Coordinating Agreement expressly contemplates that in the event of a dispute, suit might be brought against the foreign entities in Illinois, stating: "Buyer and Seller covenant and agree for themselves and their respective Affiliates that they will not bring, maintain, join or prosecute any Action or other proceeding against *the other or its Affiliates* for breach of the Sale Agreements or indemnity therefor *except* as provided in this Agreement." Coordinating Agreement, § 4.5 (emphasis added). A-0622.[25]

On June 19, 2000, the parties entered into the first of three amendments to the Coordinating Agreement. A-0633-0636. Amendment No. 1 to the Coordinating Agreement principally amended the Seller's representations regarding the transfer of trademarks, and further included the following language which, by its own terms, was intended *not* as a change but as a

---

Expenses incurred by Seller or the International Sellers and their Affiliates in connection with or arising from:

(i)  any breach by Buyer *and/or any International Buyer* of any of its covenants or agreements in the Sale Agreements or in this Agreement;

(ii)  any breach of any warranty or the inaccuracy of any representation of Buyer *and/or any International Buyer* contained in the Sale Agreements, in each case without regard to "materiality" or Material Adverse Effect; or

(iii)  any breach by Buyer *and/or any International Buyer* of any covenant contained in <u>Section 11.1</u> or <u>Section 12.2</u> of the U.S. Agreement or the corresponding provisions in the other Sale Agreements.

[24]  The Coordinating Agreement (§ 5.2) and each of the Sales Agreements (either § 11.11 or § 12.11, depending on the agreement) also all include a choice of law clause, adopting the laws of Illinois as the governing law. A-0623, 0699, 0745, 0798, 0847, 0907, 0959.
[25]  By contrast, it does not say, for example, that no action may be pursued against the Affiliates.

clarification: "Section 4.2(a)(i) is hereby amended to insert the words 'or, for sake of clarification, any International Buyer' after the word 'Buyer' in the first line of such section." A-0633. As a result, the phrase "or, for sake of clarification, any International Buyer" replaced "and/or any International Buyer" in that subsection. *See* footnote 24, *supra*.

This clarifying amendment did not alter the existing understanding that, as Section 4.2(a) already stood, the term "Buyer" as used throughout that section meant, as the context required, "Buyer and/or any International Buyer," such that any Exide Foreign Entity could be held responsible for its breaches, through legal action brought in Cook County, Illinois.

The principal drafters of the Coordinating Agreement and its Amendments were Martin Hudson, then General Counsel to the Pacific Dunlop Limited Group, and James D. McDonough, corporate counsel for the PDH Entities with the Chicago law firm, Gardner, Carton & Douglas. An Affidavit of Mr. McDonough and a Declaration from Mr. Hudson were submitted to the bankruptcy court with the Reconsideration Motion. *See* A-0021; 0043-0102.[26] A-0044, 0103. As these gentlemen avowed, there was no intent in Amendment No. 1 to the Coordinating Agreement, to limit the recourse of the PDH Foreign Entities against the Exide Foreign Entities. A-0045, 0105. Nor had there been any request from the Buyers, the Exide Entities[27], to change any of the language as originally set forth in the Coordinating Agreement, for the purpose of limiting or excluding such recourse against the Exide Foreign Entities in the courts. A-0105.

    B.    The Disputes Arising Under the Sales Agreements.

Shortly after the sales of the GNB business closed in June 2000, and well before the Exide bankruptcy case was commenced in April 2002, the PDH Entities discovered that the Exide Entities had breached some of their obligations under their respective Sales Agreements, and disputes arose. *See* Complaint, No. 01 L 08460 [28]. A-0138-49. Among other things, Exide and

---

[26]    *See also* Substituted Declaration of Martin Hudson Re: D.I. 3385, filed on 1/6/2004 (docket no. 3417). A-0103-0105.

[27]    Exide and the Exide Foreign Entities are collectively referred to as the "Exide Entities".

[28]    The first Complaint, filed by the PDH Entities against the Exide Entities, as well as the

11

the nondebtor Exide Foreign Entities held back and refused to pay cash which was to have been transferred to certain PDH Entities under their respective contracts, and one of the Exide Foreign Entities wrongfully removed cash from the account of one PDH entity. *See id.*[29]

The Complaint, filed in July 2001, specifically sets forth the amounts of cash improperly held by each of the Exide Foreign Entities which is owed to the respective PDH Foreign Entities. A-0143. The Exide Entities denied they were in breach as alleged. A jury demand was made in the Complaint. A-0138.

Tellingly, in the litigation that the PDH Entities commenced against the Exide Entities in Cook County, Illinois, the Exide Entities did not assert as a defense in their answer to the Complaint, that the Coordinating Agreement denied the PDH Foreign Entities recourse against the Exide Foreign Entities. *See* A-0238-0239 (describing background as of August 2002).

In her opinion transferring the litigation to the Delaware bankruptcy court, Judge Sonderby acknowledged, with respect to the state law issue of whether the PDH Foreign Entities can recover from the Exide Foreign Entities for their breaches: "there may be an ambiguity on the indemnification issue." A-0255.

---

second Complaint, filed by PDH(USA) against Exide, are in the Record, attached as Exhibits A and B to the Remand Motion. A-0138, 0151.

[29] The PDH Foreign Entities' causes of action against the nondebtor Exide Foreign Entities arose from each entity's separate, wrongful retention and conversion of segregated, identifiable funds, from bank accounts owned by that entity, in breach of separate agreements to which they – not Exide – are parties. The PDH Entities brought breach of contract, conversion and unjust enrichment claims against Exide Holding Asia Pte. Limited for its conversion of $791,524 and $396,817 from separate accounts in breach of two Stock Purchase Agreements it entered into with Pacific Dunlop Holdings (Hong Kong) Ltd. and Pacific Dunlop Holdings (Singapore) Pte. Limited, respectively. They seek recovery from Exide Singapore Pte. Ltd. for its conversion of $278,446 in breach of an Asset Purchase Agreement it entered into with Pacific Dunlop Holdings (Singapore) Ltd. The PDH Foreign Entities seek recovery of approximately $8.5 million wrongfully retained in/converted from six separate bank accounts in six different European countries by Exide Holding Europe in breach of two separate Stock Purchase Agreements – one with Pacific Dunlop Holdings (Europe) Ltd. and the other with that entity and P.D. International Pty Ltd. The Debtor was not a party to any of these agreements. *See generally* Complaint. A-0143.

Although the consolidated actions were transferred to Delaware, nothing in that transfer conferred jurisdiction to the Delaware bankruptcy court over the causes of action being asserted by the PDH Foreign Entities against the Exide Foreign Entities. A-0362-0376.

As noted, the Debtors and the Creditors Committee filed their joint amended Plan and Disclosure Statement in March 2004, and the Plan was confirmed on April 21, 2004. A-0545. The Plan provided for the cancellation of Exide's equity and notes, and the issuance of new common stock and warrants, for distribution to creditors. A-0454-0455; A-0559-0060.[30] The Plan, which was immediately effective (A-0569), did not specifically mention the PDH Entities or separately classify their claims, and it in no respect hinged on either the outcome of the Remand Motion or the underlying litigation of the causes of action asserted by the PDH Foreign Entities against the Exide Foreign Entities.[31] On the other hand, the Confirmation Order expressly declared that the claims of the PDH Entities against the Exide Foreign Entities were unimpeded by confirmation. A-0570. Upon confirmation, Exide was immediately authorized to operate without supervision or approval of the Bankruptcy Court (A-0570), and the Plan was deemed substantially consummated. A-0595.

