# EXHIBIT C

IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

PACIFIC DUNLOP HOLDINGS )
(USA) INC., *et al.,* )
)
    Plaintiffs, )
)
v. )    Case No.: 01 L 008460
)
EXIDE CORPORATION, *et al.,* )    Judge Sheldon Gardner
)
    Defendants. )

## ORDER

The cause comes before the Court for further hearing upon defendants' request for a temporary stay of litigation as a result of defendant Exide Technologies' pending bankruptcy, the Court being fully informed, Orders as follows:

    1.    The previous stay of discovery is lifted as to all parties except Exide Corporation, now known as Exide Technologies, Inc.; and

    2.    The matter is set for further status hearing on August 22 and 23, 2002 at 1:45 p.m., without further notice.

**JUDGE SHELDON GARDNER**

DATED:    JUL 1 9 2002

CIRCUIT COURT - 1506

JUDGE SHELDON GARDNER

\\SPF\APPS\data\docs\2942\001\Order(7.9.02).doc

# EXHIBIT D

A-0212

09/19/02  16:53    PATZIK, FRANK & SAMOTNY LTD. → GAAU    D VA  ø              NO.389  P004/018

RECEIVED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

SEP 1 9 2002

KENNETH S. GARDNER, CLERK

BY _____
DEPUTY CLERK

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PACIFIC DUNLOP HOLDINGS (EUROPE) LTD., et al. | * | |
| Plaintiffs | * | Case No. 02A01106 |
| | * | Removed From Circuit Court of Cook County Civil Action No.: 01L 008460 |
| v. | * | |
| EXIDE HOLDING EUROPE, et al., | * | Judge Susan Pierson Sonderby |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

Plaintiff Pacific Dunlop Holdings (Europe) Ltd., Pacific Dunlop Holdings (Hong Kong) Ltd., and Pacific Dunlop Holdings (Singapore) Pte. Ltd., by their undersigned counsel, hereby file this memorandum in opposition to Defendants' Motion to Transfer ("Motion to Transfer"), and state:

### I.    INTRODUCTION

Defendants have improperly removed this matter to this Court and now seek to have it transferred, without legal basis or justification, to a Delaware bankruptcy court. This Court must determine that it has jurisdiction over this matter prior to considering the Motion to Transfer. As set forth in greater detail in Plaintiffs' Motion to Remand, or in the Alternative to Abstain and its accompanying memorandum (collectively "Plaintiffs' Motion"), which is currently pending before this Court and incorporated herein by reference, this Court has no jurisdiction over this improperly removed matter, and should remand this case to the Circuit Court for Cook County, Illinois and then deny Defendants' Motion to Transfer as moot. Even if this Court were to

consider the Motion to Transfer on its merits, however, under applicable law transfer of this
action to a Delaware bankruptcy court must be denied.

## II.    FACTS

During May and June 2000, Pacific Dunlop Holdings (USA), Inc. and certain of its
affiliated corporations (collectively, "PDH") agreed to sell and/or transfer certain of their
subsidiaries and assets of other subsidiary entities to Exide Corporation (now known as Exide
Technologies) and certain of Exide Technologies' subsidiary entities ("Non-Debtor Entities").
See Complaint, attached to Plaintiffs' Motion as Exhibit A at ¶¶ 2, 6.  Exide Technologies and
each of the Non-Debtor Entities entered into separate sales agreements ("Sales Agreements,"
attached to Plaintiffs' Motion to Remand as Exhibits B through F) with various PDH entities,
pursuant to which specific PDH entities sold different corporate subsidiaries or assets to specific
Exide entities.

Pacific Dunlop Holdings (USA), Inc. and Exide Technologies entered into a
Coordinating Agreement (attached to Plaintiffs' Motion to Remand as Exhibit G) which
provided certain provisions having an overarching effect on the transactions described above.
Each of the Non-Debtor Entities expressly adopted indemnification obligations under the
Coordinating Agreement by including a provision in their respective Sales Agreement which
provided that the signatory Non-Debtor Entity's sole and exclusive indemnification obligations
under the Sales Agreement are set forth in the Coordinating Agreement[1] (collectively, the

---

[1] Each relevant provision of the respective Sales Agreements provides that "the [Non-Debtor Entity's] sole and
exclusive indemnification obligations under this Agreement are set forth in the Coordinating Agreement. ... [W]ith
respect to any breach by either party of its representations, warranties, covenants or agreements in this Agreement
... the sole and exclusive remedy of the other party (in contract, tort, for contribution, under Requirements of Law or
otherwise) shall be the indemnification provided in the Coordinating Agreement."
See Exhibits B, C, D, E to Plaintiffs' Motion §§ 10.1, 10.3; Exhibit F to Plaintiffs' Motion, §§ 11.1, 11.3.

2

A-0214

09/19/02  16:53    PATZIK, FRANK & SAMOTNY LTD. → GAAD    D V&  ø    NO.309  P006/018

Coordinating Agreement and the Sales Agreements shall be the "Agreements"). The parties to the Coordinating Agreement expressly included a forum selection provision in that agreement pursuant to which indemnification claims, such as the claims at issue here, are to be brought in a state or federal court located in Cook County, Illinois. [2]

On July 17, 2001, PDH filed its Complaint in the Circuit Court for Cook County, Illinois, alleging claims under Illinois law that Exide Technologies and the Non-Debtor Entities' breached their respective Agreements with PDH (Complaint, at ¶¶ 17-28), were each unjustly enriched by the various amounts that each unlawfully retained or removed from PDH accounts (Complaint, at ¶¶ 29-32), and that each respectively converted a portion of the Cash Amount (Complaint, at ¶¶ 33-37). [3]

On April 15, 2002, after substantial discovery had been completed [4], Exide Technologies filed for relief under Chapter 11 of the Bankruptcy Code. Although PDH acknowledged that its claims against Exide Technologies were stayed under 11 U.S.C. §362(a), PDH continued the prosecution of its separate claims against the Non-Debtor Entities for the Non-Debtor Entities' independent breaches of their unique Sales Agreements (to which Exide Technologies is not a party), independent conversion of PDH assets, and unjust enrichment. *See* PDH's Response to

---

[2] Section 5.2 provides that "each of the parties hereto (*for themselves and for their Affiliates*) agrees that any and all disputes, legal actions, suits or proceedings arising out of claims arising under this Agreement, the Sale Agreements [including the Non-Debtor Entities' respective Sales Agreements] ... shall be brought solely in a state or federal court located in the County of Cook, State of Illinois." (emphasis supplied)
[3] The Complaint was filed in the Circuit Court for Cook County, Illinois in compliance with the parties' contractual selection of that forum.
[4] PDH (USA) and Exide Technologies (prior to the filing of its Chapter 11 case) had each propounded and answered interrogatories and requests for production of documents, pursuant to which the parties exchanged more than twenty boxes of documents. Exide Technologies' document production was represented by its counsel to include documents produced by the Non-Debtor Entities. PDH has propounded a limited number of specific interrogatories and requests for production of documents to each of the Non-Debtor Entities. On February 7, 2002, PDH served nine notices of deposition. PDH has taken the deposition of one of these witnesses, and has made numerous written and oral requests for dates upon which the remaining individuals could be deposed.

3

Suggestion of Bankruptcy, attached to Plaintiffs' Motion as Exhibit I.   The Non-Debtor Entities took the position that the state court litigation should be stayed as to them and the Cook County Circuit Court Judge to whom the case was assigned, the Honorable Sheldon Gardner, requested that the parties brief the issue.

At the third hearing on the issue, on July 8, 2002, Judge Gardner rejected each of the Defendants' arguments, stating that he had no power to extend the Section 362 stay to the Non-Debtor Entities, and was not attempting to do so.  *See* Transcript of July 8, 2002 hearing, attached to Plaintiffs' Motion as Exhibit J. He ordered that PDH's independent claims against the Non-Debtor Entities should move forward without Exide Technologies.  After Judge Gardner issued his July 8th Order, the Non-Debtor Entities filed a formal motion to dismiss PDH's claims based upon an argument – the lack of a necessary party – that had been fully addressed in Exide's briefs and had already been rejected by the Judge.  Rather than risk a second unfavorable ruling on this issue, however, the Defendants decided to seek what they perceive to be a more favorable forum for their argument, by removing this matter to this Court on the day before the scheduled hearing in the Circuit Court for Cook County on their fully briefed motion.[5]

Prior to the removal of this matter, the parties appeared before Judge Gardner for oral argument on 9 separate occasions (not including appearances to present motions to the Court), and Judge Gardner issued 11 orders relating to the case.  In doing so, the Circuit Court judge has become familiar with the parties and the contracts at issue, at a substantial expenditure of judicial resources. The Defendants are now asking two courts to duplicate these efforts, without legal or factual justification.  This Court must spend the time and effort to familiarize itself with the

4

09/19/02  16:54    PATZIK, FRANK & SAMOTNY LTD. → GAAD    D VA  ∅    NO.309  P008/018

factual and legal issues underlying whether its jurisdiction over this matter is proper, and then whether remand or abstention is proper pursuant to Plaintiffs' Motion. In the event that this Court subsequently considers the Motion to Transfer and transfers this matter, a third court will need to familiarize itself with the complex issues at bar.

## III. DISCUSSION

### A. Before a Court Can Properly Act Upon a Motion to Transfer, It Must Examine Whether the Case Has Been Properly Removed to Federal Court.

In an almost identical situation to that at bar, an Illinois District Court found that before a court can properly act upon a motion to transfer venue, it must first examine whether the case is properly removed to federal district court. *Baxter Healthcare Corp. v. Hemex Liquidation Trust*, 132 B.R. 863, 865 (N.D.Ill. 1991)(Alesia, J.). Like the instant matter, *Baxter* concerned claims arising from agreements entered into pursuant to the sale of a business and subsequently removed to federal bankruptcy court. *Id.*, at 865. After removal, the removing defendants sought transfer to a bankruptcy court in another district and the plaintiff moved to remand. *Id.*, at 865-66. As a threshold matter, Judge Alesia found that if the case was not properly removed, the federal bankruptcy court lacked jurisdiction to transfer venue. *Id.*, at 865. Judge Alesia considered the plaintiff's motion to remand and, upon order of remand to state court, denied the defendants' motion to transfer venue as moot. *Id.*, at 869; *See also L.S. Heath & Sons, Inc. v. AT&T Information Systems, Inc.*, 1988 WL 121618, *1 (N.D.Ill.) (after first considering and granting motion to remand, court finds it has no authority to consider motion to transfer venue).

---

[5] At no time, even at the suggestion of the Circuit Court Judge Gardner, did Exide Technologies petition the United States District Court for the District of Delaware for injunctive or other relief under 11 U.S.C. §105(a), to stay the litigation against the Non-Debtor Entities.

5

---

For the reasons set forth in PDH's Motion, this matter was improperly removed to this Court. In light of PDH's Motion, this Court should remand this matter to the Circuit Court for Cook County, Illinois.

### B.  Defendants' Motion To Transfer This Action Under 28 U.S.C. § 1412 Is Improper

The Defendants cite exclusively to cases from other jurisdictions for the proposition that this Court must consider a motion to transfer claims with a direct nexus to a Chapter 11 bankruptcy filing prior to addressing the propriety of removal.[6] As PDH's claims against the Non-Debtor Entities do not arise under Chapter 11, the Motion to Transfer can only be brought under 28 U.S.C. § 1404, and each of the allegedly persuasive cases cited by Defendants is inapposite.

Section 1412 provides that a "district court may transfer a case or proceeding *under title 11* to a district court for another district, in the interest of justice or for the convenience of the parties." (emphasis supplied).  Only proceedings which involve a cause of action "created or determined by a statutory provision of title 11" arise "under title 11." *In re Pettibone Corp.*, 135 B.R. 847, 851 (Bktcy.N.D.Ill. 1992). Where a Court merely exercises "related to" rather than "arising under" jurisdiction, a motion to transfer an action over which should be made pursuant to 28 U.S.C. § 1404, the general change of venue provision, rather than by Section 1412. *U.S. for Use of Metal Trims Industries, Inc. v. Klein Const. Co.*, 1985 WL 3020, *3 (N.D.Ill.).

---

[6] As an initial matter, Defendants cite *Hohl v. Bastian*, 279 B.R. 165 (W.D. Penn. 2002)(case remanded to state court based upon equities) and *Aztec Industries v. Standard Oil Company*, 84 B.R. 464 (Bktcy. N.D.Ohio 1987)(Court acknowledges that if its jurisdiction over matter is defective, parties not properly before Court and any action it takes is void), which cases ultimately support remand of this matter. The other cases Defendants cite relate solely to motions with a direct nexus to a Chapter 11 debtor. *See Consolidated Lewis Investment Corp. v. First National Bank of Jefferson Parish*, 74 B.R. 648 (E.D.La. 1987)(motion to transfer under 28 U.S.C. § 1412); *In re Wedlo, Inc.*, 212 B.R. 678 (M.D.Ala. 1996)(motion to transfer claims against Chapter 11 debtor pursuant to § 1412); *In re Covenant Group*, 75 B.R. 346 (E.D.Pa. 1987)(debtors' motion to transfer under § 1412); *Colarusso v. Burger King Corp.*, 35 B.R. 365 (Bktcy.E.D.Pa. 1984)(claims filed by Chapter 11 debtor transferred).

A-0218

Although PDH disputes that its claims against the Non-Debtors are even "related to" Exide Technologies' bankruptcy proceeding, it is clear that PDH's state law claims do not "arise under" title 11.

