# EXHIBIT K

1992 U.S. Dist. LEXIS 9206, *

LEXSEE 1992 U.S. DIST. LEXIS 9206

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Plaintiff, v. CCI-BOWERS CO., Defendant.

Civil No. 91-5681 (CSF)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*1992 U.S. Dist. LEXIS 9206*

June 15, 1992, Filed; June 17, 1992, Entered

NOTICE: [*1]

NOT FOR PUBLICATION

PRIOR HISTORY: Bkr. Adv. No. 91-3013. N.J. Sup. Ct. UNN-L-8986-90.

JUDGES: FISHER

OPINIONBY: CLARKSON S. FISHER

OPINION:

OPINION

FISHER, District Judge

Before the court is an appeal of two orders of the United States Bankruptcy Court dated July 30, 1991, and August 2, 1991. Also before the court is an oral report and recommendation of the bankruptcy court embodied in the transcript of a hearing held on July 22, 1991. There are a number of issues presented to this court for review. Specifically, appellee, the Port Authority of New York and New Jersey (Port Authority), challenges the subject matter jurisdiction of the federal court over this controversy. Additionally, the Port Authority questions the bankruptcy court's failure to recommend that the district court abstain from hearing the matter. Moreover, the appellee invokes the sovereign immunity protection embodied in the Eleventh Amendment to the United States Constitution. Finally, appellee questions whether the New Jersey Mechanic's Lien Law, N.J.S.A. § 2A:44-64 et seq., is applicable to property owned by an arm of the sovereign and whether appellant, CCI-Bowers Co. (CCI-Bowers), complied with the statutory prerequisites to maintenance of [*2] a Mechanic's Lien Law action.

CCI-Bowers appeals from the bankruptcy court's denial of its motion for summary judgment. Additionally,

CCI-Bowers appeals from the bankruptcy court's determination that the Port Authority is entitled to a jury trial. Because the interests of equity, justice and comity will be served best by remanding this action to state court pursuant to 28 U.S.C. § 1452(b), the court will not address the issues presented above.

CCI-Bowers is a construction company and the successor-in-business to Lewis C. Bowers & Sons, Inc. (LCB). LCB filed a petition for reorganization under chapter 11 of the bankruptcy code on November 7, 1988. Subsequently, LCB was successfully reorganized under a plan confirmed by the bankruptcy court. Under the plan, the bankruptcy court retained jurisdiction over all disputes arising out of construction projects in progress at the time of LCB's filing, on November 7, 1988. At the time of LCB's filing, it had a construction contract with Capcow, Inc. to design and build a 192,000-square-foot office, manufacturing and warehouse facility in Elizabeth, New Jersey. n1 Capcow was not the owner of the land; rather, it leased the property from [*3] the Port Authority. n2

> n1 Pursuant to LCB's plan of reorganization, the construction contract had been assigned to CCI-Bowers.
>
> n2 It should be noted that on July 27, 1990, Capcow filed a petition for chapter 11 protection in the United States Bankruptcy Court.

Due to Capcow's financial difficulties, Capcow, the Port Authority and LCB entered into an agreement on February 1, 1990, which gave the Port Authority the right to assume the construction contract in the event of Capcow's default and required LCB to continue construction efforts, providing Capcow with the time to cure its default or the Port Authority with the time to

1992 U.S. Dist. LEXIS 9206, *

decide whether to assume the construction contract.

After requesting and receiving relief from the automatic stay in the Capcow bankruptcy proceeding, on August 2, 1990, CCI-Bowers filed with the Union County Clerk's Office a Mechanic's Notice of Intention to Perform Labor and Furnish Material pursuant to the New Jersey Mechanic's Lien Law. N.J.S.A. § 2A:44-64 et seq. The notice was served [*4] on the Port Authority on August 6, 1990.

On August 13, 1990, CCI-Bowers informed the Port Authority that, pursuant to the February 1, 1990, agreement, it was going to stop work within seven days because Capcow did not and could not pay CCI-Bowers' July 1990 requisition. At this time, CCI-Bowers also gave notice of its intention to terminate the construction contract unless Capcow remedied its default or the Port Authority exercised its right to assume the construction contract under the February 1, 1990, agreement. Capcow did not cure the default, and the Port Authority did not exercise its right to assume the construction contract.

Nevertheless, between August 2 and October 2, 1990, CCI-Bowers continued to provide construction, labor, materials and services for the construction of the building. Appellant alleges that it continued to perform because on August 23, 1990, the Port Authority agreed to pay $ 655,000.00 for the work performed and materials supplied to the project in July of 1990.

Additionally, in October of 1990, the Port Authority paid to CCI-Bowers $ 250,000.00. After the October payment, CCI-Bowers claims that it is still owed $ 1,583,632.00 for labor, materials [*5] and services.

On November 19, 1990, CCI-Bowers filed with the Union County Clerk's Office a Mechanic's Lien claim against the building and land owned by the Port Authority on which the building was being constructed by CCI-Bowers. That same day, the claim was served on the Port Authority.

On November 27, 1990, the Port Authority filed a declaratory judgment action in the Superior Court of New Jersey, Law Division, Union County, against CCI-Bowers. The complaint sought an order discharging the Mechanic's Notice of Intention to Perform Labor and Furnish Materials that LCB had recorded on August 2, 1990, in the Union County Clerk's Office. The complaint was served on CCI-Bowers on December 18, 1990.

On January 2, 1991, CCI-Bowers filed an application to remove the civil action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1452(a). Additionally, CCI-Bowers requested that the action be referred by the United States District Court to the United States Bankruptcy Court for the District of New Jersey. n3

n3 On January 3, 1991, this court entered an order of referral to the bankruptcy court.

[*6]

Also on January 2, 1991, CCI-Bowers answered and counterclaimed against the Port Authority. The answer asserted jurisdiction in the United States Bankruptcy Court pursuant to 28 U.S.C. § § 157, 1334 and 1452. The counterclaim set forth causes of action to foreclose a mechanic's lien claim, a third-party beneficiary claim, a claim for restitution and a claim for unjust enrichment. In its counterclaim, CCI-Bowers seeks a judgment against the Port Authority in the amount of $ 1,583,632.00, plus interest.

On January 28, 1991, the Port Authority filed an answer to the counterclaim of CCI-Bowers. The Port Authority asserted various defenses including lack of subject-matter jurisdiction, lack of in personam jurisdiction and sovereign immunity. Further, the Port Authority claimed that CCI-Bowers had failed to satisfy the prerequisites of the New Jersey Mechanic's Lien Law. Moreover, the Port Authority asserted that even if CCI-Bowers had satisfied the prerequisites, a mechanics lien claim may not be filed against the property of the Port Authority.

Subsequently, CCI-Bowers brought a motion for summary judgment before the bankruptcy court. The Port Authority filed a cross-motion seeking [*7] remand to the Superior Court of New Jersey, or, alternatively, a trial by jury. At a hearing on July 22, 1991, the Honorable William H. Gindin held that the United States District Court and the United States Bankruptcy Court have subject-matter jurisdiction over the action because it is a "non-core" proceeding "related to" a bankruptcy case under section 157 of title 28 of the United States Code. Additionally, the bankruptcy court held that the Port Authority was entitled to a jury trial and, thus, referred the matter to this court in accordance with the decision of the Third Circuit in Beard v. Braunstein, 914 F.2d 434 (3d Cir. 1990).

Moreover, the bankruptcy court recommended to this court that it not abstain from determining the disputes pursuant to 28 U.S.C. § 1334(c)(1) (discretionary abstention) or 28 U.S.C. § 1334(c)(2) (mandatory abstention). Accordingly, the bankruptcy court denied the Port Authority's motion to remand to the Superior Court of New Jersey.

Finally, because it had ruled that, under Beard, it did not have jurisdiction over the action, the bankruptcy court denied CCI-Bowers' motion for partial summary judgment. Both parties appealed. [*8] In the interests of equity, justice and comity, this court will remand the action to the state court. Accordingly, the court will not address the other arguments presented.

A-0291

1992 U.S. Dist. LEXIS 9206, *

The court will consider this matter de novo. See Bankruptcy Rule 9033(d). As previously noted, this action was removed to the United States District Court for the District of New Jersey by CCI-Bowers pursuant to *28 U.S.C. § 1452*(a). The section provides:

> A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

*28 U.S.C. § 1452*(a).

The federal jurisdictional predicate is enumerated in *28 U.S.C. § 1334*(b). The statute provides for federal jurisdiction over three types of proceedings:

> Those that "arise under" title 11, those "arising in" a case under title 11, and those "related to" a case under title 11. Actions that "arise under" title 11 involve claims "predicated on a right created by a provision of title 11. . . . " "Arising in" proceedings are those that are not based on any right expressly [*9] created by title 11, but nevertheless, would have no existence outside the bankruptcy. . . ." An action is "related to" a case under title 11 if "the outcome of [the action] could conceivably have any effect on the estate being administered in bankruptcy. . . . "

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co., 130 Bankr. 405, 407 (S.D.N.Y. 1991)* (citations omitted) (bracket in original).

