All matters provided for herein involving the corporate structure of the Debtors or Reorganized Debtors, and any corporate action required by the Debtors or Reorganized Debtors in connection with the Joint Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders or directors of the Debtors or Reorganized Debtors. On the Effective Date, the appropriate officers of the Debtors and the Reorganized Debtors and members of the board of directors of the Debtors and the Reorganized Debtors are authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Joint Plan in the name of and on behalf of the Debtors and the Reorganized Debtors.

G.    *Dismissal of Creditors Committee Adversary Proceeding, Smith Adversary Proceeding and other Settlements*

1.    Pursuant to Bankruptcy Rule 9019, and in consideration of the classification, distribution, treatment, releases and other benefits provided under the Joint Plan, including without limitation the distributions to be made to Holders of General Unsecured Claims pursuant to Article III.B.4 of the Joint Plan, and the undertakings of the parties to the settlements provided in this Joint Plan, the provisions of this Joint Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Joint Plan including, without limitation, (a) the releases set forth in Articles X.B, X.C and X.D hereof, (b) the Creditors Committee Adversary Proceeding, (c) the Smith Adversary Proceeding, (d) the Smith Management LLC and HSBC Bank USA appeals of the Opinion on Confirmation, dated December 30, 2003, and the Order, dated December 30, 2003, denying confirmation of the Debtors' Fourth Amended Joint Plan of Reorganization, and (e) the Committee/$R^2$ Adversary, all of which shall be deemed settled pursuant to section 1123(b)(3)(A) of the Bankruptcy Code. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Joint Plan, including the releases, and the Bankruptcy Court's findings shall constitute its determination that such compromises, settlements and releases are in the best interests of the Debtors, the estates, the creditors and other parties in interest, and are fair, equitable and within the range of reasonableness, all of which shall be effective as of the Effective Date.

2.    On the Effective Date, (a) the Creditors Committee, $R^2$ Investments, LDC and each Holder of General Unsecured Claims shall dismiss or shall be deemed to have dismissed their claims under the Creditors Committee Adversary Proceeding, with prejudice and in their entirety, (b) Smith Management LLC shall dismiss or shall be deemed to have dismissed its claims under the Smith Adversary Proceeding with prejudice and in their entirety, (c) Smith Management LLC and HSBC Bank USA shall dismiss or be deemed to have dismissed with prejudice any appeals of the Opinion on Confirmation, dated December 30, 2003, and the Order, dated December 30, 2003, denying confirmation of the Debtors' Fourth Amended Joint Plan of Reorganization, and (d) the Creditors Committee shall dismiss or shall be deemed to have dismissed with prejudice, and the Creditors Committee and the individual members of the Creditors Committee shall be deemed to have released $R^2$ Investments LDC and $R^2$ Top Hat, Ltd. from any and all claims, allegations and causes of action described in or related to the allegations set forth in the Committee/$R^2$ Motion.

3.    In consideration of the mutual undertakings of the Releasees in connection with the Chapter 11 Cases and this Joint Plan, each Releasee hereby releases each other Releasee from any and all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of Exide, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person or Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date in any way relating or pertaining to (a) the Debtors or Reorganized Debtors; (b) the purchase or sale, or the rescission of a purchase or sale, of any security of any Debtor, (c) the Chapter 11 Cases, and (d) the negotiation, formulation and preparation of the Joint Plan or any related agreements, instruments or other documents.

4.    In addition to the general injunction set forth in Article X.H hereof, from and after the Effective Date, (a) the Creditors Committee, $R^2$ Investments, LDC and each Holder of General Unsecured Claims shall be permanently enjoined from continuing in any manner the Creditors Committee Adversary Proceeding or any of the claims, allegations and causes of action described in or related to the Creditors Committee Adversary Proceeding, (b) Smith Management LLC shall be permanently enjoined from continuing in any manner the Smith Adversary Proceeding or any of the claims, allegations and causes of action described in or related to the Smith Adversary Proceeding, (c) Smith Management LLC and HSBC

A-0400

Bank USA shall be permanently enjoined from continuing in any manner any appeals of the Opinion on Confirmation, dated December 30, 2003, and the Order, dated December 30, 2003, denying confirmation of the Debtors' Fourth Amended Joint Plan of Reorganization, (d) the Creditors Committee and the individual members of the Creditors Committee shall be permanently enjoined from pursuing in any manner the claims, allegations and causes of action described in or related to the allegations set forth in the Committee/R² Motion, and (e) each Releasee shall be permanently enjoined from pursuing any claims against any other Releasee that are released pursuant to the terms of this Joint Plan.

H.     *Noteholder Distribution Settlement*

In recognition and settlement of claims relating to the contractual subordination of the 2.9% Convertible Notes to the 10% Senior Notes in the 2.9% Convertible Note Indenture, the 2.9% Convertible Note Indenture Trustee shall be deemed to have transferred the 2.9% Subordination Payment to the 10% Senior Note Indenture Trustee and the 10% Senior Note Indenture Trustee shall be deemed to have transferred the 2.9% Settlement and Reallocation Payment to the 2.9% Convertible Note Indenture Trustee, and all Creditors shall be deemed to have waived any and all contractual subordination rights that they may have with respect to the 2.9% Note Settlement and Reallocation Payment provided under the Joint Plan. In recognition of these deemed transfers, the Reorganized Debtors shall make the distributions set forth in Articles III.B.4.b.ii and III.B.4.b.iii hereof.

I.     *Sources of Cash for Distribution under Joint Plan*

All Cash necessary for Reorganized Debtors to make payments pursuant hereto shall be obtained from existing Cash balances, if any, and proceeds of the Exit Facility.

J.     *Public Company Status and Listing on National Exchange*

For a reasonable period of time following the Effective Date, Reorganized Exide shall use its best efforts to continue to be a reporting company under the Securities Exchange Act. Reorganized Exide shall use its best efforts to cause the New Exide Common Stock and New Exide Warrants to be listed on the New York Stock Exchange or the Nasdaq National Market as soon as practicable after the Effective Date.

K.     *Payment of Fees and Expenses for the Agent, the Steering Committee and the Postconfirmation Creditors Committee*

On the Effective Date or as soon as practicable thereafter, the Reorganized Debtors shall pay all reasonable and actual unpaid Agent Expenses and Steering Committee Expenses for the period up to and including the Effective Date. Thereafter, Reorganized Exide shall timely pay all reasonable and actual Agent Expenses incurred after the Effective Date related to the performance of services set forth in or contemplated by this Joint Plan.

After the Effective Date, the Reorganized Debtors shall pay all reasonable and actual fees and expenses of the professionals retained by the Postconfirmation Creditors Committee and all reasonable and actual expenses of the members of the Postconfirmation Creditors Committee.

