EXHIBIT A

### Amended Prepetition Foreign Credit Agreement Term Sheet[1]

Effective as of immediately prior to the Effective Date, the Prepetition Credit Facility will be amended as follows:

**FOREIGN SALES PROCEEDS:** Proceeds of Foreign Asset Sales (currently $12.5 million) shall be applied to (i) cash collateralize all Letters of Credit that have not expired, been terminated, been replaced and terminated, or fully drawn on or before the Effective Date and (ii) satisfy the Prepetition Foreign Secured Claims of the Option B Electors.

Option A Electors under the Joint Plan shall waive their right to the proceeds of the Foreign Asset Sales. Any surplus after payments to cash collateralize Letters of Credit and repay Option B Electors shall be returned to Reorganized Exide.

**SUBORDINATION FEE:** The right of Prepetition Lenders to receive the subordination fee under the Standstill Agreement (in the approximate amount of $8.6 million) shall be waived.

**ACCELERATION:** The rights of the Prepetition Lenders to declare all amounts owing under the Prepetition Credit Facility with respect to the Prepetition Foreign Secured Obligations due and payable on the expiration of the Standstill Agreement, or otherwise, shall be removed.

**COLLATERAL:** The Agent will be authorized by the Prepetition Lenders to release all collateral securing the Prepetition Foreign Secured Claims, effective as of the day prior to the Effective Date.

**GUARANTIES:** The Agent will be authorized by the Prepetition Lenders to release all obligations of the Domestic Non-Debtor pursuant to the Loan Documents (as defined in the Standstill Agreement) including, without limitation, its obligations as a guarantor of the Prepetition Domestic Secured Obligations and the Prepetition Foreign Secured Obligations.

**COVENANTS:** All affirmative and negative covenants in the Prepetition Credit Agreement and the Standstill Agreement shall be deleted.

---

[1]    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the attached Joint Plan or in the Amended and Restated Intercreditor and Subordination Agreement (as defined in the Joint Plan), as appropriate.

**EXHIBIT B**

### New Exide Warrant Term Sheet[1]

| | |
|---|---|
| **ISSUANCE:** | Warrants to acquire 6.25 million shares of New Exide Common Stock (assuming 25 million shares to be issued under the Joint Plan), and subject to adjustment in accordance with the terms of the New Exide Warrant Agreement. |
| **TERM:** | Expire seven years from the Effective Date. |
| **STRIKE PRICE:** | $32.11 (assuming 25 million shares to be issued under the Joint Plan), and subject to adjustment in accordance with the terms of the New Exide Warrant Agreement. |
| **EVENT PROTECTION** | In the event of a sale of all or substantially all of the assets of Reorganized Exide, or a merger or other business combination where Reorganized Exide is not the surviving entity, within the first three years after the Effective Date, the New Exide Warrants will be entitled to receive an amount of cash based on a Black-Scholes valuation (assuming 40% volatility) as follows: in years 1-2: 100%; in year 3: 50%. Alternatively, the buyer or surviving entity may also assume the New Exide Warrants. |
| **ANTI-DILUTION PROTECTION:** | Standard terms and restrictions, including stock issuances below certain prices. |

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the attached Joint Plan.

EXHIBIT C

# EXIDE TECHNOLOGIES, ET AL.

# PERSONAL INJURY TORT AND WRONGFUL DEATH CLAIMS RESOLUTION AND DISTRIBUTION PROCEDURES

SECTION 1 OVERVIEW ...................................................................................1

SECTION 2 INTRODUCTION ..........................................................................1
   2.1   Personal Injury Tort and Wrongful Death Claims ...........................1
   2.2   Purpose ...............................................................................................1
   2.3   Interpretation .....................................................................................1
   2.4   PI Claims Procedures Goals ..............................................................1

SECTION 3 ADMINISTRATION .......................................................................2
   3.1   Administrator the PI Claims Procedures ..........................................2

SECTION 4 PI CLAIMS PROCEDURES ...........................................................2
   4.1   Initial Options for Establishing Payment ..........................................2
   4.2   Quick Payment ..................................................................................2
        4.2.1  In General ...........................................................................2
        4.2.2  Purpose ...............................................................................2
        4.2.3  Eligibility and Election .......................................................2
        4.2.4  Waived Requirements .........................................................2
        4.2.5  General Release ..................................................................3
        4.2.6  Waive Individual Review ....................................................3
        4.2.7  Allowed, General Unsecured Claim ....................................3
        4.2.8  Payment of Quick Payment Settlement ...............................3
   4.3   Individual Review ..............................................................................3
        (a)    In General ............................................................................3
        4.3.2  Individual Settlement ..........................................................3
        (a)    Eligibility and Election .......................................................3
        (b)    Priority of Review ...............................................................3
        (c)    Notification of Review ........................................................4
        (d)    Individual Settlement Offer .................................................4
        (e)    Options Following an Individual Settlement Offer ..............4
        (f)    General Release ..................................................................4
        (g)    Waive ADR and Trial .........................................................5
        (h)    Allowed, General Unsecured Claim ....................................5
        (i)    Payment of Individual Settlement .......................................5
        (j)    Impasse ...............................................................................5
        4.3.3  Binding Alternative Dispute Resolution ..............................5
        (a)    In General ............................................................................5
        (b)    Eligibility and Election .......................................................5
        (c)    Binding Arbitration; Mediation ...........................................5
        (d)    Discovery ............................................................................6
        (e)    Rights and Defenses ............................................................6
        (f)    Waiver of Right to Trial ......................................................6
        (g)    Settlement Conferences .......................................................6
        (h)    General Release ..................................................................6
        (i)    Binding ...............................................................................6
        (j)    Allowed, General Unsecured Claim ....................................6

