# TAB 18

Europe ③

STOCK PURCHASE AGREEMENT
WITH RESPECT TO GNB TECHNOLOGIES NV

Dated as of 28 June 2000

among

P D International Pty Limited and Pacific Dunlop Holdings (Europe) Ltd , as Sellers

and

Exide Holding Europe, as Buyer

A-0757

TABLE OF CONTENTS

| | | |
|---|---|---|
| ARTICLE 1 | DEFINITIONS | 1 |
| ARTICLE 2 | SALE AND PURCHASE | 6 |
| Section 2 1 | Sale and Purchase of the Shares | 6 |
| Section 2 2 | Purchase Price | 6 |
| ARTICLE 3 | CLOSING | 7 |
| Section 3 1 | Closing  Time and Location | 7 |
| Section 3 2 | Documents to be Delivered to the Buyer at Closing | 7 |
| Section 3 3 | Seller Obligations Closing | 8 |
| Section 3 4 | Buyer's Obligations at Closing | 8 |
| Section 3 5 | Form of Documents | 9 |
| Section 3 6 | Post-Closing Matters | 9 |
| ARTICLE 4 | REPRESENTATIONS AND WARRANTIES REGARDING THE SELLERS | 9 |
| Section 4 1 | Organization | 10 |
| Section 4 2 | Power and Authority | 10 |
| Section 4 3 | Agreement Binding | 10 |
| Section 4 4 | Absence of Conflicts | 10 |
| Section 4 5 | No Litigation | 11 |
| Section 4 6 | Title to Shares | 11 |
| Section 4 7 | No Advisor | 11 |
| ARTICLE 5 | REPRESENTATIONS AND WARRANTIES REGARDING GNB | 11 |
| Section 5 1 | Organization | 12 |
| Section 5 2 | Share Capital | 12 |
| Section 5 3 | Subsidiaries and Investment | 12 |
| Section 5 4 | Absence of Conflicts | 13 |
| Section 5 5 | No Violation or Litigation | 13 |
| Section 5 6 | Operations Since June 30, 1999 | 14 |
| Section 5 7 | Returns, Elections and Appeals | 15 |
| Section 5 8 | Title to Assets | 16 |
| Section 5 9 | Real Properties | 17 |
| Section 5 10 | Assets | 17 |
| Section 5 11 | Asset Leases | 17 |
| Section 5 12 | Licenses | 18 |
| Section 5 13 | Intellectual Property | 18 |
| Section 5 14 | Employees, etc | 18 |
| Section 5 15 | Trade Disputes | 19 |
| Section 5 16 | Payments on Termination | 19 |
| Section 5 17 | Claims | 20 |
| Section 5 18 | Pensions | 20 |
| Section 5 19 | Commercial Contracts | 20 |
| Section 5 20 | Status of Contracts | 21 |

-i-

| Section 5 21 | Environmental Matters | 21 |
|---|---|---|
| Section 5 22 | Bank Accounts, Guarantees and Powers | 23 |
| Section 5 23 | Accounts and Records | 23 |
| Section 5 24 | Insurance | 23 |
| Section 5 25 | Product Warranties | 24 |
| Section 5 26 | No Misrepresentation | 24 |
| Section 5 27 | Powers of Attorney | 24 |
| ARTICLE 6 | REPRESENTATIONS AND WARRANTIES REGARDING THE BUYER | 24 |
| Section 6 1 | Organization | 25 |
| Section 6 2 | Power and Authority | 25 |
| Section 6 3 | Agreement Binding | 25 |
| Section 6 4 | Absence of Conflicts | 25 |
| Section 6 5 | No Litigation | 26 |
| Section 6 6 | Investment Representation | 26 |
| Section 6 7 | No Advisor | 26 |
| Section 6 8 | No Misrepresentation | 26 |
| ARTICLE 7 | ACTION PRIOR TO THE CLOSING DATE | 27 |
| Section 7 1 | Preserve Accuracy of Representations and Warranties | 27 |
| Section 7 2 | Notification of Changes | 27 |
| Section 7 3 | Governmental Approvals | 27 |
| Section 7 4 | Operations Prior to the Closing Date | 27 |
| Section 7 5 | Intercompany Agreements | 28 |
| Section 7 6 | General | 28 |
| Section 7 7 | Preservation of Business | 28 |
| ARTICLE 8 | CONDITIONS TO CLOSING | 28 |
| Section 8 1 | Buyer | 28 |
| Section 8 2 | Sellers | 30 |
| ARTICLE 9 | TERMINATION | 32 |
| Section 9 1 | Termination | 32 |
| Section 9 2 | Effect of Termination | 32 |
| Section 9 3 | Notice of Termination | 33 |
| ARTICLE 10 | EXCLUSIVITY OF REMEDY | 33 |
| Section 10 1 | Indemnification by the Sellers | 33 |
| Section 10 2 | Indemnification by the Buyer | 33 |
| Section 10 3 | Exclusivity of Remedy | 33 |
| ARTICLE 11 | GENERAL PROVISIONS | 33 |
| Section 11 1 | Notices | 33 |
| Section 11 2 | Confidential Information | 35 |
| Section 11 3 | No Public Announcement | 35 |
| Section 11 4 | Entire Agreement, Amendments | 36 |
| Section 11 5 | Successors and Assigns | 36 |
| Section 11 6 | Interpretation | 37 |

-ii-

| Section 11 7 | Waivers | 37 |
| Section 11 8 | Expenses | 37 |
| Section 11 9 | Partial Invalidity | 38 |
| Section 11 10 | Execution in Counterparts | 38 |
| Section 11 11 | Governing Law | 38 |
| Section 11 12 | Further Assurances and Cooperation | 38 |
| Section 11 13 | No Reliance | 39 |
| Section 11 14 | Disclosure Letter | 39 |
| Section 11 15 | Joint and Several Liability | 39 |

-iii-

A-0760

### STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT dated as of 28 June 2000 (the "Agreement") is executed by and among P D INTERNATIONAL PTY LIMITED, a company incorporated in Australia under company number ACN 606 947 057 (the "First Seller"), PACIFIC DUNLOP HOLDINGS (EUROPE) LTD, a company incorporated in England and Wales under company number 1458684 (the "Second Seller"), Exide Holding Europe, a company incorporated under the laws of France (the "Buyer")

### WHEREAS

A.   The Sellers own the entire issued share capital of GNB (as defined in this Agreement) in the respective proportions set out in Schedule 1

B    The Buyer desires to purchase from the Sellers, and the Sellers desire to sell to the Buyer, the entire issued share capital of GNB on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth, the Sellers and the Buyer agree as follows

### ARTICLE 1
### DEFINITIONS

In this Agreement, unless the context otherwise requires, the following terms have the meanings specified or referred to in this Section 1 1 and shall be equally applicable to both the singular and plural forms   Any agreement referred to below shall mean such agreement as amended, supplemented and modified from time to time to the extent permitted by the applicable provisions thereof and by this Agreement

"Action" means any lawsuit, arbitration, or regulatory, governmental or other proceeding or investigation whether at law or in equity

"Adjoining Properties" shall mean all sites or locations other than the Real Property or the PRP Sites to which Contaminants have migrated from the Real Property through air, soil, surface water or groundwater

"Affiliate" means, with respect to any Person, any other Person which directly or indirectly controls, is controlled by or is under common control with such Person

"Agreement" has the meaning specified in the first paragraph of this Agreement

"Business"   means (i) the marketing of starting-lighting-ignition automotive and specialty batteries and supplying original equipment manufacturers and replacement market customers with batteries for passenger cars, light and heavy-duty trucks, golf carts, motorcycles,

garden tractors and marine use, and related activities, (u) the marketing of batteries and allied products, parts and service for industrial applications, in each case, as conducted by GNB or a Subsidiary at the Real Properties immediately prior to the Closing Date.

"Business Day" means a day other than Saturday, Sunday or a day on which United States national banks are closed

"Buyer" has the meaning specified in the first paragraph of this Agreement

"Buyer Ancillary Agreements" means all agreements, instruments and documents being or to be executed and delivered by the Buyer under this Agreement.