When the Delaware bankruptcy court finally ruled on the PDH Entities' Motion for Reconsideration, Exide's Plan had already been confirmed, and Exide was operating out of bankruptcy for over a year. As of this briefing, the reorganized Exide has now been operating out of bankruptcy for close to two years.

---

[30]    The Debtor could, upon confirmation, make immediate distribution of such stock and warrants to all creditors with allowed claims, subject only to maintaining a reserve for disputed claims. A-0404-0405; A-0583-0584.
[31]    The Disclosure Statement describes the events that led to Exide's Chapter 11 filing generically: "The Company and certain of its subsidiaries decided to file for reorganization under Chapter 11 as it offered the most efficient alternative to restructure the Company's balance sheet and access new working capital while continuing to operate in the ordinary course of business. The Company has a heavy debt burden, caused largely by a debt-financed acquisition strategy and the significant costs of integrating those acquisitions. Other factors leading to the reorganization included the impact of adverse economic conditions on the Company's markets, particularly telecommunications and ongoing competitive pressures." A-0465.

13

## ARGUMENT

### I.     THE BANKRUPTCY COURT'S RULINGS WERE JURISDICTIONALLY DEFECTIVE

The bankruptcy court's 2003 Order effectively held that the PDH Foreign Entities could not pursue their causes of action directly against the *nondebtor* Exide Foreign Entities, but instead must pursue them against the debtor, Exide.  In precluding the *nondebtor* PDH Foreign Entities from proceeding with their claims against the *nondebtor* Exide Foreign Entities, the bankruptcy court overreached its jurisdictional limits.

The essential question for this Court is: did the bankruptcy court, in the first instance, have the authority to decide whether, under the relevant agreements and applicable state law, the PDH Foreign Entities have a right to seek recourse against the nondebtor Exide Foreign Entities – especially where the movants had not sought such a decision from the bankruptcy court. Appellants maintain that the bankruptcy court did not have that authority.

### A.     THE DISPUTE BETWEEN THE PDH FOREIGN ENTITIES AND THE EXIDE FOREIGN ENTITIES IS NOT "RELATED TO" THE EXIDE CASE AND, IN ANY EVENT, IS NOT CORE

The specialized bankruptcy courts, established by Congress under Article I rather than Article III of the United States Constitution, have more limited jurisdiction than that of federal district courts. *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 60 (1982). The functions of the bankruptcy court, the Supreme Court has ruled, must among other things "be limited in such a way that 'the essential attributes' of judicial power are retained in the Art. III [*i.e.,* the federal District] Court."   458 U.S. at 81.

The district courts have exclusive jurisdiction over all cases under title 11 (the Bankruptcy Code), and non-exclusive jurisdiction over all civil proceedings "arising under" title 11, or "arising in" or "related to" cases under title 11.  28 U.S.C. § 1334.  By the automatic reference of bankruptcy cases to bankruptcy courts  pursuant to 28 U.S.C. § 157, bankruptcy courts are  accorded "core" jurisdiction to for bankruptcy cases and proceedings arising in them,

14

but "non-core" jurisdiction as to matters "related to" bankruptcy cases. *See In re Combustion Engineering, Inc*, 391 F.3d 190, 225-26 (3d Cir. 2005).

The bankruptcy court may not hear matters not "related to" a bankruptcy case. 28 U.S.C. § 1334.  "Related to" jurisdiction is broad but not without limits. *See Combustion Engineering*, 391 F.3d at 226, *citing Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984).

A bankruptcy judge *may* hear a *non-core* matter that is otherwise *related to* a bankruptcy case, but the bankruptcy judge cannot enter a final judgment in it. *See* 28 U.S.C. § 157(b)(1). Rather, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court," for its consideration. 28 U.S.C. § 157(c)(1).

1.    *Because the Causes of Action Asserted By the PDH Foreign Entities Against the Exide Foreign Entities Are Not "Related to" the Bankruptcy Case, the Bankruptcy Court Lacked Authority to Decide Whether the PDH Foreign Entities Could Pursue Them*

Courts have often found that disputes between or among nondebtors did not qualify for "related to" jurisdiction. *E.g., Pacor*, 743 F.2d at 995 (civil proceeding between nondebtors did not qualify as "related to" the case, since Pacor would have had to bring a separate action against the estate to receive indemnification); *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002)  (no "related to" jurisdiction over claims against nondebtors that had potential indemnification claims against the debtors which had not yet accrued and would require another lawsuit; *Combustion Engineering*, 391 F.3d at 227-228 (no "related to" jurisdiction over independent, asbestos-related claims against nondebtor affiliates of the debtor). The ownership by a trustee of all the stock of the debtor's subsidiary is insufficient to allow the court to exercise subject matter jurisdiction over the assets of the nondebtor subsidiary.  *In re Winstar Communications, Inc.*, 284 B.R. 40 (Bankr. D. Del. 2002).

Moreover, after confirmation of a reorganization plan, the standard for "related to" jurisdiction becomes more restricted. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 164-65 (3d Cir.

2004).[32] This is especially significant because the 2005 Opinion and 2005 Order were issued more than a year after Exide's Plan had been confirmed. Bankruptcy courts, like any federal court, are obliged to raise *sua sponte* their subject matter jurisdiction. *See, e.g., In re Spree.Com Corp.*, 295 B.R. 762, 768 (Bankr. E.D. Pa. 2003); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003) ("because subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt"). In reconsidering its ruling on the Remand Motion, the bankruptcy court was obliged to take into account the effect of Plan confirmation on its own jurisdiction.

As the Third Circuit ruled in the *Resorts* case: "The post-confirmation context . . . affects our 'related to' inquiry because bankruptcy court jurisdiction 'must be confined within appropriate limits and does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case.' . . . After confirmation of a reorganization plan, retention of bankruptcy jurisdiction may be problematic. . . . This is so because, under traditional *Pacor* analysis, bankruptcy jurisdiction will not extend to a dispute between non-debtors unless the dispute creates 'the logical possibility that the estate will be affected.'" *Resorts*, 372 F.3d 154, 164-165 (citations omitted). Consequently, notwithstanding any broad language in a Chapter 11 debtor's plan for retention of jurisdiction by the bankruptcy court, "the post-confirmation jurisdiction of the Bankruptcy Court is extremely limited." *In re eToys, Inc.*, 331 B.R. 176, 185 (Bankr. D. Del. 2005).

In *Resorts*, the Third Circuit set a stricter standard for post-confirmation exercise of jurisdiction by a bankruptcy court. In pre-confirmation matters, as the Third Circuit held in *Pacor*, "[f]or subject matter jurisdiction to exist, . . . there must be *some nexus* between the 'related' civil proceeding and the title 11 case." *Pacor*, 743 F.2d at 994-95 (emphasis added).