PDH's claims against the Non-Debtor Entities for breach of contract, conversion and unjust enrichment arise under Illinois state law and are not based upon any provision of title 11. Thus, they clearly do not "arise under" the Bankruptcy Code. *See In re Pettibone*, 135 B.R., at 851 (courts lack "arising under" jurisdiction with respect to claims based upon state law). Further, disputes between nonparties to a bankruptcy proceeding, such as PDH and the Non-Debtor Entities, "cannot possibly" be subject to "arising under" jurisdiction. *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994). As this case does not arise under the Bankruptcy Code, any proposed transfer to another district must be analyzed under 28 U.S.C. § 1404. *U.S. for Use of Metal Trims Industries, Inc. v. Klein Const. Co.*, 1985 WL 3020, *3 (N.D.Ill.)(motions for transfer of actions which do not "arise under" title 11 are properly made under 28 U.S.C. § 1404, rather than Section 1412).

## C. Under 28 U.S.C. § 1404, Defendants' Motion To Transfer This Action Must Be Denied

Section 1404(a) provides that for "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought*." If a matter could not have been brought in the jurisdiction to which the movant seeks transfer, Section 1404(a) bars its transfer. *Metal Trims Industries*, 1985 WL, at *3.

Here, by the express terms of the forum selection clause adopted by the parties, PDH could not have brought its claims against the Non-Debtor Entities in the Delaware bankruptcy

7

A-0219

09/19/02  16:55    PATZIK, FRANK & SAMOTNY LTD. → GAAÜ    D VA  ø    NO.329  P011/018

court which is hearing Exide Technologies' Chapter 11 case. Further, as PDH is not seeking recovery from Exide Technologies, even absent the forum selection clause, PDH could not have filed its claims against the Non-Debtor Entities in the bankruptcy court. The Motion to Transfer is thus barred by 28 U.S.C. § 1404(a).

Further, Defendants have failed to make the required showing of a "clear balance of inconvenience" in this district over the transferee district, a prerequisite to the granting of a motion to transfer. *Schal Associates, Inc. v. Savell*, 1991 WL 111269, *1 (N.D.Ill.)(movant must show "clear balance of inconvenience" to support transfer); *Instrumentalist Co.v. Band, Inc.*, 1986 WL 13520, *2 (N.D.Ill.)(same). The three factors courts must consider in the consideration of a motion to transfer under § 1404 are: (1) the propriety of venue in the transferor court; (2) the propriety of venue in the transferee court; and (3) transfer may only be made for the convenience of the parties and witnesses, and to serve the interests of justice. *Avesta Sheffield, Inc. v. Olympic Continental Resources, L.L.C.*, 2000 WL 198462, *5 (N.D.Ill.). None of these factors supports transfer of this action.

1.    **Venue Is Improper In The Transferor Court and The Transferee Court**

As set forth in detail in Plaintiffs' Motion, this Court lacks jurisdiction to hear this matter under 28 U.S.C. § 1334(b). Plaintiffs' state law claims against the Non-Debtor Entities do not "arise under" or "arise in" title 11, and are not related to Exide Technologies' Chapter 11 bankruptcy proceeding. As noted above, venue is equally improper in the requested transferee court – the Delaware bankruptcy court hearing Exide Technologies bankruptcy case.

A-0220

WHEREFORE, Plaintiffs, Pacific Dunlop Holdings (Europe) Ltd., Pacific Dunlop

Holdings (Hong Kong) Ltd., and Pacific Dunlop Holdings (Singapore) Pte. Ltd., respectfully

request that this Court grant PDH's Motion to Remand, and deny Defendants' Motion To

Transfer as moot.

Respectfully submitted,

Pacific Dunlop Holdings (Europe) Ltd. Pacific Dunlop Holdings
(Hong Kong) Ltd., and Pacific Dunlop Holdings (Singapore) Pte.
Ltd.

By: _____
                 One of their attorneys

Thomas J. Verticchio, Esq.
Patrick G. Cooke, Esq.
PATZIK, FRANK & SAMOTNY LTD.
150 South Wacker Drive, Suite 900
Chicago, IL 60606
(312) 551 8300
(312) 551 1101 (Facsimile)

Of Counsel:

Charles P. Goodell, Jr., Esq.
Linda S. Woolf, Esq.
Thomas J.S. Waxter, III, Esq.
Alex J. Brown, Esq.
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
(410) 783-4000
(410)-783-4040 (Facsimile)

14

A-0226

# **EXHIBIT E**

A-0228

In the Agreements, PDH, Exide Technologies and the Non-Debtor Entities clearly expressed their intent that cash held by the subsidiaries transferred thereunder was not to be conveyed to Exide Technologies or the Non-Debtor Entities.  Complaint, at ¶¶ 7, 19.  Despite the express language of the Agreements, Exide Technologies and the Non-Debtor Entities wrongfully retained or misappropriated an amount approximately aggregating $16.6 million (when converted to USA dollars under the then-prevailing rate of exchange) (the "Cash Amount").  *See* Complaint, at ¶ 13.[3]

Notwithstanding the parties' clearly expressed intent that PDH retain the separate sums collectively making up the Cash Amount, Exide Technologies and the Non-Debtor Entities each refused to execute the documents necessary to effectuate that intent.  Complaint, at ¶¶ 8, 19-22.  Accordingly, on July 17, 2001, PDH filed its Complaint, alleging claims under Illinois law[4] that Exide Technologies and the Non-Debtor Entities' breached their respective Agreements with PDH (Complaint, at ¶¶ 17-28), were each unjustly enriched by the various amounts that each unlawfully retained or removed from PDH accounts (Complaint, at ¶¶ 29-32), and that each respectively converted a portion of the Cash Amount (Complaint, at ¶¶ 33-37).[5]

Exide Technologies and the Non-Debtor Entities jointly filed the first of their two motions to dismiss PDH's claims on September 17, 2001, relying exclusively upon Illinois law

---

... the sole and exclusive remedy of the other party (in contract, tort, for contribution, under Requirements of Law or otherwise) shall be the indemnification provided in the Coordinating Agreement."
*See* Exhibits B, C, D, E §§ 10.1, 10.3; Exhibit F, §§ 11.1, 11.3.
[3] Under one of the Agreements, the assets of a PDH subsidiary were transferred rather than an ownership interest in the subsidiary.  Cash held by that subsidiary was specifically excluded from assets transferred to the Non-Debtor Entity purchaser under that Agreement.  After the Closing, however, the Non-Debtor Entity wrongfully removed cash from a bank account owned by the PDH subsidiary.
[4] By the Coordinating Agreement, the PDH, Exide Technologies and the Non-Debtors (who adopted its terms by their respective Sales Agreements, *See* fn.2) agreed that Illinois state law would govern any dispute between them arising from the transactions.  *See* Exhibit G § 5.2.
[5] The Complaint was filed in the Circuit Court for Cook County, Illinois because the PDH entities, Exide Technologies and the Non-Debtor Entities each agreed to jurisdiction and venue in Cook County for any dispute arising under the Agreements.

3

A-0236

in support of their motion. On December 17, 2001, the Cook County Circuit Court judge assigned to this matter, the Honorable Sheldon Gardner, denied the Defendants' motion on all counts, and ordered the Defendants to answer PDH's complaint. The Defendants collectively filed an Answer on January 22, 2001, which included affirmative defenses and a counterclaim.

Discovery was in an advanced stage at the time of the removal of this action. PDH (USA) and Exide Technologies (prior to the filing of its Chapter 11 case) had each propounded and answered interrogatories and requests for production of documents, pursuant to which the parties exchanged more than twenty boxes of documents. Exide Technologies' document production was represented by its counsel to include documents produced by the Non-Debtor Entities. PDH has propounded a limited number of specific interrogatories and requests for production of documents to each of the Non-Debtor Entities.[6] On February 7, 2002, PDH served nine notices of deposition. PDH has taken the deposition of one of these witnesses, and has made numerous written and oral requests for dates upon which the remaining individuals could be deposed.

On April 15, 2002, Exide Technologies filed for relief under Chapter 11 of the Bankruptcy Code. Shortly thereafter, Exide Technologies filed a Suggestion of Bankruptcy in the Circuit Court of Cook County requesting that the Court take notice that Exide Technologies' Chapter 11 filing operated as a stay of judicial proceedings against four specifically identified debtors, none of which included the Non-Debtor Entities. *See* Suggestion of Bankruptcy, attached as Exhibit H. Although PDH acknowledged that its claims against Exide Technologies were stayed under 11 U.S.C. §362(a), PDH continued the prosecution of its separate claims

---

[6] PDH planned to hand deliver the interrogatories and document requests to the Non-Debtor Entities at the August 22, 2002 hearing on the Defendants' motion to dismiss (and thus dated their cover letter as August 22, 2002), but the hearing was cancelled upon the Defendants' filing of their notice of removal on August 21, and informing PDH of

4

against the Non-Debtor Entities for the Non-Debtor Entities' independent breaches of their unique Sales Agreements (to which Exide Technologies is not a party), independent conversion of PDH assets, and unjust enrichment. *See* PDH's Response to Suggestion of Bankruptcy, attached as Exhibit L.

At a hearing on April 30, 2002, Judge Gardner ordered a temporary stay of this matter under the authority of Illinois state law to consider the effect of Exide Technologies' bankruptcy filing. The parties then filed nine separate documents and argued at three hearings solely on the issue of whether there was any justification for staying PDH's claims against the Non-Debtor Entities, in light of Exide Technologies' Chapter 11 status.[7]  In their various papers, the Defendants contended that this matter should be stayed as to the Non-Debtor Entities in addition to Exide Technologies, arguing that: (1) Exide Technologies is the "real party in interest" to PDH's contract claims; (2) Exide Technologies is a necessary party without which PDH's claims against the Non-Debtor Entities cannot proceed; (3) under the Agreements, Exide Technologies is the only Defendant liable for the indemnification of PDH; (4) any judgment against the Non-Debtor Entities may result in indemnification or contribution claims against the debtor, Exide Technologies[8]; and (5) the threat of issue preclusion or collateral estoppel mandated application of the stay to the Non-Debtor Entities. At the third hearing on the issue, on July 8, 2002, Judge Gardner rejected each of the Defendants' arguments, stating that he had no power to extend the Section 362 stay to the Non-Debtor Entities, and was not attempting to do so. *See* Transcript of July 8, 2002 hearing, attached as Exhibit J, at 12, 16-19, 24 (lines 7-13).  He ordered that PDH's

---

the filing after the documents had been mailed on that date.  The documents were processed for mailing to the Non-Debtor Entities prior to PDH's receipt of the Defendants' Notice of Removal after business hours on August 21.

[7] Because of the constraints on the length of this memorandum contained in Rule 400(D) of the Bankruptcy Court for the Northern District of Illinois, we will not reiterate each of the parties' various arguments here, but have attached each of the twelve filings as Exhibits H,I and L through U.

[8] In making this argument bankruptcy counsel to Exide Technologies was careful to emphasize that Exide Technologies "by no means" concedes the validity of any such claims. See Exhibit N, at 7, ¶ 20.

A-0238

independent claims against the Non-Debtor Entities should move forward without Exide Technologies.

After Judge Gardner issued his July 8th Order, the Non-Debtor Entities filed a formal motion to dismiss PDH's claims for lack of a necessary party, again contending that this action could not move forward in the absence of Exide Technologies.[9] Rather than risk a second unfavorable ruling on this issue, however, the Defendants decided to seek what they perceive to be a more favorable forum for their argument, by removing this matter to this Court on the day before the scheduled hearing in the Circuit Court for Cook County on their fully briefed motion. At no time, even at the suggestion of the Circuit Court Judge Gardner, did Exide Technologies petition the United States District Court for the District of Delaware for injunctive or other relief under 11 U.S.C. §105(a), to stay the litigation against the Non-Debtor Entities.

In sum, prior to the removal of this matter, the parties appeared before Judge Gardner for oral argument on 9 separate occasions (not including appearances to present motions to the Court), and Judge Gardner issued 11 orders relating to the case. In doing so, the Circuit Court judge has become familiar with the parties and the contracts at issue, at a substantial expenditure of judicial resources, which the Defendants are now asking this Court to duplicate without legal or factual justification.

## III.    DISCUSSION

---

[9] Although the Non-Debtor Entities' Motion to Dismiss for Lack of a Necessary Party was pending at the time of removal, Judge Gardner rejected an identical "necessary party" argument made in briefs filed by Exide Technologies and the Non-Debtor Entities prior Judge Gardner's refusal to stay this matter as to the non-Debtor Entities at the July 8, 2002 hearing. *See* Exhibits L, N, O, Q.

A-0239

**A.**    **This Court Lacks Subject Matter Jurisdiction Over This Improperly Removed Action And Therefore Should Remand The Litigation To The Circuit Court of Cook County**

Defendants removed this matter pursuant to 28 U.S.C. § 1452(a), which provides that a party may remove any claim or cause of action to the federal district court where the civil action is pending if such district court has jurisdiction of such claim or cause of action under 28 U.S.C. § 1334. Plaintiffs have alleged that jurisdiction is proper under Section 1334 because the claims at issue "arise under," "arise in" or are "related to" a case filed under Chapter 11. Notice, at ¶ 3. This Court lacks jurisdiction over the instant action under each of the three potential bases for Section 1334(b) jurisdiction, and therefore must remand the litigation to the Circuit Court for Cook County, Illinois.