In this case, it is apparent that the action between the Port Authority and CCI-Bowers does not "arise under" title 11. It is also apparent that the action does not "arise in" a case under title 11; instead, the bankruptcy court ruled that this case was "related to" the LCB bankruptcy proceeding because the outcome of this proceeding could conceivably affect the estate. See *Paccor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)*. The court will not disturb the bankruptcy court's decision that the federal court has subject matter jurisdiction over this action because it is "related to" the LCB bankruptcy proceeding.

It is apparent, however, that the bankruptcy court did not address the issue of whether remand under section 1452(b) [*10] would be appropriate. n4 The statute provides in relevant part: "The court to which such a claim or cause of action is removed may remand such claim or cause of action on any equitable ground." *28 U.S.C. § 1452*(b). In deciding whether to remand under this section the court will evaluate a number of factors. These factors include:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Drexel Burnham Lambert, 130 Bankr. at 407* (citing *In re Republic Readers Service, Inc., 81 Bankr. 422, 429 (Bankr. S.D. Tex. 1987); Browning v. Navarro, 743 F.2d 1069, 1076 n.21 (5th Cir. 1984), In re Wild Oats Utilities, Inc., 18 Bankr. 959, 963 (Bankr. S.D.N.Y. 1982)*). See also *In re Shop and Go, Inc. v. V.K. Paterson Constr. Co., Inc., 124 Bankr. 915, 919 (Bankr. M.D. Fla. 1991)* [*11] ("The court weighs many considerations, including judicial economy, comity and respect for state court capabilities, the effect on the administration of the estate, the effect of bifurcating claims and parties, and the prejudice to other parties involved."). It is the opinion of the court that these equitable considerations weigh heavily in favor of remanding this case to the state court.

> n4 As previously noted, the bankruptcy court addressed the Port Authority's abstention arguments under *28 U.S.C. § § 1334*(c)(1) and 1334(c)(2). See transcript at pp. 64-65. The bankruptcy court stated that the interest of justice would be served by keeping the action in the bankruptcy court because it could get to trial quicker than most state courts. There is no evidence in the record to support this assertion. Nevertheless, the court will not address the abstention issue.

1.  The effect on the administration of the bankruptcy estate

CCI-Bowers argues that because the determination of this matter will affect the amount [*12] CCI-Bowers has to pay to LCB under the plan of reorganization, it will affect the bankruptcy estate. While it is unclear to the court how the debtor estate will be benefitted by a resolution of this matter in favor of CCI-Bowers, the court will defer to Judge Gindin's finding that such a

1992 U.S. Dist. LEXIS 9206, *

resolution will somehow augment the dividend paid to LCB's creditors. See transcript at p.66. Notwithstanding this determination, it is apparent that because this is a post-confirmation action, the resolution of the dispute between CCI-Bowers and the Port Authority will neither significantly hinder nor materially advance the efficient administration of the bankruptcy estate. Accordingly, the federal court has only a limited interest in resolving the controversy.

2.    The extent to which issues of state law predominate

This factor weighs heavily in favor of remand. CCI-Bowers is a New Jersey corporation.    "The Port Authority is a bi-state agency created by interstate compact between New Jersey and New York." *Lieberman v. Port Authority*, 254 N.J.Super. 456, 459 (App. Div. 1992). Thus, the parties are not of diverse citizenship. Accordingly, this court does not have [*13] jurisdiction pursuant to *28 U.S.C. § 1332*. Similarly, the court does not have jurisdiction under *28 U.S.C. § 1331*, because this case does not involve a federal question. Therefore, absent "related to" bankruptcy jurisdiction pursuant to *28 U.S.C. § 1334*, this court would not have subject matter jurisdiction over the action.

Significantly, the primary issue involved in this case is whether the New Jersey Mechanic's Lien Law, N.J.S.A. §  2A:44-64 et seq., can be applied to the property owned by the Port Authority. This is strictly a state law question, and there are no bankruptcy issues attendant the dispute.   Hence, remand is appropriate.

3.    The difficulty or unsettled nature of the applicable state law

As previously noted, this action involves whether the New Jersey Mechanic's Lien Law can be applied to the property owned by the Port Authority.   The Port Authority asserts that its land is immune from attachment because it is public property owned by the sovereign. CCI-Bowers strenuously objects to the Port Authority's assertion of governmental immunity.   To determine this issue, the reviewing court will have to evaluate the New Jersey Mechanic's Lien Law and its interplay [*14] with the statutes governing the operation of the Port Authority.   It is apparent that the New Jersey Supreme Court has not addressed this issue, and therefore, there is no definitive answer.   Accordingly, because the law in this area is unsettled this factor weighs in favor of remand.

4.    Comity

As demonstrated above, this "is a state law action and the state court is 'better able to respond' to a suit involving state law." *Drexel Burnham Lambert, 130 Bankr. at 408* (citing *Midlantic Nat'l Bank/Citizens v. Comtec Electronics, Inc. (In re Comtec Electronics,*

*Inc.), 23 Bankr. 449, 451 (Bankr. S.D.N.Y. 1982)*. "Congress has made it plain that, in respect to non-core proceedings such as this (i.e., cases which assert purely state law causes of action), the federal court should not rush to usurp the traditional precincts of the state court." Id. (citing *Mattingly v. Newport Offshore, Ltd., 57 Bankr. 797, 799-800 (D.R.I. 1986))*. Accordingly, deference to the state court mandates that this action be remanded.

5.    The degree of relatedness or remoteness of the proceeding to the main bankruptcy case

This case is merely tangential [*15] to the underlying bankruptcy proceeding of LCB.   While it is true that CCI-Bowers is the plan proponent, CCI-Bowers is not the debtor.   Additionally, the Port Authority was neither a party to the LCB bankruptcy proceeding nor involved in the bankruptcy confirmation.   Thus, it is the opinion of the court that this dispute is quite remote from the LCB bankruptcy case.    Therefore, remand is appropriate.

6.    The existence of the right to a jury trial

There is a significant dispute in this action whether this case is a "non-core" proceeding and whether the Port Authority is entitled to a jury trial. These determinations need not be made, because the matter is remanded to the state court.   It should be noted, however, that "demands for jury trial in non-core proceedings have been considered a sufficient ground for an equitable remand". *Drexel, Burnham Lambert, 130 Bankr. at 409* (citing *Zweigart v. Colorado Nat'l Bank, 52 Bankr. 229, 234-35 (Bankr. D. Colo. 1985))*.

7.    Prejudice to the involuntarily removed defendants

Although the Port Authority does not claim that it will be prejudiced by the federal court's retaining jurisdiction [*16] over the matter, the Port Authority has been deprived of its choice of forum.   Persuasively, the Port Authority asserts that it did not file the declaratory judgment action in the federal court; it was not a party to the bankruptcy proceeding, and it did not consent to suit in the federal court.   The Port Authority filed this action in the state court and requests that this court remand the action to the court whence it came.   It is the opinion of the court that the equitable factors outlined above militate in favor of granting the Port Authority's request.

Accordingly, in the interests of equity, justice and comity, the court will remand the matter to the state court pursuant to *28 U.S.C. 1452(b)*.   An order accompanies this opinion.   No costs.

THIS MATTER having come before the court on appeal by CCI-Bowers Co. of two orders of the United States Bankruptcy Court dated July 30, 1991, and August 2, 1991, and on oral report and recommendation of the bankruptcy court embodied in the transcript of a hearing

1992 U.S. Dist. LEXIS 9206, *

held on July 22, 1991; and the court having considered the written submissions and oral argument of counsel; and for good cause shown.

IT IS on this 15th day of June, 1992,

ORDERED [*17]  that the matter be and hereby is remanded to the Superior Court of New Jersey, Law Division, Union County.

CLARKSON S. FISHER

United States District Judge

# EXHIBIT L

A-0295

CONCLUSION

For the foregoing reasons, the Zaliks respectfully request that the Court, after all due notice and opportunity for hearing, issue an order granting the Zaliks relief from the automatic stay provided under *11 U.S.C. § 362*, as prayed in the Zaliks' Motion, and for all other relief just and proper in the premises.

HOPPER & ASSOCIATES

BY: GEORGE W. HOPPER

BY: MARK R. GALLIHER

EXHIBIT

STATE OF INDIANA SS: COUNTY OF MARION ANN ZALIK and STANLEY ZALIK, Plaintiffs, vs. FEDERATED DEPARTMENT STORES, INCORPORATED, D/B/A LAZAURS, and JEFFREY M. BRAY, Defendants.

IN THE MARION COUNTY SUPERIOR COURT CIVIL DIVISION

CAUSE NO. ROOM NO. 491058809CP1229

COMPLAINT FOR DAMAGES

COUNT I

Come now the Plaintiffs, Ann Zalik and Stanley Zalik, by counsel, and for their cause of action against the Defendants, Federated Department Stores, d/b/a Lazarus, and Jeffrey M. Bray, allege and say:

1. Plaintiffs, Ann Zalik and Stanley Zalik, are residents of the County of DuPage, State of Illinois.

2. Defendant, Jeffrey Bray, was at [*9] all relevant times mentioned a security guard employed by Federated Department Stores, Incorporated, d/b/a Lazarus.