L.     *Indenture Trustee and other Professional Fees and Expenses*

All reasonable and actual fees and expenses of the Fee Submission Parties related to these Chapter 11 Cases shall be paid by the Debtors. Each Fee Submission Party shall submit to the Fee Notice Parties time descriptions and expense statements for all fees and expenses related to these Chapter 11 Cases. If such time descriptions and expense statements are submitted no later than 30 days prior to the commencement of the Confirmation Hearing, the Fee Notice Parties shall have until 10 days prior to the commencement of the Confirmation Hearing to review such statements and serve objections, if any. If none of the Fee Notice Parties objects to such statements, or if such objection is resolved before the Effective Date, the fees and expenses of each Fee Submission Party shall be approved in the Confirmation Order and paid by the Debtors on the Effective Date. If any of the Fee Notice Parties objects to any of the statements presented by any of the Fee Submission Parties, the parties shall attempt to resolve such objection on a consensual basis. If no consensual resolution is reached, the Debtors shall be authorized to pay all fees and expenses that are not subject to dispute on the Effective Date, and all disputed fees and expenses shall be presented to the Bankruptcy Court for final determination. If such time

- 22 -

A-0401

descriptions and expense statements are submitted less than 30 days before the commencement of the Confirmation Hearing, the Fee Notice Parties shall have 20 days to review such statements and serve objections, if any. If none of the Fee Notice Parties objects to the payment of such fees and expenses, or such objection is resolved, the Debtors shall pay such fees and expenses as soon as practicable after the expiration of the 20 day review period, but no later than 10 days after the later of the expiration of the 20 day review period or the resolution of the relevant objection, as appropriate. If any of the Fee Notice Parties objects to any of the statements presented by any of the Fee Submission Parties, the parties shall attempt to resolve such objection on a consensual basis. If no consensual resolution is reached, the Debtors shall be authorized to pay all fees and expenses that are not subject to dispute, and all disputed fees and expenses shall be presented to the Bankruptcy Court for final determination. The Debtors or the Reorganized Debtors (as the case may be) shall pay any such fee or expense claim submitted to and resolved by the Bankruptcy Court as soon as practicable, but no later than 10 days after the entry of the Bankruptcy Court order relevant to such claim. The entry of the Confirmation Order shall constitute a determination by the Bankruptcy Court that these procedures are fair and reasonable, in light of the compromises and settlements set forth herein, and that the Debtors are authorized to make the payments provided in this section without need for further order of the Bankruptcy Court. It is understood that the billing and expense statements may be redacted as necessary to protect privilege and other related issues, and failure to so redact a statement shall not be deemed to be a waiver of such privileges and issues.

Notwithstanding any of the foregoing, the approval of the fees and expenses of Sonnenschein, Nath & Rosenthal LLP and The Bayard Firm, litigation counsel to the Creditors Committee, shall be governed by the orders of the Bankruptcy Court approving their retentions, by the order of the Bankruptcy Court dated June 25, 2003, approving the appointment of a fee examiner, by any other orders of the Bankruptcy Court related to their fees and/or expenses, including any order approving the stipulation among the Prepetition Lenders, the Debtors and the Creditors Committee, filed on or about February 27, 2004, and by all applicable provisions of the Bankruptcy Code.

Any objections to the billing and expense statements shall be in writing and shall specify the amount in dispute and the reasons therefore in reasonable detail. All objections may be resolved by the relevant Fee Submission Party and the Fee Notice Party making the objection, at any time, without notice to the other Fee Notice or Fee Submission Parties and without further order of the Court regardless of whether presented to the Court. Any disputed fees that are presented to the Court shall not be subject to any additional objection period. All of the parties to any objection presented to the Court shall request that such objection be heard on an expedited basis unless otherwise agreed by the parties to such objection.

From and after the Effective Date, the Reorganized Debtors shall pay promptly all reasonable and actual fees and expenses of the 10% Senior Note Indenture Trustee and the 2.9% Convertible Note Indenture Trustee related to the performance of services set forth or contemplated by the Joint Plan, other than service by the 10% Senior Note Indenture Trustee or the 2.9% Convertible Note Indenture Trustee, if any, on the Postconfirmation Creditors Committee.

M.    *Adoption of Company Incentive Plan*

As soon as reasonably practicable after the Effective Date, the Company Incentive Plan shall be proposed and approved by the compensation committee of the New Exide Board of Directors, subject to final approval by the New Exide Board of Directors; provided however, that the Company Incentive Plan will provide that covered employees will receive or have the right to receive securities representing not less than 5% and not more than 10% of the fully diluted shares of New Exide Common Stock.

## ARTICLE VI.

### TREATMENT OF EXECUTORY CONTRACTS
### AND UNEXPIRED LEASES

A.    *Assumption of Executory Contracts and Unexpired Leases*

Immediately prior to the Effective Date, except as otherwise provided herein, all executory contracts or unexpired leases of the Debtors, including, without limitation, customer program agreements, vendor agreements and warranty obligations, will be deemed assumed in accordance with the provisions and requirements of

- 23 -

sections 365 and 1123 of the Bankruptcy Code except those executory contracts and unexpired leases that (1) have been rejected by order of the Bankruptcy Court, (2) are the subject of a motion to reject pending on the Effective Date, (3) are identified on a list to be included in the Plan Supplement, (4) that relate to the purchase or other acquisition of Equity Interests, or (5) are rejected pursuant to the terms hereof.