A-0424

|       | (k) | Payment of Awards, Judgments or Settlements in ADR. | 6 |
|       | (l) | Expunged PI Claims. | 7 |
|       | (m) | Mediation Procedures. | 7 |
|       | (n) | Arbitration Procedures. | 7 |
| 4.3.4 | Trial or Proximate Cause Trial. | | 7 |
|       | (a) | In General. | 7 |
|       | (b) | Eligibility and Election. | 7 |
|       | (c) | Jurisdiction. | 7 |
|       | (d) | Consolidation of Actions Involving a Common Question of Law or Fact. | 7 |
|       | (e) | Discovery. | 8 |
|       | (f) | Rights and Defenses. | 8 |
|       | (g) | Trial. | 8 |
|       | (h) | Derivative Personal Injury Claims. | 9 |
|       | (i) | Settlement Conferences. | 9 |
|       | (j) | General Release. | 9 |
|       | (k) | Allowed, General Unsecured Claim. | 9 |
|       | (l) | Payment of Settlements During Proximate Cause Trials. | 9 |
|       | (m) | Expunged PI Claims. | 9 |
| 4.3.5 | Damages Trial. | | 9 |
|       | (a) | In General. | 10 |
|       | (b) | Eligibility and Election. | 10 |
|       | (c) | Jurisdiction. | 10 |
|       | (d) | Trial. | 10 |
|       | (e) | Punitive Damages. | 11 |
|       | (f) | Interest. | 11 |
|       | (g) | Discovery. | 11 |
|       | (h) | Rights and Defenses. | 11 |
|       | (i) | Judgments. | 11 |
|       | (j) | Payments to Derivative PI Claimants. | 11 |
|       | (k) | Settlement Conferences. | 12 |
|       | (l) | Allowed, General Unsecured Claim. | 12 |
|       | (m) | General Release. | 12 |
|       | (n) | Payment of Settlements During, and Judgments Awarded at, the Damages Trial. | 12 |

| **SECTION 5 METHOD AND TIMING OF PAYMENTS** | | 12 |
| 5.1 | In General. | 12 |
| 5.2 | Installment Percentage. | 13 |
| 5.3 | Payment of Balance. | 13 |

| **SECTION 6 MISCELLANEOUS** | | 13 |
| 6.1 | Amendments. | 13 |
| 6.2 | Indemnity, Contribution and Subrogation Claims. | 13 |
| 6.3 | Severability. | 14 |
| 6.4 | Punitive Damages. | 14 |
| 6.5 | Interest. | 14 |

A-0425

6.6    General Releases. ........................................................................14
6.7    Governing Law. ..........................................................................14
6.8    Notices. .....................................................................................14

iii

# SECTION 1
# OVERVIEW

Exide Technologies, f/k/a Exide Corporation, Exide Delaware, L.L.C., Exide Illinois, Inc., RBD Liquidation, L.L.C., Dixie Metals Company and Refined Metals Corporation (collectively, the "Debtors") established the following personal injury tort and wrongful death claims resolution and distribution procedures (the "PI Claims Procedures") for resolving all personal injury tort and wrongful death claims caused by the alleged conduct of, omissions by and/or exposure to products and/or substances for which the Debtors and/or their predecessors, successors and assigns allegedly have legal responsibility (collectively, the "PI Claims").

# SECTION 2
# INTRODUCTION

**2.1    Personal Injury Tort and Wrongful Death Claims.** On February 21, 2003, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") established April 23, 2003 as the last date and time by which all claims, other than contaminant-related claims (the "Contaminant-Related Claims"), must be filed against the Debtors. On June 24, 2003, the Bankruptcy Court established August 15, 2003 as the bar date for all Contaminant-Related Claims. Each of the orders establishing the above bar dates expressly provides that claims not filed prior to the relevant dates are forever barred, and the claimants are enjoined from pursuing such claims against the Debtors. Therefore, the PI Claims Procedures only relate to those PI Claims that were timely filed prior to the relevant bar date or that the Bankruptcy Court otherwise allows.

**2.2    Purpose.** These PI Claims Procedures have been adopted pursuant to the Joint Plan of Reorganization of the Official Committee of Unsecured Creditors and the Debtors (the "Joint Plan").[1] They are designed to provide fair, equitable and substantially similar treatment for all PI Claims that may presently exist or may arise in the future in substantially the same manner.

**2.3    Interpretation.** Nothing in these PI Claims Procedures shall be deemed to create any substantive rights for any PI Claimant.

**2.4    PI Claims Procedures Goals.** The goal of the PI Claim Procedures is to treat all personal injury tort and wrongful death claimants (the "PI Claimants") equitably. These PI Claims Procedures further that goal by setting forth procedures for processing and paying claims on an impartial and reasonable basis, with the intention of liquidating all PI Claims based on historical values for substantially similar claims.

---

[1]    Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Joint Plan.

## SECTION 3
## ADMINISTRATION

**3.1    Administrator the PI Claims Procedures.**  Pursuant to the Joint Plan and these PI Claims Procedures, the PI Claims Procedures shall be administered by the Debtors in consultation with the Postconfirmation Creditors Committee.  The Debtors, in consultation with the Postconfirmation Creditors Committee, shall have authority to amend these PI Claims Procedures in accordance with section 6.1 below.

## SECTION 4
## PI CLAIMS PROCEDURES

**4.1    Initial Options for Establishing Payment.**  Initially, all PI Claimants shall select one of two options for pursuing a PI Claim:  (a) Quick Payment or (b) Individual Review (each as discussed below).  A PI Claimant may not establish, or recover payment for, a PI Claim from the Debtors, whether through settlement, alternative dispute resolution, litigation or otherwise, until such claimant properly selects and successfully completes one of these two processes.