"Closing" has the meaning specified in Section 3 1

"Closing Date" has the meaning specified in Section 3 1

"Confidential Information" has the meaning specified in Section 11 2

"Consultancy Minimum" means the level of annual consultancy payments specified in relation to GNB in Schedule 1 and in relation to each of the Subsidiaries in Schedule 2

"the Contractual Minimum" means the level of annual contractual payments specified in relation to GNB in Schedule 1 and in relation to each of the Subsidiaries in Schedule 2

"Coordinating Agreement" means that certain coordinating agreement dated 9 May 2000 between Pacific Dunlop Holdings (USA) Inc , a Delaware corporation, and Exide Corporation, a Delaware corporation, as amended and supplemented from time to time

"Court Order" means any judgment, order, award or decree of any foreign, federal, state or local court or tribunal or governmental agency and any award in any arbitration proceeding in any jurisdiction

"Disclosure Letter" means the letter dated 12 June 2000 from the Sellers to the Buyer, as modified pursuant to Section 5 7 of the Coordinating Agreement

"Employee Plan" has the meaning specified in the Principal US Agreement

"Encumbrance" means any lien, charge, security interest, mortgage, pledge, power of sale, easement, encroachment, covenant, restriction on transfer or other restriction on or defect in title or other encumbrances

"Environmental Laws" means all applicable statutory, international, treaty, conventions and local or regional laws, regulations, codes of practice, circulars and guidance notes relating to pollution or human health or the environment (including ambient air, surface water, ground water, tidal water and the foreshore between high and low tide, land surface or sub-surface strata, including, without limitation, those relating to Environmental Matters or otherwise

2

relating to the manufacture, possessing, distribution, use, processing, treatment, storage, disposal, transport or handling of Hazardous Materials currently in effect applicable to the operations of the Business

"**Environmental Matters**" means waste, land including contaminated land, aquatic environment, discharges, emissions, noise and vibration, heat, light and radiation, dangerous, hazardous or toxic substances and materials, nuisance and health and safety

"**Expenses**" means any and all reasonable expenses incurred in connection with investigating, defending or asserting any Action or overtly threatened Action (including court filing fees, court costs, arbitration fees or costs, witness fees, and reasonable fees and disbursements of legal counsel, investigators, expert witnesses, accountants and other professionals)

"**Financial Statements**" has the meaning specified in the Coordinating Agreement

"**GNB**" means GNB Technologies NV, details of which are set out in Schedule 1

"**GNB Agreements**" has the meaning specified in Section 5 20

"**GNB Finland**" means GNB Technologies Oy, being a wholly-owned Subsidiary of GNB, details of which are set out in Schedule 2

"**GNB France**" means GNB Technologies S A, being a wholly-owned Subsidiary of GNB, details of which are set out in Schedule 2

"**GNB Germany**" means GNB Technologies GmbH, being a wholly-owned Subsidiary of GNB, details of which are set out in Schedule 2

"**GNB Italy**" means GNB Technologies s r l, being a wholly-owned Subsidiary of GNB, details of which are set out in Schedule 2

"**Group Companies**" means GNB and the Subsidiaries and the "**Group**" shall be construed accordingly

"**Governmental Body**" means any foreign, United Kingdom, United States, European Union, Belgian, French, Italian, Finnish, state, or local governmental authority, agency

"**Governmental Permit**" has the meaning specified in the Principal US Agreement

"**Harm**" means harm defined in section 1(4) of the Environmental Protection Act 1990 of the United Kingdom

"**Hazardous Materials**" means chemicals, pollutants, contaminants, waste, petroleum, petroleum hydro-carbon products, explosives, radioactive substances, dangerous, hazardous or toxic substances and materials

3

A-0763

"Insurance Policies" means the insurance policies of GNB and of each of the Subsidiaries referred to in Section 7 7(a).

"Intellectual Property" has the meaning specified in Section 5 13(a)

"Intercompany Agreements" means agreements between GNB or a Subsidiary and an Affiliate of GNB other than GNB and any Subsidiary

"June 30, 1999 Balance Sheet" has the meaning specified in the Coordinating Agreement, including the notes to such balance sheet

"KPMG" means KPMG LLP or its successor

"Knowledge of the Sellers" or similar phrases means matters actually known to Thomas Minner, Thomas Smith, Thomas O'Hare, Mitchell Bregman, Barbara Hatcher, Rolf Fehndrich, Bart de Keyser or Jeff Kostos

"Knowledge of the Sellers Regarding Environmental Matters" or similar phrases means matters actually known to Rolf Fehndrich or Barbara Hatcher

"Licenses" has the meaning specified in Section 5 12

"Losses" means all losses, obligations, liabilities, settlement payments, awards, judgments, fines, assessments, penalties, and damages

"March 31, 2000 Balance Sheet" has the meaning specified in the Coordinating Agreement, including the notes to such balance sheet

"Material Adverse Effect" means any event, occurrence or condition (other than as a result of general economic conditions or events or conditions affecting the automotive and industrial battery industry as a whole) which has, or could reasonably be expected to have, a material adverse effect on the financial condition, assets, results of operations, Business, or operations of GNB, taken as a whole

"Minimum Asset Value" means the original asset cost specified in relation to GNB and in relation to each of the Subsidiaries, in Schedule 1

"Person" means any individual, corporation, partnership, limited liability company or corporation, joint venture, association, trust, unincorporated organization or Governmental Body

"Principal US Agreement" means the Sale Purchase Agreement with respect to Pacific Dunlop GNB Corporation dated 9 May 2000 between Pacific Dunlop Holdings (USA) Inc , as Seller, and Exide Corporation, as Buyer as amended and supplemented from time to time

"Product Warranty Level" means the level of product warranty claim specified

4

A-0764

"PRP Sites " shall mean all sites (other than the Real Property and the Adjoining Properties) with respect to which GNB, a Subsidiary, or any of their successors or assignees have or may have liability under any Environmental Law

"Purchase Price" has the meaning specified in Section 2 2

"Real Properties" means leasehold properties held by GNB brief details of which are set out in Schedule 3 and "Real Property" means any one of them

"Release" includes any and all spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaking, dumping, disposing, and any other means by which a substance may be introduced into or travel through the environment

"Remedial Action" shall include all actions required by a Court Order or otherwise by a Governmental Body to (i) clean up, remove, remediate, contain, treat, monitor, assess, evaluate or in any other way address Hazardous Materials, (ii) prevent the Release or threatened Release of Hazardous Materials, or (iii) investigate and determine if a remedial response is needed and to design such a response and post-remedial investigation, monitoring, operation and maintenance

"Requirements of Law" means any applicable law, regulation, bylaw, code or ordinance of any Governmental Body currently in effect applicable to the operation of the Business

"ROW Agreements" has the meaning specified in the Coordinating Agreement

"Salary Minimum" means the level of annual salary specified in relation to GNB and in Schedule 1 in relation to each of the Subsidiaries, in Schedule 2

"Sellers" means the First Seller and the Second Seller

"Sellers' Ancillary Agreements" means all agreements, instruments and documents being or to be executed and delivered by the Sellers under this Agreement

"Shares" means the 100 ordinary, registered shares of GNB constituting its entire issued share capital

"Subsidiaries" means GNB Finland, GNB France, GNB Germany and GNB Italy

"Tax" (and, with correlative meaning, "Taxes" and "Taxable") means any federal, state, county, local or foreign income, alternative or add-on minimum, gross income, gross receipts, capital gains, capital, property, sales, use, transfer, license, excise, premium, lease, estimated, environmental, registration, value added, stamp, real property, franchise, employment, payroll, wage, withholding or minimum tax, ad valorem, customs duty, or social security payments and any other similar taxes or governmental charges, fees, levies, assessments or liabilities of any kind whatsoever, whether computed on a separate or consolidated, unitary or

5

combined basis or in any other manner, and includes any interest, penalty or fine, or addition to tax imposed by any Governmental Body

"Tax Authority" means any governmental, federal, state, provincial, local government or other fiscal tax, revenue, customs duties or excise authority body or official whether of Belgium or elsewhere in the World

"Tax Return" means any return, notice, computation, report or similar statement required to be filed with respect to any taxation (including any attached schedules), including, without limitation, any information return, claim for refund, amended return and declaration of estimated Tax

### ARTICLE 2
### SALE AND PURCHASE

Section 2 1  Sale and Purchase of the Shares

(a)     On the terms and subject to the conditions of this Agreement, on the Closing Date, the Sellers shall sell to the Buyer, and the Buyer shall purchase from the Sellers, the Shares free from all Encumbrances together with all rights and benefits attaching or accruing to such Shares, at Closing

(b)     Title to beneficial ownership of, and any risk attaching to the Shares shall pass on the Closing and the Buyer shall, from the Closing Date, be entitled to exercise all rights attached or accrued to the Shares including, without limitation, the right to receive all dividends, distributions or any return of capital made or paid by GNB on or after the Closing Date

Section 2 2  Purchase Price

The purchase price (the "Purchase Price") shall be equal to One Thousand United States Dollars (US$1,000)  At the Closing, the Buyer shall pay the Purchase Price to the Sellers by wire transfer of immediately available funds to such bank account as the Sellers shall direct in writing  After Closing, the Purchase Price shall be adjusted pursuant to Article 2 of the Coordinating Agreement

6

A-0766

ARTICLE 3
CLOSING

### Section 3 1  Closing  Time and Location

Completion of the sale and purchase of the Shares (the "Closing") shall take place at 10 00 a m local time on the last Business Day of the month in which the last of the conditions specified in Article 8 is satisfied or waived, at the offices of Gardner, Carton & Douglas at 321 North Clark Street, in Chicago, Illinois, or at such other time or place as shall be agreed upon by the Sellers and the Buyer  Notwithstanding the foregoing, if the date upon which the last of the conditions specified in Article 8 is satisfied or waived is five (5) or fewer Business Days before the last day of the month, then the Closing shall be consummated on the fifth (5th) Business Day following the date upon which the last of such conditions was satisfied or waived, or such other date as may be agreed upon by Buyer and Sellers  The time and date on which the Closing is completed is referred to herein as the "Closing Date"