---

[32]     Plan provisions will not help the Debtor show jurisdiction. Retention of jurisdiction provisions in confirmed plans are "fundamentally irrelevant" to whether the bankruptcy court has jurisdiction over a dispute. *Resorts*, 372 F.3d at 161.

Post-confirmation, there must be "a *close nexus* to the bankruptcy plan or proceeding sufficient to uphold  bankruptcy court jurisdiction over the matter." 372 F.3d 154, 166-167 (emphasis added).

Bankruptcy Judge Carey, in a recent case, applied *Resorts* to deny jurisdiction over certain state law causes of action that arose pre-petition but were being asserted  post-confirmation in an action by a Chapter 11 Liquidating Trust.  *In re Insilco Technologies, Inc.*, 330 B.R. 512 (Bankr. D. Del. 2005) (holding that two state law causes of action asserted by Chapter 11 Liquidating Trustee were not  "related to" the case, although the Trustee's preference and fraudulent transfer avoidance causes of action were "related to" and "core").  The court stated: "[E]ven though the claims alleged by the Liquidating Trustee in the Amended Complaint arose prepetition, their resolution does not require interpretation of the Plan and will not affect the bankruptcy estate or the Debtor." *Insilco,* 330 B.R. at 524.  Moreover, "[t]he outcome of this adversary proceeding could result in additional assets to distribute to creditors, but *Resorts* rejected the argument that such a result (without more) creates a close nexus to the Plan."  *Id.*

Similarly, the claims asserted by the PDH Foreign Entities against the Exide Foreign Entities lack the requisite "close nexus" to the bankruptcy case.  The case is now post-confirmation.  The claims do not require interpretation of the Plan; the Plan itself makes no mention of this litigation; and at no time in the bankruptcy case or the Plan did Exide seek bankruptcy court authority to extend the automatic stay to these nondebtor affiliates.  Whether this dispute would affect the value of the assets available for distribution to creditors (in this case, it is common stock and warrants in the reorganized Exide that are being distributed) is not, as *Resorts* and *Insilco* establish, a ground for finding a close nexus to the case.  To the extent that the bankruptcy court concluded that the PDH Foreign Entities have recourse only against the Debtor, the rendering of that conclusion put the proverbial cart before the horse: to reach that conclusion, the court necessarily addressed an issue (claims of nondebtors against nondebtors) over which it lacked jurisdiction.

17

Finally, the fact that the PDH Entities filed proofs of claim[33] against the *Debtor* is immaterial. It is black-letter law, for example, that when one co-defendant in a lawsuit files for bankruptcy protection, such that the automatic stay comes into effect, the lawsuit may proceed against the nondebtor co-defendants. 3 *Collier on Bankruptcy* ¶ 362.03[3][d], p. 362-17 (15th ed. 2005).[34] While PDH USA's proof of claim, and the PDH Foreign Entities' contingent proofs of claim, would affect whether those entities would be deemed to have "accepted" the equitable jurisdiction of the bankruptcy court so as to waive a jury trial right in claims by or against the Debtor (*see, e.g., Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1250 (3d Cir. 1994)), it is not a factor in the standard for determining the "related to" status of their causes of action against *non*debtors. *See Steinman v. Spencer (In re Argus Group, Inc.)*, 206 B.R. 737, 747-48 (Bankr. E.D. Pa. 1996), *aff'd*, 206 B.R. 757 (E.D. Pa. 1997) (where a pre-petition lawsuit had been brought asserting purely state law claims against the debtors and non-debtor co-defendants in state court, the debtor removed the action to bankruptcy court, and the defendant sought a remand, court held that the filing of the proofs of claim did not transform the removed state court litigation into a core proceeding, and granted the remand motion). To the extent that the bankruptcy court simply lumped the claims against the Exide Foreign Entities with those against the Debtor to assert jurisdiction over the claims against the nondebtors, such lumping was error.

In short, *if* a nonbankruptcy court with appropriate jurisdiction over the dispute were to decide that the PDH Foreign Entities have no recourse against the Exide Foreign Entities, and must instead proceed against the Debtor, only then would the bankruptcy court have jurisdiction over the balance of the claims asserted by the PDH Foreign Entities and the issues raised in those

---

[33] A-0964-0972

[34] *See also Sav-a-Trip v. Belfort*, 164 F.3d 1137, 1139 (8th Cir. 1999) (bankruptcy automatic stay enjoyed by brokerage firm and one of its employees did not properly extend to other employees); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1991) (all claims within a proceeding are not lumped together for purposes of the automatic stay, and the stay only affected the claim against the individual debtor but not the claim against the debtor's corporation); *Guiterrez & Sachs, Chartered v. Havens*, 245 B.R. 180, 181 (D.D.C. 2000) (automatic stay that went into effect for corporate defendant debtor did not protect corporate defendant's principal).

18

causes of action. In the first instance, however, since their divisible causes of action asserted against the Exide Foreign Entities are *not* claims against the estate, the bankruptcy court did not have the authority to decide their viability.

2.    *Because the Causes of Action Asserted By the PDH Foreign Entities Against the Exide Foreign Entities Are Not "Core" Matters, the Bankruptcy Court Lacked Authority to Enter a Final Ruling Without Reference to the District Court*

To decide whether a proceeding is core or non-core, the Court must proceed on a claim by claim basis. *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). Under the Third Circuit's test, "a proceeding is core (1) if it invokes a substantive right provided by title 11 [the Bankruptcy Code] or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Id.*; *see Copelin v. Spirco, Inc.*, 182 F.3d 174, 180 (3d Cir. 1999). "Non-core proceedings" include the broader universe of all proceedings that, while not core proceedings, are nevertheless "related to" a bankruptcy case. 164 F.3d at 836. The Third Circuit's "core" test is stricter than in some other courts. *See In re G-I Holdings, Inc.*, 278 B.R. 376, 382 (Bankr. D.N.J. 2002).

It should have been obvious that the causes of action that had been asserted by the PDH Foreign Entities against the Exide Foreign Entities, based on state law, in a pre-bankruptcy lawsuit, could not be "core" matters.[35] They did not invoke a substantive right under the Bankruptcy Code and most certainly were not ones that could have arisen only in the context of the bankruptcy case, since they in fact had arisen before the case. This was a prepetition dispute that was already being litigated in state court, between nondebtors, under Illinois state law. The bankruptcy court's finding to the contrary was error.

In general, claims asserted between two nondebtors do not qualify as a core proceeding under 28 U.S.C. § 157(b). *See, e.g., Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994) (finding that § 1334(b) could not possibly be applicable to a dispute between two

---

[35]    Appellants do not challenge in this appeal the conclusion that the divisible claims asserted by PDH USA against Exide are "core."

nonparties to the bankruptcy proceeding); *In re HA-LO Industries, Inc.*, 330 B.R. 663, 668
(Bankr. N.D. Ill. 2005) (same); *Hickox v. Leeward Isles Resorts, Ltd.*, 224 B.R. 533, 538
(S.D.N.Y.1998); *In re G-I Holdings, Inc.*, 295 B.R. 211 (D.N.J. 2003) (claim against nondebtor
subsidiary of debtor, that could "obviously exist outside of bankruptcy," was non-core); *In re
Athos Steel and Aluminum, Inc.*, 71 B.R. 525, 535 (Bankr. E.D. Pa. 1987) ("[T]o the extent the
plaintiffs seek damages . . . from the nondebtor defendants, this claim is noncore and may not
even be a related claim.").