**1.**    **This Court Lacks "Arising Under" and "Arising In" Jurisdiction Over PDH's Claims**

"Arising under" jurisdiction encompasses proceedings that involve a cause of action "created or determined by a statutory provision of title 11." *In re Pettibone Corp.*, 135 B.R. 847, 851 (Bktcy.N.D.Ill. 1992). Courts lack "arising under" jurisdiction with respect to claims based upon state law. *Id.* PDH's state law breach of contract, conversion and unjust enrichment claims ("Claims") against the Non-Debtor Entities clearly do not "arise under" the Bankruptcy Code.

"'Arising in' jurisdiction encompasses administrative matters that arise only in bankruptcy cases and have no existence outside of the bankruptcy proceeding." *Id.* PDH's claims against the Non-Debtor Entities were filed almost eight months prior to Exide Technologies' bankruptcy filing, and over one year prior to their improper removal to this Court, during which time the state court denied a motion to dismiss the Claims and considerable discovery was conducted. PDH's Claims are viable outside of a bankruptcy proceeding, and are not properly before this Court based on "arising in" jurisdiction.

7

A-0240

Further, the Seventh Circuit has made it clear that disputes between two nonparties to a bankruptcy proceeding, such as PDH and the Non-Debtor Entities, "cannot possibly" be subject to "arising under" or "arising in" jurisdiction. *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994). Thus, contrary to Defendants' statement in their Notice of Removal, the instant action is not a "core proceeding." Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy. *Matter of U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997).

## 2.     This Court Lacks "Related To" Jurisdiction Over PDH's Claims

A case is not "related to" a bankruptcy proceeding unless its resolution has a "direct and substantial impact on the pool of assets available for distribution to creditors." *In re Bill Cullen Elec. Contracting Co.*, 160 B.R. 581, 584 (Bktcy.N.D.Ill. 1993). The fact that a dispute has some logical relationship to a bankruptcy case is not sufficient to confer jurisdiction on the bankruptcy court. *In re Urban Health Services, Ltd.*, 154 B.R. 486, 489 (Bktcy.N.D.Ill. 1993). The Seventh Circuit has repeatedly emphasized that in making determinations regarding "related to" jurisdiction, the jurisdiction of state courts must be preserved with respect to questions of state law involving persons not a party to the bankruptcy. *Id.*

There is no support for Exide Technologies' contention that PDH's claims against distinct corporate entities will have a direct and substantial impact on Exide Technologies' estate. The Non-Debtor Entities are individually liable to PDH for their independent torts and breaches of contracts to which they, not Exide Technologies, are parties. *See* Exhibits B through F. Accordingly, the Non-Debtor Entities would have no common law right to indemnification by Exide Technologies. Nor is there any language in the Agreements that provides the Non-Debtor Entities with the right to contractual indemnification.

8

It is clear, therefore, under Seventh Circuit and Illinois federal district and bankruptcy court decisions interpreting the proper scope of "arising under," "arising in," or "related to" jurisdiction under 28 U.S.C. §1334(b), that this Court does not have subject matter jurisdiction over the removed case. Accordingly, the litigation must be promptly remanded to the Circuit Court for Cook County.

B.    **Alternatively, This Court Should Remand The Above-Captioned Matter To The Circuit Court for Cook County, Illinois Pursuant to 28 U.S.C. § 1452(b).**

Even if this Court were to assume that it might have some type of subject matter jurisdiction, Section 1452(b) of Title 28 provides that this Court may remand this matter "on any equitable ground." In considering a motion to remand under Section 1452(b), this Court must consider the following factors: (1) duplicative and uneconomical expenditure of judicial resources in two forums; (2) prejudice to the involuntarily removed parties; (3) forum non conveniens; (4) a holding that a state court is better able to respond to a suit involving questions of state law; (5) comity considerations; (6) lessened possibility of an inconsistent result; and (7) the expertise of the first court. *In re Gen-Air Plumbing & Remodeling, Inc.*, 208 B.R. 426, 432 (Bktcy.N.D.Ill. 1997).

Finding five of the seven relevant factors to be present, the *Gen-Air* court remanded a state law corporate dissolution proceeding to state court. The first factor favors remand here because, as in *Gen-Air*, a "duplicative and uneconomical" expenditure of judicial resources would be required for this Court to become familiar with the various agreements and circumstances underlying PDH's Claims. *Id.* at 432. Remand of PDH's Claims is appropriate because the Claims, like the claims at issue in *Gen-Air*, "involve purely state law and do not involve any question of federal bankruptcy law." *Id.* Remand would lessen the possibility of results inconsistent with those of the Illinois state courts, which are eminently familiar with state

9

A-0242

law. This Court's consideration of PDH's Claims would "disserve the notion of economy of scarce judicial resources" and "ignore the interest of comity between the federal and state systems," where the Illinois state court, like the court from which this matter was removed, has heard numerous motions and entered various orders. *Id.* The interest of comity is particularly vulnerable here, where the defendants have attempted to circumvent, through removal, the State court's holding that Exide Technologies is not a necessary party to this litigation. The use of the Bankruptcy Code to forum shop should not be encouraged. *U.S. Brass*, 110 F.3d at 1265.

Based on these factors, equitable grounds clearly exist for this Court to remand the instant action. PDH would be unfairly prejudiced by this Court's hearing this matter, as PDH has already expended significant time and resources conducting discovery, responding to motions and appearing at oral argument for multiple hearings before Judge Gardner, which have had the effect of educating the state court judge on the relevant issues and pushing this dispute forward to trial. If this Court were to ignore the equitable considerations and retain this case, PDH would be required to duplicate all of these efforts in this new forum.

C.    **Alternatively, This Court Is Required To Abstain From Hearing The Above-Captioned Action Under 28 U.S.C. § 1334(c)(2).**

Even in the event that this Court finds that it has jurisdiction over this action, it does not necessarily follow that this is the proper Court to hear the matter. *Baxter*, 132 B.R. at 867 (even where jurisdiction is proper, Court may remand the case to state court under 28 U.S.C. § 1452(b) or abstain from hearing case under 28 U.S.C. § 1334(c)(1) or (c)(2) (discussed supra at Part III B). Although the grounds underlying the decisions differ, a decision to remand or to abstain produces the same result. *Baxter*, 132 B.R., at 867.

Section 1334(c)(2) requires courts to abstain from hearing removed matters when: (1) Section 1334 is the only basis of federal jurisdiction; (2) the action is based upon a state law

10

claim not arising under Title 11; and (3) the action can be timely adjudicated in state court. *Baxter*, 132 B.R. at 869.[10] As each of these elements is present here, this Court is required to abstain from hearing this matter under Section 1334(c)(2), and permit the litigation to go forward in the Circuit Court of Cook County.

It is beyond dispute that 28 U.S.C. § 1334(b) is the only basis for this Court's jurisdiction asserted by the Defendants. *See* Notice of Removal, at ¶¶ 3, 13. PDH's breach of contract, conversion and unjust enrichment claims against the Non-Debtor Entities are based upon Illinois state law, a fact which the Defendants' implicitly conceded by citing exclusively to Illinois law in support of their motion to dismiss each of PDH's Claims, filed in the Circuit Court of Cook County. *See* Motion and Memorandum, attached as Exhibit K.

In similar situations to those at bar, where extensive discovery has been conducted in a state court which has presided over numerous hearings related to the case, Illinois federal district courts have found that the action can be timely adjudicated in state court. *See Baxter*, 132 B.R. at 869 (where extensive discovery has been conducted in state court, action will likely be ready for trial much faster in state court, especially in light of time federal court would require to become familiar with facts of case and be allotted to prepare pretrial order, additional discovery to be taken, and the court's crowded docket); *State Bank of Lombard v. Chart House*, 46 B.R. 468, 472 (D.C.Ill. 1985) (finding state law cause of action to enforce agreement can be timely adjudicated in state court of appropriate jurisdiction).

In the instant matter, during the prior thirteen months that this action has been pending in Illinois state court, the parties appeared at least 9 times before Judge Gardner, who ruled on a

---

[10] 28 U.S.C. § 1334(c)(2) provides that: upon timely motion of a part in a proceeding based upon a State law claim or State law cause of action, related to a case under Title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the

11

liability in this action.  As each of the relevant factors weighs in favor of permissive abstention, this Court should abstain from hearing this matter under 28 U.S.C. § 1334(c)(1), thereby permitting this matter to be determined by the Circuit Court for Cook County.

### IV.    CONCLUSION

WHEREFORE, Plaintiffs, Pacific Dunlop Holdings (Europe) Ltd., Pacific Dunlop Holdings (Hong Kong) Ltd., and Pacific Dunlop Holdings (Singapore) Pte. Ltd., respectfully move that this Court remand the matter to the Circuit Court for Cook County, Illinois for lack of subject matter jurisdiction or, in the alternative, pursuant to 28 U.S.C. 1452(b), abstain from hearing the above-captioned matter pursuant to 28 U.S.C. 1334(c)(1) or (c)(2).

Respectfully submitted,

Pacific Dunlop Holdings (Europe) Ltd. Pacific Dunlop Holdings (Hong Kong) Ltd., and Pacific Dunlop Holdings (Singapore) Pte. Ltd.

By: _____
                    One of their attorneys

Charles P. Goodell, Jr., Esq.
Linda S. Woolf, Esq.
Thomas J.S. Waxter, III, Esq.
Alex J. Brown, Esq.
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, Maryland  21202
(410) 783-4000
(410)-783-4040 (Facsimile)

Thomas J. Verticchio, Esq.
Patrick G. Cooke, Esq.
PATZIK, FRANK & SAMOTNY LTD.
150 South Wacker Drive
Suite 900
Chicago, IL 60606
(312) 551 8300
(312) 551 1101 (Facsimile)

15

# **EXHIBIT F**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| PACIFIC DUNLOP HOLDINGS (EUROPE) LTD., et al. | ) ) ) ) | Adv. No. 02 A 01106 |
|  | ) ) | (Removed from Circuit Court of Cook County, Civil Action No. 01 L 008460) |
| Plaintiffs | ) ) |  |
| v. | ) ) |  |
| EXIDE HOLDING EUROPE, et al., | ) ) | Hon. Susan Pierson Sonderby |
| Defendants. | ) ) |  |

### MEMORANDUM OPINION

This matter is before the Court on a motion filed by Exide Corporation ("Exide" or the "Debtor") and certain of its subsidiaries, including Exide Holding Europe, Exide Holding Asia Pte. Ltd., and Exide Singapore Pte. Ltd. (the "Non-Debtor Entities"), to transfer the venue of this removed action to the District of Delaware, and on the motion to remand or, alternatively, to abstain, filed by Pacific Dunlop Holdings (USA) Inc. ("PDH") and certain of its affiliated corporations, including Pacific Dunlop Holdings (Europe) Ltd., P.D. International Pty. Ltd., Pacific Dunlop Holdings (Hong Kong) Ltd., and Pacific Dunlop Holdings (Singapore) Pte. Ltd. (collectively with PDH, the "PDH Sellers"). The facts relevant to the Court's disposition of the matter are not in dispute.

### BACKGROUND

PDH owned GNB Corporation ("GNB"), a global automotive and industrial battery business. During May and June of 2000, the PDH Sellers sold GNB, together with stock and the assets of

certain corporate subsidiaries, to Exide and the Non-Debtor Entities pursuant to a series of sales and other agreements. Each Non-Debtor Entity entered into a separate agreement with one or more of the PDH Sellers, pursuant to which specific PDH entities sold different corporate subsidiaries or assets to specific Exide entities (the "Sale Agreements"). PDH and Exide then entered into a separate agreement (the "Coordinating Agreement") that governed the transactions contemplated in the Sale Agreements, the transition of ownership of GNB, and the method for resolving disputes arising from the transactions.

On July 17, 2001, the PDH Sellers filed a complaint in the Circuit Court of Cook County, Illinois (the "State Court") against Exide and the Non-Debtor Entities, alleging that they had breached the Sale Agreements and the Coordinating Agreement by wrongfully retaining funds to which one or more of the PDH Sellers were entitled. The PDH Sellers also claimed that Exide and the Non-Debtor Entities were liable for conversion and unjust enrichment under Illinois common law. The action was assigned to Judge Sheldon Gardner as Case No. 01 L 08460. On December 4, 2001, PDH filed a second suit in the State Court, naming only Exide as defendant and alleging that it owed certain sums to the PDH Sellers relating to letters of credit that Exide had extended to support the obligations of GNB. The second suit was assigned to Judge Lee Preston, as Case No. 01 L 15589. On March 26, 2002, the two actions were consolidated into Case No. 01 L 08460, before Judge Gardner.

On April 15, 2002, Exide filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"), as Case No. 02-11125. As a result of the bankruptcy filing, Judge Gardner temporarily stayed the State Court action, including discovery, by order dated April 30, 2002.

-2-

However, he subsequently lifted the previous stay of discovery as to all parties except Exide, denied the defendants' request for a temporary stay of the litigation as against the Non-Debtor Entities, and set the matter for further status on August 22, 2002. The Non-Debtor Entities then filed a formal motion to dismiss the plaintiffs' claims for lack of a necessary party, i.e., Exide.

On July 30, 2002, Bankruptcy Judge John C. Akard, sitting by designation on the Delaware Bankruptcy Court, granted Exide's motion to extend to December 31, 2002 the deadline for removing actions pending in other courts. On August 21, 2002, one day before the scheduled status hearing in State Court, Exide removed the consolidated State Court action to this Court pursuant to 28 U.S.C. §1452, asserting that this Court has jurisdiction under 28 U.S.C. §1334. The Notice of Removal was filed in the Bankruptcy Court for this district and division as required by 28 U.S.C. § 1452 and Local Bankruptcy Rule 420.