3. Defendant, Federated Department Stores, Incorporated, d/b/a Lazarus, herein designated corporate defendant, is, and at all times mentioned, a corporation organized and existing under the laws of the State of Delaware, engaged in the business of operating a Department Store in the State of Indiana, with one of its places of business in the City of Indianapolis, County of Marion, State of Indiana, located at 10202 East Washington Street.

4. At all times herein mentioned, Defendant, Federated Department Stores, Incorporated, d/b/a Lazarus, was the owner in possession and control of certain premises situated at 10202 East Washington Street, in Indianapolis, Marion County, Indiana, upon which there was erected a building occupied by Defendant and in which it conducted a store for the sale of merchandise to the public.

5. At all times herein mentioned, Defendant, Jeffrey

M. Bray, a security guard in the store of Defendant, Federated Department

EXHIBIT "A"

Stores, Incorporated, d/b/a Lazarus, was acting in that capacity for and in behalf of Defendant, Federated Department [*10] Stores, Incorporated, d/b/a Lazarus, and within the scope and authority of his employment.

6. On or about September 7, 1986, at approximately 4:00 P.M., Plaintiff, Ann Zalik, visited the aforementioned store of Defendant, Federated Department Stores, Incorporated, d/b/a Lazarus, pursuant to its invitation and as a customer. Plaintiff, Ann Zalik, attempted to purchase an item of clothing and was accused of changing the price tag to reflect a lower price, when Plaintiff, Ann Zalik, had not changed any price tags or had done nothing illegal or improper.

7. Thereupon, while Plaintiff, Ann Zalik, was still within the premises of Defendant, Federated Department Stores, Incorporated, d/b/a Lazarus, and in the presence of other customers in the store, Defendant, Jeffrey M. Bray, imputed unto Plaintiff, Ann Zalik, that she had changed price tags on an article from the store. He then forcibly, unlawfully, and against her will and consent, took her into custody and detained her and deprived her of her right of freedom.

8. In falsely and wrongfully arresting and imprisoning Plaintiff, Ann Zalik, as hereinabove alleged, Defendant, Jeffrey M. Bray, acted willfully, maliciously, without just or [*11] probable cause, and in wanton disregard of Plaintiff's, Ann Zaliks, rights.

9. By reason of the acts and conduct of Defendant, Jeffrey M. Bray, as hereinabove alleged, all of which were with the knowledge, consent and approval of Defendant, Federated Department Stores, Incorporated, d/b/a Lazarus, Plaintiff, Ann Zalik, was caused to and did suffer great humiliation and embarrassment, and she was thereby damaged in her reputation, she suffered great shock to her nerves and nervous system, was made to and did become physically ill and sick, and she has been thereby damaged.

10. At that time and place, the Defendant, Jeffrey M. Bray, acting as agent and in behalf of Defendant, Federated Department Stores, Incorporated, d/b/a Lazarus, within the scope of his employment, in the presence of several other persons, seized Plaintiff, Ann Zalik, and maliciously spoke of and concerning the Plaintiff, Ann Zalik, false and defamatory words accusing her of theft, and later caused charges to be filed against her, publishing the same defamatory words.

11. The injuries sustained by Plaintiff, Ann Zalik, resulted from the following, including but not limited to:

1990 Bankr. LEXIS 1118, *

(a) the negligence of the Defendant, [*12] Federated Department Stores, Incorporated, d/b/a Lazarus, in hiring, training and retaining in their employ, Defendant, Jeffrey M. Bray;

(b) false arrest and imprisonment of the Plaintiff, Ann Zalik;

(c) slander and libel of the Plaintiff, Ann Zalik;

(d) the malicious prosecution of the Plaintiff, Ann Zalik, and resulting libel and slander;

(e) breach of contract to the Plaintiff, Ann Zalik, to provide goods for sale in a businesslike manner.

12. The negligence of the Defendant, Federated Department Stores, Incorporated, d/b/a Lazarus, included but was not limited to the hiring, training and retaining of Jeffrey M. Bray in their employ after they knew or should have known that Jeffrey M. Bray was of an undependable nature, and would be a person likely to falsely arrest, detain, libel and slander others.

WHEREFORE, Plaintiff, Ann Zalik, individually, and by counsel, demands judgment against the Defendants, in a sum just and reasonable in this matter, punitive damages, attorney fees and for all other relief just and proper.

COUNT II

1. Plaintiffs incorporate the allegations of Paragraph 1 through 12, inclusive, of this Complaint as though the same were fully set forth hereinabove. [*13]

2. That as a direct result of the conduct complained hereinabove, Plaintiff, Stanley Zalik, has lost the full enjoyment, services, and consortium of his wife.

WHEREFORE, Plaintiff, Stanley Zalik, demands judgment against the Defendants, and each of them, in a sum just and reasonable in this matter, punitive damages, attorney's fees, and for all other just and proper relief.

T. A. Shula, Attorney for Ann Zalik and Stanley Zalik

JURY DEMAND

Plaintiffs demand Trial by Jury.

T. A. Shula, Attorney for Ann Zalik and Stanley Zalik

T. A. Shula, Counselor at Law Inland Building - Suite 1000 156 East Market Street Indianapolis, Indiana 46204 (317) 639-6920

109TCD

********** Print Completed **********

Time of Request: October 02, 2003  04:53 PM EDT

Print Number:    1842:0:15981937
Number of Lines:  158
Number of Pages:

Send To: THOMPSON, CHRISTINA
       MORRIS JAMES HITCHENS & WILLIAMS LLP
       222 DELAWARE AVE FL 10
       WILMINGTON, DELAWARE 19801-1621

109TCD

Print Request:  LEXSEE

Time of Request: October 02, 2003  04:54 PM EDT

Number of Lines: 119
Job Number:     1842:0:15982053

Client ID/Project Name: 106873-0001

Research Information:

Lexsee 1994 bankr lexis 341

Send to: THOMPSON, CHRISTINA
          MORRIS JAMES HITCHENS & WILLIAMS LLP
          222 DELAWARE AVE FL 10
          WILMINGTON, DELAWARE 19801-1621

A-0301

1994 Bankr. LEXIS 341, *

LEXSEE 1994 BANKR LEXIS 341

In re: JOSEPH SELIG AND TREMAYNE SELIG, Debtors; CAROL K. LUX,
Administrator of the Estate of Persifer B. Kennedy, Jr., Deceased, Plaintiff v.
D'ANGELI BUILDING & CONSTRUCTION CO., and LOUIS J. D'ANGELI and
JOSEPH SELIG and TREMAYNE SELIG, Defendants

Bankruptcy No. 91-13358DAS Chapter 11, Adversary No. 94-0115DAS

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

*1994 Bankr. LEXIS 341*

March 15, 1994, Decided

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff estate administrator filed a motion for remand of her action against defendants, a construction company and individuals, to the Court of Common Pleas of Montgomery County, Pennsylvania, from which it had been removed by the debtors. The administrator's action against defendants related to title to real estate.

**OVERVIEW:** The administrator argued that only a party to an action in nonbankruptcy court could remove that action to a bankruptcy court pursuant to *28 U.S.C.S. § 1452*(a), and that the motion to remove the action to the bankruptcy court filed after the commencement of the bankruptcy case had to be filed within 30 days after service of the initial pleading under Fed. R. Bankr. P. 9027(a)(3). The debtors contended that they sought removal on behalf of defendants. On review, the court granted the motion and remanded the action back to the court of common pleas. The court held that irrespective of on whose behalf the debtors sought removal, it was they and not defendants who were named in the application to remand as the applicants, and they were the parties who invoked *28 U.S.C.S. § 1452*(a), and their status as non-parties to the action was fatal to the application. The court concluded that it was inappropriate to retain jurisdiction over the administrator's proceeding where the relationship of the action to the administration of the underlying case was likely to be very faint.

**OUTCOME:** The court granted the administrator's motion to remand her action against defendants related to title to real estate, remanded the action back to the court

of common pleas, and cancelled the scheduled status conference.

LexisNexis (TM) HEADNOTES - Core Concepts:

*Bankruptcy Law > Practice & Proceedings > Adversary ProceedingsCivil Procedure > Removal > Basis for RemovalCivil Procedure > Removal > Removal Proceedings*
[HN1] Only a party to an action in nonbankruptcy court may remove that action to a bankruptcy court. *28 U.S.C.S. § 1452*(a). Also, a motion to remove a proceeding to bankruptcy court filed after the commencement of the bankruptcy case to which it is attached must be filed within 30 days after service of the initial pleading or summons in the proceeding upon the movant. Fed. R. Bankr. P. 9027(a)(3).

*Bankruptcy Law > Practice & Proceedings > Adversary ProceedingsCivil Procedure > Removal > Removal Proceedings*
[HN2] A filing of a Notice of Removal out of time, per Fed. R. Bankr. P. 9027(a)(3), in itself constitutes a strong equitable ground for remand.