Immediately prior to the Effective Date, except as otherwise provided in this section, all Purported Leases shall be deemed assumed on a conditional basis pending the entry of a final, non-appealable order resolving the Recharacterization Adversary Proceeding in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code except those Purported Leases that (1) have been rejected on a conditional basis pending the entry of a final, non-appealable order resolving the Recharacterization Adversary Proceeding by order of the Bankruptcy Court, (2) are the subject of a motion to reject on a conditional basis pending the entry of a final, non-appealable order resolving the Recharacterization Adversary Proceeding pending on the Effective Date, or (3) are identified on a list to be included in the Plan Supplement. To the extent that a final, non-appealable order is entered in the Recharacterization Adversary Proceeding providing that a Purported Lease is a "true lease," the conditional assumption or rejection of such Purported Lease, whichever is applicable, shall become final and such Purported Lessor shall be entitled to the treatment provided for other lessors and non-debtor parties to executory contracts. To the extent that a final, non-appealable order is entered in the Recharacterization Adversary Proceeding providing that a Purported Lease is a secured financing transaction, such Purported Lessor shall be entitled to a Class P2-Other Secured Claim to the extent of the value of the equipment subject to the Purported Lease under section 506 of the Bankruptcy Code if such Purported Lessor qualifies as a secured creditor under applicable non-bankruptcy law and a P4-General Unsecured Claim for any amounts owed by the Debtors greater than the value of the equipment or for the entire amount of such allowed claim if the Purported Lessor does not qualify as a secured creditor under applicable non-bankruptcy law. With respect to any Purported Lease as to which the Debtors retain possession of the underlying equipment or to which the Debtors have not returned the underlying equipment, from the Confirmation Date through the date of entry of a dispositive final, non-appealable order in the Recharacterization Adversary Proceeding with respect to such Purported Lease or by other agreement between the parties, the Debtors and the Purported Lessors shall continue to perform their obligations under the Purported Leases in accordance with each such Purported Lease's terms; provided however, that with respect to any Purported Lease that is conditionally assumed as of the Confirmation Date, the Debtors shall not be required to make any cure payment within the meaning of section 365 of the Bankruptcy Code until the entry of a final, non-appealable order in the Recharacterization Adversary Proceeding determining that such Purported Lease is a "true lease." Unless otherwise agreed to by the parties, the Debtors shall continue to perform their obligations under the holdover terms of any Purported Lease for which the Debtors retain possession of the underlying equipment but which expires by its own terms prior to the entry of a dispositive final, non-appealable order in the Recharacterization Adversary Proceeding. In the event that the Debtors conditionally assume a Purported Lease and a final, non-appealable order is entered in the Recharacterization Adversary Proceeding determining that such Purported Lease is a "true lease," the Debtors shall provide such Purported Lessor with a notice setting forth the proposed cure amount within 30 days of the entry of such order. If the Purported Lessor does not agree with the Debtors' proposed cure amount, such Purported Lessor may submit an alternative cure amount within 30 days of receipt of the Debtors' notice. If the parties are unable to agree on a cure amount, a hearing shall be set before the Bankruptcy Court to determine the cure amount. Any bar date relating to Administrative Claims established in the Joint Plan or otherwise shall not apply to Administrative Claims alleged by the Purported Lessors relating to the Purported Leases. Rather, upon the motion of the Debtors or the Purported Lessors, the Bankruptcy Court shall establish a bar date and related notice and filing procedures, in the Recharacterization Adversary Proceeding, for Administrative Claims alleged by the Purported Lessors relating to the Purported Leases.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

All proofs of Claims with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be Filed with the Bankruptcy Court according to the deadlines established by the Bankruptcy Court in the Chapter 11 Cases. Any Claims arising from the rejection of an executory contract or unexpired lease not Filed within such time will be forever barred from assertion against the Debtors or Reorganized Debtors, their Estates and property unless otherwise ordered by the Bankruptcy Court or provided herein.

- 24 -

C.    *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed*

Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Joint Plan is in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree. In the event of a dispute regarding: (1) the amount of any cure payments, (2) the ability of a Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

D.    *Indemnification of Directors, Officers and Employees*

The obligations of the Debtors to indemnify any Person serving at any time after the Initial Petition Date as one of their directors, officers or employees by reason of such Person's service in such capacity, or as a director, officer or employee of any other corporation or legal entity, to the extent provided in the Debtors' constituent documents, by a written agreement with a Debtor or under applicable state corporate law, shall be deemed and treated as executory contracts that are assumed by the Reorganized Debtors pursuant hereto and pursuant to section 365 of the Bankruptcy Code as of the Effective Date. Accordingly, such indemnification obligations shall be treated as Administrative Claims, and shall survive unimpaired and unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date. Notwithstanding anything to the contrary contained herein, such assumed indemnity obligations shall not be discharged, Impaired, or otherwise modified by confirmation of this Joint Plan and shall be deemed and treated as executory contracts that have been assumed by the relevant Debtors pursuant to this Joint Plan as to which no proofs of claim need be Filed.

E.    *Compensation and Benefit Programs*

Except as otherwise expressly provided herein, all employment and severance agreements and policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their employees, former employees, retirees and non-employee directors and the employees, former employees and retirees of its subsidiaries, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit agreements and plans, incentive plans, deferred compensation plans and life, accidental death and dismemberment insurance plans shall be treated as executory contracts under the Joint Plan and on the Effective Date shall be deemed assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code; and the Debtors' obligations under such programs to such Persons shall survive confirmation of this Joint Plan, except for (1) executory contracts or employee benefit plans specifically rejected pursuant to this Joint Plan (to the extent such rejection does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code), (2) all employee equity or equity-based incentive plans, and (3) such executory contracts or employee benefit plans as have previously been rejected, are the subject of a motion to reject as of the Effective Date, or have been specifically waived by the beneficiaries of any employee benefit plan or contract; provided however, that the Debtors' obligations, if any, to pay all "retiree benefits" as defined in section 1114(a) of the Bankruptcy Code shall continue.

F.    *Rejection of Rights Agreement and Registration Agreements*

On the Effective Date, the Rights Agreement and Registration Agreements shall be deemed rejected by the Debtors, and the Reorganized Debtors shall have no obligations thereunder.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Distributions for Claims Allowed as of the Effective Date*

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed as of the Effective Date and are entitled to receive distributions under

- 25 -

the Joint Plan shall be made on the Effective Date, or as soon as practicable thereafter, subject to the reserves for Disputed Claims described in Article VIII.A.6.

The New Exide Common Stock and New Exide Warrants to be authorized or issued under the Joint Plan, other than New Exide Common Stock and New Exide Warrants issued in connection with the reserves for Disputed Claims described in Article VIII.A.6 hereof and the shares of New Exide Common Stock issuable upon the exercise of the New Exide Warrants, shall be deemed issued as of the Effective Date regardless of the date on which the certificates evidencing such shares are actually dated or distributed; *provided that* Reorganized Exide shall withhold any actual payment, dividend or proceeds related to such stock until such distribution is made and no interest shall accrue or otherwise be payable on any such withheld amounts.

B.     *Delivery and Distributions and Undeliverable or Unclaimed Distributions*

1.     *Delivery of Distributions in General*

Distributions to Holders of Allowed Claims shall be made to the Holders of such Allowed Claims as of the Distribution Record Date. Except as otherwise provided herein, distributions to Holders of Allowed Claims shall be made at the address of the Holder of such Claim as indicated on the records of the Reorganized Debtors as of the date that such distribution is made. Distributions shall be subject to the reserve for Disputed Claims set forth in Article VIII.A.6 herein.

2.     *Undeliverable Distributions*

(a)     *Holding of Undeliverable Distributions.*  If any distribution to a Holder of an Allowed Claim is returned to a Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until such Reorganized Debtor is notified in writing of such Holder's then-current address. Undeliverable distributions shall remain in the disputed claim reserve subject to section (b) below until such time as a distribution becomes deliverable. Undeliverable Cash shall not be entitled to any interest, dividends or other accruals of any kind. As soon as reasonably practicable, the Reorganized Debtors shall make all distributions that become deliverable.