**4.2    Quick Payment.**

**4.2.1    In General.**  The Quick Payment election allows claimants to irrevocably select a single, lump sum award that will be paid expeditiously, in stock (as provided in the Joint Plan), in accordance with these PI Claims Procedures and that requires minimal documentation for pursuing claims in satisfaction of the PI Claim.

**4.2.2    Purpose.**  The Quick Payment option is made available despite the doubtful and disputed nature of the PI Claims because, in the Debtors' judgment, an equitable overall solution to the alleged personal injury liability – including maximizing recoveries available to those claimants with the most severe illnesses – will be facilitated by resolving claims quickly and conclusively, at minimal transaction cost and payout, in exchange for a complete and permanent release.

**4.2.3    Eligibility and Election.**  In order to be eligible for Quick Payment, a PI Claimant must have filed the PI Claim by the relevant bar date or, if a claim was filed after the relevant bar date, but before the effective date of the Joint Plan, have received court approval deeming the claim timely filed.   The Debtors, in consultation with the Postconfirmation Creditors Committee, shall notify each eligible PI Claimant in writing of the initial option to select Quick Payment or Individual Review.  The initial notification shall include an amount (to be paid in stock in accordance with the Joint Plan) representing the Quick Payment offer, which shall be based solely on information contained within the claimant's proof of claim form and any supporting documents attached thereto, as well as the Debtors' own records.  The PI Claimant shall have sixty (60) days from the date of that initial notification to select either the Quick Payment offer or Individual Review of the PI Claim in writing to the Debtors.  If the Debtors do not _receive_ the PI Claimant's written response within sixty (60) days of the date of the initial notice, the PI Claimant shall be deemed to have irrevocably accepted the Quick Payment offer.

**4.2.4    Waived Requirements.**  If a PI Claimant accepts the Quick Payment, such claimant shall (1) not be required to produce additional information and/or documentation

- 2 -

supporting such claim other than that provided in the claimant's proof of claim form; (2) not be required to submit to further discovery; (3) not be required to submit to an independent medical examination; (4) not be required to retain an expert; and (5) not be required to prove that the Debtors were the cause of the claimed injury.

**4.2.5    General Release.**  Any PI Claimant accepting the Quick Payment option shall execute a general release as provided in section 6.6 below.

**4.2.6    Waive Individual Review.**  PI Claimants accepting the Quick Payment option shall irrevocably waive any and all rights that they may otherwise have to submit their PI Claim for Individual Review, ADR and/or a trial on the merits (each as described below).

**4.2.7    Allowed, General Unsecured Claim.**  If a PI Claimant accepts a Quick Payment offer, such claimant shall be granted an allowed, general unsecured claim in the Quick Payment offer amount, in accordance with the PI Claims Procedures, to be paid in stock in accordance with the Joint Plan.

**4.2.8    Payment of Quick Payment Settlement.**  The Debtors shall pay PI Claimants selecting the Quick Payment option in accordance with section 5 below as soon as practicable after the Quick Payment option is accepted and a General Release (as defined herein) is executed in accordance with section 6.6 below, but in all events in accordance with the terms of the Joint Plan.  Claimants electing Quick Payment may be considered and receive distributions before claimants who elect Individual Review.

**4.3    Individual Review.**

(a)    **In General.**  The Individual Review option provides the PI Claimant with individual consideration and evaluation of the PI Claim.

**4.3.2    Individual Settlement.**  The first stage of Individual Review is Individual Settlement, where the Debtors, in consultation with the Postconfirmation Creditors Committee, may provide a PI Claimant an individualized settlement offer in satisfaction of the PI Claim.

(a)    **Eligibility and Election.**  In order to be eligible for Individual Settlement, a PI Claimant must (i) have filed the PI Claim by the relevant bar date or, if a claim was filed after the relevant bar date, but before the effective date of the Joint Plan, have received court approval deeming the claim timely filed; (ii) have timely and properly selected Individual Review; and (iii) after rejecting Quick Payment and selecting Individual Review, have provided the Debtors with all information and/or documentation in such claimants' possession, custody and control supporting the PI Claim or, in the absence of additional evidence, a sworn statement to the sole satisfaction of the Debtors, in consultation with the Postconfirmation Creditors Committee, declaring that no additional information and/or documentation exists.

(b)    **Priority of Review.**  The Debtors, in consultation with the Postconfirmation Creditors Committee, shall individually review PI Claims in the order of the date of the alleged injury or death, with the oldest injuries entitled to priority over the newest injuries.  If any injuries or deaths occurred on the same date, the PI Claimant's position in the priority of review shall be determined by the date of such claimant's birth, with older claimants

A-0429

given priority over younger claimants. If any injuries or deaths occurred on the same date and the subject PI Claimants have the same birth date, the priority of review shall be determined by the date the claim was filed with the Debtors' claims agent, Bankruptcy Management Corporation. However, the Debtors, in consultation with the Postconfirmation Creditors Committee, reserve the right to process and review claims by the seriousness of the alleged personal injury and to review and evaluate PI Claims with exigent circumstances or extreme hardship cases at any time regardless of their priority under this section.

(c)     **Notification of Review.** Upon receipt of a PI Claimant's additional information and/or documentation or, in the absence of additional evidence, a sworn statement to the sole satisfaction of the Debtors, in consultation with the Postconfirmation Creditors Committee, declaring that no additional information and/or documentation exists, the Debtors shall notify such claimant in writing of the approximate length of time before an Individual Settlement offer may be made; provided however, that such date shall only be an estimate and shall not be a definitive time within which the Debtors must provide a response. Additionally, the Debtors, in consultation with the Postconfirmation Creditors Committee, reserve the right to, at the time PI Claimants are notified of the priority of review of their PI Claims, renew the Quick Payment offer to such PI Claimants. If such offer for Quick Payment is renewed by the Debtors and accepted by a PI Claimant, the terms of section 4.2 above shall apply, including, but not limited to, the irrevocable waiver by the PI Claimant for individual review of the PI Claim.