### Section 3.2  Documents to be Delivered to the Buyer at Closing

(a)    At Closing each Seller or duly authorised attorney in fact of each Seller shall record the transfer of shares owned by such Seller to the Buyer or as the Buyer may direct in GNB's share register to that effect

(b)    At Closing, the Sellers shall deliver to the Buyer or as the Buyer may direct

(i)    duly executed transfers of any of the Shares and any shares of any of the Subsidiaries held by nominees in favour of the Buyer or as the Buyer may direct,

(ii)    duly executed counterparts of the Sellers' Ancillary Agreements,

(iii)    a closing certificate of the Seller in a form reasonably satisfactory to the Buyer certifying as to the accuracy of the Seller's representations and warranties at and as of the Closing and that the Sellers has performed and complied with all of the terms, provisions and conditions to be performed and complied with by the Seller at or before the Closing,

(iv)    a certificate of the Company Secretary or an Assistant Company Secretary of the Seller in a form reasonably satisfactory to the Buyer dated the Closing Date, certifying as to  (i) the Seller's articles of association, (ii) the passing of resolutions of the Seller's board of directors, authorizing the execution and performance of this Agreement, the Seller Ancillary Agreements, and the transactions contemplated hereby, and (iii) evidence of due appointment and signatures of its officers executing this Agreement and any Sellers' Ancillary Agreement,

7

(v)    the written resignations of their respective directors and/or secretaries (including the company secretary) of GNB, as may be required to resign by the Buyer effective as of the Closing Date, and

(vi)    such other certificates and documents as the Buyer or its Counsel may reasonably request

### Section 3 3  Seller Obligations Closing

At the Closing, the Seller shall be obligated to

(a)    cause those persons nominated by the Buyer who have duly consented to act as Directors of GNB, to be validly appointed as additional directors and those persons nominated by the Buyer who have duly consented to act as secretary of GNB to be validly appointed as company secretary of GNB, and

(b)    on such appointments referred to in section 3 3(a) being made, cause of persons referred to in section 3 2(f) to cease to be directors and the company secretary of GNB

### Section 3 4  Buyer's Obligations at Closing

Upon completion of all the matters referred to in Section 3 2 (and only upon such completion) the Buyer shall be obliged to deliver to the Sellers

(a)    duly executed counterparts of the Buyer Ancillary Agreements,

(b)    a closing certificate of the Buyer in a form reasonably satisfactory to the Sellers certifying as to the accuracy of the Buyer's representations and warranties at and as of the Closing and that the Buyer has performed and complied with all of the terms, provisions and conditions to be performed and complied with by the Buyer at or before the Closing,

(c)    a certificate of the Company Secretary or an Assistant Company Secretary of the Buyer in a form reasonably satisfactory to the Sellers, dated the Closing Date, certifying as to  (i) the Buyer's articles of association (or other like constitutional document), (ii) the passing of resolutions of the Buyer's board of directors, authorizing the execution and performance of this Agreement, the Buyer Ancillary Agreements, and the transactions contemplated hereby, and (iii) evidence of due appointment and signatures of its officers executing this Agreement and any Buyer Ancillary Agreements,

(d)    the written consent of each of the persons named in Section 3 3(a) to serve as director or company secretary, as the case may be, and

8

(c)    such other certificates and documents as the Sellers or its counsel may reasonable request

Section 3.5. Form of Documents

The documents and instruments referred to in Sections 3 2 and 3 4 shall be satisfactory as to form to counsel for the party to whom they are delivered

Section 3 6 Post-Closing Matters

(a)    The Seller hereby declares that for so long as it remains the registered holder of any of the Shares after Closing it will

(i)    hold the Shares and the dividends and other distributions of profits or surplus or other assets declared, paid or made in respect of them after Closing and all rights arising out of or in connection with them in trust for the Buyer and its successors in title, and

(ii)    deal with and dispose of the Shares and all such dividends, distributions and rights as are described in Section 3 6(a)(i) as the Buyer or any such successor may direct

(b)

(i)    The Seller hereby appoints the Buyer as its lawful attorney for the purpose of receiving notices of and attending and voting at all meetings of the members of GNB from Closing to the date on which the Buyer or its nominee is entered in the register of members of GNB as the holder of the Shares

(ii)    For such purpose the Seller hereby authorises

(A)    GNB to send any notices in respect of its holding of Shares to the Buyer, and

(B)    the Buyer to complete in such manner as it thinks fit and to return proxy cards, consents to short notice and any other document required to be signed by it in its capacity as a member

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES REGARDING THE SELLERS

Each Seller represents and warrants to the Buyer as follows in relation to its own affairs

9

A-0769

Section 4 1  <u>Organization</u>

It has been duly incorporated and validly exists under the laws of, in the case of the First Seller, Australia, and in the case of the Second Seller, England and Wales

Section 4 2  <u>Power and Authority</u>

It has the full corporate power and authority to execute and deliver this Agreement and the Sellers' Ancillary Agreements and to perform its obligations hereunder and thereunder  Its execution, delivery and performance of this Agreement and each of the Sellers' Ancillary Agreements has been duly authorized and approved by all necessary corporate action

Section 4 3  <u>Agreement Binding</u>

This Agreement and each of the Sellers' Ancillary Agreements has been duly executed and delivered by it and, assuming due authorization, execution and delivery by the Buyer, is the legal, valid and binding obligation of the relevant Seller enforceable against it in accordance with their respective terms, subject to general principles of equity and except as enforceability may be limited by applicable bankruptcy, insolvency, fraudulent transfer, reorganisation, moratorium or other similar laws of general application relating to creditors' rights generally

Section 4 4  <u>Absence of Conflicts</u>

The execution, delivery and performance of this Agreement and the Sellers' Ancillary Agreements and the performance of the relevant Sellers' obligations hereunder and thereunder will not

(a)      conflict with, result in a breach of the terms, conditions or provisions of, or constitute a default, an event of default or an event creating rights of acceleration, termination or cancellation, or result in the termination or result in the creation, imposition or crystallisation of any Encumbrance upon the Shares or any assets of GNB under

(i)      any term or provision of the memorandum or articles of association of the relevant Seller or any Affiliate of Sellers,

(ii)     any note, instrument, contract, agreement, mortgage, indenture, lease, license or franchise to which the relevant Seller or any Affiliate of Sellers is a party or by which it or any of its assets is bound,

(iii)    any Court Order, or

(iv)    any Requirements of Law,

10

except for any of the foregoing which, individually or in the aggregate is or are not likely to have a Material Adverse Effect or hinder or impair the completion of the transactions contemplated hereby, or

(b)     require the approval, consent, authorization or act of, or the making by the relevant Seller or any Affiliate of Sellers of any declaration, notification, filing or registration with any Person, except for any of the foregoing which, individually or in the aggregate, if not taken, is or are not likely to have a Material Adverse Effect, or materially hinder or impair the consummation of the transactions contemplated hereby

### Section 4.5  No Litigation

There is no Action pending against it or, to the Knowledge of the relevant Seller, threatened against it, which challenges the legality or propriety of the transactions contemplated by this Agreement or the Sellers' Ancillary Agreements or which impairs the completion of the transactions contemplated hereby or thereby

### Section 4 6  Title to Shares

It has good, valid and marketable title to the Shares, free and clear of all Encumbrances, and has full right and power to vote and dispose of such Shares as contemplated herein  The Seller is not a party to any option, warrant, purchase right, or other contract or commitment that could require the Seller to sell, transfer, or otherwise dispose of any of the Shares (other than this Agreement)  The Seller is not a party to any voting trust, proxy, or other agreement or understanding with respect to the voting of any of the Shares

### Section 4 7  No Advisor

Neither the relevant Seller or any Affiliate of the relevant Seller nor any Person acting on its behalf, has retained any advisor, broker, investment banker or financial advisor in connection with this Agreement or any transaction contemplated hereby for which the Buyer or GNB or any Subsidiary may be liable

## ARTICLE 5
## REPRESENTATIONS AND WARRANTIES REGARDING GNB

The Sellers represent and warrant to the Buyer as follows

11

Section 5 4  Absence of Conflicts

The execution and completion of this Agreement and the Seller Ancillary Agreements, and the transactions contemplated or provided for in any of them, will not

(a)     conflict with, result in a breach of the terms, conditions or provisions of, or constitute a default, an event of default or an event creating rights of acceleration, termination or cancellation, or result in the termination of, or result in the creation or imposition of any Encumbrance upon the Shares or any assets of GNB (or upon any of the shares held by GNB in the Subsidiaries) under

(i)     any term or provision of the articles of association of any Group Company, or

(ii)     any note, instrument, contract, agreement, mortgage, indenture, lease, license or franchise to which any Group Company is a party or by which it or any of its assets is bound,

(iii)    any Court Order, or

(iv)    any Requirements of Law,

except for any of the foregoing which, individually or in the aggregate, is or are not likely to have a Material Adverse Effect or will not or is not likely to hinder or impair the exchange and completion of this Agreement or any of the transactions contemplated or provided for hereby and thereby, or