Furthermore, as Bankruptcy Judge Carey observed in *Insilco*, "[s]ome courts . . . have
determined that a cause of action created solely by state law, which does not otherwise fall within
the provisions of 28 U.S.C. § 157(b)(2)(B)-(N), is a non-core matter, even if it arguably falls
within the literal wording of the catch-all provisions of § 157(b)(2)(A) or (O)." *Insilco*, 330 B.R.
at 521 (holding that the state law causes of action asserted by Chapter 11 Liquidating Trustee
were not "core").

In the 2003 Order, the bankruptcy court mistakenly rested its finding of core jurisdiction
on sections 157(b)(2)(B) and (C) – which provide core jurisdiction over the allowance and
disallowance of claims against the estate and counterclaims. Those provisions provide
jurisdiction only with regard to claims against the Debtor, and counterclaims of the Debtor
against a claimant.[36] They provide no basis for jurisdiction over claims against nondebtors. As
with respect to "related to" jurisdiction, the proofs of claim of the PDH Entities against the
Debtor are not in question – the issue here concerns only the claims against nondebtors. These
are *not*, on their face, claims against the estate. It does not matter that the bankruptcy court
concluded that the PDH Foreign Entities do not have recourse against the nondebtor Exide
entities, since the bankruptcy court lacked the requisite authority to render that conclusion. *Cf.
In re Asouza Partnership*, 264 B.R. 376, 391 (Bankr. E.D. Pa. 2001) (in state court action brought

---

[36]    Furthermore, neither the actual claims of the PDH Entities for recovery against Exide,
nor Exide's counterclaim, were presented to the bankruptcy court for decision in the Remand
Motion.

by debtor-lessor against lessee, which debtor removed to bankruptcy court, since the first issue to be addressed was whether the lessee was in default under the lease, the dispute was "a 'step' away from a turnover action", and therefore not "core").

## II. THE PDH ENTITIES' MOTION FOR RECONSIDERATION SHOULD HAVE BEEN GRANTED TO PREVENT MANIFEST INJUSTICE

### A. THE COURT'S RULING DETERMINED ISSUES NOT PRESENTED IN THE PDH ENTITIES' REMAND MOTION

The issues and arguments presented in the PDH Entities' Remand Motion solely involved *where* (*i.e.*, in what court) any substantive issues in the litigation should be decided, based on the forum selection clause in the parties' agreement, and grounds for remand, stay or abstention. No issue was presented by the PDH Entities in their Remand Motion seeking a substantive ruling on any dispute between the parties. In particular, the PDH Entities did not present the court with deciding whether had a right to recourse against the nondebtor Exide Foreign Entities.

In its response to that motion, Exide raised that issue, which was beyond the scope of the Remand Motion. But the PDH Entities did not, as of right, have any opportunity to respond to the issues not presented in its own motion. Local Bankruptcy Court Rule 9006-1(d) provides: "No reply papers shall be filed unless ordered by the Court." Del. L.B.R. 9006-1(d).

The 2003 Order did not merely deny the Remand Motion, but made findings upon Exide's contentions that the Coordinating Agreement was unambiguous and should be construed to preclude direct claims by the PDH Foreign Entities against the Exide Foreign Entities. In moving to reconsider, alternatively under Rules 9023[37], 7052[38], or 3008[39] of the Federal Rules of

---

[37]      Bankruptcy Rule 9023 makes Federal Rule of Civil Procedure 59 generally applicable to bankruptcy cases. Fed. R. Civ. P. 59 allows for motions for a new trial or to amend a judgment, "for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States."

[38]      Bankruptcy Rule 7052 makes Federal Rule of Civil Procedure 52 generally applicable to bankruptcy cases. Fed. R. Civ. P. 52(b) provides that on a party's motion filed by 10 days after entry of judgment, the court may amend its findings, or make additional findings, and may amend the judgment accordingly.

[39]      Bankruptcy Rule 3008 allows motions for reconsideration of an order allowing or disallowing a claim against the estate.

21

Bankruptcy Procedure, the PDH Entities argued that the bankruptcy court should not have reached the issues it addressed, since they had not been raised in the Motion. The PDH Entities further argued that, if the court did reach the Debtor's contentions about the construction of the Coordinating Agreement, it should consider their alternative argument that the pertinent amendment to the Coordinating Agreement was the result of mutual mistake, for which purposes they were entitled as a matter of law to present extrinsic evidence. *See Motion for Reconsideration,* A-0028-0029. The bankruptcy court's rejection of these arguments was in error.

      1.     Reconsideration Under Rules 7052 and 9023

A motion for reconsideration under Bankruptcy Rules 7052 or 9023 may be granted, "if the party seeking reconsideration shows . . . (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Kabacinski v. Bostrom Seating, Inc.,* 98 Fed. Appx. 78 (3d Cir. 2004); *see also Touray v. Middlesex County,* 2005 WL 1662125 at *3 (3d Cir. July 18, 2005) ("the need to correct a clear error of law or fact to prevent manifest injustice."). The formulation of the standard, as recited by Judge Carey, based on case law from 1995, is deficient in that (a) it refers only to clear errors of law, but not of fact, and (b) it omits the situation of a decision rendered outside the issues presented.

"The need to prevent injustice and to correct errors on the record provides an independent basis for granting a motion under Rule 52(b) and 59(e), aside from the presence of previously undiscovered evidence." *Gutierrez v. Gonzales,* 125 Fed. Appx. 406, 417 (3d Cir. 2005). Motions for reconsideration may be granted where the court made a decision "outside the adversarial issues presented by the parties." *Stanziale v. Nachtomi,* 2004 WL 1812705, *1 (D. Del. Aug. 6, 2004); *In re Vision Metals, Inc.,* 327 B.R. 719, 721 (Bankr. D. Del. 2005) (partial reconsideration granted).

In this case, it was a manifest injustice for the Court to reach out and decide a substantive issue affecting the rights of the PDH Foreign Entities that was not presented in their motion

papers, and yet one on which they had no right to submit a reply in advance of the hearing.  In denying the Motion for Reconsideration, the Court gave short shrift to the mutual mistake argument, describing it as a "new legal theory" that could have been raised previously.  But under the procedural posture in which the Remand Motion was presented, the PDH Entities did not have a right to file a reply raising that theory prior to the hearing.  By contrast, the PDH Entities would have had that opportunity if the matter of whether they had rights to sue or seek recourse from the Exide Foreign Entities had been squarely presented to the court by the Debtor as either movant or plaintiff – but that did not occur.[40]

Reconsideration has been held appropriate where an issue decided by the court was not presented in the opening papers, and the opposing party therefore did not know it would need to be briefed. *In re Bridgestone/Firestone, Inc Tires Products Liability Litigation*, 205 F.R.D. 503 (S.D. Ind. 2001), *rev'd on other grounds,* 288 F.3d 1012 (7th Cir. 2002) (partial reconsideration granted).  The same principle should apply here to allow the PDH Entities to present the mutual mistake theory, as well as the supporting affidavits.