None of the defendants have objected to the removal. The plaintiffs, however, contend that removal was improper, because this Court lacks subject matter jurisdiction over the action. According to the plaintiffs, the claims they assert against the Non-Debtor Entities in the removed action do not "arise under" or "arise in" Exide's bankruptcy case and are not "related to" it within the meaning of §1334.[1]

The defendants counter that subject matter jurisdiction exists, because the claims against the Non-Debtor Entities are, at a minimum, "related to" Exide's bankruptcy case. They further contend that this Court should transfer the case to the Delaware Bankruptcy Court, where Exide's bankruptcy

---

[1]    28 U.S.C. § 1334 provides:
(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

-3-

Corporation ("Buyer")." The term "Buyer," as so defined, would not encompass the Non-Debtor Entities. Accordingly, Exide contends that under §4.2, which as quoted above states that "Buyer agrees to indemnify ...," Exide is the only party responsible for breaches by the Non-Debtor Entities of their obligations under the Sale Agreements.

In further support of its contention, Exide notes that when §4.2 was amended, the parties added, after the term "Buyer" in clause (i) quoted above, the language "or, for sake of clarification, any International Buyer." Comparable language was not, however, added to the preceding phrase, identifying the indemnitor (the parties retaining the language "Buyer agrees to indemnify ... ."). Exide therefore contends that this amendment is further confirmation that Exide is solely responsible for breaches under the agreements; i.e., while the parties clarified that indemnification would cover breaches by the Non-Debtor Entities, they chose not to expand the named indemnitors.

Finally, Exide notes that in Count I of the State Court complaint, sounding in contract, plaintiffs seek "judgment against Exide." The prayer for relief does not name the Non-Debtor Entities. Accordingly, Exide contends that plaintiffs themselves implicitly recognize that Exide is the sole indemnitor for all breaches of the parties' agreements.

Plaintiffs, on the other hand, interpret the indemnification and related provisions as providing them with a remedy against the Non-Debtor Entities. Plaintiffs note that although the definition of "Buyer" in the Coordinating Agreement states that the term "has the meaning specified on the first page of [the] Agreement" (i.e., Exide), the definition goes on to state that in certain portions of the agreement (including the indemnification provisions), "Buyer shall be deemed to mean Buyer and/or (as the context may require) any International Buyer." Plaintiffs contend that for purposes of the indemnification provisions, the context requires that the term "Buyer" include the Non-Debtor

-5-

Entities, particularly in light of the fact that the Sale Agreements state that the Non-Debtor Entities' indemnification obligations "are set forth in the Coordinating Agreement."

It appears, from a review of the agreements and the parties' contentions, that there may be an ambiguity on the indemnification issue. As discussed below, however, the Court need not resolve that issue in order to determine whether the removal of this action was proper.

## DISCUSSION

1.    The Propriety of the Removal

Prior to consideration of the remaining issues raised in the parties' motions, the Court must first determine whether it has subject matter jurisdiction over the action. *In re Canion*, 196 F.3d 579, 584 (5th Cir. 1999) ("[f]ederal courts must be assured of their subject matter jurisdiction at all times"); *Rumore v. Wamstad*, No. Civ.A. 01-2997, 2001 WL 1426680, *1 (E.D.La., Nov. 13, 2001).

District courts have bankruptcy jurisdiction over four types of matters: (1) cases under title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" cases under title 11; and (4) proceedings "related to" cases under title 11. *See* 28 U.S.C. § 1334. The first category refers to the bankruptcy case itself, which is not before this Court. As to the remaining three categories, it is unnecessary to distinguish among them so long as the matter is at least "related to" the bankruptcy case; "these three 'references operate conjunctively to define the scope of jurisdiction.'" *Rumore v. Wamstad*, 2001 WL 1426680, at *1 (*quoting In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987)).

The Seventh Circuit has held that a proceeding is related to a bankruptcy case when the dispute affects the amount of property for distribution or the allocation of property among creditors. *In re Fedpak Systems, Inc.*, 80 F.3d 207, 213-14 (7th Cir. 1995). Under this test, the Court has at

-6-

*Investment Corp. v. First National Bank of Jefferson Parish* 74 B.R. 648 (E.D. La. 1987); *In re Allegheny Health, Education and Research Foundation*, 1999 WL 1033566, *1 (Bankr. E.D. Pa., Nov. 10, 1999); *In re Aztec Industries, Inc.* 84 B.R. 464, 467 (Bankr. N.D. Ohio 1987); *In re Convent Guardian Corp.*, 75 B.R. 346 (Bankr. E.D.Pa. 1987); *Colarusso v. Burger King Corp.*, 35 B.R. 365 (Bankr. E.D.Pa. 1984).

The defendants predicate their motion to transfer on the change of venue provision set forth in 28 U.S.C. § 1412. That section provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." As the language of the statute contains no explicit reference to "related" proceedings, many courts have found that motions to transfer such actions should be governed by § 1404, the general venue provision. *See e.g., Rumore v. Wamstad*, 2001 WL 1426680, *2; *Tultex Corp. v. Freeze Kids, L.L.C.*, 252 B.R. 32 (S.D.N.Y. 2000); *Goldberg Holding Corp. v. NEP Productions, Inc.*, 93 B.R. 33 (Bankr. S.D.N.Y. 1988). That section provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. The issue is largely academic, however, inasmuch as the factors to be considered under either statute are the same. *Jackson v. Venture Department Stores, Inc.*, No. 98 C 6216, 1998 WL 778057, *2 (N.D.Ill., Nov. 3, 1998); *see also In re Emerson Radio Corp.*, 52 F.3d 50, 56 (3rd Cir. 1995). The only significant difference between the two provisions is that § 1404 contains the additional limitation that transfer be to a district where the action might have been brought in the first instance. *See Emerson Radio*, 52 F.3d at 56. Accordingly, under §1404, transfer is appropriate when (1) venue is proper in both the transferor and transferee courts; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is

in the interest of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986). In ruling on a motion for transfer, the judge must consider the statutory factors in light of all the circumstances of the case. *Id.* at 219. The movant has the burden of establishing, by reference to particular circumstances, that transfer is appropriate. *See, e.g., Id.*; *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.*, 436 F.2d 1180, 1187-88 (7th Cir. 1971).

As to the first element, venue is proper in both the transferor and transferee courts. Venue is proper in the Northern District of Illinois because this case was removed pursuant to 28 U.S.C. § 1452, which states: "A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

Venue is also proper in the District of Delaware pursuant to § 1409. Under § 1409, a proceeding arising under Title 11 or arising in or related to a case under Title 11 may be commenced in the district court in which such case is pending. Exide's bankruptcy case was filed in the District of Delaware, and for that reason, venue is also proper in the Delaware Bankruptcy Court. *See Calumet National Bank v. Levine*, 179 B.R. 117, 120 (N.D.Ind. 1995).

As for the second element, neither the plaintiffs nor the witnesses will be seriously inconvenienced by transferring this case to the Delaware Bankruptcy Court. Only twenty-nine of the forty-nine witnesses identified by the parties in answers to interrogatories are actually closer to one district than the other. Nineteen of those twenty-nine witnesses are closer to Wilmington than Chicago, including eighteen witnesses who are located less than 150 miles from the Delaware court. Only eleven of the twenty-nine witnesses are closer to Chicago. This includes nine witnesses located less than 150 miles from the Illinois court and two witnesses in Stillwater, Oklahoma, and Reno,

-9-

Nevada, respectively.

According to defendants, the location of the other nineteen witnesses has no meaningful effect on the convenience of the two venues. Two witnesses are located in Singapore, and seven witnesses are located in Australia. Others are located in the United Kingdom, Belgium, and Germany. Travel from these international locations is not materially affected by the choice of venue. Seven witnesses are in the Atlanta, Georgia area, which is equidistant from Wilmington and Chicago. (See Chart of Witness Locations, as Exhibit D to Defendants' Motion).

The "interest of justice" is a component to be analyzed separately and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result. *See, e.g., Coffey v. Van Dorn Iron Works,* 796 F.2d 217 (7th Cir. 1986); *Lemke v. St. Margaret Hospital,* 594 F. Supp. 25 (N.D. Ill. 1983). Factors considered generally relate to the efficient administration of the court system. For example, the interest of justice may be served by a transfer to a district where the litigants are more likely to receive a speedy trial. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217 (7th Cir. 1986). In the same vein, related litigation should be transferred to a forum where consolidation is feasible. *See Id.* at 217; *FTC v. MacArthur,* 532 F. 2d. 1135, 1143 (7th Cir. 1976). In making this determination, the court considers traditional notions of judicial economy rather than the private interests of the litigants and their witnesses. *TIG Ins., Co. v. Brightly Galvanized Prods., Inc.,* 911 F.Supp. 344, 346 (N.D. Ill.1996). Considerations also include the relationship of the community to the issues, the respective courts' familiarity with the applicable law, and the likelihood of a speedy trial. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220-21 (7th Cir.1986).

The Delaware Bankruptcy Court is obviously more familiar with the pending bankruptcy case

-10-

and the time and resources required for its effective administration. It is more efficient and more consistent with the goals of the Bankruptcy Code if one court, familiar with the estate and the bankruptcy process, hears the action. The action itself is not in an advanced stage in any event. The parties have taken one deposition, and there has been one discovery dispute regarding the timing of third-party discovery. The defendants point out that any discovery that has been taken can be used in the Delaware court. The State Court has made only one substantive ruling regarding a motion to dismiss for failure to state a claim (and that without prejudice) and ruled on one discovery dispute involving the timing of third-party subpoenas.

Plaintiffs suggest that the private interests of the parties favor retention of this matter in Illinois because of a forum selection clause in the Coordinating Agreement, designating Illinois as the proper venue. However, as discussed above, the proceeding – though properly brought in an Illinois court – was then properly removed to federal court. The forum selection clause does not preclude the requested transfer, but may be appropriately considered in connection with the plaintiffs' motion to remand or abstain. *See, e.g., In re AG Industries, Inc.*, 279 B.R. 534, 540 (Bankr. S.D.Oh. 2002) With respect to the private interests of the litigants, the Court further notes that none of the parties reside in Illinois and none of the bank accounts at issue are located in Illinois – two important criteria, which the Seventh Circuit considers in deciding these motions. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir.1986) (considerations include the relation of the community to the issues). The outcome of this action also does not affect the Illinois state government or its citizens.

In sum, balancing all the relevant factors, the Court concludes that the defendants have met their burden of establishing that it is in the interest of justice and for the convenience of the parties

-11-

that this suit be transferred to the District of Delaware.

## CONCLUSION

For the reasons stated above, an order will be entered transferring this adversary proceeding, including plaintiffs' pending motion to remand or abstain, to the Delaware Bankruptcy Court.

**ENTERED:**

SUSAN PIERSON SONDERBY
**United States Bankruptcy Judge**

FEB 0 4 2003

-12-

A-0261

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| PACIFIC DUNLOP HOLDINGS (EUROPE) LTD., et al. | ) ) ) ) | Avd. No. 02 A 01106 |
|  | ) ) | (Removed from Circuit Court of Cook County, Civil Action No. |
| Plaintiffs | ) | 01 L 008460) |
| v. | ) ) |  |
|  | ) |  |
| EXIDE HOLDING EUROPE, et al., | ) ) | Hon. Susan Pierson Sonderby |
| Defendants. | ) |  |

ORDER

For the reasons stated in its memorandum opinion entered on this date, the Court hereby

transfers this adversary proceeding, including plaintiffs' pending Motion to Remand or, in the

Alternative, to Abstain, to the United States Bankruptcy Court for the District of Delaware.

ENTERED:

SUSAN PIERSON SONDERBY

FEB 0 4 2003

A-0262

# EXHIBIT G

Slip Copy                                                                                                      Page 1
(Cite as: 2003 WL 21843637 (D.Del.))

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.

RGC INTERNATIONAL INVESTORS, LDC,
Plaintiff,
v.
ARI NETWORK SERVICES, INC., Defendant.

No. Civ.A.03-003-SLR.

July 31, 2003.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 Plaintiff RGC International Investors, LDC ("RGC") filed this action against defendant ARI Network Services, Inc. ("ARI") on January 2, 2003. (D.I.1) RGC alleges ARI breached the terms of a contract between the parties, and therefore, seeks declaratory, injunctive and other equitable and legal relief to enforce its contractual agreement. (*Id.* at 1) ARI filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(7) and 19(b) or, in the alternative, to dismiss or stay the complaint pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and the abstention doctrine in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). (D.I.7) For the reasons that follow, ARI's motion is denied.

II. DISCUSSION

ARI's current motion before this court argues RGC's action should be dismissed because RGC has failed to join an indispensable party pursuant to Fed.R.Civ.P. 12(b)(7) and 19(b). ARI concedes, and this court agrees, its argument that Taglich Partnerships ("Taglich") is an indispensable party under Fed.R.Civ.P. 19 is no longer applicable because ARI has reached a settlement agreement with Taglich. (D.I. 19 at 2) Therefore, ARI's motion to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(7) for failure to join Taglich as an indispensable party is moot.

In the alternative, ARI argues the action at bar should be dismissed or stayed because ARI has filed suit against RGC in the Milwaukee, Wisconsin County Circuit Court. ARI argues that under the Declaratory Judgment Act and *Colorado River* doctrine, this action should not go forward while a parallel action is pending in Wisconsin state court.