*Civil Procedure > Removal > Removal ProceedingsCivil Procedure > Removal > Postremoval Remands*
[HN3] In deciding a motion to remand a matter previously removed from another forum, all doubts should be resolved in favor of remand.

*Bankruptcy Law > Practice & Proceedings > JurisdictionBankruptcy Law > Practice & Proceedings > Adversary Proceedings*
[HN4] A reorganization plan proponent may not

1994 Bankr. LEXIS 341, *

effectively confer otherwise-absent jurisdiction upon a bankruptcy court through the medium of a broad retention-of-jurisdiction provision in a plan.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN5] The bankruptcy court's jurisdiction does not follow property, but rather, it lapses when the property leaves the debtor's estate.

**COUNSEL:** [*1] For Plaintiff: Brian M. Fleischer, Esq., Philadelphia, PA.

For Defendants: Leslie Beth Baskin, Esq., Ciardi & DiDonato, P.C., Philadelphia, PA.

**JUDGES:** SCHOLL

**OPINIONBY:** DAVID A. SCHOLL

**OPINION:**

ORDER/MEMORANDUM

BY: DAVID A. SCHOLL, UNITED STATES BANKRUPTCY JUDGE

AND NOW, this 15th day of March, 1994, upon consideration of a Motion ("the Motion") of CAROL R. LUX, Administrator of the Estate of Persifer B. Kennedy, Jr., Deceased ("the Plaintiff"), for Remand of this proceeding to the Court of Common Pleas of Montgomery County, PA. ("the CCP"), from which it had been removed, it is hereby ORDERED as follows:

1. The Motion is GRANTED.

2. The instant proceeding is REMANDED to the CCP, at C.A. No. 93-11602.

3. The status conference scheduled on March 24, 1994, is CANCELLED.

The Motion must be granted for several reasons. As the Plaintiff points out, [HN1] only a party to an action in nonbankruptcy court may remove that action to a bankruptcy court. See *28 U.S.C. § 1452*(a). Also, a motion to remove a proceeding to bankruptcy court filed after the commencement of the bankruptcy case to which it is attached must be filed within thirty (30) days after service of the initial pleading [*2] or summons in the proceeding upon the movant. Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 9027(a)(3).

JOSEPH SELIG and TREMAYNE SELIG ("the Debtors"), named as the "Applicants" in the "Application of Removal" n1 ("the Application"), were admittedly served in the CCP action on September 27, 1993; were dropped as parties to that action by the Plaintiffs on November 4, 1993; and did not file the Application until

January 18, 1994.

n1 This document should have been designated as a Notice of Removal. See F.R.B.P. 9027. We will, however, refer to this pleading by its misnomer as an "Application."

The Debtors attempt to avoid the effect of the issues noted in the first paragraph supra by contending that the Application was filed on behalf of the remaining Defendants, D'ANGELI BUILDING & CONSTRUCTION CO. and LOUIS J. D'ANGELI (collectively hereafter "D'Angeli"), who remain parties in the CCP action, and were allegedly not served until December 17, 1993.

These contentions are unavailing. Irrespective of on whose [*3] behalf the Debtors sought removal, it is they and not D'Angeli who are named in the Application as the Applicants, and hence they are the parties who invoked *28 U.S.C. § 1452*(a). See the Application, initial paragraph and P 10 thereof. The Debtors' status as non-parties to the proceeding is fatal to the Application. Cf. *In re Tilley, 42 Bankr. 827, 829 (Bankr. E.D. Va. 1984)* (construing predecessor to *28 U.S.C. § 1452*(b)). Furthermore, [HN2] a filing of a Notice of Removal out of time, per F.R.B.P. 9027(a)(3), in itself "constitutes a strong 'equitable ground' for remand." *In re Glen Eagle Square, Inc., 1991 WL 111490,* slip op. at *1 (Bankr. E.D. Pa. June 20, 1991).

Even had the foregoing insurmountable procedural deficiencies flawing the Application not been present, a remand would have been in order. It must be recalled that, [HN3] "in deciding a motion to remand a matter previously removed from another forum, all doubts should be resolved in favor of remand. *Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3rd Cir. 1990),* cert. denied, [ *480 U.S. 1085]* [*4] (1991)." *In re RCS Properties, Inc., 1992 WL 22190,* slip op. at *2 (Bankr. E.D. Pa. Feb. 3, 1992). The fact that the Debtors seek removal on behalf of D'Angelo, rather than on behalf of themselves, is significant. The very absence of the Debtors as parties to the proceeding suggests that subject matter jurisdiction in this court is unlikely to be present, or that the relationship of the proceeding to the administration of the underlying case is likely to be very faint. See *RCS, supra,* slip op. at *1; and *In re Futura Industries, Inc., 69 Bankr. 831, 834-35 (Bankr. E.D. Pa. 1987).*

The Debtors' principal arguments in support of this court's acceptance of jurisdiction over the proceeding are that the subject matter of the lawsuit, i.e., title to the real estate in issue, was addressed in the Debtors' confirmed plan of reorganization, and that the confirmation order expressly assumed jurisdiction of matters necessary to

1994 Bankr. LEXIS 341, *

"implement and effectuate" the plan. However, [HN4] a plan proponent may not effectively confer otherwise-absent jurisdiction upon a bankruptcy court through the medium of a broad retention-of-jurisdiction provision in a plan. See [*5] *In re Greenley Energy Holdings of PA., Inc., 110 Bankr. 173, 179-80 (Bankr. E.D. Pa. 1990).* However, the mere fact that the plan addresses the issue of title to property (in which the Debtors no longer have an interest) does not confer subject matter jurisdiction to hear this proceeding on this court. [HN5] "The bankruptcy court's jurisdiction does not follow property, but rather, it lapses when the property leaves the debtor's estate." *In re Hall's Motor Transit Co., 889 F.2d 520, 522 (3rd Cir. 1989).*

This court's "concern about the propriety of exercising its tenuous jurisdiction over" this proceeding, *Glen Eagle Square, supra,* slip op. at *2, especially when added to the procedural deficiencies in the Application itself, convinces us that it would be most inappropriate for us to retain jurisdiction over this proceeding. We will therefore unhesitatingly grant the Motion to remand.

DAVID A. SCHOLL, UNITED STATES BANKRUPTCY JUDGE

3722 United States Court House

Philadelphia, PA 19106-1763

109TCD

********** Print Completed **********

Time of Request:  October 02, 2003  04:54 PM EDT

Print Number:    1842:0:15982053
Number of Lines:  119
Number of Pages:

Send To:  THOMPSON, CHRISTINA
          MORRIS JAMES HITCHENS & WILLIAMS LLP
          222 DELAWARE AVE FL 10
          WILMINGTON, DELAWARE 19801-1621

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXIDE TECHNOLOGIES, INC., et al., | ) | Case No. 02-11125 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |

Objections Due: 10/14/03 @ 4:00 p.m.
Hearing Date: 10/21/03 @ 10:00 a.m.

### ORDER

Upon consideration of the Motion of Pacific Dunlop Holdings (USA), Inc., Pacific

Dunlop Holdings (Europe) Limited, P.D. International PTY Limited, Pacific Dunlop

Holdings (Hong Kong) Limited and Pacific Dunlop Holdings (Singapore) PTE. Ltd. for

Remand of State Law Causes of Action or, in the Alternative, for Abstention and for an

Order Granting Relief from the Automatic Stay to Proceed to Liquidate Claim in State

Court (the "Motion"), and any opposition thereto, and after notice and hearing;

IT IS HEREBY ORDERED that:

1.    The Motion is GRANTED; and

2.    The State Court Actions (as such term is defined in the Motion) is hereby

remanded to the Circuit Court of Cook County, Illinois.

3.    Pacific Dunlop Holdings (USA) Inc. is hereby granted relief from the

automatic stay to liquidate the claims asserted in the State Court Actions against debtor

Exide Technologies, Inc. in the Circuit Court of Cook County, Illinois.  To the extent a

judgment is entered in favor of Pacific Dunlop Holdings (USA) Inc. and against debtor

Exide Technologies, Inc., Pacific Dunlop Holdings (USA) Inc. shall be required to return

to this Court to enforce its judgment in the context of these bankruptcy proceedings.