(b)     *Failure to Claim Undeliverable Distributions.*  In an effort to ensure that all Holders of valid Allowed Claims receive their allocated distributions, sixty (60) days after the Effective Date, the Reorganized Debtors will File with the Bankruptcy Court a listing of unclaimed distribution holders. This list will be maintained, and periodically updated, for as long as the Chapter 11 Cases are pending. Any Holder of an Allowed Claim that does not assert a Claim pursuant hereto for an undeliverable distribution (regardless of when not deliverable) within the later of 1 year after the Effective Date or 6 months after such Claim becomes an Allowed Claim shall have its Claim for such undeliverable distribution discharged and shall be forever barred from asserting any such Claim against any Reorganized Debtor or its property. In such cases: (i) any Cash held for distribution on account of such Claims shall be property of the relevant Reorganized Debtor, free of any restrictions thereon; and (ii) any New Exide Common Stock or New Exide Warrants (or any proceeds thereof) held for distribution on account of such Claims shall be placed in the disputed claim reserve. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

3.     *Compliance with Tax Requirements/Allocations.*  In connection with the Joint Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to any unpaid principal amount of Allowed Claims with any excess allocated to the interest that accrued on such Claims.

C.     *Timing and Calculation of Amounts to be Distributed*

On the Effective Date or as soon as practicable thereafter, each Holder of an Allowed Claim against a Reorganized Debtor shall receive the full amount of the distributions that the Joint Plan provides for Allowed Claims in the applicable Class, subject to the reserve for Disputed Claims described in Article VIII.A.6. If and to

A-0405

the extent that there are Disputed Claims, beginning on the date that is 20 calendar days after the end of the calendar quarter following the Effective Date and 20 calendar days after the end of each calendar quarter thereafter, distributions shall also be made, pursuant hereto, to Holders of Disputed Claims in any Class whose Claims were allowed during the previous calendar quarter. Such quarterly distributions shall also be in the full amount that the Joint Plan provides for Allowed Claims in the applicable Class, subject to the reserve for Disputed Claims described in Article VIII.A.6.

D.    *Minimum Distribution*

Any other provision of the Joint Plan notwithstanding, payments of fractions of shares of New Exide Common Stock or fractions of New Exide Warrants will not be made. At such a time as there are no remaining Disputed Claims, the Reorganized Debtors shall aggregate all fractional shares of New Exide Common Stock or fractions of New Exide Warrants that would have been distributed to each Class or sub-Class entitled to receive distributions of New Exide Common Stock or New Exide Warrants under Article III hereof, and shall distribute whole shares of New Exide Common Stock (and New Exide Warrants, as applicable) to those Creditors within each Class or sub-Class who would have been entitled to a fractional share of New Exide Common Stock (and fractional New Exide Warrant, as applicable), with such distributions beginning with those Creditors who were owed the largest fractional interest in a share of New Exide Common Stock (and a New Exide Warrant, as applicable), and continuing in descending order until such time as there are no remaining shares of New Exide Common Stock (and/or New Exide Warrants, as applicable) otherwise allocable to Holders in such Class or Sub-Class; provided, however, that distributions made by indenture trustees shall be made in accordance with Article V.C. hereof. Any other provision of the Joint Plan notwithstanding, the Reorganized Debtors will not be required to make distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under the Joint Plan would otherwise be called for, the actual payment will reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

E.    *Setoffs*

The Reorganized Debtors may, in consultation with the Postconfirmation Creditors Committee, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Claim (before any distribution is made on account of such Claim), the Claims, Equity Interests, rights and causes of action of any nature that Exide or Reorganized Exide may hold against the Holder of such Allowed Claim; *provided that* neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors of any such Claims, Equity Interests, rights and causes of action that the Debtors or Reorganized Debtors may possess against such Holder, except as specifically provided herein.

F.    *Surrender of Canceled Instruments or Securities*

Each record Holder of a Claim based on or derived from the Old Notes, as a condition precedent to receiving any distribution on account of such Claims, shall be deemed to have surrendered the certificates or other documentation underlying such Claim, and all such certificates and other documentations shall be deemed to be cancelled as of the Effective Date.

G.    *Restriction on Distribution of New Exide Common Stock and New Exide Warrants*

Distribution of any New Exide Common Stock or New Exide Warrants to any Claim Holder in a jurisdiction outside of the United States is conditioned on receipt by Exide from such Holder of satisfactory evidence that the distribution is legally permitted to be made in such foreign jurisdiction. Exide will reasonably cooperate with any such Holder, at the Holder's expense and without imposing any incremental liability on Exide, in making any filings or taking any other actions in order to make the distribution in such foreign jurisdiction legally permissible. In any event, any Claim Holder in a jurisdiction outside of the United States who has not received a distribution within one year of such Claim becoming an Allowed Claim, shall have its Claim for such distribution discharged and shall be forever barred from asserting any such Claim against any Reorganized Debtor or its property. In such cases, any New Exide Common Stock or New Exide Warrants held for distribution on account of such Claims shall be placed in the disputed claims reserve.

- 27 -

## ARTICLE VIII.

### PROCEDURES FOR RESOLUTION OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS

A.    *Resolution of Disputed Claims*

1.    *Prosecution of Objections to Claims*

After the Effective Date, the Reorganized Debtors, in consultation with the Postconfirmation Creditors Committee, shall have the authority on or before the Claims Objection Bar Date to File objections, settle, compromise, withdraw or litigate to judgment objections to Claims. The Debtors, in consultation with the Postconfirmation Creditors Committee, also reserve the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law and to seek an extension of the Claims Objection Bar Date.