(d)     **Individual Settlement Offer.** Based upon the review of the PI Claimant's proof of claim form, supporting documentation attached thereto and the additional information and/or documentation provided by such claimant under the Individual Review process, as well as the Debtors' own records, the Debtors, in consultation with the Postconfirmation Creditors Committee, shall make an individualized settlement offer to the PI Claimant; provided however, that there is no minimum or maximum amount required with regard to such offer. As a result, under appropriate circumstances, the Debtors are authorized to make an Individual Settlement offer equal to $0.

(e)     **Options Following an Individual Settlement Offer.** Upon an individualized settlement offer by the Debtors, PI Claimants, in their sole discretion, may accept or reject the individualized offer or make a counter-offer. However, such choice must be made and communicated to the Debtors in writing within sixty (60) days after the date of the Individual Settlement offer. If the Debtors do not receive an answer or a counter-offer from a PI Claimant in writing within sixty (60) days of the date of the Individual Settlement offer, the PI Claimant shall be deemed to have irrevocably accepted the Individual Settlement offer. If the PI Claimant timely makes a counter-offer, the Debtors shall, in consultation with the Postconfirmation Creditors Committee, be authorized to accept or reject the counter-offer or continue settlement negotiations with the PI Claimant. If the Debtors continue settlement negotiations with a PI Claimant, the Debtors shall be authorized, in consultation with the Postconfirmation Creditors Committee, to resolve the claim.

(f)     **General Release.** Any PI Claimant accepting an Individual Settlement shall execute a general release as provided in section 6.6 below.

- 4 -

A-0430

(g)    **Waive ADR and Trial.**  PI Claimants accepting an Individual Settlement offer shall irrevocably waive any and all rights that they may otherwise have to submit their PI Claim to ADR and/or a trial on the merits (each as described below).

(h)    **Allowed, General Unsecured Claim.**  If a PI Claimant accepts an individualized settlement, such claimant shall be granted an allowed, general unsecured claim in the individualized settlement amount, in accordance with the PI Claims Procedures, to be paid in stock in accordance with the Joint Plan.

(i)    **Payment of Individual Settlement.**  The Debtors shall pay PI Claimants agreeing to an Individual Settlement in accordance with section 5 below as soon as practicable after the Individual Settlement is accepted and a General Release (as defined herein) is executed in accordance with section 6.6 below, but in all events in accordance with the terms of the Joint Plan.  However, it is understood that because the detailed examination and individualized valuation of PI Claims require greater time and effort, those PI Claims resolved through Individual Settlement shall be processed and receive distributions, if any, significantly later than PI Claims electing the Quick Payment option at the same time.

(j)    **Impasse.**  The parties have reached an impasse in the Individual Settlement stage of these PI Claims Procedures only after the parties (i) have negotiated in good faith; (ii) cannot, in good faith, agree on a settlement amount; and (iii) have reached an impasse in their settlement negotiations.  Only after each of these conditions is satisfied may a PI Claimant elect to proceed to the next stage of Individual Review.  However, if a PI Claimant chooses to proceed beyond the Individual Settlement stage of the PI Claims Procedures, any outstanding offers for settlement made by the Debtors shall be withdrawn.

### 4.3.3    Binding Alternative Dispute Resolution.

(a)    **In General.**  If the parties are unable to resolve the PI Claim and an impasse in the settlement negotiations is reached in good faith under the Individual Settlement stage, the PI Claimant may elect to either (i) engage in binding alternative dispute resolution ("ADR") or (ii) have a trial on the PI Claim.

(b)    **Eligibility and Election.**  In order to be eligible for ADR, a PI Claimant must have (i) filed the PI Claim by the relevant bar date or, if a claim was filed after the relevant bar date, but before the effective date of the Joint Plan, have received court approval deeming the claim timely filed; (ii) timely and properly selected Individual Review; (iii) not agreed to a settlement with the Debtors during the Individual Settlement stage; (iv) reached an impasse in good faith in the settlement negotiations; and (v) notified the Debtors in writing of the claimant's intention to participate in binding ADR.

(c)    **Binding Arbitration; Mediation.**  Upon a PI Claimant properly electing ADR, the Debtors, in consultation with the Postconfirmation Creditors Committee, and the PI Claimant may, upon joint written agreement, participate in a mediation relating to the PI Claim.  If the parties are unable to resolve the PI Claim through mediation, such claim shall be subject to binding arbitration.  If the parties do not jointly agree to mediation, such claim shall immediately proceed to binding arbitration.

- 5 -

(d)    **Discovery.**    The Debtors, in consultation with the Postconfirmation Creditors Committee, and the PI Claimant shall reserve the right to require full discovery in ADR from all parties in accordance with the Federal Rules of Civil Procedure, including, but not limited to, depositions, independent medical examinations and expert testimony.

(e)    **Rights and Defenses.**    Except as modified herein or in the Joint Plan, claims and defenses that exist under applicable state and federal substantive law shall be available to both sides at trial, except to the extent disallowed by the mediator and/or arbitrator in connection with the confirmation of the Joint Plan (e.g., the disallowance of punitive damages), or other court orders.   Procedural law, including evidentiary burdens and standards, shall be governed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence. The Debtors, in consultation with the Postconfirmation Creditors Committee, and the PI Claimant may waive any defense or procedural requirement or concede any issue of fact or law. The positions and admissions of the parties during other phases of these PI Claims Procedures shall not be admissible for any purpose during ADR by any party or third party and they are expressly determined not to be admissions by either party.

(f)    **Waiver of Right to Trial.**    By selecting ADR, the PI Claimant shall irrevocably waive any right to trial (by jury or otherwise) that such claimant has or may have under applicable non-bankruptcy law with regard to the PI Claim.