(b)     require the approval, consent, authorization or act of, or the making by any Group Company of, any declaration, notification, filing or registration with any Person, except for any of the foregoing which, individually or in the aggregate, is or are not likely to have a Material Adverse Effect or materially hinder or impair the consummation of the transactions contemplated hereby and thereby

Section 5 5  No Violation or Litigation

(a)     Each Group Company has complied and is in compliance with all Court Orders and Requirements of Law which are applicable to it and its business, except for such Requirements of Law as to which noncompliance is not likely to have a Material Adverse Effect, and

(b)     there is no Action pending or, to the Knowledge of the Sellers, threatened, against any Group Company or any of their assets and there has not been, to the Knowledge of the Sellers, any claim asserted by any Person that could lead to an Action and no Group Company nor any of their assets is subject to any currently pending Court Order  To the Knowledge of the

13

Sellers, there is no Action pending or threatened against any officer or director of any Group Company arising out of his or her service as an officer or director of any Group Company

Section 5 6  Operations Since June 30, 1999

Except as reflected in the March 31, 2000 Balance Sheet, since June 30, 1999

(a)     there has been no material adverse change in the business, operations, assets, or financial condition of any Group Company  The termination of any Intercompany Agreement not listed on Schedule 6 will not have a Material Adverse Effect,

(b)     Except as reflected in the March 31, 2000 Balance Sheet, each Group Company has conducted its business in the ordinary course and has not

(i)     made any material change in operations,

(ii)     made any capital expenditure or entered into any contract or commitment in excess of the capital expenditures disclosed in the "Fiscal Year 2000 Open Sanction Summary" attached to Schedule 5 7(B) the Principal US Agreement,

(iii)     sold, leased (as lessor), transferred or otherwise disposed of, or imposed or suffered to be imposed any Encumbrance on, any of the assets, except for inventory and other personal or real property sold, leased or otherwise disposed of for fair value in the ordinary course of business consistent with past practice and except for Permitted Encumbrances (as defined in the Principal US Agreement),

(iv)     cancelled any debts owed to or claims held (including the settlement of any Action) other than in the ordinary course of business consistent with past practice,

(v)     created, incurred or assumed, or agreed to create, incur or assume, any indebtedness for borrowed money or entered into, as lessee, any capitalized lease obligations or guaranteed any such indebtedness or leases of others or made any loans other than in the ordinary course of business consistent with past practice,

(vi)     written off as uncollectible or accelerated or delayed collection of notes or amounts receivable in advance of or beyond their regular due dates or the dates when the same would have been collected other than in the ordinary course of business consistent with past practice,

(vii)     delayed or accelerated payment of any accounts payable or other liabilities beyond or in advance of their due date or the date when such liabilities would have been paid other than in the ordinary course of business consistent with past practice,

(viii)     made any distribution of assets (including payments of cash) to any of its Affiliates (not including the Seller or any of its Subsidiaries) other than pursuant to

14

agreements entered into in the ordinary course of business consistent with past practice or declared or paid any distributions (provided that Sellers shall have the right to remove and retain all cash held by GNB or any Subsidiary) or redeemed, reclassified or purchased or otherwise acquired any shares of its capital stock or authorised or issued any shares of its capital stock or any option, warrant or other right to purchase or acquire any such shares, or

(ix)    entered into, or amended, any employment, severance or similar agreement or arrangement or made any increases in the wages, bonuses, and benefits of its employees (other than in the ordinary course of business consistent with past practice and in accordance with applicable labour law requirements),

(x)    waived any rights or settled any claims, except for such waivers or settlements granted or entered into in the ordinary course of business,

(xi)    made any change to its method of accounting,

(xii)    suffered or incurred any damage, destruction, fire, explosion, accident, flood or other casualty loss or act of God (whether or not covered by insurance) to any material operating asset or group of operating assets,

(xiii)    entered into or amended any purchase and sale contract outside the ordinary course of business,

(xiv)    suffered any amendments, termination, suspension or revocation of, any Governmental Permit,

(xv)    adopted an Employee Plan or amended or modified any already existing Employee Plan,

(xvi)    amended its articles of association,

(xvii)    manufactured inventory in excess of its expected needs, or

(xviii)    where applicable, agreed to do any of the foregoing

**Section 5 7 Returns, Elections and Appeals**

(a)    Each Group Company has properly and within the requisite periods made all Tax Returns which at any time it has been liable to make or provide for any purposes of Tax

(b)    Each Group Company has duly and within the requisite periods made or given all elections, claims, notices and which are assumed to have been made or given in computing the charge or provision for that company (if any) for Tax in, or in preparing the Financial Statements

15

(c)    Each Group Company has duly and within the requisite periods accounted for or paid all Tax which it is liable to account for or pay

(d)    No appeal by any Group Company is currently outstanding against any assessment or other demand in respect of any Tax

(e)    Except as set forth on Schedule 5 7, no deficiency or proposed adjustment (which has not settled or otherwise resolved) for any amount of Tax has been proposed, asserted or assessed by any taxing authority against GNB or its Subsidiaries

(f)    Except as set forth on Schedule 5 7, there is no action, suit, taxing authority proceeding or audit now in progress, pending or, to the Knowledge of Sellers, threatened against or with respect to GNB or its Subsidiaries

(g)    Except as set forth on Schedule 5 7, no claim has ever been made by a taxing authority in a jurisdiction where GNB or its Subsidiaries, respectively, do not file Tax Returns that such entity is or may be subject to Taxes assessed by such jurisdiction

(h)    Except as set forth on Schedule 5 7, GNB and its Subsidiaries will not be required (A) as a result of a change in method of accounting for a taxable period ending on or prior to the Closing Date, to include any adjustment in taxable income for any taxable period (or portion thereof) ending after the Closing Date, (B) as a result of any Requirement of Law relating to taxation matters to include any item of income in, or exclude any item of deduction from, taxable income for any taxable period (or portion thereof) ending after the Closing Date, (C) as a result of any Requirement Law relating to taxation matters, to include any item of income in taxable income for any taxable period (or portion thereof) ending after the Closing Date or (D) any installment sale made or prepaid income attributable to a taxable period ending on or prior to the Closing Date

(i)    Except as set forth on Schedule 5 7, GNB and its Subsidiaries have no obligation or liability for the payment of Taxes of any other Person, including, but not limited to the following, a liability of GNB or its Subsidiaries for the payment of any Tax arising (A) as a result of being (or ceasing to be) a member of any Affiliated Group (or being included (or required to be included) in any Tax Return relating thereto), (B) as a result from any expressed or implied obligation to indemnify another person, and (C) as a result from GNB or its Subsidiaries succeeding to the Tax liability of any other person as a successor, transferee or otherwise

Section 5 8   Title to Assets

GNB is the exclusive and absolute owner of and has good title to, or a valid leasehold interest to, all of the personal property of GNB and the Group Companies reflected in the June 30, 1999 Balance Sheet (other than the property of GNB and the Group Companies disposed of since the date of the June 30, 1999 Balance Sheet in the ordinary course of business for fair value) in the amounts and categories reflected therein, and all personal property of GNB and the Group Companies acquired after the date of the June 30, 1999 Balance Sheet, free and clear of all

16

A-0776

Encumbrances, except for (a) Permitted Encumbrances, (b) the lien of current taxes not yet due and payable and (c) other exceptions disclosed in Schedule 5 8  Except as disclosed in Schedule 5 8, the personal property of GNB that is utilized in the operation of GNB's business is usable in the ordinary course of GNB's business and conforms to all applicable statutes, ordinances and regulations relating to its construction, use and operation, except where such nonconformity is not likely to have a Material Adverse Effect

Section 5 9  Real Properties

(a)    the Real Properties shown in Schedule 3 comprise all the premises and land owned, leased, occupied or used by each Group Company,

(b)    Part II of Schedule 3 contains details of the material terms of each material lease or sublease or similar agreement under which a Group Company is lessee or sublessee of, or holds or occupies, the Real Properties,

(c)    there is no other Person in possession or occupation of any of the Real Properties without proper authority,

(d)    to the Knowledge of the Sellers there is no material subsisting breach nor any material non-observance on the part of any Group Company of any covenant, condition or agreement contained in the lease under which each Group Company occupies the Property other than relating to repair, maintenance and decoration and no landlord has refused to accept rent or made any complaint or objection concerning the covenants

Section 5 10  Assets

Schedule 4 contains a list of all machinery, equipment, and vehicles owned by GNB and each of the Subsidiaries having an original cost equal to or in excess of the Minimum Asset Value (the "Principal Assets")

Section 5 11  Asset Leases

The Disclosure Letter contains a brief description of each lease or other agreement or right, whether written or oral, (including in each case the annual rental, the expiration date thereof and a brief description of the property covered) under which each Group Company is lessee of, or holds or operates, any machinery, equipment, or vehicle owned by a third party, except those which are terminable by the relevant Group Company without cost or penalty on 30 days' or less notice or which provide for annual rentals of less than the Contractual Minimum