2.      Reconsideration Under Rule 3008

Additionally, the bankruptcy court erred by failing to grant reconsideration under Bankruptcy Rule 3008, which allows motions for reconsideration of an order allowing or disallowing a claim against the estate, *without* the restrictive standard applicable to reconsideration motions under the other Rules.  As Appellants argued in the Motion for Reconsideration, the 2003 Order essentially treated the claims of the PDH Foreign Entities against the nondebtor Exide Foreign Entities *as if* they were claims against the estate, and reconsideration was sought accordingly.  The bankruptcy court rejected that argument in the 2005 Opinion, arguing that the 2003 Order "did not make any determination regarding the allowance or disallowance of a claim against the Debtor's estate. . . ." 2005 Opinion, p. 5-6.  Yet the

---

[40] Neither Exide nor the Exide Foreign Entities  made a motion seeking a declaration that the PDH Foreign Entities were not entitled to pursue their claims against the Exide Foreign Entities, or seeking a dismissal of those claims on such grounds.

23

bankruptcy court had rested its assertion of jurisdiction in the 2003 Order *precisely* on the allowance or disallowance of claims, referring to 28 U.S.C. § 157(b)(2)(B). Given its own professed basis for asserting jurisdiction, the bankruptcy court was obliged to reconsider the matter pursuant to Bankruptcy Rule 3008, including the mutual mistake argument and affidavits.

> B.    THE EVIDENCE THE PDH ENTITIES PRESENTED IN THE MOTION FOR RECONSIDERATION SUPPORTED A CONTRARY OUTCOME

The Court gave no consideration to the two critical and *uncontradicted* affidavits submitted with the Motion for Reconsideration (from James D. McDonough and Martin Hudson). Their declarations show that, in the Amendment No. 1 to the Coordinating Agreement, there was no intent to limit the recourse of the PDH Foreign Entities against the Exide Foreign Entities.[41] Nor was there any request from the Exide entities as Buyers, to change any of the language as originally set forth in the Coordinating Agreement, for the purpose of limiting or excluding such recourse against the Exide Foreign Entities in the courts. The bankruptcy court's failure to consider the affidavits resulted in a ruling inconsistent with the *undisputed*[42] facts regarding the parties' intentions on the disputed language. That was an error of fact which should have been corrected.

The bankruptcy court should have considered the affidavits on either of two grounds: (1) based on "latent" ambiguity in the agreements, or (2) based on the alternative argument of mutual mistake.

---

[41]    In view of the definition given to the term "Buyer" in the Coordinating Agreement, Section 4.2(a) as originally drafted in effect read as follows:

> (a)    Subject to Sections 4.2(b), 4.2(c), and 4.2(d), Buyer *and/or any International Buyer* agrees to indemnify and hold Seller and the International Sellers and their Affiliates harmless from and against any and all Losses and Expenses incurred by Seller or the International Sellers and their Affiliates in connection with or arising from:
>> (i)    any breach by Buyer *and/or any International Buyer* of any of its covenants or agreements in the Sale Agreements or in this Agreement . . .

Amendment No. 1, for which there was no separate consideration or change in any financial terms, did not *alter* this plain understanding of Section 4.2(a), but rather merely reiterated or clarified that Section 4.2(a) as it pertained to subpart (i) together was meant to apply to both Buyer and the International Buyers.

[42]    Exide submitted no counter-affidavits.

24

1.    Latent Ambiguity

The court should have found at least *latent* ambiguity in the agreements, given that Amendment No. 1 as construed by the court radically changes the terms and value of the Agreements without any change in the consideration paid. Yet the text of Amendment No. 1 states that it was only intended to clarify and not alter the terms between the parties.

Under Illinois law, to determine the parties' intent, a court must analyze "the specific words used in conjunction with the circumstances under which they were drafted." *Warren-Boynton State Bank v. Wallbaum,* 123 Ill. 2d 429, 436, 123 Ill. Dec. 936, 528 N.E.2d 640 (1988). Consistent with the principle that the relevant circumstances under which a grant was made must be considered, the Illinois courts apply the principle of contractual interpretation that parol evidence is admissible "to determine if a latent ambiguity exists." *Diaz v. Home Federal Sav. and Loan Ass'n of Elgin,* 337 Ill. App. 3d 722, 727, 786 N.E.2d 1033, 1039-40 (Ill. App. 2 Dist. 2002).

When contract terminology is unambiguous, it must be given its plain and ordinary meaning, but where the language is ambiguous, the trial court may receive parol evidence to decide what the parties intended.  *Pepper Construction Co. v. Transcontinental Insurance Co.,* 285 Ill. App. 3d 573, 576, 673 N.E.2d 1128 (1996).  A contract term is "ambiguous" when it may reasonably be interpreted in more than one way.  *Dean Management, Inc. v. TBS Const., Inc.*, 339 Ill. App. 3d 263, 269, 790 N.E.2d 934, 939 (Ill. App. 2 Dist. 2003).

Even where the Agreement is completely integrated, this does not compel the rejection of extrinsic evidence from use to interpret the contract.  *Id*. at 413.

> Illinois law does not require a finding of ambiguity as a condition for the admission of extrinsic evidence to 'determine whether an agreement is completely or partially integrated, and to explain the meaning of even a fully integrated agreement'); *see also* Restatement (Second) of Contracts § 213, Comment *a* (1981) . . . ; E. Farnsworth, Contracts § 7.12, at 522-23 (2d ed.1990); 3 A. Corbin, Corbin On Contracts § 579, at 412-13 (rev. ed. 1960)..

*Hessler v. Crystal Lake Chrysler-Plymouth, Inc.*, 38 Ill. App. 3d 1010, 788 N.E.2d 405, 413-414

(Ill. App. 2 Dist. 2003).

Here, in view of the definition given to the term "Buyer" in the Coordinating Agreement, Section 4.2(a) as originally drafted, in effect provided that the Buyer *and/or any International Buyer* agreed to indemnify and hold Seller and the International Sellers and their Affiliates harmless from and against Losses and Expenses (as defined) resulting from (i) breaches of covenants under the respective Sales Agreements; (ii) breaches of representations and warranties under the Sales Agreements; and (iii) breaches of covenants on tax matters and confidentiality (§§ 11.1 and 12.2 of the US Agreement or their equivalents in the other Sales Agreements). Amendment No. 1 did not alter this plain understanding of Section 4.2(a). Rather, it clarified that Section 4.2(a)(i) applies to the Buyer "or, for sake of clarification, any International Buyer."  In other words, this amendment merely replaced the implied "and/or" with an "or" as the conjunction to "any International Buyer,"  thus clarifying that for that sub-clause, the recourse is disjunctive rather than conjunction. There was plainly no expressed intent to alter the meaning of the balance of Section 4.2(a) as it was already understood – i.e., that "and/or" was implied within the other clauses.