RGC and ARI entered a Securities Purchase Agreement ("SPA") on April 25, 2000, which outlined the terms of RGC's investment in ARI. (D.I. 1 at 1) RGC was issued: (1) a convertible debenture ("debenture") in the amount of four million dollars; (2) warrants to purchase 600,000 shares of ARI's common stock; and (3) an investment option to purchase 800,000 shares (hereinafter collectively referred to as "ARI Securities"). (*Id.*)

The agreement states:
  Both parties irrevocably consent to the exclusive jurisdiction of the United States federal courts located in Delaware with respect to any suit or proceeding based on or arising under this [a]greement, the agreements entered into in connection herewith or thereby and irrevocably agree that all claims in respect of such suit or proceeding may be determined in such courts. Both parties irrevocably waive the defense of an inconvenient forum to the maintenance of such suit or proceeding.
(D.I. 1, Ex. 1 at ¶ 8(a)) The debenture contains a similar provision which states:
  The Borrower and Holder irrevocably consent to the exclusive jurisdiction of the United States federal courts located in Delaware in any suit or proceeding based on or arising under this Debenture, the agreements entered into in connection herewith or thereby or the transactions contemplated hereby or thereby and irrevocably agree that all claims in respect of such suit or proceeding may be determined in such courts. The Borrower and Holder irrevocably waive the defense of an inconvenient forum to the maintenance of such suit or proceeding.
*2 (D.I. 1, Ex. 1A at ¶ VII(f)) All other documents containing material terms of the parties' agreement contain similar forum selection clauses. (D.I. 1 at 5)

The United States Supreme Court, in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972),

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT H

A-0266

Not Reported in B.R.
(Cite as: 2000 WL 33712302 (Bankr.D.Del.))

**H**
Only the Westlaw citation is currently available.

United States Bankruptcy Court, D. Delaware.

In re: OMNA MEDICAL PARTNERS, INC., et al.,
Debtors.
OMNA MEDICAL PARTNERS, INC., Plaintiff,
v.
CARUS HEALTHCARE, P.A. et al., Defendants.

No. 00-1493 (MFW), 00-1494(MFW),
00-1495(MFW), 00-1496(MFW),
00-1497(MFW), 00-
1498(MFW), 00-1499(MFW), 00-1500(MFW),
00-1501(MFW), 00-1502(MFW), 00-
1503(MFW), 00-1504(MFW), 00-1505(MFW),
00-1506(MFW), 00-1507(MFW), 00-
1508(MFW), ADV. A00-439, ADV. A00-550.

June 12, 2000.

OPINION [FN1]

FN1. This Opinion constitutes the findings
of fact and conclusions of law of the Court
pursuant to Federal Rule of Bankruptcy
Procedure 7052, which is made applicable
to contested matters by Federal Rule of
Bankruptcy Procedure 9014.

WALRATH, Bankruptcy J.

*1 Before the Court is the Motion of Carus
Healthcare, P.A. and certain doctors associated with
it (collectively "Carus" or "the Defendants") for
abstention, dismissal, or transfer of venue of two
adversary actions brought against the Defendants by
OMNA Medical Partners, Inc. ("the Debtor"). The
First Adversary Proceeding was commenced by the
Debtor seeking to extend the automatic stay to
enjoin a suit commenced in Texas by Carus and two
of its member doctors against the Debtor and five of
its present and former officers and/or directors ("the
Carus Texas litigation"). The Second Adversary
Proceeding was instituted by the Debtor against the
Defendants asserting that the Defendants have
breached the Management Services Agreement

("the MSA") executed pre-petition by the parties.
For the reasons set forth below, we grant the
Motion.

**I. BACKGROUND FACTS**

Prior to the filing of its chapter 11 case on March
24, 2000, the Debtor and Carus were parties to the
M.S.A. § which was effective November 1, 1997. A
dispute arose which resulted in the Debtor giving
notice, on March 7, 2000, that Carus was in breach
of the MSA, that the M.S.A. § was terminated and
that the Debtor would seek to enforce its
termination rights under the MSA. The Debtor
subsequently commenced an action in Texas to
foreclose on collateral in which the Debtor asserted
an interest pursuant to the M.S.A. § ("the OMNA
Texas litigation"). Carus responded by filing the
Carus Texas litigation against the Debtor and five
of its current and former officers and directors
seeking to enjoin the foreclosure. An ex parte
temporary restraining order was entered on March
17, 2000, in the Carus Texas litigation. Upon the
expiration of the Texas TRO, the Debtor foreclosed
on the collateral. The Texas court has stayed any
further proceedings in the Carus Texas litigation in
light of the filing of the Debtor's bankruptcy
proceeding on March 24, 2000.

On the day it filed its bankruptcy proceeding, the
Debtor also commenced the First Adversary
Proceeding against Carus and two of the doctor
Defendants seeking to extend the automatic stay to
cover the directors and officers named in the Carus
Texas litigation. An order was entered granting that
relief on April 5, 2000, which was extended by
agreement of the parties first until May 15, 2000,
and then until a decision can be rendered on the
instant Motion.

On April 20, 2000, the Debtor commenced the
Second Adversary Proceeding by which it sought to
enforce its contractual rights under the MSA. In that
proceeding the Debtor sought turnover of the
accounts receivable pursuant to section 542 of the
Bankruptcy Code, enforcement of its rights under
the M.S.A. § pursuant to section 365 of the
Bankruptcy Code and enforcement of the automatic
stay under section 362 of the Bankruptcy Code by
enjoining Carus's interference with the accounts
receivable and other property of the Debtor.

**II. DISCUSSION**

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in B.R.
(Cite as: 2000 WL 33712302 (Bankr.D.Del.))

Carus' Motion seeks mandatory or discretionary abstention, dismissal pursuant to Fed.R.Civ.P. 12(b)(3) or (6) or, alternatively, transfer of venue of the First and Second Adversary Proceedings to the Texas court for resolution in connection with the pending Texas litigation. The Debtor opposes the Motion.

### A. Mandatory Abstention

*2 Abstention by the Bankruptcy Court is mandatory under 28 U.S.C. § 1334(c) if the matter is non-core and the proceeding is commenced and can be timely adjudicated in a state court. Carus asserts that the Adversary Proceedings are non-core as the dispute is simply a contract issue, governed by state law. Carus notes that the issues which the Debtor seeks to litigate in the Second Adversary are essentially the same issues that Carus raised in its Texas litigation: the respective rights of the parties under the MSA.

The Debtor disagrees asserting that the First Adversary Proceeding is clearly core, since it could not have been brought in the absence of the bankruptcy filing. That proceeding seeks to extend the automatic stay to the officers and directors under section 105 of the Bankruptcy Code. We agree with the Debtor that the First Adversary is core.

The Debtor asserts that the Second Adversary is also core because it seeks a turnover of property of the estate (the accounts receivable) under section 542 of the Bankruptcy Code. The Debtor further emphasizes that its entitlement to the accounts receivable is derived from language in the M.S.A. § which is identical to language in all its other contracts and, therefore, a decision in this adversary could have profound effects on its bankruptcy case generally.

We agree with the Debtor that this Court has exclusive jurisdiction over property of the estate, wherever located. 28 U.S.C. § 1334(e). This also vests the Bankruptcy Court with jurisdiction to determine what is property of the estate and to decide competing interests in property which is alleged to be property of the estate. See, e.g., In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 267 (3d Cir.1991) (determination of extent or validity of lien on property of the estate is core); Pension Benefit Guaranty Corp. v. Continental Airlines, Inc.,

138 B.R. 442, 445 (D.Del.1992) (determination of what is property of the estate is core); In re Jartran, Inc., 87 B.R. 525, 527 (N.D.Ill.1988) (an action to determine the extent, nature, and priority of a creditor's claim is core).

The Second Adversary Proceeding does raise issues regarding the ownership of the accounts receivable and other property which the Debtor asserts is property of the estate. Thus, we conclude that it is core. To the extent the First and Second Adversary Proceedings raise core issues, mandatory abstention is not warranted. See, e.g., In re Ben Cooper, Inc., 924 F.2d 36, 38 (2d Cir.), cert. denied, 500 U.S. 928 (1991) (mandatory abstention does not apply to core matters).

### B. Discretionary Abstention

Carus asserts alternatively that the doctrine of discretionary abstention under 28 U.S.C. § 1334(c)(1) militates in favor of abstaining from considering the issues raised in the Adversary Proceedings.

Courts have previously identified twelve factors relevant to the abstention decision:

In determining whether abstention is appropriate under section 1334(c)(1), courts consider the following factors: (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with the enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

*3 In re Continental Airlines, Inc., 156 B.R. 441, 443 (Bankr.D.Del.1993); In re Total Technical Services, Inc., 142 B.R. 96, 100- 01

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT I

A-0271

# **EXHIBIT J**

1995 U.S. Dist. LEXIS 11650, *

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN4] *28 U.S.C.S. § 1334*(b) was intended to identify collectively a broad range of matters subject to the bankruptcy jurisdiction of federal courts.

*Bankruptcy Law > Case Administration > Administration*
[HN5] The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action; either positively or negatively, and which in any way impacts upon the handling and administration of the bankrupt estate.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN6] Proceedings are "related to" bankruptcy cases not only where the outcome of the proceeding may conceivably have an effect upon the estate being administered, but also where parties are sufficiently intertwined with the debtor.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN7] *28 U.S.C.S. § 1334*(b) does not require a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceeding.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN8] A factual nexus between a civil proceeding and a bankruptcy case is in and of itself insufficient to confer bankruptcy jurisdiction upon a court. With respect to the "intertwining" test, it is the degree to which the parties are intertwined that supports a finding of jurisdiction.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN9] Where parties are sufficiently intertwined with the debtor, claims involving the joint conduct of the debtor and non-debtor defendants will be "related to" the debtor's bankruptcy case.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN10] When the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334.

*Civil Procedure > Removal > Basis for Removal*

[HN11] *28 U.S.C.S. § 1452*(b), which authorizes a federal court to remand a case on any "equitable ground."

*Civil Procedure > Removal > Basis for RemovalCivil Procedure > Appeals > U.S. Supreme Court Review > Federal Court Decisions*
[HN12] See *28 U.S.C.S. § 1452*(b).

*Bankruptcy Law > Practice & ProceedingsCivil Procedure > Removal > Basis for Removal*
[HN13] Among the factors taken into account by courts when deciding whether to remand are: (1) the effect on the efficient administration of the bankruptcy estate, (2) the extent to which issues of state law predominate, (3) the difficulty or unsettled nature of the applicable state law, (4) comity, (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (6) the existence of the right to a jury trial, (7) prejudice to the involuntarily removed defendants.

*Civil Procedure > Removal > Basis for Removal*
[HN14] The fact that a complaint is based on state law causes of action does not mandate equitable abstention or remand, particularly where the state law claims are not novel or complex.

*Bankruptcy Law > Practice & Proceedings > Contested MattersCivil Procedure > Jury Trials > Right to Jury Trial*
[HN15] See *28 U.S.C.S. § 157*(e).

*Bankruptcy Law > Practice & ProceedingsCivil Procedure > Removal > Postremoval Remands*
[HN16] Where a remand to the state court from whence the case was removed would only entail a duplication of effort and multiplicity of litigation, a retention of the case by the bankruptcy court would be appropriate.

*Bankruptcy Law > Practice & Proceedings > JurisdictionCivil Procedure > State & Federal Interrelationships > Abstention*
[HN17] See *28 U.S.C.S. § 1334*(c)(1).

*Civil Procedure > Removal > Basis for RemovalCivil Procedure > State & Federal Interrelationships > Abstention*
[HN18] The courts have generally applied some of the same factors in determining motions for remand as with respect to abstention issues.

*Bankruptcy Law > Practice & Proceedings > JurisdictionCivil Procedure > Removal > Basis for Removal*
[HN19] The equitable grounds that warrant a decision to remand under *28 U.S.C.S. § 1452*(b) are similar to the factors that authorize abstention under *28 U.S.C.S. § 1334*(c).

1995 U.S. Dist. LEXIS 11650, *

*Civil Procedure > Venue > General VenueCivil Procedure > Venue > Change of Venue Generally*
[HN20] See *28 U.S.C.S. § 1412.*

*Bankruptcy Law > Practice & Proceedings > JurisdictionCivil Procedure > Venue > General Venue*
[HN21] *28 U.S.C.S. § 1412* applies to "core" bankruptcy matters, not to "related proceedings."

*Bankruptcy Law > Practice & Proceedings > JurisdictionCivil Procedure > Venue > General Venue*
[HN22] *28 U.S.C.S. § 1412* applies to civil proceedings related to cases under Title 11.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN23] See *28 U.S.C.S. § 1404(a).*

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN24] In general, the plaintiff's choice of forum will not be disturbed, except upon a clear-cut showing that convenience and justice for all parties demands that the litigation proceed elsewhere. The burden is on the movant to establish that a transfer is appropriate. The purpose of *28 U.S.C.S. § 1404(a)* is not to shift the inconvenience from one party to the other.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN25] Where grounds for change of venue include the convenience of witnesses, the movant should provide precise information, in affidavit form, about witnesses to be called and the anticipated areas of the witnesses' testimony.

**COUNSEL: [*1]**

For NEMSA ESTABLISHMENT, S.A., plaintiff: David R Kittay, David R. Kittay, P.C., White Plains, NY. Martin S. Tackel, SHARFF & TACKEL, White Plains, NY.