**IT IS SO ORDERED** this __ day of _____, 2003.


_____
United States Bankruptcy Judge

# TAB 7

# U.S. Bankruptcy Court
## District of Delaware (Delaware)
## Adversary Proceeding #: 04-51299-KJC

*Assigned to:* Kevin J. Carey
*Related BK Case:* 02-11125
*Related BK Title:* Exide Technologies and Special
Litigation Counsel to the Official Committ
*Demand:*
*Nature of Suit:* 454

*Date Filed:* 01/14/04

**Plaintiff**
_____

**Pacific Dunlop Holding (Europe)**     represented by **Pacific Dunlop Holding (Europe)**
PRO SE

**V.**

**Defendant**
_____

**Excide Holding Europe**     represented by **William G Schopf**
304 West Randolph Street
Chicago, IL 60606
*LEAD ATTORNEY*

| Filing Date | # | Docket Text |
|---|---|---|
| 01/14/2004 | 1 | Order transferring Adversary from another District. (Circuit Court of Cook County Civil action #01-L008460) Northern District of Illinois Eastern Division. (Received in U.S. Bankruptcy Court District of Delaware 1/14/2003). Nature of Suit: 454 (Recover Money/Property). (Attachments: # 1 Attachment Docket Sheet)Entire file located in Bankruptcy Court in DE(MNH) Modified on 1/14/2004 (MNH, ). (Entered: 01/14/2004) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/11/2005 17:09:37 | | |
| PACER | Client | |

A-0308

| Login: | mj0008 | Code: | 106873-1 |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 04-51299-KJC Fil or Ent: Fil From: 5/12/2003 To: 7/11/2005 Doc From: 0 Doc To: 99999999 Term: y Links: n Format: HTML.fmt |
| Billable Pages: | 1 | Cost: | 0.08 |

A-0309

# TAB 8

1

1  STATE OF ILLINOIS )
                     ) SS.
2  COUNTY OF C O O K )

3        IN THE CIRCUIT COURT OF COOK COUNTY
           COUNTY DEPARTMENT-LAW DIVISION
4

5  PACIFIC DUNLOP HOLDINGS (USA)  )      ORIGINAL
   INC., et al.,                  )
6                                 )
              Plaintiffs,         )
7                                 )
      vs.                         ) No. 01 L 008460
8                                 ) No. 01 L 015589
   EXIDE CORPORATION, et al.,     )
9                                 )
              Defendants.         )
10

11

12

13        REPORT OF PROCEEDINGS at the hearing of the

14  above-entitled case before the HONORABLE SHELDON

15  GARDNER, Judge of said Court, on the 8th day of July,

16  2002, at 1:55 p.m.

17

18

19

20

21

22

23

24

Kruse Associates, Ltd.
www.krusereporters.com
312-345-1500

2

```
1     PRESENT:

2         GOODELL, DeVRIES, LEECH & DANN, LLP
          By MS. LINDA S. WOOLF and
3            MS. PAULA KRAHN MERKLE
          One South Street, 20th Floor
4         Baltimore, Maryland  21202
          (410) 783-4011
5
                  and
6
          PATZIK, FRANK & SAMOTNY, LTD.
7         By MR. THOMAS J. VERTICCHIO
          1500 South Wacker Drive, Suite 900
8         Chicago, Illinois  60606
          (312) 551-8300
9
            appeared on behalf of plaintiffs;
10
          SCHOPF & WEISS
11        By MR. IAN H. FISHER and
             MR. ERIC F. RINEHART
12        312 West Randolph Street, Suite 300
          Chicago, Illinois  60606-1721
13        (312) 701-9300

14          appeared on behalf of defendants;

15        KIRKLAND & ELLIS
          By MR. MATTHEW N. KLEIMAN and
16           MR. ROSS M. KWASTENIET
          200 East Randolph Drive, Suite 5400
17        Chicago, Illinois  60601
          (312) 861-2000
18
            appeared on behalf of bankrupt defendant
19        Exide Technologies.

20

21

22

23

24
```

Kruse Associates, Ltd.

1        THE COURT:  I've had occasion to read your

2   materials.  Let me ask you a very simple question.

3        First, let me say this, if you put

4   footnotes, at least quote me accurately, okay,

5   because I had said one has died, so it's now down to

6   one, never pled tersely, including me, and that the

7   other counts are there, not because -- I didn't leave

8   them in because they were terse, I let them in

9   because they're true and they stand.  I knock out

10  lots of comments.  So I really didn't say it the way

11  it's in the footnote.  And I don't care.  I mean

12  it's just I'd like some accuracy on being quoted.

13  Because I never leave anything in if it doesn't

14  belong in.

15        The second thing is --

16        MR. FISHER:  Your Honor, if I may, that

17  would be me, Ian Fisher from Schopf & Weiss.

18        THE COURT:  I don't care.  I'm just saying.

19        MR. FISHER:  I apologize if --

20        THE COURT:  Don't apologize.  I'm a human

21  being.  And if I say something, I'm responsible for

22  what I say.  And I try to keep a little bit of a

23  happy courtroom because it gets to be a very dim

24  business after a while.  And my courtroom, you may



4

1  not like the results, but you should like --

2  hopefully I will treat you well.

3       Secondly, which wasn't a problem when we

4  discussed this initially, there is no question that

5  for the people who are involved in bankruptcy court,

6  I don't have jurisdiction with them.  I mean I may or

7  may not like the federal system, but they are

8  superior.  I happen to like it.  But the federal

9  court is superior and I can't do anything in regard

10  to that.  And everybody has agreed, do we not?

11       MS. WOOLF:  As to those --

12       THE COURT:  To the one that is there, if

13  it's a separate corporation, the law gives you the

14  advantage of having a separate corporation, even if

15  you own all their stocks, of making it differently.

16  I have to live with that difference.  Although

17  everybody always tries to avoid the difference when

18  it comes up.

19       There is no reason why I should stay

20  anything without minimally a request coming from the

21  bankrupt estate, should they want to, I would have --

22  I'm not saying I'm doing this, it's not in front of

23  me.  Okay.  I would always have to respect what the

24  bankrupt estate wants should they come here.  And I



5

1   think this is where we started, I believe, two times

2   ago.  Okay.

3           MS. WOOLF:  April 30.

4           THE COURT:  Okay.  And so the bankrupt

5   estate is not here, is it?

6           MR. KLEIMAN:  Your Honor, that's my client.

7           MR. FISHER:  Yes.

8           THE COURT:  You're here.  Okay.  You've not

9   asked for any stay?

10          MR. KLEIMAN:  We have, your Honor.

11          THE COURT:  Well, tell me a question.  Why

12  should I grant the stay?  With regard to your part --

13  and it had nothing to do with your sense of humor,

14  okay.  With all due respect, I don't have the

15  jurisdiction to stay something without minimally a

16  request from you.

17          Now, the fact that the request from you, I

18  should listen to it, doesn't mean that I have to

19  grant it or not grant it.  But the party in

20  bankruptcy may declare such an interest as to have it

21  stayed.  I will tell you in front, for those of you

22  who know me -- and you're here quite frequently,

23  you've been in my courtroom many times, as I recall,

24  No?

Kruse Associates, Ltd.
www.krusereporters.com
312-345-1500

A-0314

6

1    MR. FISHER:  Yes, I've been before you

2  before.

3    THE COURT:  Okay.  Normally, I'm compulsive.

4  And one of the nice advantages of being a compulsive

5  judge is that you can move things.  I normally don't

6  stay things.  What is there that requires a stay, if

7  the separate entities are being sued, why should the

8  people representing the plaintiff be stayed?

9    MR. KLEIMAN:  The reason, your Honor, is

10  twofold.  As the representative of the bankrupt

11  estate, my sole and exclusive responsibility is to

12  the company in Chapter 11.

13    THE COURT:  You're absolutely right.

14    MR. KLEIMAN:  I'm a fiduciary to that

15  company and to its creditors.  So all I can argue to

16  your Honor is how the progression of this litigation,

17  were you to allow it to continue, would, in my

18  absence, would affect the bankrupt estate.  And

19  that's what we've done in the pleadings, your Honor.

20    THE COURT:  But you're here.

21    MR. KLEIMAN:  But, your Honor, I shouldn't

22  be here.  In fact, I have some very serious concerns

23  that when I file my fee application with the

24  bankruptcy judge, he's going to wonder why I had to



Kruse Associates, Ltd.

www.krusereporters.com
312-345-1500

A-0315

7

1   spend so much time arguing for something that the

2   Bankruptcy Code gives me automatically, which is

3   protection for my client.  That's what this is all

4   about.

5         THE COURT:  But you are.  We're not going to

6   touch you.

7         MR. KLEIMAN:  That's not true, your Honor.

8   As we've argued in our papers, the progress of this

9   litigation against the nonbankrupt Exide companies

10  will inextricably affect my client's rights,

11  interests and duties in several ways.

12        First, your Honor, under Illinois law, we're

13  an indispensable party to this litigation.  It can't

14  proceed in our absence.

15        THE COURT:  They're contending that.  I

16  don't want to put words in your mouth.

17        MS. WOOLF:  Your Honor, we absolutely

18  concede that the stay terminates the proceedings

19  against Exide Corporation.

20        THE COURT:  But you're not saying they're

21  indispensable?

22        MS. WOOLF:  They're not indispensable.

23        THE COURT:  That's right.  So all I'm saying

24  is they totally disagree.

8

1    MR. KLEIMAN:  I understand, your Honor.

2  We've advocated that position quite forcefully in our

3  pleadings, and we ask you to consider that argument.