2.    *Settlement of Claims*

After the Effective Date, the Debtors, after consultation with the Postconfirmation Creditors Committee, shall have the authority to settle Disputed Claims according to the following procedures:

(a)    no settlement will be agreed by the Reorganized Debtors unless it is reasonable in the judgment of the Reorganized Debtors and after consultation with the Postconfirmation Creditors Committee, upon consideration of the probability of success if the claim is litigated or arbitrated, the complexity, expense and likely duration of any litigation or arbitration with respect to such claim, other factors relevant to assessing the wisdom of settlement, and the fairness of the settlement vis-à-vis the Reorganized Debtors' estates and creditors;

(b)    with regard to the settlement of any Disputed Claim which would result in the payment of $50,000 or less, the Reorganized Debtors may enter into and effectuate such settlement and are required to give notice to the Claim Settlement Notice Parties within 30 days following the effectuation of such settlement;

(c)    with regard to the settlement of any Disputed Claim which would result in the payment of more than $50,000 and up to $500,000, the Reorganized Debtors may enter into, execute and consummate a written agreement of settlement that will be binding on its estate, subject to: (i) sending advance written notice to the Claim Settlement Notice Parties, (ii) if no written objections are filed by the Claim Settlement Notice Parties within ten days of receipt of such notice, the Reorganized Debtors are authorized to immediately consummate such settlement; and (iii) if a written objection is received from a notice party within such ten-day period that cannot be resolved, the relevant settlement(s) shall only be consummated upon further order of the Bankruptcy Court;

(d)    with regard to the settlement of any Disputed Claim which would result in the payment of more than $500,000, the Reorganized Debtors may enter into, execute and consummate a written agreement of settlement that will be binding on its estate upon further order of the Bankruptcy Court; and

(e)    The Reorganized Debtors shall provide the Postconfirmation Creditors Committee, as requested but not less than quarterly, with a summary report, on a claim-by-claim basis, regarding the status and settlement of Disputed Claims. As requested, but not less than quarterly, the Debtors shall periodically confer with the Postconfirmation Creditors Committee to discuss pending claims and settlements; and

(f)    the Debtors and the Postconfirmation Creditors Committee may agree to alter the foregoing procedures at any time.

3.    *Estimation of Claims*

The Debtors or Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether a Debtor or Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any

A-0407

such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

4.      *PITWD Claims*

Notwithstanding anything herein to the contrary, all objections, settlements and litigation with respect to PITWD Claims, and the allowance and payment of PITWD Claims shall be governed by the PITWD Claims Procedures, attached hereto as Exhibit C.

5.      *Payments and Distributions on Disputed Claims*

Notwithstanding any provision herein to the contrary, except as otherwise agreed by Reorganized Exide after consultation with the Postconfirmation Creditors Committee, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. On the date or, if such date is not a business day, on the next successive business day that is 20 calendar days after the calendar quarter in which a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim will receive all payments and distributions to which such Holder is then entitled under the Joint Plan; subject to the following adjustments:

(a)      Subdivision or Combination of New Exide Common Stock. After the Effective Date, if Reorganized Exide subdivides (by any stock split, stock dividend, recapitalization or otherwise) shares of New Exide Common Stock into a greater number of shares, the remaining number of shares of New Exide Common Stock reserved for Disputed Claims shall be proportionately increased. After the Effective Date, if Reorganized Exide at any time combines (by reverse stock split or otherwise) shares of New Exide Common Stock into a smaller number of shares, then the remaining number of shares of New Exide Common Stock reserved for Disputed Claims shall be proportionately decreased. For purposes of the anti-dilution provisions of the New Exide Warrant Agreement, the New Exide Common Stock and New Exide Warrants reserved for Disputed Claims shall be deemed to be issued as of the Effective Date.

(b)      Dividends. After the Effective Date, if Reorganized Exide declares or pays a dividend upon the New Exide Common Stock except for a stock dividend payable in shares of New Exide Common Stock (a "Dividend"), then Reorganized Exide shall add to the reserve and payout for potential payment of Disputed Claims the amount and type of Dividends that would have been paid with respect to the remaining New Exide Common Stock reserved for Disputed Claims had such New Exide Common Stock been outstanding on the record date of such Dividend.

(c)      Organic Change. After the Effective Date, if Reorganized Exide consummates an Organic Change (as defined in the New Exide Warrant Agreement), then the successor or acquiring entity shall assume Reorganized Exide's obligations regarding payment of Disputed Claims and shall adjust the reserve and payout for potential payment of Disputed Claims such that the reserve and payout consists of the consideration, if any, that would have been paid with respect to the remaining New Exide Common Stock and New Exide Warrants reserved for Disputed Claims had such New Exide Common Stock and New Exide Warrants been outstanding immediately prior to the consummation of the Organic Change.

6.      *Reserve for Disputed Claims*

Prior to the Effective Date, the Creditors Committee shall establish, and the Debtors shall implement, an appropriate and reasonable reserve for potential payment of Disputed Claims in Class P-4 comprised of authorized but not issued New Exide Common Stock and New Exide Warrants, and in each case, the proceeds thereof, if any. At such time as either (a) the Creditors Committee or the Postconfirmation Creditors Committee or its successor, as

- 29 -

appropriate, reasonably determines to lower the reserve amount, or (b) there are no remaining Disputed Claims, the Reorganized Debtors shall distribute any unapplied reserve amounts, or properties, including any proceeds thereof, Pro Rata to the Holders of Allowed Claims in Class P4 (it being understood that the right to receive such residual distributions of New Exide Common Stock and New Exide Warrants and any proceeds thereof shall remain with the Holders of Allowed Claims in Class P4 and shall not extend to any Persons who purchase New Exide Common Stock or New Exide Warrants from such Holders on or after the Effective Date), according to the distribution protocol described in Article III.B.4 above.

After the Effective Date, Reorganized Exide will at all times, reserve and keep available, out of its aggregate authorized but unissued or treasury shares of New Exide Common Stock, the remaining number of shares of New Exide Common Stock reserved for Disputed Claims and the number of such shares deliverable upon the exercise of all remaining New Exide Warrants reserved for Disputed Claims.

    7.    *Postconfirmation Creditors Committee*

For the avoidance of doubt, while the Reorganized Debtors will have primary responsibility for administering the process of disputed claims resolution, the Postconfirmation Creditors Committee is intended to have an active role in all aspects of the disputed claims resolution process and related matters. In each instance as expeditiously as possible, the Reorganized Debtors shall provide the Postconfirmation Creditors Committee with all information and access to any and all materials and persons in the Reorganized Debtors' control reasonably requested by such committee.

**B.**    *Allowance of Claims*

Except as expressly provided herein or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed, unless and until such Claim is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim. Except as expressly provided in the Joint Plan or any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), Reorganized Exide after Confirmation will have and retain any and all rights and defenses Exide had with respect to any Claim as of the Initial Petition Date. All Claims of any Person or Entity that owes an obligation to the Debtors under section 502(d) of the Bankruptcy Code shall be disallowed unless or until such Person or Entity has paid the amount or turned over the property for which such person or entity is liable under section 522(i), 542, 543, 550 or 553 of the Bankruptcy Code.

**C.**    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or any Class of Claims are Impaired under the Joint Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy before the Confirmation Date.