(g)    **Settlement Conferences.**    Throughout the ADR process, the Debtors, in consultation with the Postconfirmation Creditors Committee, shall maintain the authority to settle PI Claims in their discretion.    Additionally, subsequent to the PI Claimant properly selecting ADR, but prior to the commencement of any binding arbitration, the arbitrator shall hold a mandatory settlement conference with the parties.   During such mandatory settlement conference, each party shall be required to make a settlement offer/demand, which shall remain effective for thirty (30) days.   If neither settlement offer is accepted within the effective period, the matter shall proceed with ADR.

(h)    **General Release.**    Any PI Claimant accepting a settlement during ADR shall execute a general release as provided in section 6.6 below.

(i)    **Binding.**    The arbitration of a PI Claim shall be binding on all parties and the judgment, verdict, award or otherwise shall be a final determination of the PI Claim on its merits.

(j)    **Allowed, General Unsecured Claim.**    If a PI Claimant and the Debtors, in consultation with the Postconfirmation Creditors Committee, reach an agreement resolving the PI Claim during any stage of ADR or the PI Claimant is awarded a judgment, verdict or otherwise in ADR, such claimant shall be granted an allowed, general unsecured claim in the amount of the settlement or award, respectively, in accordance with the PI Claims Procedures, to be paid in stock in accordance with the Joint Plan.

(k)    **Payment of Awards, Judgments or Settlements in ADR.**    Any awards, judgments, verdicts or otherwise in favor of a PI Claimant in ADR or settlements reached between the parties resolving the PI Claim during ADR shall not be eligible for distribution until

- 6 -

A-0432

the allowance or disallowance of all general unsecured claims is finally determined by the Bankruptcy Court, but in all events in accordance with the terms of the Joint Plan.

(l)     **Expunged PI Claims.**  If the PI Claimant receives no award in the ADR, the PI Claim shall be expunged and disallowed for all purposes and the PI Claimant shall not be entitled to any payment with respect to the PI Claim.

(m)     **Mediation Procedures.**  The Debtors, in consultation with the Postconfirmation Creditors Committee, shall establish appropriate mediation procedures for resolving disputes concerning the PI Claims.  These procedures may be modified in the Debtors' discretion, in consultation with the Postconfirmation Creditors Committee, with notice to any PI Claimants that may be affected by such amendments.

(n)     **Arbitration Procedures.**  The Debtors, in consultation with the Postconfirmation Creditors Committee, shall establish appropriate arbitration procedures for resolving disputes concerning PI Claims.  These procedures may be modified in the Debtors' discretion, in consultation with the Postconfirmation Creditors Committee, with notice to any PI Claimants that properly selected arbitration as the means for resolving the PI Claim.

### 4.3.4   Trial or Proximate Cause Trial.

(a)     **In General.**  If the parties reach an impasse, in good faith, during the Individual Settlement stage, PI Claimants may elect to forego ADR and, in the alternative, elect to have a trial on the PI Claim by notifying the Debtors in writing of such intention.  However, the Debtors, in consultation with the Postconfirmation Creditors Committee, may, with regard to any one or more PI Claims, request that the court with jurisdiction over the trial hold a single trial resolving all issues with respect to such PI Claims or to request that such court bifurcate the trial relating to the PI Claims into a proximate cause trial and a damages trial.  If a trial is bifurcated, the damages trial shall be conducted only if the Debtors are found to be the proximate cause of the alleged injury or death at the proximate cause trial.

(b)     **Eligibility and Election.**  In order to be eligible for a trial or a proximate cause trial if the trial is bifurcated, a PI Claimant must have (i) filed the PI Claim by the relevant bar date or, if a claim is filed after the relevant bar date, but before the effective date of the Joint Plan, have received court approval deeming the claim timely filed; (ii) timely and properly selected Individual Review; (iii) not agreed to a settlement with the Debtors during the Individual Settlement stage; (iv) reached an impasse in good faith in the settlement negotiations; and (v) notified the Debtors in writing of the claimant's desire to have a trial on the merits relating to the PI Claim.

(c)     **Jurisdiction.**  All trials on PI Claims shall be conducted in, administered by and under the jurisdiction of the United States District Court for the District of Delaware (the "District Court") under 28 U.S.C. § 157(b)(5), or as otherwise ordered by such court.

(d)     **Consolidation of Actions Involving a Common Question of Law or Fact.**  The Debtors, in consultation with the Postconfirmation Creditors Committee, reserve the right to request the consolidation of all trials on PI Claims that involve a common question of law or fact under Fed. R. Civ. P. 42.

- 7 -

A-0433

(e)    **Discovery.**    The Debtors, in consultation with the Postconfirmation Creditors Committee, and the PI Claimant shall reserve the right to require full discovery in a trial or a proximate cause trial if the trial is bifurcated from all parties in accordance with the Federal Rules of Civil Procedure, including, but not limited to, depositions, independent medical examinations and expert testimony.

(f)    **Rights and Defenses.**    Except as modified herein or in the Joint Plan, claims and defenses that exist under applicable state and federal substantive law shall be available to both sides at trial, except to the extent disallowed by the District Court in connection with the confirmation of the Joint Plan (e.g., the disallowance of punitive damages), or other court orders. Procedural law, including evidentiary burdens and standards, shall be governed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence. The Debtors, in consultation with the Postconfirmation Creditors Committee, and the PI Claimant may waive any defense or concede any issue of fact or law. The positions and admissions of the parties during other phases of these PI Claims Procedures shall not be admissible for any purpose at trial by any party or third party and they are expressly determined not to be admissions by either party. Any right to trial by jury that a claimant has under applicable non-bankruptcy law with regard to a PI Claim shall be preserved, except where waived or extinguished in these PI Claims Procedures or the Joint Plan.