17

A-0777

**Section 5 12  Licenses**

All material licenses, consents, authorizations, permits, orders, warrants, confirmations, permissions, certificates, approvals and authorities ("Licenses") necessary for the carrying on of the Business and operations of each Group Company have been obtained and are being complied with except to the extent that non-compliance is not likely to have a Material Adverse Effect  No written notice of the suspension, cancellation, refusal, modification or revocation of any such License has been received by any Group Company and, to the Knowledge of the Sellers, there is no basis for the issuance of such notice except as a result of the consummation of the transactions contemplated hereby or except as is not likely to have a Material Adverse Effect  Notwithstanding the foregoing, Licenses required under the Environmental Laws are addressed solely in Section 5 21(b)

**Section 5 13  Intellectual Property**

(a)       Except as set out in Schedule 5 there are no material patents, patent applications, trade marks or trade mark registrations, service marks or service mark registrations, trade names, Internet domain names, corporate names or any applications to register any of the foregoing, copyrights, licenses to or from any Person in relation thereto, (the "Intellectual Property") used by GNB or otherwise relating to the business of each Group Company as presently carried on,

(b)       Each item constituting part of the Intellectual Property has been, to the extent indicated in Schedule 5, duly registered, filed or issued in the name of the relevant Group Company, as the case may be and such registrations, filings and issuances remain in full force and effect,

(c)       Each Group Company owns and possesses all right, title and interest in and to the Intellectual Property set against its name in Schedule 5, and has not received written notice of any claim by any Person contesting the validity, enforceability, use, or ownership of any such Intellectual Property, patent disclosures or inventions or asserting that any Subsidiary is infringing the intellectual property of others   Schedule 5 sets forth all technology (including Intellectual Property) owned by third parties and used by each Group Company   To the Knowledge of the Sellers, no Person is infringing the rights of any Group Company with respect to any Intellectual Property

**Section 5 14  Employees, etc**

(a)       the Disclosure Letter contains details of

(i)       the aggregate number of employees employed by each Group Company,

18

A-0778

(ii)     the name, date of commencement of service, temporary or permanent status, period of service, location, salary and benefits package, grade and age of each employee,

(iii)    the terms of the contract of employment of each employee with a current annual salary or benefit package in excess of the Salary Minimum, and

(iv)     the forms of all consultancy or similar arrangements involving payments in excess of the Consultancy Minimum per annum,

(b) there are no proposals to terminate the employment of any employees of any Group Company and there are no arrangements (whether contractual or otherwise) to vary or amend their terms of employment (whether to their detriment or benefit)

(c) Each Group Company has in relation to each of its employees (and, so far as relevant, to each of its former employees) complied with

(i)     obligations imposed on it by all statutes regulations and codes of conduct and practice relevant to the relations between it and its employees or any trade union or employee representatives and has maintained current adequate and suitable records regarding the service and terms and conditions of employment of each of its employees,

(ii)    all collective agreements recognition agreements and customs and practices for the time being dealing with such relations or the conditions of service of its employees, and

(iii)   all relevant orders and awards made under any relevant statute regulation or code of conduct and practice affecting the conditions of service of its employees

## Section 5 15 Trade Disputes

No Group Company is involved in any industrial or trade dispute or any dispute or negotiation with any trade union or other body representing any of the employees

## Section 5 16 Payments on Termination

(a)     no liability has been or may be incurred by any Group Company for breach of any contract of employment or consultancy with any employee or consultant including, without limitation, redundancy payments, protective awards, compensation for wrongful dismissal or unfair dismissal or for failure to comply with any order for the reinstatement or re-engagement of any employee, and

19

A-0779

(b)     Each Group Company owns, holds or possesses all material Governmental Permits required under Environmental Laws necessary for the occupation and use of the Real Properties and the operation of its business substantially as currently conducted. Each Group Company is in compliance, and has for the past three (3) years complied, with all Governmental Permits except for such noncompliance as is not likely to have a Material Adverse Effect. The Sellers shall make commercially reasonable efforts to transfer or cause to be transferred to the Buyer all such Governmental Permits at the Closing, including (i) giving notice to federal, state or local regulatory agencies with respect to the change in ownership or control or responsible officials at the Real Properties, (ii) completing and submitting notices of termination, and (iii) to the extent not transferred by the Closing Date, shall cooperate fully with the Buyer in obtaining the transfer of such Government Permits as promptly thereafter as possible

(c)     Each Group Company is not subject to any pending or, to the Knowledge of the Sellers Regarding Environmental Matters, threatened with investigation by, order from, claim by, statutory request for information from or continuing agreement with any Person respecting (i) any violation of Environmental Law or Governmental Permits, (ii) any Remedial Action, or (iii) any claim of Losses and Expenses, in each case, arising from the release of Hazardous Materials or the presence of any Hazardous Material on, in, at or beneath any of the Real Properties or the migration of any Hazardous Material onto or from the Real Properties

(d)     No Group Company is subject to any pending or, to the Knowledge of the Sellers Regarding Environmental Matters, threatened judicial or administrative investigation, proceeding, order, notice of violation, judgment, decree or settlement with any continuing obligation alleging or relating to a violation of or liability under any Environmental Law or Governmental Permit.

(e)     No Group Company has received any notice under any Environmental Law to the effect that it is or may be liable to any Person as a result of the generation, storage, transportation, Release, arrangement for disposal or disposal of any Hazardous Material on, at or in any Real Properties

(f)     To the Knowledge of the Sellers Regarding Environmental Matters, there are no underground storage tanks (whether active or abandoned) located at, in or beneath the Real Properties

(g)     To the Knowledge of the Sellers Regarding Environmental Matters, as of the Closing Date there is no condition existing on the premises constituting the Real Properties that will give rise to any liability of any Group Company under any Environmental Law

(h)     Sellers have made available to Buyer true and correct copies of all material environmental audits and consultant's reports relating to the past and current operations, properties and facilities of GNB and each Subsidiary, or any of their respective predecessors, which are in its possession or under its reasonable control

22

(i)    To the Knowledge of the Sellers Regarding Environmental Matters, the sites identified on Schedule 5.19(f) constitute, and as such Schedule is updated by Seller from time to time in its sole discretion prior to the Closing Date, will constitute all PRP Sites as of the Closing Date

(j)    No group Company has not reported a Release pursuant to an Environmental Law or filed a notice with respect to the contamination of land or the generation of hazardous wastes that is required to be filed pursuant to an Environmental Law, and to the Knowledge of the Seller Regarding Environmental Matters, there has not been any disposal by any Group Company or Release of any Hazardous Materials on, at, in or beneath any Real Properties

(k)    Notwithstanding any other provision of this Agreement, no representations and warranties are made or shall be deemed to apply to the PRP Sites

## Section 5.22 Bank Accounts, Guarantees and Powers

The Disclosure Letter lists all accounts, directors' resolutions authorizing borrowing or deposit boxes maintained by each Group Company at any bank or other financial institution and the names of the persons authorized to effect transactions in such accounts and pursuant to such resolutions and with access to such boxes

## Section 5.23 Accounts and Records

All the accounts, books, ledgers and financial and other material records of the Business have been maintained accurately and in accordance with generally accepted accounting practices

## Section 5.24 Insurance

The Seller has, and at all times has had, valid insurance coverage in respect of the Business against all risks normally insured against by persons in the same industry, underwritten by one or more well-established and reputable insurers or adequately capitalised Affiliates The Disclosure Letter contains a list of all insurance policies maintained by or on behalf of each Group Company on its respective Real Properties, assets, business or personnel specifying

(i)    the insurer,

(ii)    the amount of the coverage,

(iii)    the type of insurance,

(iv)    the policy number; and

(v)    any currently pending claims thereunder

23

No Group Company has failed to give any notice or present any claim under any insurance policy in due and timely fashion. All premiums due under the policies listed in the Disclosure Letter have been paid or accrued for on the Financial Statements and all such policies are in full force and effect and no notice of disallowance of any claim under any insurance policy, whether or not currently in effect, has been received by any Group Company. Other than (i) claims properly made against any Group Company in the ordinary course of business pursuant to insurance programs written on a retrospective rating basis, (ii) claims made as a result of premium audits relating to expired insurance policies, (iii) deductible claims relating to losses that are incurred but not reported, or losses that are known but not finally resolved, no Group Company has any liability for or exposure to any premium expenses for expired policies and there are no current claims by any Group Company under any such policy as to which coverage has been questioned, denied or disputed by the underwriters of such policies.

Section 5.25  Product Warranties

Details of all of unexpired, express product warranties with respect to any product manufactured or sold or that it has heretofore manufactured or sold are set out in the Disclosure Letter. Except as disclosed, the relevant Company has not received written notice of any claim, and to the Knowledge of the Sellers there are no threatened claims against any Group Company based on any product warranty (except claims outstanding as of June 30, 1999), not exceeding the Product Warranty Level.

Section 5.26  No Misrepresentation

To the Knowledge of the Sellers, the representations and warranties of the Sellers contained in this Agreement, the Disclosure Letter and the certificates and other instruments delivered by the Sellers pursuant hereto, do not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained herein or therein not misleading.