A consideration of the multiple agreements taken as a whole should have led to the conclusion that this was the intent.  The agreements plainly provide, for instance, that all the Buyers (including the International Buyers) agreed to accept the jurisdiction of the courts located in Cook County, Illinois, and they agreed to accept process for appearance in those courts.  Such a subtle amendment as the one in Amendment No. 1, which by its terms was designed not to alter but to clarify, should not have been construed as a matter of law to eliminate such substantial rights of action against all the International Buyer entities.  Had that truly been the intent, the parties should have expressly delineated the elimination of rights of action against the Exide Foreign Entities.  Indeed, the affidavits of Mr. McDonough and Mr. Hudson both show that there was no intent to eliminate these rights of action by virtue of that amendment, and those affidavits were not contradicted by any submission by Exide.

26

Taking into account all the terms of the Sales Agreements and the Coordinating Agreement as a whole, that amendment cannot be reasonably construed as an *unambiguous* elimination of the rights of action of the PDH Foreign Entities against the Exide Foreign Entities. Accordingly, the denial of the Motion for Reconsideration should be reversed.

        2.    <u>Mutual Mistake</u>

Alternatively, even if this Court should agree as a *de novo* matter that the relevant language of Amendment No. 1 to the Coordinating Agreement was unambiguous, then, to prevent manifest injustice based on the fact that this construction was simply not the intent of the parties, the Court should find that the bankruptcy court erred by not considering the alternative contention of the PDH Entities that the drafting of that Amendment would have benefited from some greater attentiveness that should now be corrected based on the doctrine of mutual mistake.

Parol evidence must be considered by the court where mutual mistake is asserted. The established rule is: "Where mutual mistake or fraud is alleged, parol evidence is admissible to show the true intent and understanding of the parties." *Schaffner v. 514 West Grant Place Condominium Ass'n, Inc.*, 324 Ill. App. 3d 1033, 1045, 756 N.E.2d 854, 865 (Ill. App. 1 Dist. 2001) (citations omitted).

The court in *In re Marriage of Johnson*, 237 Ill. App. 3d 381, 390-91, 604 N.E.2d 378, 385 (Ill. App. 4 Dist. 1992) shed light on the subject of drafting errors reviewed based on mutual mistake. There, parol evidence was admissible, on petition for relief from a judgment of dissolution, in order to correct an alleged typographical error in disposition of marital property, for purpose of showing mutual mistake of fact by the parties in signing a property settlement agreement which provided for sale of the marital residence upon the husband's but not the wife's remarriage. *See also S.T.S. Transport Service, Inc. v. Volvo White Truck Corp.*, 766 F.2d 1089, 1093 (7th Cir.1985).

Since Amendment No. 1 was construed by the bankruptcy court in a manner inconsistent with the parties' unrebutted actual intent, the court erred in failing to consider the extrinsic

27

evidence of that intent.

### III.   THE BANKRUPTCY COURT ERRED IN DENYING THE REMAND MOTION ON ITS MERITS

Because the bankruptcy court lacked jurisdiction to decide whether the PDH Foreign

Entities have recourse against the *nondebtor* Exide Foreign Entities, as discussed *supra,* as well as

other grounds, the court should have dealt with the dispute between those nondebtor parties by a)

enforcing the forum selection clauses in the parties' contracts; b) remanding the litigation to the

Illinois state court pursuant to 11 U.S.C. § 1452(b); or c) abstaining from hearing the dispute

pursuant to 28 U.S.C. § 1334(c)(1) or (2).  Assuming *arguendo* that the bankruptcy court has

jurisdiction to retain the dispute between the nondebtors, the failure to remand that dispute on

those grounds was error and an abuse of discretion.  In addition, even though the bankruptcy court

does have jurisdiction over the dispute between PDH USA and the Debtor, Appellants maintain

that, in the proper exercise of its discretion, the court should have also remanded or abstained

from deciding that dispute, so that it could be addressed by the Illinois court as well.

### A.   THE BANKRUPTCY COURT ERRED BY NOT ENFORCING THE FORUM SELECTION CLAUSE OF THE CONTRACTING PARTIES

Pursuant to the Sales Agreements, which each contain forum selection clauses wherein

the parties agreed that any disputes arising out the Sales Agreements or the Coordinating

Agreement would be determined by Illinois state law in a state or federal court in Cook County,

Illinois, the PDH Foreign Entities' claims against the Exide Foreign Entities cannot be tried in a

state or federal court outside of Cook County, Illinois. The bankruptcy court's failure to remand

the State Court Actions to the Illinois state court denied, in particular, the PDH Foreign Entities

the benefit of their bargain, namely their choice of forum.

The United States Supreme Court, in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1

(1972), announced a general rule that forum selection clauses are "*prima facie* valid and should

be enforced *unless enforcement is shown by the resisting party to be 'unreasonable' under the*

*circumstances." Id.* at 10. The Third Circuit has interpreted *Bremen* to mean that a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989). *See also RGC International Investors, LDC v. ARI Network Services, In*c., 2003 WL 21843637 (D. Del., Jul 31, 2003); *In re OMNA Medical Partners, Inc.*, 2000 WL 33712302 at *4 (Bankr. D. Del. June 12, 2000) ("Forum selection clauses are presumptively valid and enforceable, absent compelling public policy considerations or serious inconvenience to the parties.").

The Third Circuit has enforced forum selection clauses against Chapter 11 bankruptcy debtors. *In re Diaz Contracting, Inc.*, 817 F.2d 1047 (3d Cir. 1987). The court ruled that debtors in bankruptcy are not entitled to more lenient application of the law regarding enforcement of forum selection clauses, simply by virtue of being in bankruptcy. 817 F.2d at 1053. In rejecting the debtor's arguments for non-enforcement of the forum selection clause in that case, the *Diaz Contracting* court stated: "'Mere inconvenience or additional expense is not the test of unreasonableness, since it may be assumed that the plaintiff received under the contract consideration for these things.'" 817 F.2d at 1052-53 (citations omitted).

Presumably, the bankruptcy court's failure to enforce the forum selection clause resulted from his conclusion that all the claims at issue were "core." However, for reasons discussed *supra,* the divisible claims of the PDH Foreign Entities against the nondebtor defendants are neither "core" nor "related to" this post-confirmation bankruptcy case, and accordingly, Appellants are entitled to have the forum selection clause enforced.

While public policy may favor centralization of bankruptcy proceedings in the bankruptcy court where a case is pending, "this policy is not so strong as to mandate that forum

29

selection clauses be abandoned where the dispute is non-core." *In re N. Parent, Inc.*, 221 B.R. 609, 620 (Bankr. D. Mass. 1998). *See also Envirolite Enterprises, Inc., v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.*, 53 B.R. 1007 (S.D.N.Y. 1985) (public policy did not preclude enforcement against Chapter 11 debtor of forum selection clause of contract which required litigation in Austria; *In re Kamine/Besicorp Allegany, L.P.*, 214 B.R. 953 (Bankr. D.N.J. 1997) (forum-selection clause had to be enforced in favor of plaintiff/creditor and against debtor as to complaint's non-core claims).