For VIRAL TESTING SYSTEMS CORPORATION, LONE STAR CASINO CORPORATION, TRAVIS PARTNERS, a general partnership, PAUL J. MONTLE, PAUL V. CULOTTA, individually and as general partners of Travis Partners, defendants: Jonathan L. Price, Schneck, Weltman, Hashmall & Mischel, New York, NY.

**JUDGES:** LORETTA A. PRESKA, District Judge

**OPINIONBY:** LORETTA A. PRESKA

**OPINION:**

    MEMORANDUM AND ORDER

LORETTA A. PRESKA, District Judge:

    Nemsa Establishment, S.A. ("Nemsa") has moved to remand the instant case to the Supreme Court for the State of New York, County of New York; alternatively, for discretionary abstention; and for costs and attorneys' fees in connection with this motion. Nemsa's motions are denied. Defendants' motion to transfer this case to the Southern District of Texas pursuant to *28 U.S.C. § 1404(a)* is granted.

    BACKGROUND

    Plaintiff Nemsa is an establishment formed and functioning under the laws of Liechtenstein and is domiciled in Vaduz, Liechtenstein. (Tackel Aff. P 3. n1) Defendant Viral Testing Systems Corp. ("VTS" or "the Debtor") is a Delaware corporation listed on the American Stock Exchange in New York City. (Id. P 4.) Defendant Lone Star Casino Corporation ("Lone Star"), a Delaware corporation with stock publicly traded on NASDAQ, was originally formed as a wholly-owned subsidiary of VTS in December 1992 and was later spun off to VTS shareholders in May 1993. (Id.) Defendant Travis Partners ("Travis"), a Delaware limited partnership whose only general partners [*2] are defendants Paul J. Montle ("Montle") and Paul V. Culotta ("Culotta"), is a substantial minority shareholder of VTS. (Culotta Aff. P 2; n2 Tackel Aff. P 4.) In addition, Culotta is currently the President and Chief Executive Officer of VTS. (Culotta Aff. P 2.) During the period of time covered by the complaint, Montle and Culotta were the principal executive officers of VTS: Montle was its President and Chief Executive Officer, and Culotta was its Vice President and Chief Financial Officer. (Id.) During this time, Montle and Culotta were involved with Lone Star as well: Montle was its Chairman and Chief Executive Officer, and Culotta was its Chief Financial Officer and a Director of Lone Star. (Id.)

        n1 Reference is made to the affirmation of Martin S. Tackel annexed to Nemsa's Notice of Motion to Remand dated February 17, 1995.

        n2 Reference is made to the affidavit of Paul V. Culotta dated March 23, 1995.

    Nemsa commenced this action in May 1994 in the Supreme Court for the State of New York, County [*3] of New York. (Tackel P 5.) The action arises from VTS's alleged breaches of an agreement (the "Purchase Agreement") with Nemsa, pursuant to which, it is alleged, VTS effectively assumed certain debt obligations to Nemsa of a corporation known as Thermascan, and became obligated to convey to Nemsa

1995 U.S. Dist. LEXIS 11650, *

*Id. at 994* (citations omitted) (emphasis omitted). Courts in this circuit have cited with approval the standard enunciated by the Court of Appeals for the Third Circuit in *Pacor. E.g., Publicker Indus. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992)* (stating that "the test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether the outcome might have any 'conceivable effect' on the bankrupt estate" and that if such a connection were found, the litigation falls within "related to" jurisdiction); [*8] *Bond St. Assocs. v. Ames Dep't Stores, 174 Bankr. 28, 32 (S.D.N.Y. 1994); Grillo v. Zurich Ins. Co., 170 Bankr. 66, 68 (S.D.N.Y. 1994); Neuman v. Goldberg, 159 Bankr. 681, 686-87 (S.D.N.Y. 1993); Mihnlong Enters. v. New York Int'l Hostel, Inc. (In re New York Int'l Hostel, Inc.), 157 Bankr. 748, 751 (S.D.N.Y. 1993).* Our Court of Appeals has cautioned that "related to" jurisdiction is not limitless, n3 of course, and also has found there was no jurisdiction in an action lacking any "significant connection" to the bankruptcy case. *Turner v. Ermiger (In re Turner), 724 F.2d 338, 341 (2d Cir. 1983).* See also *In re Cuyahoga, 980 F.2d at 114.* At least one court has questioned whether the "significant connection" language narrows — or expands — the Pacor standard in this circuit. *Weisman v. Southeast Hotel Properties, No. 91 Civ. 6232 (MBM), 1992 WL 131080 at *3 (S.D.N.Y. June 1, 1992).* But see *Fietz v. Great Western Savings (In re Fietz), 852 F.2d 455, 457 (9th Cir. 1988); Widewaters Roseland Center Co. v. TJX Co., 135 Bankr. 204, 206 (N.D.N.Y. 1991)* (stating that Turner narrows the standard set forth in Pacor).

n3 See also *Pacor, 743 F.2d at 994.*

[*9]

In the instant action, the defendants rely in particular upon *Kelley v. Salem Mortgage Co., (In re Salem Mortgage), 783 F.2d 626 (6th Cir. 1986)* and Ameritrust v. Opti-Gage, Inc.(In re Opti-Gage, Inc.), *128 Bankr. 189 (Bankr. S.D. Ohio 1991)* in support of their argument that this action is "related to" the VTS bankruptcy. In Opti-Gage, it was held that:

[HN6]

Proceedings are "related to" bankruptcy cases not only where the outcome of the proceeding may conceivably have an effect upon the estate being administered, but also where parties are sufficiently intertwined with the debtor.

*128 Bankr. at 195* (explaining Salem Mortgage). In Salem Mortgage, the Attorney General of Michigan filed suit against five related mortgage broker-debtors and eight other defendants. *783 F.2d at 629.* The parties negotiated a proposed consent order which had the effect,

inter alia, of releasing all claims against the debtors from the mortgage transactions except for claims concerning their alleged misappropriation of escrow funds. *Id. at 634.* Although the bankruptcy court approved the order, the district court dismissed the action for lack of subject matter jurisdiction. [*10] *Id. at 630-31.* The Court of Appeals for the Sixth Circuit reversed and held that the action was not beyond "related to" jurisdiction. *Id. at 628-29.* The Court noted, first, that the parties in Salem Mortgage were "more intertwined" than those in earlier cases wherein the actions had been held beyond "related to" jurisdiction. n4 *Id. at 635.* Second, the Court rejected the argument that a finding of definite liability on the part of the estate was a requirement of "related to" jurisdiction. Id.

n4 The Court stated that:

The objectors to approval of the order of the bankruptcy court argue strongly that approval would be in conflict with the Third Circuit. However, we do not find the analysis in *Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984)* to be compelling in this case. In Pacor, the plaintiff brought a state court action for work-related exposure to asbestos against the product's supplier. The supplier filed a third-party complaint impleading the original manufacturer. After the manufacturer entered chapter 11 bankruptcy proceedings, the supplier sought to remove the entire controversy to bankruptcy court. The Third Circuit held that the action between the supplier and manufacturer was removable, but that the original action against the supplier was not related to a case in bankruptcy and therefore could not be removed. As Judge Graves stated in a subsequent proceeding in this case, "Pacor would require the Debtor to be bound by res judicata or collateral estoppel, or, in the alternative, a finding that 'automatic liability against the debtor exist' in order to find a civil proceeding has an effect on the estate." *Matter of Salem Mortgage Co., 50 Bankr. 34, 40 (Bankr. E.D. Mich. 1985).* In distinguishing Pacor, we note

1995 U.S. Dist. LEXIS 11650, *

that the parties in the mortgage transactions in this proceeding are more intertwined than the parties in Pacor. We also agree with Judge Graves that [HN7] the statute does not require a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceeding. *Id. at 41.* As discussed above, Congress intended a grant of broad jurisdiction under the bankruptcy laws.

Id. at 634-35.

**[*11]**

As mentioned supra, defendants also rely upon Opti-Gage. In Opti-Gage, Cavender was the sole owner of the debtor-corporation *Opti-Gage. 128 Bankr. at 191.* Cavender transferred control of Opti-Gage to two individuals, Lich and Auld, who thus became officers and directors of Opti-Gage. *Id. at 192.* As part of the transfer, plaintiff Ameritrust Co. loaned $ 1.5 million to Opti-Gage secured by, inter alia, the personal guaranties of Cavender, Lich, and their respective wives. *Id. at 191-92.* After Opti-Gage defaulted on the loan, plaintiff sued Opti-Gage, the Cavenders, and the Lichs in state court for various relief under the guaranties. *Id. at 191.* Subsequently, Opti-Gage filed a petition pursuant to chapter 11. Id. The Cavenders then asserted, inter alia, cross-claims against Opti-Gage and Lich, and joined Auld as a third-party defendant. *Id. at 191-93.*

After the action had been removed to bankruptcy court, Auld moved to dismiss the Cavenders' cross-claims against him on the grounds that the court lacked subject matter jurisdiction. *Id. at 193.* The Court denied Auld's motion. First, although it was possible that the cross-claims might "ultimately [*12] have no effect on Opti-Gage's bankruptcy", the Court declined to conclude that the cross-claims would "have no conceivable effect." *Id. at 195.* Second, the Court found that the Cavenders had "challenged the combined actions of both the debtor and nondebtors," and that the resolution of the dispute accordingly would "involve considerations of Auld's and Lich's involvement in those actions." *Id. at 196.* The factors the Court pointed to included the following:

> In particular, because Lich and Auld owned the controlling interests of the debtor corporation, were officers and directors of that corporation, are alleged to have conspired to strip the corporation of its assets and to defraud the Cavenders, and it may be significant to distinguish Auld's and Lich's actions in their

corporate capacities vis-a-vis their individual capacities, the court finds that Auld is sufficiently intertwined with the debtor to support a finding of bankruptcy jurisdiction.

Id. The Court pointed out that it was not finding the Cavenders' cross-claims related simply due to the common facts; [HN8] "a factual nexus between a civil proceeding and a bankruptcy case is in and of itself insufficient [*13] to confer bankruptcy jurisdiction upon a court." Id. As the Court explained:

> With respect to the "intertwining" test, then, it is the degree to which the parties (Lich, Auld, and the debtor, Opti-Gage) are intertwined that supports a finding of jurisdiction. Unfortunately, it is impossible to precisely define when parties are sufficiently intertwined with the debtor to find bankruptcy jurisdiction, but the court believes that the factors listed in the preceding paragraph are sufficient to support jurisdiction for the cross-claims filed jointly against Auld, Lich, and Opti-Gage.

Id. The Court acknowledged that the facts presented in Opti-Gage were "probably very near the outer boundaries of bankruptcy jurisdiction," but concluded that:

> Merely designating parties as nondebtors or third parties does not per se provide the answer to whether the requisite jurisdiction is present. Instead, a functional analysis of the relationship between the claim and the bankruptcy estate must be performed, i.e., could resolution of the claim conceivably have any effect upon the estate being administered in bankruptcy? . . . [HN9] Where parties are sufficiently intertwined [*14] with the debtor, claims involving the joint conduct of the debtor and nondebtor defendants will be "related to" the debtor's bankruptcy case.

*Id. at 197-98.*

I find the logic of Salem Mortgage and Opti-Gage persuasive. n5 The parties have not brought to my attention, nor has research uncovered, any cases in this circuit either expressly adopting or rejecting the reasoning of these cases. Given the unusual facts in this action, I find that VTS and the Non-Debtor Defendants are so intertwined that this action falls within "related to" jurisdiction, and that this action has a "significant

1995 U.S. Dist. LEXIS 11650, *

connection" with the VTS bankruptcy proceeding. First, as the defendants point out, during the entire period covered by the complaint, Montle was VTS's President and Chief Executive Officer, and Culotta was VTS's Vice President and Chief Financial Officer. (Culotta Aff. P 2.) Accordingly, during that time, VTS conducted its business through the instrumentality of Montle and Culotta as its principal executive officers. (Id.) Consequently, resolution of plaintiff's claims against VTS will involve consideration of the Non-Debtor Defendants' involvement in the acts underlying those claims. [*15] *Opti-Gage*, 128 Bankr. at 196 (noting that Lich and Auld were officers and directors of the debtor corporation, and that it could be "significant" to distinguish between the actions of Auld and Lich with respect to their individual and corporate capacities).

n5 Nemsa's attempts to distinguish *Salem Mortgage* are not persuasive. For example, Nemsa argues that (i) the parties in *Salem Mortgage* were already engaged in an adversary proceeding before the bankruptcy court, (ii) the issue of subject matter jurisdiction had not been raised below by the parties or the bankruptcy court, and (iii) jurisdiction was addressed by the district court during its review of the proposed order of the bankruptcy court. However, Nemsa has not explained why these differences are significant. In addition, Nemsa argues that the Court of Appeals was "clearly . . . [seeking] to resuscitate the result reached by consensus among the parties and, in large measure, [uphold] subject matter jurisdiction on that basis." (Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion to Remand ("Pl. Reply") at 3.) While Nemsa's interpretation of *Salem Mortgage* might be interesting to a legal realist, Nemsa's argument, for the purposes of the instant motion, remains unsupported by the language of the case.