4  Because we believe that Illinois law gives us

5  protection to prevent the litigation proceeding in

6  our absence.  The indispensable party rule is not

7  designed solely to protect the parties who are

8  continuing in litigation with an empty chair, it's

9  also designed, in this particular instance, to

10  protect the party who would otherwise be sitting in

11  the empty chair, and that's me.

12    If this litigation proceeds, then there are

13  going to be questions of law and fact that will be

14  decided that are the exact same issues of law and

15  fact that affect whether I have any legal

16  responsibility to Ms. Woolf's clients and, which they

17  admit, we're going to have to go try out in Delaware.

18    Why would we have two trials, Judge?  Why

19  would we try the exact same issues, the exact same

20  questions of law and fact, in two different courts?

21  It makes no sense.  This should all be in one court,

22  Judge, and the only court where that can take place

23  is the bankruptcy court, because, as they've

24  admitted, I can't be here.



Kruse Associates, Ltd.
www.krusereporters.com
312-345-1500

A-0317

1        So what we have to do is --

2        THE COURT:  I don't think they've admitted

3    you can't be here.  They've admitted that we can't

4    take action against you here.  But if you have an

5    interest here for somebody that is not you -- as I

6    understand, you own most of the other parties; is

7    that not true?

8        MR. KLEIMAN:  That's correct, your Honor,

9    directly or indirectly.

10       THE COURT:  So you interest is an indirect

11   and not a direct interest.  That's what you've been

12   arguing, isn't it?  Am I missing something?  You're

13   giving me a quizzical look.

14       MS. WOOLF:  At most they have an indirect

15   interest, at most.

16       THE COURT:  What?

17       MS. WOOLF:  Your Honor, at most they have an

18   indirect interest.

19       THE COURT:  That's what I said.

20       MS. WOOLF:  Absolutely, your Honor.

21       THE COURT:  Okay.  But that's what you've

22   argued, that it would be penalty for you to not be

23   able to proceed.  Because if you go to the federal

24   court, everything is a long way off.  It's a lot

10

1 easier for you to get from Baltimore, Maryland, to

2 Delaware than it is to Chicago.

3         MS. WOOLF:  Your Honor, that's correct.  But

4 the entities over which we are seeking to proceed

5 here, the international bodies, the international

6 Exides, aren't in federal court.  They aren't in the

7 bankruptcy proceeding.

8         THE COURT:  He is contending, I think -- and

9 stop me, because I don't want to put words in

10 anybody's mouth -- he is contending that this case

11 could be transferred to the federal court and --

12 let's ask him.

13         MS. WOOLF:  By way of introduction, this is

14 Paula Merkle from my office, who is a bankruptcy

15 lawyer, and she is here to address the bankruptcy.

16         THE COURT:  Excuse me.  Have I not treated

17 you all courteously?

18         MS. WOOLF:  Always, your Honor --

19         THE COURT:  Okay.  So I'll listen to

20 everybody.

21         MS. WOOLF:  -- which is what I told

22 Ms. Merkle.

23         THE COURT:  The only point is, I don't agree

24 with you, but I want to give you every opportunity.


A-0319

11

1   Because she's contending that if you she gets caught

2   up with the bankruptcy court, by the time anything

3   goes anywhere she'll really be out of luck timewise.

4   I believe that's what you said.

5       MS. WOOLF:  Your Honor, that is what I've

6   said, and I'd like Ms. Merkle to enhance on what we

7   said in terms of bankruptcy procedure and

8   jurisdiction.  If she's permitted, your Honor.

9       THE COURT:  I never cut any of you short.

10  In fact, I've always told you when you come in, which

11  is, by the way, it's not because of her, I do it for

12  everybody from out of town, to figure in extra time

13  so in case you have trouble one day you don't have to

14  fly up and back.

15      So you've got as much time as you need.  Go

16  ahead.

17      MS. MERKLE:  Well, your Honor, we agreed

18  that this court has no jurisdiction over the debtor,

19  Exide.  Everybody seems to agree with that.

20      THE COURT:  I think there is no argument

21  there.

22      MS. MERKLE:  And there is even a 9th Circuit

23  opinion that says any state court --

24      THE COURT:  You know what, everybody agrees



Kruse Associates, Ltd.
www.krusereporters.com
312-345-1500

A-0320

12

1    on it, I don't need authority.

2        MS. MERKLE:  Okay.  All right.

3        THE COURT:  I'm not looking for problems.

4        MS. MERKLE:  Well, what we're saying is you

5    can't, as a state court judge, you can't extend the

6    stay to third parties and you can't modify it,

7    either, to lift it.  They seem to be saying that we

8    should come here and have it lifted or go to

9    bankruptcy court and have it lifted.  Everything has

10   been turned inside out.

11       THE COURT:  I don't think that's what he's

12   saying, in fairness to him.  Maybe I'm missing

13   something.  He's asking me to stay this matter so it

14   can be resolved, if you so desire, in the other

15   court.  I don't know as much about the federal court

16   system, except I do know that they act differently

17   than -- traditionally, there is a lot of difference

18   between state and federal courts.  Okay.  That's not

19   a statement of genius.  He would like to have this

20   all resolved in Maryland in the federal court.  Isn't

21   that what you just said?

22       MR. KLEIMAN:  In Delaware, Judge.

23       THE COURT:  I'm sorry, in Delaware.

24       MR. KLEIMAN:  And in fact, I'm merely

1    adopting an argument that Pacific Dunlop makes in

2    their own brief.    They cite, your Honor, a 7th

3    Circuit decision, a case called Fernstrom, which is a

4    relief from the automatic stay case, which we support

5    the proposition that they're proposing, Judge.

6    Because what they contend, in their own brief, is

7    that your Honor should enter a stay and we should go

8    to Delaware and let the bankruptcy judge decide

9    whether they're entitled to relief from the stay or

10   not.    Because only the bankruptcy judge, and there's

11   no dispute --

12           THE COURT:    I don't think that -- I don't

13   mind you telling me what they said, but I don't think

14   -- that's your opinion of what they said.

15           I thought you would like this case.    I'm not

16   sure they do consolidations like we do in state

17   court.    But you would like, I think you're saying,

18   you'd like this all to be consolidated in the

19   bankruptcy court in Delaware.

20           MR. KLEIMAN:    Your Honor, it's the only

21   place that this case can practicably be tried without

22   exposing my client to unnecessary and undue risk.

23   Because we cannot be tried in Illinois.

24           THE COURT:    Well, let me say this.    Should

14

1    you so desire, you didn't have to have subsidiaries.

2    You made the choice in the format of the other

3    companies.  And they are legally separate from you.

4         Now, the fact that the legal separation is

5    not exactly what you'd like -- and the people like to

6    say we're a separate corporation when they want a

7    wall; when they don't want a wall, they say we're

8    really all the same.

9         MR. KLEIMAN:  But, your Honor, we're not

10   saying that they're all the same.  And if I gave you

11   that impression, I apologize.  No dispute that

12   they're separate companies.

13        I'm not talking about protecting the

14   nondebtor companies, your Honor.

15        THE COURT:  You aren't?

16        MR. KLEIMAN:  No, your Honor.

17        THE COURT:  Well, that surprises me, because

18   my interpretation is that the purpose is there

19   because you have this relationship to the --

20        MR. KLEIMAN:  No, your Honor.  This is a

21   very important distinction.  Pacific Dunlop in their

22   pleadings talks about how financially well off the

23   nonbankrupt companies are and they cite you to some

24   public statements about how they're doing great and

15

1    they're not affected by the bankruptcy.  Judge,

2    that's entirely relevant.

3             I hate to be immodest, Judge, but this is

4    all about me.  This is all about my client, Exide

5    Technologies, the bankrupt company, and how this

6    would harm me, Exide Technologies, if this case were

7    to proceed.  It's not about protecting the nondebtor

8    companies, it's about protecting Exide.  And there

9    is no way that Pacific Dunlop can fashion a procedure

10   or a mechanism to have a trial conducted in this

11   court, in my absence -- and I can't be here, Judge,

12   because of the automatic stay, there's no

13   jurisdiction -- that doesn't harm me.  We have to be

14   in Delaware.

15            THE COURT:  Are you actually telling me that

16   you're not -- let's call him Judge Jones, I don't

17   know who the judge is -- that Judge Jones would not

18   hear a petition from you asking you to participate

19   here?  It's a little different than my knowledge.

20   Doesn't the bankruptcy court allow you to participate

21   here to protect an interest?  We can't go after you,

22   but you can come here where it's to protect an

23   interest.

24            Tell me, you're the -- am I wrong?  Tell me



Kruse Associates, Ltd.

www.krusereporters.com
312-345-1500

A-0324

16

1    if I'm wrong.

2         MS. MERKLE:  The bankruptcy court is an

3    amazingly flexible instrument.  A lot of things can

4    be agreed on.

5         What I think is important is that they seem

6    to think this litigation somehow violates the

7    automatic stay.

8         THE COURT:  Well, we said in the beginning

9    it doesn't.

10        MS. MERKLE:  Right.

11        THE COURT:  So I don't think that's an

12   issue, is it?