**ARTICLE IX.**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE JOINT PLAN**

**A.**    *Condition Precedent to Confirmation*

It shall be a condition to Confirmation of the Joint Plan that the following conditions have been satisfied or waived pursuant to the provisions of Article IX.C. hereof:

    1.    All provisions, terms and conditions of the Joint Plan shall have been approved in the Confirmation Order.

    2.    The Confirmation Order shall approve (a) the dismissal of the Creditors Committee Adversary Proceeding, (b) the dismissal of the Smith Adversary Proceeding, (c) the dismissal of the Smith Management LLC and HSBC Bank USA appeals of the Opinion on Confirmation, dated December 30, 2003, and the Order, dated December 30, 2003, denying confirmation of the Debtors' Fourth Amended Joint Plan of Reorganization, and (d) all other plan settlements, including releases, as described in Article V.G and Article X hereof.

- 30 -

3.    The identities of the individuals proposed to serve on the New Exide Board of Directors shall have been disclosed to the Bankruptcy Court.

B.    *Conditions Precedent to Consummation*

It shall be a condition to Consummation of the Joint Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.    The Confirmation Order confirming the Joint Plan, as the Joint Plan may have been modified in accordance with Article XII.E, shall have been entered and become a Final Order in form and substance reasonably satisfactory to the Creditors Committee, the Debtors and the Agent, and shall provide that:

(a)    the Debtors and Reorganized Debtors are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with the Joint Plan;

(b)    the provisions of the Confirmation Order are nonseverable and mutually dependent;

(c)    Reorganized Exide is authorized to issue, pursuant to section 1145 of the Bankruptcy Code, the New Exide Common Stock, the New Exide Warrants, and the shares of New Exide Common Stock issuable upon exercise of the New Exide Warrants;

2.    The following agreements and documents, in form and substance satisfactory to the Creditors Committee, the Debtors and the Agent shall have been tendered for delivery and all conditions precedent thereto, if any, shall have been satisfied:

(a)    the New Organizational Documents and New Exide By-laws;

(b)    the agreement for the Exit Facility and all documents provide for therein or contemplated thereby;

(c)    the Amended Prepetition Foreign Credit Agreement; and

(d)    the New Exide Warrant Agreement.

3.    All actions, documents and agreements necessary to implement the Joint Plan shall have been effected or executed.

4.    The New Exide Board of Directors shall have been appointed.

5.    Holders of no more than $17.5 million of Prepetition Foreign Secured Claims shall have elected the Class P3 Option B, pursuant to Article III.B.3 hereof.

C.    *Waiver of Conditions*

Any of the conditions to Confirmation of the Joint Plan and/or to Consummation of the Joint Plan set forth in this Article IX may be waived at any time, without any additional notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to confirm and/or consummate the Joint Plan, by the written consent of each of the Debtors, the Creditors Committee and the Agent.

D.    *Effect of Non-occurrence of Conditions to Consummation*

If the Consummation of the Joint Plan does not occur, the Joint Plan shall be null and void in all respects and nothing contained in the Joint Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors; (2) prejudice in any manner the rights of the Creditors Committee or the Debtors; or (3) constitute an admission, acknowledgment, offer or undertaking by the Creditors Committee or the Debtors in any respect.

A-0410

## ARTICLE X.

### RELEASE, INJUNCTIVE AND RELATED PROVISIONS

A.    *Subordination*

The classification and manner of satisfying all Claims and Equity Interests and the respective distributions, settlements, reallocations and treatments hereunder (including, without limitation, the 2.9% Settlement and Reallocation Payment) take into account and/or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant hereto. The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons and Entities from enforcing or attempting to enforce any such contractual, legal and equitable subordination rights satisfied, compromised and settled in this manner.

B.    *Releases by the Debtors*

Except as otherwise specifically provided herein, for good and valuable consideration, including the service of the Releasees to facilitate the expeditious reorganization of Exide, the implementation of the restructuring contemplated by the Joint Plan, and the obligations and undertakings of Option A Electors set forth in the Joint Plan, the Releasees, on and after the Effective Date, shall be deemed released by the Debtors and Reorganized Debtors from any and all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that a Debtor or its Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Person or Entity, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, including, without limitation, claims related to or arising from (a) the Prepetition Credit Facility, including but not limited to the negotiation, formulation, preparation, administration, execution, and enforcement thereof, and any payments received by the lenders thereunder, (b) any guaranty arising under the Prepetition Credit Facility, (c) any liens, pledges, or collateral of any kind, (d) any of the other loan documents referred to in the Prepetition Credit Facility or any other documents contemplated thereby or therein or the transactions contemplated thereby or therein or any action taken or omitted to be taken by the Agent under or in connection with any of the foregoing and (e) any action or omissions by a Releasee in respect of the foregoing items or any other matter in these Chapter 11 Cases; provided, however, the foregoing shall not release any Claims or liabilities in respect of ordinary commercial relationships between a Debtor and any such Person, including as between a Debtor and one of its Affiliates, it being understood that the matters listed in clauses (a) through (d) above do not relate to an ordinary commercial relationship between the Debtors and the Releasees.

C.    *Releases by Holders of Claims*

Except as otherwise provided herein, on and after the Effective Date, each Holder of a Claim who has voted to accept the Joint Plan shall be deemed to have unconditionally released each Releasee from any and all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of Exide, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person or Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date in any way relating or pertaining to (s) the Debtors or Reorganized Debtors; (t) the purchase or sale, or the rescission of a purchase or sale, of any security of any Debtor, (u) the Chapter 11 Cases, (v) the negotiation, formulation and preparation of the Joint Plan or any related agreements, instruments or other documents, (w) the Prepetition Credit Facility, including, but not limited to the negotiation, formulation, preparation, administration, execution, and enforcement thereof, and any payments received by such Lenders, (x) any guaranty arising under the Prepetition Credit Facility, (y) any liens, pledges, or collateral of any kind and (z) any of the other loan documents referred to in the Prepetition Credit Facility or any other documents contemplated thereby or therein or the transactions contemplated thereby or therein or any action taken or omitted by the Agent under or in connection with any of the foregoing.

- 32 -

A-0411

D.    *Release of Foreign Subsidiary Borrowers and the Domestic Non-Debtor*

On and after the Effective Date, each Option A Elector shall be deemed to have unconditionally released the Foreign Subsidiary Borrowers and the Domestic Non-Debtor from any and all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of Exide, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person or Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date in any way relating or pertaining to (1) the Debtors, Reorganized Debtors, Foreign Subsidiary Borrowers or the Domestic Non-Debtor, (2) the purchase or sale, or the rescission of a purchase or sale, of any security of any Debtor, (3) the Chapter 11 Cases, (4) the negotiation, formulation and preparation of the Joint Plan or any related agreements, instruments or other documents, (5) the Prepetition Credit Facility, (6) any guaranty arising under the Prepetition Credit Facility, (7) any liens, pledges, or collateral of any kind, and (8) any of the other loan documents referred to in the Prepetition Credit Facility or any other documents contemplated thereby or therein or the transactions contemplated thereby or therein, and all Prepetition Foreign Secured Claims of the Option A Electors shall be deemed transferred and assigned to Exide or Reorganized Exide.  In addition, each Option A Elector shall be deemed to have submitted to the jurisdiction of the Bankruptcy Court with respect to the treatment, discharge and release of such Holder's Prepetition Credit Facility Claims.