(g)    **Trial.**    Based upon the procedures and conditions set forth herein and in other orders of the District Court, individual cases may be certified for trial or a proximate cause trial if the trial is bifurcated. Venue for the trial of individual and/or consolidated cases shall be in the District Court. Upon conclusion of the pretrial proceedings and procedures, the District Court may certify individual cases for trial or a proximate cause trial if the trial is bifurcated and will apply the factors set forth below:

(i)    whether groups of cases should be consolidated for common issue trials pursuant to Fed. R. Civ. P. 42;

(ii)    allowance for determination of any appeals from any rulings by the District Court with respect to significant issues;

(iii)    the limited available liquid resources of the Debtors at any given time to simultaneously defend and resolve multiple lawsuits, including consideration of the availability of witnesses, defense counsel, and support personnel, and the burden imposed by multiple simultaneous defenses on the Debtors. The District Court will specifically preserve the ability of the Debtors to prepare for and effectively try each case certified for trial;

(iv)    settlement history, both of the consolidated pending lawsuits as a whole and individual cases in particular;

(v)    the filing of the case;

(vi)    the merits of the case;

(vii)    the readiness of the case for trial;

- 8 -

A-0434

(viii)    judicial efficiency; and

(ix)    hardship on the PI Claimant.

(h)    **Derivative Personal Injury Claims.**    Third party PI Claimants against the Debtors must prove that they are entitled to payment from the underlying PI Claimant under applicable non-bankruptcy law.    The procedure for payment by the Debtors on account of derivative PI Claims based upon theories of contribution, indemnification, reimbursement or subrogation shall require the holder of the derivative PI Claims (the "Derivative PI Claimant") to demonstrate, in addition to any other requirements necessary to prove the Debtors' liability for a PI Claim, that (a) the claim was filed by the relevant bar date, and (b)(i) the Derivative PI Claimant has paid in full the liability and obligations of the Debtors to the direct claimant to whom the Debtors would otherwise have had a liability or obligation under these procedures, and (ii) both the direct claimant and the Derivative PI Claimant have forever released the Debtors from all liability to the direct claimant.

(i)    **Settlement Conferences.**    Throughout the trial or the proximate cause trial if the trial is bifurcated, the Debtors, in consultation with the Postconfirmation Creditors Committee, shall maintain the authority to settle PI Claims.    Additionally, subsequent to the PI Claimant properly selecting the option to go to trial, but during the pre-trial process, the Debtors, in consultation with the Postconfirmation Creditors Committee, reserve the right to request that the District Court hold a mandatory settlement conference with the parties.    During such mandatory settlement conference, each party would be required to make a settlement offer/demand, which shall remain effective for thirty (30) days.    If neither settlement offer is accepted within the effective period, the matter would proceed towards trial.

(j)    **General Release.**    Any PI Claimant accepting a settlement during the proximate cause trial stage shall execute a general release as provided in section 6.6 below.

(k)    **Allowed, General Unsecured Claim.**    If a PI Claimant accepts a settlement offer for a PI Claim during any portion of the trial stage or the proximate cause trial stage if the trial is bifurcated, such claimant shall be granted an allowed, general unsecured claim in the settlement amount, in accordance with the PI Claims Procedures, to be paid in stock in accordance with the Joint Plan.

(l)    **Payment of Settlements During Proximate Cause Trials.**    Any settlements reached between the parties resolving the PI Claim during any portion of the trial stage or the proximate cause trial stage if the trial is bifurcated shall not be eligible for distribution until the allowance or disallowance of all general unsecured claims is finally determined by the Bankruptcy Court, but in all events in accordance with the terms of the Joint Plan.

(m)    **Expunged PI Claims.**    If the Debtors are not found to be the proximate cause of, or otherwise liable for, the injury or death, the PI Claim shall be expunged and disallowed for all purposes and the PI Claimant shall not be entitled to any payment with respect to the PI Claim.

**4.3.5    Damages Trial.**

- 9 -

(a)    **In General.** If the trial of a PI Claim is bifurcated, the damages trial shall liquidate the PI Claim of the PI Claimant that successfully proved that the Debtors were the proximate cause of the alleged injury or death at the proximate cause trial. If the trial of a PI Claim is not bifurcated, the issue of damages shall be litigated with causation and all other issues relating to the PI Claim in a single trial. Further, if the trial of a PI Claim is not bifurcated, the terms of this section 4.3.5, to the extent that they are not inconsistent with section 4.3.4, shall apply to the trial of the PI Claim.

(b)    **Eligibility and Election.** In order to be eligible for a damages trial, a PI Claimant must have (i) filed the PI Claim by the relevant bar date or, if a claim was filed after the relevant bar date, but before the effective date of the Joint Plan, have received court approval deeming the claim timely filed; (ii) timely and properly selected Individual Review; (iii) not agreed to a settlement with the Debtors during the Individual Settlement stage; (iv) reached an impasse in good faith in the settlement negotiations; (v) notified the Debtors in writing of the claimant's desire to have a trial on the merits relating to the PI Claim; and (vi) successfully demonstrated that the Debtors were the proximate cause of the alleged injury or death at the proximate cause trial.

(c)    **Jurisdiction.** All trials on PI Claims shall be conducted in, administered by and under the jurisdiction of the District Court under 28 U.S.C. § 157(b)(5), or as otherwise ordered by such court.