Section 5.27  Powers of Attorney

As of Closing, there will not be any outstanding powers of attorney executed on behalf of GNB or any Subsidiary other than with respect to the filing of taxes, customs and similar matters and intellectual property registrations.

## ARTICLE 6
### REPRESENTATIONS AND WARRANTIES REGARDING THE BUYER

The Buyer represents and warrants to the Sellers as follows:

24

A-0784

(iv)    any Requirements of Law,

except in each case for any of the foregoing which, individually or in the aggregate is or are not likely to have a material adverse effect on the Buyer or its business taken as a whole or hinder or impair the completion of the transactions contemplated hereby, or

(b)    require the approval, consent, authorization or act of, or the making by the Buyer of any declaration, notification, filing or registration with, any Person, except, in each case, for any of the foregoing which, individually or in the aggregate, if not taken, is or are not likely to have a material adverse effect on the Buyer or its business taken as a whole or materially hinder or impair the consummation of the transactions contemplated hereby

### Section 6.5  No Litigation

There is no Action pending or, to the Knowledge of the Buyer, threatened, which questions the legality or propriety of the transactions contemplated by this Agreement the Buyer Ancillary Agreements or which would impair the contemplation of the transactions contemplated hereby, and there has not been, to the knowledge of the Buyer, any claim asserted by any Person that could lead to such an Action

### Section 6.6  Investment Representation

The Buyer is acquiring the Shares for investment and not with a view to the distribution thereof or dividing all or any part of its interest therein with any other person

### Section 6.7  No Advisor

Neither the Buyer nor any Person acting on its behalf has retained any advisor, broker, investment banker or financial advisor in connection with this Agreement or any transaction contemplated hereby for which the Sellers may be liable

### Section 6.8  No Misrepresentation

To the knowledge of Buyer, the representations and warranties of Buyer contained in this Agreement and the certificates and other instruments delivered by Buyer pursuant hereto do not include any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading

26

expenditure in excess of the local currency equivalent of US$250,000 (other than as permitted by Section 7.3(b) of the Principal US Agreement) without the prior written approval of Buyer.

Section 7.5 <u>Intercompany Agreements</u>

All the Intercompany Agreements and intercompany accounts payable and receivable, except for those set out in Schedule 6, shall be terminated or canceled at Closing.

Section 7.6 <u>General</u>

Each of the parties will use its reasonable best efforts to take all action and to do all things necessary, proper, or advisable in order to consummate and make effective the transactions contemplated by this Agreement (including satisfaction, but not waiver, of the closing conditions set forth below).

Section 7.7 <u>Preservation of Business</u>

Each of the parties shall, and Seller shall cause GNB and each Group Company to, use reasonable best efforts to keep their businesses and properties substantially intact, including their present operations, physical facilities, working conditions and relationships with lessors, licensors, suppliers, customers and employees.

**ARTICLE 8**
**CONDITIONS TO CLOSING**

Section 8.1 <u>Buyer</u>

The obligations of Buyer under this Agreement shall, at the election of the Buyer, be subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions:

(a)    No Misrepresentation or Breach of Obligations or Agreements

Seller shall have complied in all material respects with its covenants and agreements herein and in the Coordinating Agreement.

(b)    No Breach of Representation or Warranty

Each of the representations and warranties of the Seller contained in this Agreement and each of the Seller Ancillary Agreements shall be true and correct in all material respects on the Closing Date as though made on the Closing Date

28

A-0788

(except with respect to those representations and warranties that speak as to a particular date or time, which only need to be true and correct as of such date or time), except for changes therein specifically permitted by this Agreement or resulting from any transaction expressly consented to in writing by the Buyer, and there shall have been delivered to the Buyer a closing certificate in a form reasonably satisfactory to the Buyer to such effect, dated the Closing Date, signed by the Chairman or Managing Director of the Seller

(c)     Closing Documents

The Buyer shall have received from the Sellers the agreements and closing documents provided for in Section 3 2

(d)     Necessary Approvals

The Seller and the Buyer shall have received all approvals and actions of or by all Governmental Bodies and any other Person which are necessary to complete the transactions contemplated hereby and by the ROW Agreements and preserve for the benefit of GNB its rights under the GNB Agreements which are material to the operation of the Business

The Buyer acknowledges and agrees that it shall be the Buyer's obligation to seek such approvals and actions and to issue all notifications

(e)     No Suit

No Action by and Governmental Body shall be pending or threatened questioning the legality of this Agreement or the consummation of the transactions contemplated hereby in whole or in part

(f)     Principal US Agreement

The transactions contemplated by the Principal US Agreement shall have been completed simultaneously with the Closing

(g)     No Material Adverse Change

On the Closing Date, there shall not be a Material Adverse Effect

(h)     Coordinating Agreement

All conditions to Exide Corporation's obligations set forth in Sections 5 5, 5 6 and 5 7(a) of the Coordinating Agreement shall have been satisfied

A-0789

Notwithstanding the failure of any one or more of the foregoing conditions, the Buyer may, at its option, proceed with the Closing without satisfaction, in whole or in part, of any one or more of such conditions and without written waiver, provided however, that in so proceeding with the Closing, and notwithstanding any other provision of this Agreement, the Buyer shall be deemed to have waived any such failure and any rights or remedies it may have against the Sellers by reason of such failure

### Section 8 2 Sellers

The obligations of the Sellers under this Agreement shall, at the option of the Sellers, be subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions

(a)    No Breach of Covenants and Agreements

Buyer shall have complied in all material respects with its covenants and agreements herein and in the Coordinating Agreement

(b)    No Breach of Representations and Warranties

Each of the representations and warranties of the Buyer contained in this Agreement and the Buyer Ancillary Agreements shall be true and correct in all material respects on the Closing Date as though made on the Closing Date (except with respect to those representations and warranties that speak as to a particular date or time, which only need to be true and correct as of such date or time), except for changes therein specifically permitted by this Agreement or resulting from any transaction expressly consented to in writing by the Seller, and there shall have been delivered to the Seller a closing certificate in a form reasonably satisfactory to the Seller to such effect, dated the Closing Date and signed by the President or Vice President of the Buyer

(c)    Closing Documents

The Sellers shall have received from Buyer the agreements and documents contemplated by Section 3 3(b), (c), (d) and (e)

(d)    Payment of Closing Date Cash Payment

The Buyer shall have tendered payment of the Purchase Price

30

A-0790

(e)     Necessary Approvals

The Seller and the Buyer shall have received all approvals and actions of or by all Governmental Bodies and any other Person which are necessary to consummate the transactions contemplated hereby and by the ROW Agreements and preserve for the benefit of Buyer its rights under agreements which are material to the operation of its business

The Buyer acknowledges and agrees that it shall be the Buyer's obligation to seek such approvals and actions and to issue all notifications

(f)     No Suit

No Action by any Governmental Body shall be pending or threatened questioning the legality of this Agreement or the consummation of the transactions contemplated hereby in whole or in part

(g)     Principal US Agreement

The transactions contemplated by the Principal US Agreement shall have been completed simultaneously with the Closing

(h)     No Material Adverse Change

On the Closing Date, there shall have been no event, occurrence or condition (other than as a result of general economic conditions or events affecting the automotive and industrial battery business as a whole) which has, or could reasonably be expected to have, a material adverse effect on the financial condition, assets, results or operations, businesses, or operations of Buyer taken as a whole

(i)     Coordinating Agreement

All conditions to Pacific Dunlop Holdings (USA) Inc's obligations set forth in Sections 5 5 and 5 7(b) of the Coordinating Agreement shall have been satisfied

Notwithstanding the failure of any one or more of the foregoing conditions, the Sellers may, at their option, proceed with the Closing without satisfaction, in whole or in part, of any one or more of such conditions and without written waiver, provided however, that in so proceeding with the Closing, and notwithstanding any other provision of this Agreement, the Sellers shall be deemed to have waived any such failure and any rights or remedies they may have against the Buyer by reason of such failure

31

## ARTICLE 9
## TERMINATION

**Section 9 1  Termination**

Notwithstanding anything contained in this Agreement to the contrary, this Agreement may be terminated at any time prior to the Closing Date

    (a)    by the mutual written consent of the Buyer and the Sellers,

    (b)    by Buyer or Seller if the Closing shall not have occurred on or before  December 31, 2000 unless   (i) all conditions to Closing have previously been satisfied or waived, and (ii) the Closing has not then occurred solely because the date for Closing specified in Section 3 1 has not yet occurred and unless such failure to close is due primarily to the breach by the party seeking termination of its agreements, representations or warranties contained herein,

    (c)    by Buyer in the event of any breaches in any material respect by Seller of Seller's agreements, covenants, representations or warranties contained herein, and which Seller has failed to remedy or cure within twenty one (21) days after receipt of notice from Buyer requesting that such breaches be remedied or cured,

    (d)    by the Sellers in the event of any breaches in any material respect by the Buyer of the Buyer's agreements, covenants, representations or warranties contained herein, which the Buyer has failed to remedy or cure within twenty one (21) days after receipt of notice from the Sellers requesting that such breaches be remedied or cured, or

    (e)    by the Buyer or the Sellers if a Court Order shall have been made or a Governmental Body shall have issued a decree or ruling or taken any other action permanently restraining, enjoining or otherwise prohibiting the completion of the transactions contemplated hereby

**Section 9 2  Effect of Termination**

In the event that this Agreement shall be terminated pursuant to this Section 9, all further obligations of the parties under this Agreement (other than Sections 11 2, 11 8 and 11 11) and the Coordinating Agreement (other than Sections 5 2, 5 3 and 5 4) shall be terminated without further liability of any party to the other, provided that nothing herein shall relieve either party from liability for its willful breach of this Agreement

Section 9.3  Notice of Termination

Any party desiring to terminate this Agreement pursuant to Section 9.1 shall give written notice of such termination to the other parties to this Agreement

## ARTICLE 10.
### EXCLUSIVITY OF REMEDY

Section 10.1  Indemnification by the Sellers

The Sellers' sole and exclusive indemnification obligations under this Agreement are set forth in the Coordinating Agreement.