In *Kamine*, the plaintiff/creditor had filed a timely proof of claim (which clearly stated its objections regarding the court's jurisdiction were not waived.) Notwithstanding the position of the defendant/debtor that the plaintiff/creditor had submitted to the jurisdiction of the bankruptcy court by filing a proof of claim, and the court nonetheless enforced the forum selection clause. *Id.* at 975.

Since the disputes between the PDH Foreign Entities and the Exide Foreign Entities all are non-core disputes that are not "related to" the *Exide* case and that revolve around contracts with forum selection clauses, those clauses should be enforced as a matter of law, and the causes of action asserted by the PDH Foreign Entities against the Exide Foreign Entities should be remanded to Illinois.

   B.    ASSUMING *ARGUENDO* THE BANKRUPTCY COURT HAS "RELATED TO"
         JURISDICTION, THE VARIOUS FACTORS TO BE CONSIDERED FAVOR EQUITABLE
         REMAND OF THE STATE COURT ACTIONS TO ILLINOIS STATE COURT

District courts and bankruptcy courts possess broad powers to return state law claims to the state courts from which they were removed when a bankruptcy court lacks jurisdiction or is otherwise an inappropriate or inefficient forum for adjudication. *In re Micro Design, Inc.*, 120 B.R. 363, 366 (E.D. Pa. 1990). So strong is Congressional intent that the federal courts not usurp traditional state court jurisdiction in the name of bankruptcy convenience that Congress has provided courts alternate grounds on which a federal court may or must refrain from considering a cause properly adjudicated by the state court in which it originated. *See Lone Star Indus., Inc.*

30

*v. Liberty Mut. Ins.*, 131 B.R. 269, 275 (D. Del. 1991); *Balcor/Morristown Ltd. Partnership v. Vector Whippany Assocs.*, 181 B.R. 781, 791 (D.N.J. 1995); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 409 (S.D.N.Y. 1991). These include discretionary abstention under Section 1334(c)(1) and equitable authority to remand under Section 1452(b), as well as mandatory abstention under Section 1334(c)(2) (discussed *infra*).

Section 1452(b) authorizes remand of a removed action "on any equitable ground." 28 U.S.C. § 1452(b). Pursuant to Section 1334(c)(1), where the bankruptcy court otherwise has "related to" or "arising in" jurisdiction, the court may abstain "in the interest of justice, or in the interest of comity with State court or with respect to state law." 28 U.S.C. § 1334(c)(1). Assuming *arguendo* that the bankruptcy court has "related to" subject matter jurisdiction over the dispute between the nondebtor parties, then remand should be granted under either of these provisions.

Courts consider a number of factors in deciding to remand a case to state court, pursuant to Section 1452(b). These same factors apply to a motion for discretionary abstention pursuant to Section 1334(c)(1). *See Balcor/Morristown Ltd.*, 181 B.R. at 788; *In re Riverside Nursing Home*, 144 B.R. 951, 957 (S.D.N.Y. 1992); *Gorse v. Long Neck, Ltd.*, 107 B.R. 479, 482 (D. Del. 1989). These factors are applied "flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no factor is necessarily determinative." *In re Asousa Partnership*, 264 B.R. 376, 391 (Bankr. E.D. Pa. 2001) (*citing In re Chicago, Milwaukee, St. Paul & Pacific RR Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993). The factors[43] include the following:

(1) the presence in the proceeding of nondebtor parties;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable law;

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

---

[43]     Although this brief identifies 14 factors mentioned by the courts, the typical list contains 10 to 12 factors.

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;

(10) the existence of a right to a jury trial;

(11) the burden on the bankruptcy court's docket;

(12) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(13) prejudice to involuntarily removed parties; and

(14) plaintiff's choice of forum as between state and federal courts.

*In re Asousa Partnership*, 264 B.R. at 391; *Gorse*, 107 B.R. at 482; *Drexel Burnham*, 130 B.R. at 407; *In re Southern Technical College, Inc.,* 144 B.R. 421, 422 (Bankr. E.D. Ark. 1992).

In considering these factors, the court is obligated to resolve all doubts in favor of remand. *In re Selig*, 1994 WL 90049 at *1 (Bankr. E.D. Pa. Mar. 15, 1994) (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). Moreover, keeping in mind that remand may be granted on "any equitable ground," this list is merely illustrative. *Lone Star Indus.*, 131 B.R. at 275.

Even cursory examination of these factors compels the conclusion that the State Court Actions should be remanded for adjudication in the Illinois state court in which they originated – principally the PDH Foreign Entities' claims against the Exide Foreign Entities, but also PDH USA's claims against the Debtor. All are state law claims. None of them can interfere with reorganization of the estate, since the Plan was confirmed almost two years ago. A more efficient adjudication would result, in light of the fact that the bankruptcy court lacks authority to consider the claims against the nondebtor defendants, and cannot conduct a jury trial upon them. Additionally, the Illinois state court had been familiar with the State Court Actions as a result of several hearings during the discovery phase of the litigation.

Applying the above-cited factors, first, the presence in the proceeding of nondebtor

32

parties has already been amply discussed. Second, the issues are exclusively state law issues and not bankruptcy issues. Third, the Illinois court will be more familiar with the applicable state law governing contracts and mutual mistake. Fourth, the proceeding was originally commenced in state court, so remand would simply reinstate the pending proceeding. Congressional intent is clear: "Absent countervailing circumstance[s], the trial of state law created issues and rights should be allowed to proceed in state court." *Hatcher v. Lloyd's of London*, 204 B.R. 227, 232 (M.D. Ala. 1997).

Fifth, there is no independent jurisdictional basis for these actions, and in particular, the claims of the PDH Foreign Entities against the Exide Foreign Entities, to be in bankruptcy court in Delaware. Sixth, these actions are simply not related to this post-confirmation bankruptcy case, as discussed *supra*, from the standpoint of affecting reorganization or in any other meaningful and legally cognizable way. Seventh, the substance of the claims against the nondebtor Exide Foreign Entities are in no respect "core", for reasons discussed *supra*.

Eighth, while the Appellants urge this Court to find that the entirety of the State Court Actions should be remanded to the Illinois state court, it is also readily feasible that just the claims of the PDH Foreign Entities against the Exide Foreign Entities could be directed back to that court, since each entity has a separate, divisible claim based on cash not turned over to it by the respective Exide buyers following the stock sales. The presence of the Debtor is not necessary to the litigation of those claims. Indeed, Judge Gardner in the State Court Actions recognized that the nondebtor disputes could proceed on their own, when he directed that the automatic stay would only apply to the claims against Exide.

Ninth, there can be no impact whatsoever on the administration of the estate by sending the nondebtor claims to the Illinois court. Even as to the PDH USA claims against the Debtor, there would be no impact because distributions to creditors holding allowed claims are being made with common stock and warrants, and reserves of stock and warrants are being held, pursuant to the Plan and Confirmation Order, for disputed claims. Distributions have been and

33

will continue to be made by the estate to all creditors holding allowed claims.