**[*16]**

However, it is not merely from the fact that Culotta and Montle were officers of VTS that I find the instant action is "related to" the VTS chapter 11 proceeding. Rather, it is the fact that Nemsa apparently claims that the defendants together took actions which cannot be easily parsed out as attributable to VTS or to Non-Debtor Defendants. Given the allegations pleaded in Nemsa's complaint, it would be difficult -- if not impossible -- to distinguish at this juncture between actions taken by Culotta and Montle in their individual and corporate capacities, without considering VTS's and the Non-Debtor Defendants' joint conduct for each allegation. *Opti-Gage*, 128 Bankr. at 196; *Matter of Wood*, 825 F.2d 90, 94 (5th Cir. 1987) (stating that " [HN10] when the

plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334") (citations omitted).

More specifically, in reviewing the complaint, it is apparent that the causes of action asserted against the Non-Debtor Defendants are intimately intertwined with those asserted against VTS. The first five causes of action asserted name only [*17] VTS; there can be no dispute that there is jurisdiction over these claims. n6 The sixth cause of action is asserted against VTS, Travis, Montle, and Culotta collectively. In this cause of action, Nemsa alleges that Montle and Culotta, as directors and officers of VTS and partners of Travis, and Travis itself controlled VTS. (Compl. PP 54-57.) Nemsa alleges that VTS, Travis, Montle, and Culotta made false and misleading misrepresentations and statements to Nemsa regarding the VTS-Thermascan merger in order to induce Nemsa to execute and deliver the Purchase Agreement and to vote its shares of Thermascan in favor of the merger. (Id. PP 60-63.) Even Nemsa does not distinguish between the actions of VTS and those of the Non-Debtor Defendants in its allegations.

n6 In its first cause of action, Nemsa seeks specific performance of the alleged agreement between VTS and Nemsa wherein VTS promised to pay Nemsa cash and VTS equity securities in exchange for assignment to VTS of all claims possessed by Nemsa against Thermascan. (Compl. PP 17, 30.) In its second cause of action, Nemsa asserts that VTS breached its contract with it. (Id. PP 32-33.) In its third cause of action, Nemsa, as a stockholder of Thermascan and an intended beneficiary of the merger agreement between VTS and Thermascan, claims that VTS failed to perform its obligations to Nemsa pursuant to the agreement, thereby breaching it. (Id. PP 15, 36-37, 42-43.) In its fourth cause of action, Nemsa seeks specific performance of the merger agreement. (Id. P 47.) In its fifth cause of action, Nemsa asserts that VTS breached the merger agreement by failing to satisfy debt obligations to certain creditors, including Nemsa. (Id. PP 50-51.)

**[*18]**

Similarly, in its tenth and eleventh causes of action, Nemsa challenges the joint actions of VTS, Lone Star, Travis, Montle, and Culotta. (Id. PP 110-121.) Specifically, in its tenth cause of action, Nemsa asserts that Travis, Montle, and Culotta caused VTS to assign to Lone Star VTS's right to purchase Papone's Palace, Ltd. Liability Co. without fair consideration at a time when VTS was insolvent (the "Casino"). (Id. PP 69, 114.)

1995 U.S. Dist. LEXIS 11650, *

According to Nemsa, Travis, Montle, and Culotta caused VTS to spend $ 1,665,000 for 166,456 shares of valueless Lone Star preferred stock. (Id. P 116.) Nemsa claims these actions, plus VTS's spin-off of Lone Star in the form of a distribution and/or conveyance of 100% of the common stock of Lone Star to VTS stockholders, damaged Nemsa. (Id. PP 23, 117.) Nemsa asks to have set aside the conveyance of Lone Star common shares pursuant to the spin-off and the payment of $ 1,665,000 by VTS to Lone Star for Lone Star preferred shares; seeks declaratory judgment that these conveyances were fraudulent and void as against Nemsa; and seeks a judgment restraining the defendants from selling, disposing of, or encumbering their VTS common or Lone Star common [*19] shares. (Id. P 119.) In its eleventh cause of action, Nemsa seeks monetary damages for the allegedly fraudulent conveyances described above. (Id. P 121.) In the five remaining causes of action, Nemsa does not specifically name VTS as a defendant. However, in perusing these claims, it is apparent that Nemsa's allegations against the Non-Debtor Defendants reflect VTS's inseparable involvement in these events that Nemsa alleges. n7

n7 In the seventh cause of action asserted, Nemsa alleges that Travis, Montle and Culotta usurped a corporate opportunity belonging to VTS, i.e., by causing VTS to acquire and subsequently assign to Lone Star the rights to purchase the casino alluded to earlier. (Compl. PP 68-84.) In its eighth claim, Nemsa asserts that Montle and Culotta breached their fiduciary duty to VTS by, inter alia, causing payment by VTS in connection with the purchase of the casino, assignment by VTS to Lone Star of the rights to purchase the casino and payment to Lone Star for illiquid, speculative preferred Lone Star shares at a time during VTS's insolvency. (Id. PP 85-105.) Nemsa asserts that Montle and Culotta failed to fulfill their fiduciary duties to Nemsa and other VTS creditors. (Id. P 104.) In its ninth cause of action, Nemsa alludes to the same factual circumstances and alleges that Travis, Montle and Culotta breached their fiduciary duties to Nemsa as a minority stockholder in VTS. (Id. PP 107-08.) In the twelfth cause of action, Nemsa alleges that Lone Star, Travis, Montle and Culotta aided and abetted a fraudulent conveyance, i.e. the circumstances described above. (Id. PP 122-29.) In the thirteenth cause of action, Nemsa asserts a claim for tortious interference with contract against Travis, Montle and Culotta. Nemsa alleges that:

Travis, Montle and Culotta, with due notice and knowledge of the

aforesaid Purchase Agreement and Merger Agreement, did by virtue of the actions hereinabove set forth wrongfully, knowingly, intentionally and maliciously, and without reasonable justification or excuse, persuade and entice defendant VTS to, and VTS did, violate, repudiate and breach each of said contracts with plaintiff for the sole purpose of harming plaintiff.

(Id. PP 131.)

[*20]

Thus, in analyzing Nemsa's allegations in the complaint, it is apparent that the actions of VTS and those of the Non-Debtor Defendants are inextricably intertwined. The defendants have argued that:

The claims against all defendants are of a piece, and depend for their proof and evaluation of liability of the several defendants upon a weighing of the conduct of all defendants acting individually, in concert and possibly in multiple capacities.

(Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Remand ("Def. Opp.") at 12 n.8) (emphasis in original). The defendants are correct. Due to the nature of the factual allegations in the instant action, i.e., the acts at issue involve the joint conduct of VTS and Non-Debtor Defendants, and the relationships and degree of interconnectedness among the parties, I find that the instant action is "related to" and has a significant connection with the VTS bankruptcy proceeding and, thus, that jurisdiction is proper. n8 Accordingly, Nemsa's motion to remand to the state court must be denied.

n8 Even if the definition of "related to" prevailing in the Second Circuit is narrower than that set forth in Pacor, I find that the instant action would fall within those narrower parameters.

[*21]

II. Equitable Remand and Discretionary Abstention

Nemsa argues that even if the Court finds that it has subject matter jurisdiction to entertain this action, other grounds support remand. Specifically, Nemsa points to [HN11] *28 U.S.C. § 1452*(b), which authorizes a federal

1995 U.S. Dist. LEXIS 11650, *

court to remand a case on any "equitable ground":

[HN12]

The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

*28 U.S.C. § 1452*(b). Section 1452(b) does not define the term "equitable ground"; however, [HN13] among the factors taken into account by courts when deciding whether to remand are:

(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness [*22] of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; (7) prejudice to the involuntarily removed defendants.

*Drexel Burnham Lambert Group v. Vigilant Ins. Co., 130 Bankr. 405, 407 (S.D.N.Y. 1991).* See also *Phoenix Elec. Contracting v. Lovece, No. 93 Civ. 4340 (LMM), 1993 WL 512917 at *3 (S.D.N.Y. Dec. 9, 1993)* (referring to the factors set forth in Drexel Burnham Lambert Group and stating that courts have also considered the "duplicative and uneconomical use of judicial resources" and the "lessened possibility of inconsistent results"). Although the question of whether remand is appropriate is a close one, I find remand is inappropriate here.

Nemsa contends that the instant action involves questions of New York state law, thus favoring remand to New York state courts. E.g., *Searcy v. Knostman, 155 Bankr. 699, 710 (Bankr. S.D. Miss. 1993)* (remanding where case involved questions of state law); *Rednel Tower, Ltd. v. Riverside Nursing Home (In re Riverside Nursing Home), 144 Bankr. 951, 956 (Bankr. S.D.N.Y. 1992)* (remanding where action involved a state law eviction of a chapter 11 debtor); *Bright v. Southern Technical [*23] College, Inc. (In re Southern Technical College, Inc.), 144 Bankr. 421, 422 (Bankr. E.D. Ark. 1992)* (remanding where action was premised upon breach of contract, breach of warranty, and fraud, none of which were "arising under" or "arise in" the

bankruptcy case). However, as defendants' counsel pointed out at the conference, it is not yet apparent that New York law applies to the claims in the instant action. Furthermore, even assuming New York state law applies, Nemsa, when questioned at the conference, was unable to explain in what way the New York law issues were either unsettled or complicated. Of course, this inability significantly undercuts the degree to which the state law factor weighs in favor of remand to New York courts. E.g., *Neuman v. Goldberg, 159 Bankr. 681, 688 (S.D.N.Y. 1993)* (stating that " [HN14] the fact that a complaint is based on state law causes of action does not mandate equitable abstention or remand, particularly where the state law claims are not novel or complex"); *In re Riverside Nursing Home, 144 Bankr. at 956* (noting that "adjudication of the eviction proceeding required the application of New York State's complex landlord and tenant law") (emphasis [*24] added); *Frazier v. Lawyers Title Ins. Corp. (In re Butcher), 46 Bankr. 109, 114 (Bankr. N.D. Ga. 1985)* (denying motion to remand; although litigation involved question of state law, dispute did not involve unsettled questions of state law); *Ridgefield, Inc. v. Unity Foods, Inc. (In re Unity Foods, Inc.), 35 Bankr. 876, 879 (Bankr. N.D. Ga. 1983)* (noting that case involved "application of state contract and commercial law which commonly arises in the Bankruptcy Court" and distinguishing an earlier case involved "unsettled questions of real property law").

Nemsa argues that remand is warranted for another reason as well, that is, Nemsa's right to a jury trial might be compromised. The recently amended *28 U.S.C. § 157*(e) provides:

[HN15]

If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

*28 U.S.C. § 157*(e). In other words, Nemsa would not have a jury trial as a matter of right. E.g., *Southern Technical College, 144 Bankr. at 422 [*25]* (noting that "[a] right to jury trial is another factor which militates in favor of remand to the state court"). This factor thus favors remand.

Next, Nemsa argues that it would be prejudiced by having to prosecute its claims against the Non-Debtor Defendants in Bankruptcy Court in Texas. Nemsa's points concerning alleged prejudice if the action is transferred to Texas are discussed infra with respect to the proposed motion to transfer. At this juncture, it is sufficient to note that Nemsa's claim of prejudice is not persuasive.

Concerns for judicial economy and efficiency also

1995 U.S. Dist. LEXIS 11650, *

suggest that remand is inappropriate.

> [HN16]
> Where a remand to the state court from
> whence the case was removed would only
> entail a duplication of effort and
> multiplicity of litigation, a retention of the
> case by the bankruptcy court would be
> appropriate. *In re Brothers Coal Co. Inc.,*
> *6 Bankr. 567 (Bnkrtcy. W.D. Va. 1980).*

*Matter of Wild Oaks Utils., Inc.,* 18 Bankr. 959, 963
(Bankr. S.D.N.Y. 1982) (parallel citation omitted). To
remand the case would result in "a duplication of effort
and multiplicity of litigation" because of the strongly
intertwined relationship between the Non-Debtor [*26]
Defendants and VTS. Defendants have argued that most,
if not all, of the paper discovery, deposition testimony,
and trial testimony in this action would have to be redone
were there a separate, subsequent proceeding against
VTS. It is likely that the proof Nemsa will use to
substantiate its claims against the Non-Debtor
Defendants will be the same as that offered against VTS.
Accordingly, concerns of efficiency and judicial
economy do not favor remand here.

The degree of relatedness of the instant case to the
proceeding in VTS's bankruptcy does not favor remand.
As was explained supra, the Non-Debtor Defendants are
inextricably intertwined with VTS and its bankruptcy
case. As a result of the unusually intertwined
relationships, it would difficult for a finder of fact to
determine whether any of the Non-Debtor Defendants'
alleged acts were performed on their own behalf or on
behalf of VTS without considering VTS's and the Non-
Debtor Defendants' acts collectively. Thus, the
relatedness between the VTS bankruptcy proceeding and
this action favors denial of the remand motion.

In sum, although certain factors favor remanding this
action, remand is, on balance, inappropriate, and Nemsa's
[*27] motion for remand accordingly is denied.

In the alternative, Nemsa has requested that if I deny
the motion to remand this action, then I abstain from
hearing this action in accordance with the discretionary
abstention provision codified at *28 U.S.C. § 1334(c)(1).*
Section 1334(c)(1) states:

> [HN17]
> Nothing in this section prevents a district
> court in the interest of justice, or in the
> interest of comity with State courts or
> respect for State law, from abstaining
> from hearing a particular proceeding
> arising under title 11 or arising in or
> related to a case under title 11.