13        MR. KLEIMAN:  We're talking about your

14   Honor's extending the automatic stay for my

15   protection.

16        THE COURT:  No, you're asking me to stay

17   this proceeding --

18        MR. KLEIMAN:  Correct.

19        THE COURT:  -- which is not part of yours

20   except to you.  So there is no question there.  It

21   isn't extending an automatic stay, it's adding

22   another stay.  Isn't that true?  Anybody have a

23   problem with that?

24        MR. KLEIMAN:  Your Honor, the point that I



Kruse Associates, Ltd.
www.krusereporters.com
312-345-1500

A-0325

17

1    wanted to make is by asking me to go to Judge Akard

2    in Delaware --

3            THE COURT:  We've got a name.

4            MR. KLEIMAN:  -- and ask for additional

5    protection, takes the Bankruptcy Code and flips it on

6    its head.  Now, we may not all like the Bankruptcy

7    Code.  It's a pretty draconian statute in many

8    respects.  It has some very blanket protections.

9            THE COURT:  Wait until you see what the new

10   one is going to be.  If you think that's draconian.

11           MR. KLEIMAN:  But, your Honor, one of the

12   things that it clearly does is gives me some benefits

13   and some protections that can't be taken away from

14   me.

15           Now, your Honor, by asking me to go defend

16   myself in front of my own bankruptcy judge, you're

17   flipping Congress's statutory scheme on its head.  If

18   somebody wants to get relief from the stay, they go

19   to the bankruptcy court and ask.

20           THE COURT:  That's right.

21           MR. KLEIMAN:  And that's what I'm suggesting

22   to you, Judge.

23           THE COURT:  I don't have a problem with

24   that.



Kruse Associates, Ltd.
www.krusereporters.com
312-345-1500

18

1    MR. KLEIMAN:  Tell Pacific Dunlop to go to

2    the bankruptcy court and ask for relief from the

3    stay.

4    THE COURT:  You know what, I don't call it

5    malpractice, but I will call it a stupid practice.  I

6    don't know if you did this what the in-house lawyer

7    -- I'm not insulting you, I want you to understand

8    that -- for you to go into the bankruptcy court to do

9    that you'd have to be out of your mind.  I don't mean

10    to insult you.  Wouldn't you?

11    MR. VERTICCHIO:  Yes.

12    MS. MERKLE:  Since we're not subject to the

13    automatic stay, yes.

14    MR. KLEIMAN:  But, your Honor, there is no

15    practical alternative to doing that.  They may not

16    like it, but we can't change the law just because

17    it's, in their perception, unfavorable to them.

18    Judge Akard is a very fair jurist, Judge.

19    They'll hear Pacific Dunlop's arguments.  And we'll

20    make our arguments and that judge will decide.

21    THE COURT:  Look, I've got all of the

22    unrelated, nonbankruptcy entities here.

23    Unfortunately, I wish I were a kid.  I'm 74 years

24    old.  I've been in this business almost a half a



19

1   century.  I've dealt a lot, as everybody in the world

2   has, unless you were very specialized, I've dealt

3   with bankruptcy court.  Okay.  There is nothing

4   unusual about it.  Bankruptcy protects you.

5   Everybody has conceded to that.  I have no intention

6   of staying the remainder of the case.  It's as simple

7   as that.

8           MR. KLEIMAN:  Judge, how can the remainder

9   of the case proceed forward and not harm me?  You're

10  going to be deciding the same issues that affect

11  whether I'm liable.

12          THE COURT:  Well, that may or may not be.

13  You might have an argument for collateral estoppel,

14  but it sure isn't res adjudicata.

15          MS. WOOLF:  If I could address that point.

16          THE COURT:  Sure.

17          MS. WOOLF:  Although the legal principles

18  may be the same, the factual issues are not.  Each

19  of the international Exide corporations signed

20  separate agreements.  And in each of those

21  agreements --

22          THE COURT:  You disagree with my term, at

23  most he may have collateral estoppel, but it's not

24  the same -- you may, I don't say you will.  And I'm



20

1    not sure you know that either.

2        MS. WOOLF:  Right.  They're making an

3    argument, but it's certainly not clear that --

4        THE COURT:  I don't have that problem.  They

5    have a right to say -- look, if all of you went into

6    bankruptcy court, they'd be hung out to dry, will you

7    not?

8        MS. WOOLF:  We would be, your Honor.

9        THE COURT:  Okay.  But you're not all there.

10   I think it would be eminently unfair of me to stop

11   their activities as the nonbankrupt entities and in a

12   sense have time run against them so it's all done.

13       MR. KLEIMAN:  Your Honor, why do you believe

14   that they would be hung out to dry in the federal

15   bankruptcy court?

16       THE COURT:  No, I didn't say that.  I

17   believe that one of the problems you'll have is that

18   timewise, going into bankruptcy court, will adversely

19   affect you.

20       MS. WOOLF:  Absolutely, your Honor.  This

21   case is a year old already.

22       MR. KLEIMAN:  In what respect, Judge?

23       THE COURT:  Well, let me put it to you this

24   way.  I'm moderately compulsive, as you know.  Okay.

Kruse Associates, Ltd.

21

1  I'm moderately compulsive and I like to move things.

2  In a state court you've got an argument to make.

3      I don't know -- look, let me put it to you

4  this way.  If you had decided and you said to me,

5  "Judge, I'd like to go," I wouldn't stop you from

6  going there.  Right?  I never said I'd stop you from

7  going there.  You never asked to go there.  You have

8  made the strategic decision that you're better off as

9  a matter of strategy here.  You may regret it, but

10  that's your decision.

11      MS. WOOLF:  You Honor, it was a benefit of

12  the bargain.  Each of these Exide corporations

13  consented to jurisdiction and venue in this court.

14  It's part of their contractual agreement.

15      THE COURT:  I'm not arguing with you.  But

16  I'm saying if you wanted to go there, you could go

17  there.  Right?

18      MS. WOOLF:  I'm not a bankruptcy lawyer,

19  Judge.

20      THE COURT:  I don't care, but I'm saying --

21      MS. WOOLF:  You know, if Exide Corporation

22  or Pacific Dunlop had consented to jurisdiction there

23  and they had --

24      THE COURT:  No, you're missing my point.  My



Kruse Associates, Ltd.
www.krusereporters.com
312-345-1500

A-0330

22

1  point is very simply that everything a lawyer does a

2  lawyer does for strategic purposes.  I practiced for

3  34 years.  So they're not here because anybody loves

4  me, they're here because they believe this is the

5  better place for you to be.  Okay?

6      MS. WOOLF:  That's right, your Honor.

7      THE COURT:  If they thought they could be

8  equal in the federal court in bankruptcy, they could

9  make some move to go there.  They reject that.  You

10 know, you're asking me why?  I don't know why.

11 That's their decision to make.

12     MR. KLEIMAN:  But, your Honor, the filing of

13 the bankruptcy case changes the relationships of the

14 parties as well as --

15     THE COURT:  I don't think so and they don't

16 either.

17     MR. KLEIMAN:  But, your Honor, the

18 Bankruptcy Code tells us that they do.  And the

19 circuit court decisions that we cite in our papers

20 tell us that we do.

21     With all due respect to Pacific Dunlop's

22 counsel, their arguments don't carry the weight with

23 your Honor that the circuit courts should.  And what

24 circuit courts who have considered these exact same



Kruse Associates, Ltd.
www.krusereporters.com
312-345-1500

A-0331

1    justice to you.  My belief is that you're here with

2    the idea that the delay will be very harmful to you.

3              MS. WOOLF:  Absolutely, your Honor.  And I

4    must address a factual predicate of Mr. Fisher's

5    statement that he just made.

6              MR. FISHER:  Well, if I could just finish

7    the point.

8              THE COURT:  Let him finish.

9              MR. FISHER:  I appreciate that.

10             THE COURT:  I'll listen to everybody.

11             MR. FISHER:  Illinois law says that this

12   case, when it comes to judgment, that it will be null

13   and void, it's reversible error, if a necessary party

14   is not present in the case.

15             THE COURT:  They're contending it's not.  I

16   agree with you.  They're contending it's not a

17   necessary party.

18             MR. FISHER:  So then we'll have to do this

19   all over again.

20             THE COURT:  It's your contention, first of

21   all, it's your contention, is it not, they're not a

22   necessary party?

23             MS. WOOLF:  Yes, your Honor.

24             THE COURT:  Isn't it also your contention --

34

1    international buyers said, made sure, that the sole

2    and exclusive indemnification of the international

3    buyer under this agreement shall be set forth in the

4    coordinating agreement.  That's Section 10.3.

5        THE COURT:  Aren't all arguments of

6    indemnification or, if I may say, of guarantee

7    essentially stayed?

8        MS. WOOLF:  Against the bankrupt.

9        THE COURT:  Of course.

10        MS. WOOLF:  Sure.

11        THE COURT:  So they are stayed.

12        MR. FISHER:  But, your Honor, the parent

13    company -- first of all, I have not seen any

14    signature page.  She's pointing out that the parent

15    may have had an obligation to get a signature.  I

16    haven't seen it.