E.    *Exculpation*

The Releasees shall neither have nor incur any liability to any Person or Entity for any pre or post-petition act taken or omitted to be taken in connection with, or related to the formulation, negotiation, preparation, dissemination, implementation, administration, Confirmation or Consummation of the Joint Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Joint Plan or any other pre or post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, provided, however, that the foregoing provisions of this Article X.E shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.

F.    <u>*Injunction*</u>

<u>*Except as otherwise provided herein, from and after the Effective Date, all Holders of Claims or Equity Interests shall be permanently enjoined from commencing or continuing in any manner, any suit, action or other proceeding, on account of or respecting any Claim, Equity Interest, obligation, debt, right, Cause of Action, remedy or liability or any other claim or cause of action released or to be released pursuant hereto.*</u>

G.    *Preservation of Rights of Action*

1.    Maintenance of Causes of Action

Except as otherwise provided in the Joint Plan, the Reorganized Debtors shall retain all rights on behalf of the Debtors and the post-confirmation Estates to commence and pursue any and all Causes of Action (whether arising before or after the Petition Date, under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Debtors' Chapter 11 Cases) to the extent the Reorganized Debtors deem appropriate. Potential Causes of Action currently being investigated by the Debtors, which may be pursued by the Debtors prior to the Effective Date and by the Reorganized Debtors after the Effective Date to the extent warranted, include without limitation, Claims and Causes of Action to be set forth in more detail in the list of retained Causes of Action, which will be contained in the Plan Supplement.

In addition, potential Causes of Action which may be pursued by the Debtors prior to the Effective Date and by the Reorganized Debtors after the Effective Date, also include, without limitation the following:

(a)    any other Causes of Action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtors' businesses or operations, including, without limitation, the following:

- 33 -

A-0412

possible claims against vendors, landlords, sublessees, assignees, customers or suppliers for warranty, indemnity, back charge/set-off issues, overpayment or duplicate payment issues and collections/accounts receivables matters; deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, landlord, sublessee, assignee, or other entity; employee, management or operational matters; claims against landlords, sublessees and assignees arising from the various leases, subleases and assignment agreements relating thereto, including, without limitation, claims for overcharges relating to taxes, common area maintenance and other similar charges; financial reporting; environmental, and product liability matters; actions against insurance carriers relating to coverage, indemnity or other matters; counterclaims and defenses relating to notes or other obligations; contract or tort claims which may exist or subsequently arise; and

(b)    except for Debtors which have expressly waived such claims, any and all avoidance claims pursuant to any applicable section of the Bankruptcy Code, including, without limitation sections 544, 545, 547, 548, 549, 550, 551, 553(b) and/or 724(a) of the Bankruptcy Code arising from any transaction involving or concerning the Debtors.

In addition, there may be numerous other Causes of Action which currently exist or may subsequently arise that are not set forth herein or in the Plan Supplement, because the facts upon which such Causes of Action are based are not currently or fully known by the Debtors and, as a result, can not be raised during the pendency of the Chapter 11 Cases (collectively, the "Unknown Causes of Action"). The failure to list any such Unknown Cause of Action herein or in the Plan Supplement is not intended to limit the rights of the Reorganized Debtors to pursue any Unknown Cause of Action to the extent the facts underlying such Unknown Cause of Action subsequently become fully known to the Debtors.

Except as otherwise provided herein or in any contract, instrument, release, indenture or other agreement entered into in connection herewith, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Claims, rights, and Causes of Action that the respective Debtors, Estates, or post-confirmation Estates may hold against any Person or Entity shall vest in the applicable Reorganized Debtor, and the Debtors and Reorganized Debtors shall retain and may exclusively enforce, as the authorized representatives of the respective Estates and post-confirmation Estates, any and all such Claims, rights, or Causes of Action. The Debtors and Reorganized Debtors may pursue any and all such Claims, rights, or Causes of Action, as appropriate, in accordance with their respective best interests. The Debtors and Reorganized Debtors shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Claims, rights, and Causes of Action without the consent or approval of any third party and without any further order of court.

2.    Preservation of All Causes of Action Not Expressly Settled or Released

Unless a claim or Cause of Action against a Creditor or other Entity is expressly waived, relinquished, released, compromised or settled in the Joint Plan or any Final Order, the Debtors expressly reserve such claim or Cause of Action for later adjudication by the Debtors or Reorganized Debtors (including, without limitation, claims and Causes of Action not specifically identified or which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those which the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation or consummation of the Joint Plan based on the Disclosure Statement, the Joint Plan or the Confirmation Order, except where such claims or Causes of Action have been released in the Joint Plan or other Final Order. In addition, the Debtors and Reorganized Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which a Debtor is a defendant or an interested party, against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtors subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not (a) such Entity has Filed a proof of claim against the Debtors in the Chapter 11 Cases; (b) such Entity's proof of claim has

- 34 -

A-0413

been objected to; (c) such Entity's Claim was included in the Debtors' Schedules; or (d) such Entity's scheduled claim has been objected to by the a Debtor or has been identified by a Debtor as disputed, contingent, or unliquidated.

H.    *Discharge of Claims and Termination of Equity Interests*

Except as otherwise provided herein: (1) the rights afforded herein and the treatment of all Claims and Equity Interests herein, shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against any Debtor or any of its assets or properties, (2) on the Effective Date, all such Claims against, and Equity Interests in any Debtor shall be satisfied, discharged and released in full and (3) all Persons and Entities shall be precluded from asserting against the Debtors, the Reorganized Debtors, their successors, assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, provided, however, that nothing in the Joint Plan shall be deemed to release or nullify any environmental liability to a governmental entity under environmental laws or regulations that any of the Debtors would be subject to as the owner or operator of property after the Confirmation Date, and provided further that nothing in the Joint Plan shall be deemed to release, discharge or preclude any claims arising after the Confirmation Date that such governmental entity may have against the Reorganized Debtors or their successors.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases after the Effective Date as legally permissible, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Joint Plan, for periods ending on or before the Effective Date;

3.    resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any Debtor is party or with respect to which any Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be rejected;

4.    ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions hereof;

5.    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any Debtor that may be pending on the Effective Date;

6.    enter such orders as may be necessary or appropriate to implement or consummate the provisions hereof and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Joint Plan, Plan Supplement or the Disclosure Statement;

7.    resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Joint Plan or any Person's or Entity's obligations incurred in connection with the Joint Plan;

- 35 -

A-0414

8.    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of the Joint Plan, except as otherwise provided herein;

9.    resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article X hereof and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

10.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

11.    determine any other matters that may arise in connection with or relate to this Joint Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Joint Plan or the Disclosure Statement; and

12.    enter an order and/or final decree concluding the Chapter 11 Cases.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.    *Effectuating Documents, Further Transactions and Corporation Action*

The Debtors and Reorganized Debtors are authorized to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions hereof and the securities issued pursuant hereto.