(d)    **Trial.** Based upon the procedures and conditions set forth herein and in other orders of the District Court, individual cases may be certified for the damages trial if the trial is bifurcated. Venue for the trial of individual and/or consolidated cases shall be in the District Court. Upon conclusion of the pretrial proceedings and procedures, if the trial is bifurcated the District Court may certify individual cases for the damages trial and will apply the factors set forth below:

(i)    whether groups of cases should be consolidated for common issue trials pursuant to Fed. R. Civ. P. 42;

(ii)    allowance for determination of any appeals from any rulings by the District Court with respect to significant issues;

(iii)    the limited available liquid resources of the Debtors at any given time to simultaneously defend and resolve multiple lawsuits, including consideration of the availability of witnesses, defense counsel, and support personnel, and the burden imposed by multiple simultaneous defenses on the Debtors. The District Court will specifically preserve the ability of the Debtors to prepare for and effectively try each case certified for trial;

(iv)    settlement history, both of the consolidated pending lawsuits as a whole and individual cases in particular;

(v)    the filing of the case;

(vi)    the merits of the case;

- 10 -

A-0436

(vii)    the readiness of the case for trial;

(viii)   judicial efficiency; and

(ix)    hardship on the PI Claimant.

(e)    **Punitive Damages.**  As stated in section 6.4 below, in determining the value of any PI Claim, punitive damages shall not be considered or allowed, notwithstanding their potential availability under non-bankruptcy law or otherwise.

(f)    **Interest.**  As stated in section 6.5 below, pre- and post-judgment interest shall not be paid or allowed, notwithstanding their potential availability under non-bankruptcy law or otherwise.

(g)    **Discovery.**  The Debtors, in consultation with the Postconfirmation Creditors Committee, and the PI Claimant shall reserve the right to require full discovery in a damages trial if the trial is bifurcated from all parties in accordance with the Federal Rules of Civil Procedure, including, but not limited to, depositions, independent medical examinations and expert testimony.

(h)    **Rights and Defenses.**  Except as modified herein or in the Joint Plan, claims and defenses that exist under applicable state and federal substantive law shall be available to both sides at trial, except to the extent disallowed by the District Court in connection with the confirmation of the Joint Plan (e.g., the disallowance of punitive damages), or other court orders. Procedural law, including evidentiary burdens and standards, shall be governed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence. The Debtors, in consultation with the Postconfirmation Creditors Committee, and the PI Claimant may waive any defense or concede any issue of fact or law. The positions and admissions of the parties during other phases of these PI Claims procedures shall not be admissible for any purpose at trial by any party or third party and they are expressly determined not to be admissions by either party. Any right to trial by jury that a claimant has under applicable non-bankruptcy law with regard to a PI Claim shall be preserved, except where waived or extinguished in these PI Procedures or the Joint Plan.

(i)    **Judgments.**  A PI Claimant who, in accordance with the PI Claims Procedures, elects to have a trial on its PI Claim and obtains a final, non-appealable judgment for money damages shall have an allowed, general unsecured claim with a liquidated value equal to the judgment amount, less the amount of any pre- or post-judgment interest or punitive damages contained therein. If the District Court rules that the PI Claimant did not incur any damages, such claimant shall be given an allowed, general unsecured claim for $0. If the amount of the judgment is less than the greatest settlement offer by the Debtors, the Debtors may deduct the costs incurred by the Debtors with respect to the PI Claim subsequent to the date of such greatest offer from the amounts to be paid under the allowed claim.

(j)    **Payments to Derivative PI Claimants.**  Derivative PI Claimants shall have no rights against the Debtors superior to the rights of the direct claimant against the Debtors, including any rights with respect to the timing, amount or manner of payment.  The Debtors shall not pay any Derivative PI Claimant unless and until the Derivative PI Claimant's

A-0437

aggregate liability for the direct claimant's claim has been fixed, liquidated and paid by the Derivative PI Claimant by settlement (with an appropriate General Release) or a final order. In no event would the Debtors pay more to a Derivative PI Claimant than its liability or obligation to the direct claimant. In any case where the Derivative PI Claimant has satisfied the liability or obligation of the Debtors by way of a settlement, the Derivative PI Claimant shall obtain for the benefit of the Debtors and the Released Parties (as defined herein) a General Release. In any event, any distribution, if any, to a Derivative PI Claimant on account of an Allowed Claim shall be in stock in accordance with the Joint Plan

(k)    **Settlement Conferences.**  Throughout the damages trial if the trial is bifurcated, the Debtors, in consultation with the Postconfirmation Creditors Committee, shall maintain the authority to settle PI Claims in their sole discretion. Additionally, during the pre-trial process of the damages trial if the trial is bifurcated, the Debtors, in consultation with the Postconfirmation Creditors Committee, reserve the right to request that the District Court hold a mandatory settlement conference with the parties. During such mandatory settlement conference, each party would be required to make a settlement offer/demand, which shall remain effective for thirty (30) days. If neither settlement offer is accepted within the effective period, the matter would proceed towards trial.

(l)    **Allowed, General Unsecured Claim.**  If a PI Claimant and the Debtors, in consultation with the Postconfirmation Creditors Committee, reach an agreement resolving the PI Claim or the PI Claimant is awarded a judgment in the trial or the damages trial if the trial is bifurcated, such claimant shall be granted an allowed, general unsecured claim in the amount of the settlement or judgment, respectively, in accordance with the PI Claims Procedures, to be paid in stock in accordance with the Joint Plan.

(m)    **General Release.**  Any PI Claimant accepting a settlement during the damages trial stage shall execute a general release as provided in section 6.6 below.

(n)    **Payment of Settlements During, and Judgments Awarded at, the Damages Trial.**  Any awards, judgments, verdicts or otherwise in favor of a PI Claimant as the result of the damages trial or any settlements reached between the parties resolving the PI Claim during the damages trial stage shall not be eligible for distribution until the allowance or disallowance of all general unsecured claims is finally determined by the Bankruptcy Court, but in all events in accordance with the terms of the Joint Plan.