Section 10.2  Indemnification by the Buyer

The Buyer's sole and exclusive indemnification obligations under this Agreement are set forth in the Coordinating Agreement

Section 10.3  Exclusivity of Remedy

Except as provided in Section 9.2, with respect to any breach by either party of its representations, warranties, covenants, or agreements in this Agreement or the respective Buyer or Seller Ancillary Agreements, or the ROW Agreements and the transactions contemplated hereby and thereby, the sole and exclusive remedy of the other party (in contract, tort, for contribution, under Requirements of Law, or otherwise) shall be the indemnification provided in the Coordinating Agreement  In view of this exclusivity of remedy provision, the Buyer and the Sellers covenant and agree for themselves and their respective Affiliates that they will not bring, maintain, join or prosecute any Action or other proceeding against the other or its Affiliates for breach of this Agreement or indemnity therefor except as provided in the Coordinating Agreement

## ARTICLE 11
### GENERAL PROVISIONS

Section 11.1  Notices

Any notice, request, instruction or other document to be given hereunder shall be in writing and  (a) delivered personally, (b) sent by first class pre-paid post (airmail if overseas), (c) sent by reputable overnight couriers, or (d) sent by facsimile, according to the instructions set forth below

33

Such notices shall be sent to the following addresses and/or facsimile numbers and shall be deemed given (x) if delivered personally, at the time delivered, (y) if sent by reputable overnight courier, at the time sent, or (z) if transmitted by facsimile, at the time when receipt is confirmed by the sending facsimile machine.

If to the First or Second Seller, to

Pacific Dunlop Holdings (USA) Inc
6121 Lakeside Drive
Suite 200
Reno, Nevada 89511
Attention    President
Facsimile    702-824-4626

with a copy to

Gardner, Carton & Douglas
321 N Clark Street
Suite 3400
Chicago Illinois 60610
Attention    Mr Robert J Wilczek
Facsimile    312-644-3381

If to the Buyer, to

c/o Exide Corporation
2901 Hubbard Road
Ann Arbor, Michigan 48105
Attention   General Counsel
Facsimile   734-827-2575

with copy to

Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois 60601
Attention   Mr Carter W  Emerson, P C
Facsimile   312-861-2200

or to such other address as such party may indicate by a notice defined to the other parties in accordance with the provisions of this Section

34

A-0794

Section 11 2 <u>Confidential Information</u>

(a)　Each party agrees that it will treat in confidence all documents, materials and other information which it shall have obtained regarding any of the other parties and/or the businesses of the other parties during the course of the negotiations leading to the completion of the transactions contemplated hereby (whether obtained before or after the date of this Agreement), the investigation provided for herein and the preparation of this Agreement and other related documents ("Confidential Information"), and, in the event the transactions contemplated hereby shall not be completed, each party will destroy or return to the relevant party all copies of non-public Confidential Information which have been furnished in connection therewith, as the relevant party may specify　Confidential Information shall not be communicated to any third person (other than the parties' respective counsel, accountants, financial advisors or environmental consultants)　No party shall use any Confidential Information in any manner whatsoever except solely for the purpose of evaluating the proposed transaction　Notwithstanding the foregoing, after the Closing, the Buyer may use or disclose any Confidential Information relating to any Group Company　The Seller shall not at any time after the Closing disclose any Confidential Information relating to any Group Company

(b)　The obligation of each party to treat Confidential Information in confidence shall not apply to any Confidential Information which

(i)　is or becomes available to such party from a source other than such party,

(ii)　is or becomes available to the public other than as a result of disclosure by another party or its agents,

(iii)　is required to be disclosed under applicable law or judicial process, but only to the extent it must be disclosed, or

(iv)　as to which such party reasonably deems disclosure necessary to obtain any of the consents or approvals contemplated hereby

Section 11 3 <u>No Public Announcement</u>

Neither the Buyer nor the Seller shall, without the approval of the other parties, issue any press release or other public announcement concerning this Agreement or the transactions contemplated by this Agreement　Notwithstanding the foregoing, any party may issue a press release or other public announcement concerning this Agreement or the transactions contemplated by it to the extent that such party or its Affiliates shall be so obligated by law, or to comply with accounting or disclosure obligations of the Securities and Exchange Commission, New York Stock Exchange or the Australian Stock Exchange provided that such party shall be obligated to give the other party prior notice of such press release or other public announcement if prior notice is commercially feasible

35

A-0795

Section 11 4 Entire Agreement, Amendments

This Agreement, the Disclosure Letter, the Buyer Ancillary Agreements and the Sellers' Ancillary Agreements, and the Coordinating Agreement, the Principal US Agreement, the ROW Agreements and the Exhibits and Schedules referred to herein and therein contain the entire understanding of the parties hereto with regard to the subject matter herein or therein and supersede all prior written or oral agreements, understandings or letters of intent between or among any of the parties hereto  This Agreement shall not be amended, modified or supplemented except by a written instrument signed by an authorized representative of each of the parties hereto

Section 11 5 Successors and Assigns

(a)    The rights of each party under this Agreement and the Coordinating Agreement shall not be assignable without the written consent of the other party, provided, however, that no such assignment shall relieve the assigning party from any of its duties or obligations under this Agreement or the Coordinating Agreement, and provided further, however, that upon written notice to Seller, Buyer may assign this Agreement to an Affiliate of Buyer without the consent of Seller

(b)    This Agreement shall be binding upon and enure to the benefit of the parties hereto and their successors and permitted assigns  Nothing in this Agreement, expressed or implied, is intended or shall be construed to confer upon any Person other than the parties and successors and assigns permitted by this Section 11 5 any right, remedy, benefit or claim under or by reason of this Agreement

(c)    Interpretation

(i)    Article titles and headings to Sections herein are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement  The Schedules and Exhibits referred to herein shall be construed with and as an integral part of this Agreement to the same extent as if they were set forth herein

(ii)    This Agreement, the Disclosure Letter and the Schedules and Exhibits hereto have been mutually prepared, negotiated and drafted by each of the party hereto and thereto  The parties agree that the terms of this Agreement shall be construed and interpreted against each party in the same manner and that no such provisions shall be construed or interpreted more strictly against one party on the assumption that an instrument is to be construed more strictly against the party which drafted the agreement

36

A-0796

Section 11 6  _Interpretation_

(a)     Article titles and headings to Sections herein are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement. The Schedules and Exhibits referred to herein shall be construed with and as an integral part of this Agreement to the same extent as if they were set forth herein

(b)     This Agreement, the Disclosure Letter and the Schedules and Exhibits hereto have been mutually prepared, negotiated and drafted by each of the parties hereto and thereto  The parties agree that the terms of this Agreement shall be construed and interpreted against each party in the same manner and that no such provisions shall be construed or interpreted more strictly against one party on the assumption that an instrument is to be construed more strictly against the party which drafted the agreement

Section 11 7  _Waivers_

Any term or provision of this Agreement may be waived, or the time for its performance may be extended, by the party or parties entitled to the benefit thereof  Any such waiver shall be validly and sufficiently authorized for purposes of this Agreement if, as to any party, it is authorized in writing by an authorized representative of such party  Subject to Sections 8 1 and 8 2, the failure of any party hereto to enforce at any time any term or provision of this Agreement shall not be construed to be a waiver of such term or provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of any party thereafter to enforce each and every such term or provision  No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach

Section 11 8  _Expenses_

Subject to the provisions of the Coordinating Agreement or any ROW Agreement, regardless of whether the transactions contemplated in this Agreement are consummated, each party hereto will pay its own costs and expenses incident to the negotiation, preparation and performance of this Agreement, including the fees, expenses and disbursements of its counsel, financial advisors and accountants  Neither GNB nor any Group Company has not borne and will not bear any such costs of expenses

Section 11 9  _Partial Invalidity_

Wherever possible, each term or provision hereof shall be interpreted in such manner as to be effective and valid under applicable law, but in case any one or more of the terms or provisions contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective to the extent, but only to the extent, of such