Tenth, the PDH Entities have made a jury demand, and they are entitled to have a jury trial on their claims against the Exide Foreign Entities. The bankruptcy court in Delaware is not authorized to hear jury trials. *See generally Beard v. Braunstein*, 914 F.2d 434, 442-43 (3d Cir. 1990) ("a bankruptcy court cannot conduct a jury trial in a non-core proceeding"). The PDH Foreign Entities have never waived their right to a jury trial on their causes of action against the Exide Foreign Entities. Because those causes of action cannot be tried by a bankruptcy court, the Illinois state court is the only forum that can try all claims as against all parties[44].

Eleventh, to the extent that the bankruptcy court's docket is burdened, remand would relieve it. Twelfth, remand would reverse the transparent attempt to "forum shop" by Exide, in seeking removal and then transfer of the State Court Actions after denial of the Exide Foreign Entities' request for a stay and in apparent anticipation of an additional unfavorable decision by the state judge assigned to the case. A-0239. Thirteenth and fourteenth, remand would remedy the prejudice to the PDH Entities who, as plaintiffs and as contracting parties who agreed to a forum selection clause, had chosen to proceed in Illinois state court, and are being denied their contractual and procedural right.

Accordingly, this Court should reverse the ruling of the bankruptcy court and remand the action to state court pursuant to Section 1452(b), or abstain from the action pursuant to Section 1334(c)(1) and remand it to state court.

    C.    ASSUMING *ARGUENDO* THE BANKRUPTCY COURT HAS "RELATED TO" JURISDICTION, REMAND OF PDH FOREIGN ENTITIES' CLAIMS AGAINST THE EXIDE FOREIGN ENTITIES IN THE STATE COURT ACTIONS IS MANDATED UNDER SECTION 1334(C)(2)

Pursuant to Section 1334(c)(2), a federal court <u>must</u> abstain from hearing a case and remand it to the court from which it is removed if, upon a timely motion, (1) the proceeding is

---

[44] Notably, even if *arguendo* the PDH Foreign Entities are held, by a court having jurisdiction, not to have a right to recover payment from the Exide Foreign Entities, there right to have the *liability* of the Exide Foreign Entities decided by an Illinois jury remains unimpeded.

DNC/106873-0001/1260274/3

based upon state law causes of action; (2) the causes of action are "related to" a case under title 11, but do not "arise under" title 11 or "arise in" a case under title 11; (3) federal courts would not have jurisdiction absent its relation to a bankruptcy case; and (4) an action is "commenced" in a state forum of appropriate jurisdiction; and (5) the action can be timely adjudicated in the state forum. *See* 28 U.S.C. § 1334(c)(2); *Stoe v. Flaherty,* __F.3d __, 2006 WL 156985 (3d Cir. Jan. 23, 2006).

Assuming, *arguendo*, that the PDH Foreign Entities' claims against the Exide Foreign Entities are "related to" this bankruptcy case, each of the other factors is satisfied with respect to those claims. Timely motion was made, initially in the Illinois bankruptcy court, and then again in the court below. The claims sound in state contract law. They are not "core" proceedings. The actions were commenced in Illinois state court.[45] They can be timely adjudicated, in the special Commercial docket in the Cook County Circuit Court, where the State Court Actions had been pending before removal.[46] Thus, assuming "related to" jurisdiction exists, the standard set forth in Section 1334(c)(2) is satisfied and the PDH Foreign Entities' causes of action as against the nondebtor Defendants should be remanded.

> D.    SINCE THE DEBTOR'S PLAN WAS CONFIRMED, THE AUTOMATIC STAY IS NO LONGER IN FORCE, AND THE PDH FOREIGN ENTITIES SHOULD BE ALLOWED TO PROCEED AGAINST THE EXIDE FOREIGN ENTITIES IN ILLINOIS STATE COURT

In the Remand Motion, the PDH Entities sought relief from the automatic stay that was then in force as to the claims against the Debtor. The automatic stay, of course, only applies to the debtor and not to third parties, even if the third parties are co-defendants with the debtor in a lawsuit. *See, e.g., Sav-a-Trip v. Belfort*, 164 F.3d 1137 (8th Cir. 1999); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991); *Guiterrez & Sachs, Chartered v.*

---

[45] The Third Circuit recently resolved the question whether actions that have been removed, leaving no , pending action remaining in the state court, can be subject to mandatory abstention under section 1334(c)(2), and held that they can. *Stoe v. Flaherty,* __F.3d __, 2006 WL 156985.

[46] The pre-trial litigation was being moved along expeditiously by Judge Gardner before it was removed by the defendants. With respect to timeliness, it is worth noting that the Motion for Reconsideration was heard by Bankruptcy Judge Carey on January 22, 2004, but was not decided until June 20, 2005.

DNC/106873-0001/1260274/3

*Havens*, 245 B.R. 180 (D.D.C. 2000). The automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor. *Maritime Elec.*, 959 F.2d at 1205. For this reason, the automatic stay did not apply or extend to the nondebtor defendants. At no time did the Debtor petition the bankruptcy court for injunctive or other relief under 11 U.S.C. § 105(a) to stay the State Court Actions against the nondebtor Exide Foreign Entities.[47]

In any event, the automatic stay terminated after plan confirmation, with the granting of a discharge to the Debtor. *See* 11 U.S.C. § 362(c)(2)(C); A-0593.. Of course, claims against the Debtor are still subject to the terms of the Plan. But as to nondebtors, while a stay was never in force with respect to the claims against them, if there had been such a stay, it would have terminated with the Plan confirmation. Moreover, the Confirmation Order expressly provided that the PDH Entities' claims against the nondebtor Exide Foreign Entities were not affected by the re-vesting of corporate assets in the reorganized Debtor. A-0570. To the extent that stay relief was denied by the bankruptcy court, with respect to the claims against the nondebtor Exide Foreign Entities, the order denying such relief would now be of no further effect, because the stay is not in force.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request this Court to reverse the Orders of the bankruptcy court, and to hold that the bankruptcy court lacks either "core" or "related to" jurisdiction over the claims of the PDH Foreign Entities asserted against the Exide Foreign Entities in the State Court Actions, such that those claims cannot be tried in bankruptcy court. Appellants further request this Court to remand the claims asserted by PDH USA against the Debtor, so that they may be tried jointly with the claims of the PDH Foreign Entities in

---

[47] In its response to the Remand Motion, Exide suggested that such relief would be appropriate. But they did not affirmatively move for such relief, nor even include it in the request for relief at the conclusion of their response, and no parties in interest in the Exide bankruptcy case had an opportunity to respond to a formal request for that relief.

36

Illinois state court  Appellants additionally request this Court to enter such other relief as would be just and proper.

Respectfully submitted,

Dated: February 13, 2006          MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Brett D. Fallon (ID No. 2480)
Douglas N. Candeub (ID No. 4211)
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, Delaware 19899
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: bfallon@morrisjames.com
Email: dcandeub@morrisjames.com

-and-

Linda Woolf, Esquire
Paula Krahn Merkle, Esquire
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
Telephone: (410) 783-4000
Facsimile: (410) 783-4040

Attorneys for the Appellants, the Pacific Dunlop Holdings Entities

37