*28 U.S.C. § 1334(c)(1).* Courts have disagreed as to
whether abstention under *28 U.S.C. § 1334(c)* applies to

a removed action. E.g., *Fedders North Am., Inc. v.*
*Branded Prods., Inc. (In re Branded Products, Inc.),* 154
*Bankr. 936, 939 (Bankr. W.D. Tex. 1993)* (stating that "as
a doctrine, abstention under § 1334(c), be it mandatory
or discretionary, has no application in the context of a
removed action"); *Paul v. Chemical Bank (In re 666*
*Assocs.), 57 Bankr. 8, 12 (Bankr. S.D.N.Y. 1985).* But see
*Anderson v. Hoechst Celanese Corp. (In re United States*
*Brass Corp.), 173 Bankr. 1000, 1004 (Bankr.* [*28]
*E.D. Tex. 1994)* (stating that "it is the majority opinion
that abstention does apply to cases removed under §
·1452") (collecting cases); *Channel Bell Assocs. v. W.R.*
*Grace & Co.,* No. 91 Civ. 5485 (PKL), 1992 WL 232085
at *7-9 (S.D.N.Y. Aug. 31, 1992) (criticizing In re 666
Assocs.); *Chiodo v. NBC Bank-Brooks Field (In re*
*Chiodo),* 88 Bankr. 780, 785 (W.D. Tex. 1988).

Nemsa's request that I abstain should be denied
regardless of whether the abstention doctrine technically
applies to this action. That is, if abstention does not apply
because this action was removed from state court,
Nemsa's request would be denied. Alternatively, if
abstention does apply, then I must consider virtually the
same factors as I did in connection with the motion to
remand pursuant to § 1452(b). E.g., *Searcy v. Knostman,*
155 Bankr. 699, 710 (S.D. Miss. 1993) (listing factors
that a court should consider on the question of abstention
"under § 1334(c)(1) and § 1452(b)"); *Aetna Life Ins.*
*Co. v. Danbury Square Assocs. (In re Danbury Square*
*Assocs.),* 150 Bankr. 544, 547-48 (Bankr. S.D.N.Y. 1993)
(stating that [HN18] "the courts have generally applied
some of the same factors in determining motions [*29]
for remand as . . . with respect to abstention issues"); *In*
*re Riverside Nursing Home,* 144 Bankr. 951, 957 (Bankr.
*S.D.N.Y. 1992)* (stating that [HN19] "the equitable
grounds that warrant a decision to remand under 28
U.S.C. § 1452(b) are similar to the factors that authorize
abstention under *28 U.S.C. § 1334(c)").* As discussed
supra, remand is not warranted in the instant case;
accordingly, neither is permissive abstention.

**III. Transfer**

Defendants move pursuant to *28 U.S.C. § 1412* to
transfer this action to the Southern District of Texas.
Section 1412 provides that:

> [HN20]
> A district court may transfer a case or
> proceeding under title 11 to a district court
> for another district, in the interest of
> justice or for the convenience of the
> parties.

*28 U.S.C. § 1412.* Courts in this circuit generally have
held that [HN21] § 1412 applies to "core" bankruptcy
matters, not to "related proceedings." *M.D. Sass*
*Re/Enterprise Partners v. Cargill Financial Servs. Corp.,*
No. 93 Civ. 7414 (TPG), 1994 WL 97335 at *1 (S.D.N.Y.

A-0285

1995 U.S. Dist. LEXIS 11650, *

Mar. 18, 1994); *Couri v. Fisher (In re JCC Capital Corp.), 147 Bankr. 349, 356 (Bankr. S.D.N.Y. 1992); Luciano v. Maggio, 139 Bankr. 572, 576 (E.D.N.Y.* [*30] *1992); Kitto v. Thrash Oil & Gas Co., No. Civ-88-169E, 1992 WL 34126* at *2 n.3 (W.D.N.Y. Feb. 13, 1992); *Chase Manhattan Bank v. Francini, No. 91 Civ. 2515 (MBM), 1991 WL 161359* at *1 (S.D.N.Y. Aug. 16, 1991); *In re Thomas McKinnon Secs., Inc. v. White, 126 Bankr. 833, 834-35 (Bankr. S.D.N.Y. 1991); Goldberg Holding Corp. v. NEP Prods., Inc., 93 Bankr. 33, 34 (S.D.N.Y. 1988).* But see *Bricklayers Dist. Council Welfare Fund v. Furtunato Sons, No. 92 Civ. 6329 (JFK), 1994 WL 471510* at *2-3 (S.D.N.Y. Sept. 1, 1994) (transferring a related case pursuant to § 1412 but not addressing whether the relevant transfer statute was § 1412 or § 1404(a)); *Weisman v. Southeast Hotel Properties, No. 91 Civ. 6232 (MBM), 1992 WL 131080* at *6 (S.D.N.Y. June 1, 1992) (stating that [HN22] § 1412 applies to civil proceedings related to cases under Title 11). Because the instant action is related to the VTS chapter 11 proceeding, § 1412 is inapplicable, and the request to transfer pursuant to § 1412 is accordingly denied.

Defendants have moved for the transfer of the instant action pursuant to *28 U.S.C. § 1404(a).* [HN23] Section 1404(a) states:

> For convenience of parties and witnesses, [*31] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

*28 U.S.C. § 1404(a).* The factors relevant to the consideration of a § 1404(a) transfer include:

> (1) the place where the operative facts occurred; (2) the convenience to parties; (3) the convenience of witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interest of justice.

*Associated Artists Entertainment, Inc. v. Walt Disney Pictures, No. 93 Civ. 3934 (RJW), 1994 WL 708142* at *2 (S.D.N.Y. Dec. 19, 1994) (quoting *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc., 774 F. Supp. 858, 867-68 (S.D.N.Y. 1991)).* See also *Carrie Forbes, Inc. v. Gap, Inc., No. 94 Civ. 5337 (LLS), 1994 WL 693554* at *1 (S.D.N.Y. Dec. 9, 1994). [HN24] In general, the plaintiff's choice of forum "will not be disturbed, except upon a clear-cut showing that convenience and justice for

all parties demands that the litigation proceed elsewhere." [*32] *Doman v. Herman, No. 95 Civ. 0260 (RWS), 1995 WL 347402* at *1 (S.D.N.Y. June 8, 1995) (quoting *Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp., 668 F. Supp. 187 (S.D.N.Y. 1987), aff'd, 848 F.2d 391 (2d Cir. 1988)).* The burden is on the movant to establish that a transfer is appropriate. *Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978),* cert. denied, *440 U.S. 908, 59 L. Ed. 2d 455, 99 S. Ct. 1215 (1979); Carlton Int'l v. American Concord Techage, Inc., No. 94 Civ. 3750 (JFK), 1995 WL 450274* at *4 (S.D.N.Y. July 31, 1995); *Chase Manhattan Bank v. Francini, No. 91 Civ. 2515 (MBM), 1991 WL 161359* at *2 (S.D.N.Y. Aug. 16, 1991). I also note that "the purpose of § 1404(a) is not to shift the inconvenience from one party to the other." *Doman, 1995 WL 347402* at *1 (quoting *Milgrim Thomajan & Lee, P.C. v. Nycal Corp., 775 F. Supp. 117, 122 (S.D.N.Y. 1991)).*

In the instant case, defendants have met their burden of showing that transfer to the Southern District of Texas is appropriate. The convenience of witnesses favors Texas. Where a party relies upon the convenience of witnesses, that party should provide a general statement [*33] of what the proposed testimony will address. *Factors, Etc., 579 F.2d at 218* (stating that "when a party seeks [a] transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover"). n9 In the instant action, defendants state that all party witnesses from defendants' side are located in Houston. Defendants state that:

> The importance and materiality of the testimony of Mr. Culotta, Mr. Montle and other VTS and Lone Star personnel is patently obvious. These were the individuals who negotiated the agreements at issue and through whom, as officers of defendant corporations and partners of defendant partnership, all actions alleged by plaintiff to constitute breach of contract or tortious conduct were carried out. Their testimony will encompass all aspects of the alleged claims for relief, and will in large part, supplemented by supporting documentary evidence and the books and records of defendants, all of which is in Texas, constitute defendants' defense to such claims.

(Letter of Jonathan I. Price dated June 2, 1995 ("6/2/95 Price Ltr.") [*34] at 3 n.4). Nemsa, on the other hand, vaguely states that it expects to call:

1995 U.S. Dist. LEXIS 11650, *

(i) one or more former directors of VTS who, upon information and belief, reside in the Northeast, as well as (ii) the stock specialist for VTS and Lone Star who, upon information and belief, has its offices in New York, and (iii) an expert witness residing in New York.

(Letter of Martin S. Tackel dated May 25, 1995 ("Tackel Ltr.") at 6.) Nemsa has neglected to provide any greater specificity as to the identity of these witnesses or the necessity of their testimony. In addition, Nemsa has not claimed that the former directors may be found in New York; Nemsa states only that they are located in the Northeast. One may reasonably assume that if these witnesses were located in New York, then Nemsa would have so stated. Thus, one may also reasonably assume these witnesses — not found in New York — would have to travel whether the action is litigated in New York or in Texas. Finally, Nemsa is a domiciliary of Liechtenstein and receives mail care of a Swiss address. Nemsa has not offered anything contradicting defendants' contention that Nemsa's party witnesses will be required to travel from Europe [*35] to prosecute this action in any event. Thus, it seems that Nemsa's party witnesses will not be materially inconvenienced by having to pursue this action in Texas instead of New York. In short, the convenience of witnesses favors transfer. n10

> n9 Judge Keenan has recently stated:
> [HN25]
> Where grounds for change of venue include the convenience of witnesses, movant should provide precise information, in affidavit form, about witnesses to be called and the anticipated areas of their testimony.

*Carlton Int'l*, 1995 WL 450274 at *4. In this action, the fact that neither plaintiff nor defendants submitted affidavits is excusable because I instructed the parties to state their positions on transfer with letter-briefs — in lieu of full-blown motions — in order to minimize litigation expenses. However, to excuse the submission of a formal affidavit is not the same as overlooking the failure to bring specific facts to my attention.

> n10 Plaintiff appears to argue that defendants' failure to attempt to remove and transfer the instant action earlier is somehow relevant to the convenience to witnesses. Plaintiff cites no case in support of this puzzling proposition.

[*36]

With respect to the convenience to the parties, I again note that all the principals on defendants' side are located in Houston. As stated above, Nemsa is a Liechtenstein domiciliary. Nemsa has done no more than conclusorily state that it would be inconvenienced by litigating the instant action in Texas. n11 Nemsa has not explained why it would be more convenient to litigate in New York than it would be in Texas.

> n11 For example, plaintiff states simply that "a transfer of this action to the Texas Court will have a decisively negative impact on Nemsa's ability to continue the prosecution of this action." (Tackel Ltr. at 4.) I note also that plaintiff refers to the expense of seeking new counsel. (Id.)

In terms of the location of the operative facts, certain facts took place in New York. For example, defendants acknowledge that aspects of the contract between plaintiff and VTS were negotiated physically or by telephone with persons in New York. However, the majority of the operative events appear to [*37] have taken place in Texas, not New York. Defendants state:

> The conduct which is alleged actually to constitute the breach of the VTS-Nemsa contract and the VTS-Thermascan merger agreement took place in Texas, as did the conduct alleged to constitute the breaches of fiduciary duty, usurpation of corporate opportunity and tortious interference with contract by Travis, Montle and Culotta and fraudulent conveyances by all defendants.

(Letter of Jonathan I. Price dated May 12, 1995 ("5/12/95 Price Ltr.") at 7.) Thus, this factor weighs in favor of transfer to Texas.

The sources of proof also point in favor of Texas. VTS's headquarters is in the Houston area, as are its present and most of its former officers, directors, and employees. VTS's files, books, and records are also located in the Houston area. The personal files of Montle and Culotta, as well as the personnel and business records of Lone Star and Travis, are also located in Texas. Plaintiff, however, is located in Europe and does not appear to have offices or other facilities in New York. Thus, this factor also points in favor of Texas.

Considerations of trial efficiency favor transfer for the reasons set forth [*38] in the context of the remand discussion supra.

In sum, the overwhelming majority of the relevant

1995 U.S. Dist. LEXIS 11650, *

factors point toward Texas. n12 I find that, even taking into account the proper deference due a plaintiff's choice of forum, consideration of the factors pertinent to a § 1404(a) motion lead to the conclusion that this action should be transferred to the Southern District of Texas.

n12 The remaining factors are of little importance in the instant action. For example, the forum's familiarity with the governing law does not point strongly towards either New York or Texas. Neither party has established the applicability of the laws of a particular jurisdiction. Also, the question of compulsory process does not point strongly toward either New York or Texas. Defendants predict that there will be few, if any, non-party witnesses. Plaintiff states that it plans to call witnesses located in the northeast; however, as stated supra, plaintiff has not identified those witnesses or explained their significance.

IV. [*39] Miscellaneous

Nemsa's request for costs and attorneys' fees

pursuant to *28 U.S.C. § 1447*(c) is denied because the instant action was not remanded. I also need not address defendants' argument that if there was no "related to" jurisdiction over the instant action, there was supplemental jurisdiction over the proceeding. I also need not address defendants' request that the instant proceeding be stayed pending the resolution of VTS's bankruptcy case.

CONCLUSION

Plaintiff's motion to remand the instant action to state court is denied. Plaintiff's request for abstention is denied. Defendants' motion to transfer pursuant to *28 U.S.C. § 1412* is denied. Defendants' motion to transfer the instant action pursuant to *28 U.S.C. § 1404*(a) to the Southern District of Texas is granted. The Clerk of the Court shall mark this action closed.

Dated: New York, New York
August 14, 1995

LORETTA A. PRESKA, U.S.D.J.