17        MS. WOOLF:  You Honor, I talked to the

18    transactional lawyers, they were signed and

19    delivered.

20        MR. FISHER:  You Honor, this sounds like

21    briefing on the necessary parties motion.  This is

22    something that would normally be briefed.  And if she

23    is correct, on that point, she would be able to show

24    signatures.

1          MR. KLEIMAN:  Your Honor, I need to raise an

2    issue by way of a question, and I'll apologize.  This

3    relates to --

4          THE COURT:  You don't have to apologize to

5    me.

6          MR. KLEIMAN:  I just don't know the case s

7    well.

8          THE COURT:  I'm a lawyer in a black dress,

9    that's all I am, the same thing you are.  Go ahead.

10          MR. KLEIMAN:  Your Honor, I don't know

11    whether Ms. Woolf has any discovery pending against

12    my client.  And I need to know that question --

13          MS. WOOLF:  There is no deposition notice

14    which involves a current Exide Corporation employee,

15    as we said in our brief.

16          MR. KLEIMAN:  As long as they're not seeking

17    any discovery from my client --

18          THE COURT:  I'm not sure I can enforce

19    discovery against you, are you?

20          MR. KLEIMAN:  I don't believe they can, your

21    Honor.

22          THE COURT:  I don't believe they can either.

23          MR. KLEIMAN:  And if they attempt to, we

24    could oppose that.

44

1          THE COURT:  One of the things we generally

2    agreed on is where you folks stand.

3              Forty-five days work for everybody?

4          MR. FISHER:  I doubt it, your Honor, for two

5    reasons.  One, I think it's incorrect there is no

6    pending discovery against Exide.  But if there is, it

7    will go unresponded to without prejudice as I

8    understand what you're saying.

9          MS. WOOLF:  Your Honor, I could identify the

10   witnesses.  All of them, to the extent they were ever

11   employees of Exide Corporation, they're former

12   employees.  And the others are employees of the

13   foreign corporations.  They are not current Exide

14   employees.

15         MR. FISHER:  You Honor, we do not control --

16   there are a few current employees, but the majority

17   of them we do not control and are abroad, your Honor.

18         THE COURT:  So if you don't control it -- I

19   don't know if you've practiced more than a day or two

20   -- I'm not being insulting -- but you know what to do

21   if they don't control them, you'll serve them.  It

22   won't be the first time, it won't be the last time.

23         MS. WOOLF:  Your Honor, they all consented

24   to jurisdiction in this court, every one of them, so



Kruse Associates, Ltd.
www.krusereporters.com
312-345-1500

A-0353

45

1    we do have jurisdiction over them.

2         MR. FISHER:  Your Honor, that's true of the

3    foreign subsidiaries under the coordinating

4    agreement.  That is not true -- they're arguing both

5    sides.  In their brief they say that everyone is a

6    former employee.

7         THE COURT:  You know what, why don't you

8    decide who you're going to bring in.  And if there is

9    a question, I'll resolve it.  I'll give you an

10   answer.  I can't anticipate your stuff.  I've got to

11   at least read your material before I do something.

12   Okay.

13        MS. WOOLF:  Your Honor, because these aren't

14   current employees, we will subpoena those that we

15   have subpoena power over and we will proceed that

16   way.

17        MR. FISHER:  Ms. Woolf is free to do that.

18        THE COURT:  So do it.  I'll get you back

19   here in 45 days.

20        Do you want to ask Susan to come out with

21   her book?

22        MR. KLEIMAN:  As long as, your Honor,

23   they're not seeking any discovery against me or my

24   people.



1    THE COURT:  Look, you are one of the most

2    protected people I've ever met.  So don't worry about

3    it.  No one has ever argued you are.  And if you

4    decide it's in your interest, your petition, what you

5    want to petition from the other judge, you'll do what

6    you deem appropriate.

7         MR. KLEIMAN:  Understood, Judge.

8         THE COURT:  I'd like them back in 45 days.

9    I will do, so you all know, what I have always done

10   in all of my cases from out of town is give

11   consecutive dates.  I only had to use it once.  But

12   we'll give you two consecutive dates.  You know, you

13   never know when something is going to happen, so

14   we'll give you two.  And normally we've been done and

15   you've been able to get the planes back, haven't you?

16   I did this courtesy --

17        MS. WOOLF:  I have, your Honor.

18        THE COURT:  Off the record if I may.

19        (Off the record.)

20        THE COURT:  And file your motion, I'm not

21   stopping you.

22        MR. FISHER:  I'll need to consult with the

23   clients, your Honor.

24        THE COURT:  Well, do you want to come back

47

1    in two weeks or three weeks?

2        MR. FISHER:  No.  We can simply notice it up

3    at that time if you like.

4        THE COURT:  Okay, I'm there.

5        MR. FISHER:  Your Honor, as a courtesy to

6    out-of-town counsel, we'd have no objection,

7    especially for the presentment or any date like that,

8    if Ms. Woolf appears by telephone.  Obviously it's up

9    to your Honor.

10       MS. WOOLF:  Mr. Fisher has made that offer

11   before, but I have local counsel.  If it's something

12   that --

13       THE COURT:  Let me say this.  And I know

14   your local counsel, because he's been here very

15   frequently.  You two have been in my court many

16   times.

17       MR. VERTICCHIO:  Many times, Judge.

18       THE COURT:  Let me put it this way.  I think

19   I know you well enough.  I don't know you as well as

20   I know my regulars.  If you have to be here, you know

21   how to find an airplane and get here.

22       MS. WOOLF:  I do, your Honor.  Thank you.

23       THE COURT:  Okay.  And there is such a thing

24   as a telephone.  You can call.  You know, my basic



48

1    rule is that everybody extends courtesy to everybody

2    else.  And I'll deal with it.

3         But I think that having gone through the --

4    I really had a decision as to delaying the whole

5    thing, which I'm not going to do.  Okay.  So you go

6    with your necessary party, because I assume we'll

7    brief whether they're a necessary party anyway.

8         And let me say this.  As to agreement on

9    anything else, I don't think there is much agreement

10   here.  So whatever there is, you will argue out.

11        MR. FISHER:  Thank you, your Honor.

12        THE CLERK:  August 22 and August 23 at 1:45.

13        MR. KLEIMAN:  Your Honor, just so we're

14   clear, although I don't know whether I will be

15   participating in this proceedings any further, should

16   I wish to file papers in support of or in response to

17   Mr. Fisher's --

18        THE COURT:  Right now, you're in here as

19   much as anybody else.  Is that not correct?

20        Secondly, you're probably the most protected

21   party I have in my courtroom.  Okay.  But nobody is

22   denying -- I don't think the stay denies you the

23   right to participate, in my understanding, does it?

24        MS. MERKLE:  No.



Kruse Associates, Ltd.
www.krusereporters.com
312-345-1500

49

1    MR. KLEIMAN:  We have all of the benefits
2    and none of the burdens, your Honor.
3        THE COURT:  That's right.
4        MR. KLEIMAN:  It's true.
5        THE COURT:  Thank you all.  I think you all
6    did an exceptional job.  And we'll keep going.  And
7    if you're right, you'll win.
8        MR. FISHER:  My only concern is that it will
9    be on appeal and we'll have to do it again.  But I
10    think I made that point, I'll argue it in the papers.
11        THE COURT:  You know what, if it is, it will
12    be.  It isn't going to be the first time anything
13    happened.  Since you folks made the decision to delay
14    -- I'm not insulting you -- you didn't go into
15    bankruptcy because of this case.
16        MR. KLEIMAN:  We didn't make a decision to
17    delay, we went bankrupt, Judge.
18        THE COURT:  No, no, no.  I didn't mean since
19    the decision to delay came from you, which I don't
20    think you did it because of this case.  Okay.
21        MR. KLEIMAN:  No, Judge.
22        MR. FISHER:  We do appreciate your attempt
23    to work through the bankruptcy law here, your Honor.
24        THE COURT:  I do the best I can.  And I'll


A-0358

50

1   tell you, even if you reverse me, you can still come

2   back into my courtroom.

3                    (The hearing was adjourned at

4                    2:36 p.m., July 8, 2002, to

5                    1:45 p.m., August 22, 2002.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

51

```
 1    STATE OF ILLINOIS )
                        ) SS.
 2    COUNTY OF C O O K )

 3

 4          I, JOYCE FANCSALSZKI, CSR, do hereby certify

 5    that I reported in shorthand the proceedings had at

 6    the hearing aforesaid, and that the foregoing is a

 7    true, complete and accurate transcript of the

 8    proceedings at said hearing as appears from my

 9    stenographic notes so taken and transcribed under my

10    personal direction this 11th of July 2002.

11

12

13

14                                  _____
                                    Certified Shorthand Reporter
15

16    CSR No. 084-003068 - Expiration Date:  May 31, 2003.

17

18

19

20

21

22

23

24
```

Kruse Associates, Ltd.

www.krusereporters.com
312-345-1500

A-0360