Prior to, on or after the Effective Date (as appropriate), all matters expressly provided for hereunder that would otherwise require approval of the shareholders or directors of the Debtors or Reorganized Debtors shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable state general corporation law without any requirement of further action by the shareholders or directors of the Debtors or Reorganized Debtors.

B.    *Dissolution of Committees*

On (1) the later of (a) the Effective Date, and (b) 11 days after the Confirmation Date, or (2) in the case of the Creditors Committee only, the formation of the Postconfirmation Creditors Committee, if no appeal is pending, the Creditors Committee and the Equity Committee shall dissolve and their members shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases, provided, however, that the members of the Creditors Committee shall have the option of serving on the Postconfirmation Creditors Committee. Any duties to be performed by the Postconfirmation Creditors Committee shall be performed by the Creditors Committee if the Postconfirmation Creditors Committee has not yet been formed.

C.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable, but prior to the closing of the Chapter 11 Cases, with respect to any such fees payable after the Effective Date.

D.    *Letters of Credit*

The Debtors will cause each Letter of Credit that has not expired, been terminated, been replaced and terminated, or fully drawn on or before the Effective Date, to be replaced and terminated on the Effective Date, provided, however, that in the event any such Letter of Credit shall not have been so replaced and terminated on the Effective Date, the Debtors may at their option provide to the Agent cash collateral for each such Letter of Credit in an amount equal to 105% of the undrawn balance of such Letter of Credit as of the Effective Date.

- 36 -

A-0415

E.    *Modification of Joint Plan*

Subject to the limitations contained in the Joint Plan, (1) the Creditors Committee, the Agent and the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Joint Plan prior to the entry of the Confirmation Order and (2) after the entry of the Confirmation Order, the Creditors Committee or Postconfirmation Creditors Committee and the Debtors or Reorganized Debtors, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Joint Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Joint Plan in such manner as may be necessary to carry out the purpose and intent of the Joint Plan.

F.    *Revocation of Joint Plan*

The Creditors Committee, the Agent and the Debtors reserve the right to revoke or withdraw the Joint Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Creditors Committee, the Agent and the Debtors revoke or withdraw the Joint Plan, or if Confirmation or Consummation does not occur, then (a) the Joint Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Joint Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of executory contracts or leases affected by the Joint Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, and (c) nothing contained in the Joint Plan shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Person, (ii) prejudice in any manner the rights of such Debtor or any other Person, or (iii) constitute an admission of any sort by the Creditors Committee, the Agent, the Debtor or any other Person.

G.    *Successors and Assigns*

The rights, benefits and obligations of any Person or Entity named or referred to herein shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

H.    *Reservation of Rights*

Except as expressly set forth herein, this Joint Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of this Joint Plan, any statement or provision contained herein, or the taking of any action by the Creditors Committee or a Debtor with respect to this Joint Plan shall be or shall be deemed to be an admission or waiver of any rights of the Creditors Committee or a Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

I.    *Section 1146 Exemption*

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

J.    *Further Assurances*

The Debtors, Reorganized Debtors, Releasees and all Holders of Claims receiving distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Joint Plan.

K.    *Service of Documents*

Any pleading, notice or other document required by the Joint Plan to be served on or delivered to the Debtors or Reorganized Debtors shall be sent by first class U.S. mail, postage prepaid to:

A-0416

Exide Technologies
13000 Deerfield Parkway
Building 200
Alpharetta, GA 30004
Attn:   Stuart H. Kupinsky, Executive Vice President,
            General Counsel and Secretary

Exide Technologies
Attn: Plan Service; Suite 230
Crossroads Corporate Center
3150 Brunswick Pike
Lawrenceville, NJ 08648


with copies to:

Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, Illinois 60601
Attn:   Matthew N. Kleiman
            Ross M. Kwasteniet

Pachulski, Stang, Ziehl, Young, Jones & Weintraub
919 North Market Street
P.O. Box 8705
Wilmington, Delaware 19899-8705
Attn:   Laura Davis Jones
            James E. O'Neill

Any pleading, notice or other document required by the Joint Plan to be served on or delivered to the Creditors Committee or Postconfirmation Creditors Committee shall be sent by first class U.S. mail, postage prepaid to:

Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, New York 10022
Attn:   Fred S. Hodara
            Mary Reidy Masella

Pepper Hamilton LLP
1313 Market Street
Suite 5100
Wilmington, DE 19899-1709
Attn:   David B. Stratton
            David M. Fournier

Any pleading, notice or other document required by the Joint Plan to be served on or delivered to the Agent shall be sent by first class U.S. mail, postage prepaid to:

Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Attn:   Douglas P. Bartner
            Marc B. Hankin

A-0417

Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19899
Attn:    Mark D. Collins
        Etta R. Wolfe

L.    *Filing of Additional Documents*

On or before the Effective Date, the Creditors Committee and the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

A-0418

Dated: March 11, 2004

Respectfully Submitted,

EXIDE TECHNOLOGIES

By: Stuart H. Kupinsky

EXIDE DELAWARE, L.L.C.

By: Stuart H. Kupinsky

EXIDE ILLINOIS, INC.

By: Stuart H. Kupinsky

RBD LIQUIDATION, L.L.C.

By: Stuart H. Kupinsky

DIXIE METALS COMPANY

By: Stuart H. Kupinsky

REFINED METALS CORPORATION

By: Stuart H. Kupinsky

and

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: Jeffrey B. Dobbs
Its: Chairman

A-0419

Dated: March 11, 2004

Respectfully Submitted

EXIDE TECHNOLOGIES

By: Stuart H. Kupinsky

EXIDE DELAWARE L.L.C.

By: Stuart H. Kupinsky

EXIDE ILLINOIS, INC.

By: Stuart H. Kupinsky

EXIDE LIQUIDATION LLC

By: Stuart H. Kupinsky

DIXIE METALS COMPANY

By: Stuart H. Kupinsky

REFINED METALS CORPORATION

By: Stuart H. Kupinsky

and

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

By: Steven D. Dobbs
Its Chairman