## SECTION 5
## METHOD AND TIMING OF PAYMENTS

**5.1    In General.**  Because the universe of general unsecured claims and, thus, the final pro-rata distribution to general unsecured creditors is not known, the actual amount of stock to be distributed to allowed, general unsecured claims is uncertain. Therefore, the Debtors, in consultation with the Postconfirmation Creditors Committee, may make more than one distribution to such PI Claimants holding allowed PI Claims as may be appropriate under the circumstances. The determination of the necessity and amount of the initial stock distribution shall be based upon reliable information regarding the estimates of the number, types, and amounts of present and expected general unsecured claims and on the value of the estate assets,

- 12 -

the liquidity of those assets, the Debtor's expected future expenses and income, as well as other material matters that are reasonable and likely to affect the sufficiency of funds at any given time to distribute a comparable percentage of stock to all claimants. When making these determinations, the Debtors shall recognize that both present and future claimants bear a risk that the determinations will be either less than or greater than the actual distribution to which general unsecured creditors are entitled. In making determinations, the Debtors shall not prefer either present or future claimants by giving either group greater protection from such risks. Rather, the Debtors, in consultation with the Postconfirmation Creditors Committee, shall make determinations based on their best estimates of the total estate assets, the number and category of general unsecured claims, and related matters. The Debtors and the Postconfirmation Creditors Committee will properly discharge their duties in this regard, and be protected from liability, by making reasonable determinations based on the best information available to them from time to time.

5.2    **Installment Percentage.** The amount, time and manner of stock distributions to be made by the Debtors shall be determined by the Debtors, in consultation with the Postconfirmation Creditors Committee. The Debtors shall pay PI Claims in a manner designed to ensure that all valid claims are paid in the same proportions. However, because of the uncertainty, to ensure substantially equivalent treatment, the Debtors, in consultation with the Postconfirmation Creditors Committee, may initially distribute to claimants with valid PI Claims an installment distribution of stock equal to the percentage of each claim's liquidated value as determined by the Debtors, in consultation with the Postconfirmation Creditors Committee, consistent with the objective of paying holders of similar PI Claims in a substantially similar manner and the Debtors' other objectives.

5.3    **Payment of Balance.** The Debtors, in consultation with the Postconfirmation Creditors Committee, shall only distribute the balance, if any, of liquidated values withheld (in the form of stock in accordance with the Joint Plan) at such times and in such amounts as is necessary to ensure equality in distribution among claimants and the continued availability of stock to pay all present and future valid PI Claims. The Debtors may then utilize available stock to make additional distributions to fully compensate PI Claimants for their entire allowed PI Claim.

### SECTION 6
### MISCELLANEOUS

6.1    **Amendments.** The Debtors, in consultation with the Postconfirmation Creditors Committee, may seek to amend, modify, delete or add to any of these PI Claims Procedures (including, without limitation, amendments to conform these procedures to advances in scientific or medical knowledge or other changes in circumstances) by filing a motion with the Bankruptcy Court.

6.2    **Indemnity, Contribution and Subrogation Claims.** Except as modified herein, PI Claims for indemnity, contribution, subrogation and similar claims, if any, shall be subject to the same categorization, evaluation and payment provisions of these PI Claims Procedures as all other PI Claims.

- 13 -

A-0439

6.3    **Severability.**  Should any provision contained in the PI Claims Procedures be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the PI Claims Procedures.

6.4    **Punitive Damages.**  In determining the value of any liquidated or unliquidated PI Claim, punitive or exemplary damages, i.e., damages other than compensatory damages, shall not be considered or allowed, notwithstanding their availability under non-bankruptcy law or otherwise.

6.5    **Interest.**  In determining the value of any liquidated or unliquidated PI Claim, pre- and post-judgment interest shall not be paid or allowed, notwithstanding their potential availability under non-bankruptcy law or otherwise.

6.6    **General Releases.**    The Debtors, in consultation with the Postconfirmation Creditors Committee, reserve the right to require PI Claimants who agree to settle the PI Claims at any stage of the PI Claims Procedures to execute general releases of the Debtors, the Creditors Committee, the Postconfirmation Creditors Committee, and each of their current and former directors, officers, parents, subsidiaries, affiliates, predecessors, successors, assigns, advisors, professionals, insurers, shareholders, employees and agents (the "Released Parties") (provided however, that members of the Creditors Committee and the Postconfirmation Creditors Committee shall be released only in their capacity as a member of the Creditor Committee or the Postconfirmation Creditors Committee, respectively, and such members shall not be released in any other capacity, including, but not limited to, their capacity as a litigant or claimant against, or adverse to, the Debtors) from all present and future-manifested injuries arising from PI Claims and waiving any rights to a trial (jury or otherwise) or to appeal their treatment (the "General Releases").    Regardless, however, of whether the Debtors, in consultation with the Postconfirmation Creditors Committee, require PI Claimants to execute General Releases, any acceptance of a settlement or payment relating to a PI Claim (whether voluntary or otherwise) shall constitute final settlement, release and waiver of the PI Claim asserted against any of the Released Parties and any other PI Claims that could have been asserted against any of the Released Parties.  Such acceptance of a settlement or payment relating to a PI Claim shall also release each of the Released Parties from all PI Claims that such PI Claimant holds or may hold.

6.7    **Governing Law.**   Administration of these PI Claims Procedures shall be governed by, and construed in accordance with, the laws of the State of Delaware.

6.8    **Notices.**   Any notices required to be given to the Debtors under these PI Claims Procedures shall be in writing and shall be given by personal delivery, certified mail or regular United States mail, postage prepaid to the following address:

   Exide Technologies
   13000 Deerfield Parkway
   Building 200
   Alpharetta, GA 30004
   Attn:  Stuart H. Kupinsky, Executive Vice President,
      General Counsel and Secretary

- 14 -

A-0440

Exide Technologies
Attn: Plan Service; Suite 230
Crossroads Corporate Center
3150 Brunswick Pike
Lawrenceville, NJ 08648

with copies to:
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, Illinois 60601
Attn:   Matthew N. Kleiman

- 15 -

A-0441