37

A-0797

invalidity, illegality or unenforceability without invalidating the remainder of such term or provision or terms or provisions or any other terms or provisions hereof, unless such a construction would be unreasonable

### Section 11.10   Execution in Counterparts

This Agreement may be executed in one or more counterparts, each of which shall be considered an original instrument and shall become binding when one or more counterparts have been signed by each of the parties hereto and delivered to each of the Sellers and the Buyer

### Section 11.11   Governing Law

This Agreement shall be governed by and construed in accordance with the internal laws of the State of Illinois, U.S.A., without giving effect to any choice of laws provisions which may direct the application of the laws of another jurisdiction

### Section 11.12   Further Assurances and Cooperation

From and after the date of this Agreement, upon the request of either the Sellers or the Buyer or any of their respective Affiliates, the other parties and their respective Affiliates shall execute and deliver such instruments, documents or other writings as may be reasonably necessary or desirable to confirm and carry out and to effectuate fully the intent and purposes of this Agreement  After the Closing, on reasonable advance notice, the Buyer shall cause each Group Company to provide the Sellers, each Seller's Affiliates and any advisor retained by the Sellers or their respective Affiliates with reasonable access to the management and properties, and books, records, and documents (which were in existence on the Closing) of each Group Company, during normal business hours and in a manner which does not unreasonably interfere with GNB, for any reasonable purpose including, but not limited to, the fulfillment of the Sellers' responsibilities under Section 4.1(a) of the Coordinating Agreement, the enforcement of the Sellers' and their respective Affiliates' rights under Article 2 of the Coordinating Agreement and clause (iii) of Section 4.2(a) of the Coordinating Agreement  The Seller, the Sellers' Affiliates, and any advisor retained by the Sellers or their respective Affiliates shall be entitled to make copies of such books, records and documents at their expense  If the Buyer shall desire at any time to dispose of any such books, records or documents, the Buyer shall, prior to such disposition, give the Sellers a reasonable opportunity to segregate and remove such books, records and documents as the Seller may select  The obligations of the Buyer pursuant to this Section 11.12 shall survive the Closing indefinitely

38

Section 11 13   No Reliance

The provisions of this Agreement are intended for the sole benefit of the parties hereto and shall not inure to the benefit of any other person, other than successors and permitted assigns of the Buyer and the Sellers, whether as third party or otherwise

Section 11 14   Disclosure Letter

The Disclosure Letter is hereby incorporated by reference into and made a part of this Agreement   The inclusion of any item in the Disclosure Letter is intended to qualify the representations and warranties contained in this Agreement, and to set forth other information required by this Agreement   Disclosure of information in any paragraph of the Disclosure Letter shall be deemed to be a disclosure with respect to every Section of this Agreement notwithstanding the presence or absence of a cross-reference to the Disclosure Letter under other Sections of this Agreement if the meaning of such disclosure in the context of such other Section is reasonably ascertainable   Disclosure of information in the Disclosure Letter shall not be deemed to be an admission by the Seller that such information is material for the purposes of this Agreement

Section 11 15   Joint and Several Liability

The rights and obligations of the First Seller and the Second Seller under this agreement shall be joint and several save that the Sellers' Warranties in Section 4 shall be given severally by each Seller in relation to itself only

39

IN WITNESS whereof the parties hereto have caused this Agreement to be executed the day and the year first above written

FIRST SELLER

P D INTERNATIONAL PTY LIMITED

By its duly appointed attorney

Name   Martin M Hudson
Title   Attorney in Fact

SECOND SELLER

PACIFIC DUNLOP HOLDINGS (EUROPE) LTD

By its duly appointed attorney

Name   Martin M Hudson
Title   Attorney in Fact

BUYER

EXIDE HOLDING EUROPE

Name   Denis Porges
Title   Chairman

IN WITNESS whereof the parties hereto have caused this Agreement to be executed the day and the year first above written

FIRST SELLER

P D INTERNATIONAL PTY LIMITED

By its duly appointed attorney

_____

Name  Martin M. Hudson
Title    Attorney in Fact

SECOND SELLER

PACIFIC DUNLOP HOLDINGS (EUROPE) LTD

By its duly appointed attorney

_____

Name  Martin M. Hudson
Title    Attorney in Fact

BUYER

EXIDE HOLDING EUROPE

_____

Name  Denis Porges
Title    Chairman

A-0801

## SCHEDULE 1

### Particulars of GNB Technologies N V

| | |
|---|---|
| Country of Incorporation | Belgium |
| Date and Place of Incorporation | 31 July 1997 – 9300 Aalst |
| Registered Number | 50616 |
| Registered Office | Wijngaardveld 34, 9300 Aalst |
| Directors | Rolf Fehndrich |
| | Thomas Miner |
| VAT Number | BE 461 252519 |
| Accounting Reference Date | 30 June |
| Auditors | KPMG |
| Salary Minimum | BEF 1,500,000 |
| Minimum Asset Value | BEF 3,600,000 |
| Consultancy Minimum | BEF 600,000 |
| Contractual Minimum | BEF 3,600,000 |
| Product Warranty Level | BEF 7,300,000 |
| Authorised Share Capital | BEF 46,000,000 |
| Issued and Fully Paid Up Share Capital | BEF 46,000,000 |

| Shareholders | Number of Shares |
|---|---|
| Pacific Dunlop International Pty Ltd | 65 |
| Pacific Dunlop (Holdings) Ltd | 35 |

SCHEDULE 2

Particulars of The Subsidiaries

GNB Technologies Oy

| | |
|---|---|
| Country of Incorporation | Finland |
| Date and Place of Incorporation | 18 September 1997 – Helsinki |
| Registered Number | 722.244 |
| Registered Office | Konsakoulakuja 1, Helsinki |
| Directors | Rolf Fehndrich<br>Yves Steenlandt |
| VAT Number | Not yet granted |
| Accounting Reference Date | 30 June |
| Auditors | None appointed yet |
| Salary Minimum | FIM 220,000 |
| Minimum Asset Value. | FIM 535,000 |
| Consultancy Minimum | FIM 89,000 |
| Contractual Minimum | FIM 535,000 |
| Product Warranty Level | FIM 1,070,000 |
| Authorised Share Capital | FIM 500,000 |
| Issued and Fully Paid Up Share Capital | FIM 500,000 |

2

A-0803

**SCHEDULE 2**

Particulars of the Subsidiaries

GNB Technologies SA

| | |
|---|---|
| Country of Incorporation | France |
| Date and Place of Incorporation | 22 September 1997 – Paris |
| Registered Number | Douai B 413 846 825 |
| Registered Office | 312 Rue Johot Curie, ZI Dorignies, 59500 Douai |
| Directors | Rolf Fehrnloch<br>Gerard Dollet |
| VAT Number | FR 45413846825 |
| Accounting Reference Date | 30 June |
| Auditors | KPMG |
| Salary Minimum | FRF 244,000 |
| Minimum Asset Value | FRF 590,000 |
| Consultancy Minimum | FRF 98,000 |
| Contractual Minimum | FRF 590,000 |
| Product Warranty Level | FRF 1,180,000 |
| Authorised Share Capital | FRF 2,300,000 |
| Issued and Fully Paid Up Share Capital | FRF 2,300,000 |

3

A-0804

SCHEDULE 2

Particulars of the Subsidiaries

GNB Technologies S r l

| | |
|---|---|
| Country of Incorporation | Italy |
| Date and Place of Incorporation | 15 January 1998 – Milan |
| Registered Number. | 1549418 |
| Registered Office | Via Graeco Spaziani 41, Verona |
| Directors | Rolf Fehndrich |
| VAT Number | 12336470153 |
| Accounting Reference Date | 30 June |
| Auditors | None |
| Salary Minimum | ITL 72,000,000 |
| Minimum Asset Value | ITL 174,000,000 |
| Consultancy Minimum | ITL 29,000,000 |
| Contractual Minimum | ITL 174,000,000 |
| Product Warranty Level | ITL 348,000,000 |
| Authorised Share Capital | ITL 170,000 |
| Issued and Fully Paid Up Share Capital | ITL 170,000 |

4

A-0805

SCHEDULE 2

Particulars of the Subsidiaries

GNB Technologies GmbH

| | |
|---|---|
| Country of Incorporation | Germany |
| Date and Place of Incorporation | 23 July 1996 – Munich, moved to Hannover 29 November 1996 |
| Registered Number | HRB 56076 since 3 March 1997 |
| Registered Office | Ringelnatzweg 7, 30419 Hannover |
| Directors | Rolf Felmdrich |
| VAT Number | DE 185100445 |
| Accounting Reference Date | 30 June |
| Auditors | KPMG |
| Salary Minimum | DEM 73,000 |
| Minimum Asset Value | DEM 176,000 |
| Consultancy Minimum | DEM 29,000 |
| Contractual Minimum | DEM 176,000 |
| Product Warranty Level | DEM 352,000 |
| Authorised Share Capital | DEM 50,000 |
| Issued and Fully Paid Up Share Capital | DEM 50,000 |

5