# TAB 21

_Singapore (8)

ASSET PURCHASE AGREEMENT

Dated as of 28 June 2000

between

PACIFIC DUNLOP HOLDINGS (SINGAPORE) PTE LTD
as Seller

and

BLUEWALL PTE LTD to be renamed
EXIDE SINGAPORE PTE LIMITED
as Buyer

A-0915

ARTICLE 1     DEFINITIONS                                                    1
    1 1     Definitions                                                      1
ARTICLE 2     PURCHASE AND SALE                                             6
    2 1     Purchased Assets                                                6
    2 2     Excluded Assets                                                 8
    2 3     Assumed Liabilities                                             8
    2 4     Excluded Liabilities                                            9
    2 5     Coordinating Agreement                                         10
    2 6     Ownership and Risk                                             10
    2 7     Taxes                                                          10
    2 8     Defence of Actions                                             10
ARTICLE 3     PURCHASE PRICE                                               11
    3 1     Purchase Price                                                 11
    3 2     Allocation of Purchase Price and Assumed Liabilities           11
ARTICLE 4     CLOSING                                                      11
    4 1     Closing                                                        11
    4 2     Documents to be delivered to Buyer                             11
    4 3     Documents to be Delivered to Seller                            13
    4 4     Form of Documents                                              13
ARTICLE 5     REPRESENTATIONS AND WARRANTIES OF SELLER                     13
    5 1     Organization                                                   13
    5 2     Power and Authority, Agreement Binding                         14
    5 3     Absence of Conflicts                                           14
    5 4     No Litigation                                                  14
    5 5     No Violation                                                   15
    5 6     Operations Since June 30, 1999                                 15
    5 7     Taxes                                                          17
    5 8     Title to Assets                                                17
    5 9     Real Property                                                  17
    5 10    Personal Property                                             18
    5 11    Personal Property Leases                                      18
    5 12    Governmental Permits                                          18
    5 13    Intellectual Property                                         18
    5 14    Employees                                                     19
    5 15    Central Provident Fund Contributions                         19
    5 16    Contracts                                                     20
    5 17    Status of Contracts                                          20
    5 18    Environmental Matters                                        21
    5 19    Insurance                                                    23
    5 20    Product Warranties                                           23
    5 21    No Advisor                                                   23
    5 22    Accounts and Records                                         23
    5 23    No Misrepresentation                                         23
    5 24    Purchased Assets                                             24
    5 25    Material Consents                                            24

i

| | | |
|---|---|---|
| 5 26 | Powers of Attorney | 24 |
| ARTICLE 6 | REPRESENTATIONS AND WARRANTIES OF BUYER | 24 |
| 6 1 | Organization | 24 |
| 6 2 | Power and Authority | 24 |
| 6 3 | Agreement Binding | 25 |
| 6 4 | Absence of Conflicts | 25 |
| 6 5 | No Litigation | 25 |
| 6 6 | No Advisor | 26 |
| 6 7 | No Misrepresentation | 26 |
| ARTICLE 7 | ACTION PRIOR TO THE CLOSING DATE | 26 |
| 7 1 | Preserve Accuracy of Representations and Warranties | 26 |
| 7 2 | Consents of Third Parties, Governmental Approvals | 26 |
| 7 3 | Operations Prior to the Closing Date | 28 |
| 7 4 | Intercompany Agreements | 29 |
| 7 5 | Notification of Changes | 29 |
| 7 6 | Changes to Employment Conditions | 29 |
| 7 7 | General | 29 |
| ARTICLE 8 | CONDITIONS TO CLOSING | 29 |
| 8 1 | Conditions to the Obligations of the Buyer | 29 |
| 8 2 | Conditions to the Obligations of Seller | 31 |
| ARTICLE 9 | ADDITIONAL AGREEMENT OF THE PARTIES | 32 |
| 9 1 | Taxes | 32 |
| 9 2 | Employees and Employee Benefit Plans | 34 |
| 9 3 | Post-Closing Remittances | 35 |
| 9 4 | Insurance | 35 |
| ARTICLE 10 | TERMINATION | 36 |
| 10 1 | Termination | 36 |
| 10 2 | Notice of Termination | 36 |
| 10 3 | Effect of Termination | 36 |
| ARTICLE 11 | EXCLUSIVITY OF REMEDY | 37 |
| 11 1 | Indemnification by Seller | 37 |
| 11 2 | Indemnification by Buyer | 37 |
| 11 3 | Exclusivity of Remedy | 37 |
| ARTICLE 12 | GENERAL PROVISIONS | 37 |
| 12 1 | Notices | 37 |
| 12 2 | Confidential Information | 39 |
| 12 3 | No Public Announcement | 39 |
| 12 4 | Entire Agreement, Amendments | 39 |
| 12 5 | Successors and Assigns | 40 |
| 12 6 | Interpretation | 40 |
| 12 7 | Waivers | 40 |
| 12 8 | Expenses | 41 |
| 12 9 | Partial Invalidity | 41 |
| 12 10 | Execution in Counterparts | 41 |
| 12 11 | Governing Law | 41 |

ii

**A-0917**

12 12   Further Assurances and Cooperation                           41
12 13   No Reliance                                                  42
12 14   Disclosure Schedules                                         42

iii

A-0918

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT, dated as of 28 June 2000 (the "Agreement") is executed by and among

PACIFIC DUNLOP HOLDINGS (SINGAPORE) PTE LTD, a company incorporated in the Republic of Singapore, having its registered address at 6 Loyang Way 1, Singapore 508704 (the "Seller"), and BLUEWALL PTE LTD TO BE RENAMED EXIDE SINGAPORE PTE LIMITED a company incorporated in Singapore, registered number 200001442E and having its registered office at 9 Raffles Place, Republic Plaza #34-00, Singapore 048619 (the "Buyer")

WHEREAS, Seller is engaged in the business of assembling, distributing and selling industrial batteries in Singapore at and from various locations owned by Seller or third parties (the "Business"), and

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the Business and substantially all of the assets and properties owned by the Seller and used exclusively in relation to the Business, all on the terms and subject to the conditions set forth herein

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth, Buyer and Seller agree as follows

## ARTICLE I
## DEFINITIONS

1 1     Definitions

In this Agreement, the following terms have the meanings specified or referred to in this Section 1 1 and shall be equally applicable to both the singular and plural forms   Any agreement referred to below shall mean such agreement as amended, supplemented and modified from time to time to the extent permitted by the applicable provisions thereof and by this Agreement

"Action" means any lawsuit, arbitration or regulatory governmental or other proceeding or investigation, whether at law or in equity

"Adjoining Properties" shall mean all sites or locations other than the Leased Real Property or the PRP Sites to which Contaminants have migrated from the Leased Real Property through air, soil, surface water or groundwater

"Affiliate" means, with respect to any Person, any other Person who directly or indirectly controls, is controlled by or is under common control with such Person

"Agreement" has the meaning specified in the first paragraph of this Agreement

"Assumed Liabilities" has the meaning specified in Section 2 3

"Balance Sheets" means the balance sheets that are part of the Financial Statements

"Business" has the meaning specified in the second paragraph of this Agreement

"Business Day" means a day other than Saturday, Sunday or a day on which United States national banks are closed

"Buyer" has the meaning specified in the first paragraph of this Agreement

"Buyer Ancillary Agreements" means all agreements, instruments and documents being or to be executed and delivered by Buyer under this Agreement

"Closing" has the meaning specified in Section 4 1

"Closing Date" has the meaning specified in Section 4 1

"Confidential Information" has the meaning specified in Section 12 2

"Contaminant" means a solid, liquid, gas, odour, heat, sound, vibration, radiation or substance which makes or may make the Leased Real Property or the surrounding Environment

(a)     unsafe or unfit for habitation or occupation by persons or animals,

(b)     degraded in its capacity to support plant life,

(c)     otherwise Environmentally degraded, or

(d)     do not comply with any Environmental Law

"Contractor" means all persons, other than Seller Employees who have performed or currently perform work for Seller under any current contract

"Contractor Entitlements" means any remuneration, compensation or benefits payable by Seller to or on behalf of or in respect of Contractors

"Coordinating Agreement" means that certain Coordinating Agreement dated as of 9 May 2000, between Pacific Dunlop Holdings (USA) Inc, and Exide Corporation, as amended and supplemented from time to time

2

A-0920

"Court Order" means any judgment, order, award or decree of any foreign, federal, state or local court or tribunal or governmental agencies and any award in any arbitration proceeding

"Deemed Transferring Employees" means a Seller Employee who is an Employee as defined in the Employment Act

"Disclosure Schedules" means the Disclosure Schedules dated 12 June 2000, as modified pursuant to Section 5 7 of the Coordinating Agreement

"Employment Act" means the Employment Act, Chapter 91 of Singapore

"Employment Benefit" means all wages, salary, remuneration, compensation and benefits payable by Seller to or on behalf of or in respect of Seller Employees

"Employee Leave Benefit" means annual leave, long service leave and sick leave

"Encumbrance" means any lien, charge, security interest, mortgage, pledge, power of sale, easement, encroachment, covenant, restriction on transfer or other restriction on or defect in title or other encumbrances

"Environment" means the physical factors of the surroundings of human beings including, without limitation, the land, air, waters, atmosphere, climate, sound, odours, taste and the biological factors of those surroundings such as plants, animals and other forms of life

"Environmental Law" means all Requirements of Law relating to pollution or the regulation and protection of human health or the Environment, including without limitation, those regarding or relating to emissions, discharges, Releases or threatened Releases of Contaminants or otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of Contaminants

"Excluded Assets" has the meaning specified in Section 2 2

"Excluded Liabilities" has the meaning specified in Section 2 4

"Expenses" means any and all reasonable expenses incurred in connection with investigating, defending or asserting any Action or overtly threatened Action (including court filing fees, court costs, arbitration fees or costs, witness fees, and reasonable fees and disbursements of legal counsel, investigators, expert witnesses, accountants and other professionals)

"Final Closing Date Balance Sheet" has the meaning specified in the Coordinating Agreement

"Financial Statements" has the meaning specified in the Coordinating Agreement

3

A-0921

"Governmental Body" means any Singapore, foreign, state or local governmental authority, agency, or regulatory body

"Governmental Permits" has the meaning specified in Section 5 12(a)

"Intellectual Property" has the meaning specified in Section 2 1(e)

"Intellectual Property Transfer/License Documents" has the meaning specified in Section 4 2(c)

"Intercompany Agreements" means agreements between Seller and an Affiliate of Seller in connection with the Business

"Knowledge of the Seller" or similar phrases means matters actually known to Thomas Minner, Thomas Smith, Thomas O'Hare, Mitchell Bregman, Barbara Hatcher or Henry Lau

"Knowledge of the Seller Regarding Environmental Matters" or similar phrases means matters actually known to Barbara Hatcher or Henry Lau

"Leased Real Property" has the meaning specified in Section 5 9(a)

"Losses" means losses, obligations, liabilities, settlement payments, awards, judgments, fines, assessments, penalties, and damages

"March 31, 2000 Balance Sheet" has the meaning specified in the Coordinating Agreement, including the notes to such balance sheet

"Material Adverse Effect" means any event, occurrence or condition (other than as a result of general economic conditions or events or conditions affecting the automotive and industrial battery industry as a whole) which has, or could reasonably be expected to have, a material adverse effect on the financial condition, assets, results of operations, Business, or operations of the Business, taken as a whole

"Material Consents" means those consents set forth on Schedule 1 1

"Permitted Encumbrances" means the Encumbrances specifically set forth in Schedule 1 1 hereto

"Person" means any individual, corporation, partnership, limited liability company or corporation, joint venture, association, joint-stock company, trust, unincorporated organization or Governmental Body

4

"Principal US Agreement" means the Stock Purchase Agreement With Respect To Pacific Dunlop GNB Corporation dated May 9, 2000 between Pacific Dunlop Holdings (USA) Inc., as Seller, and Exide Corporation, as Buyer, as amended and supplemented from time to time

"PRP Sites" shall mean all sites (other than the Real Property and the Adjoining Properties) with respect to which Seller, or any of its successors or assignees have or may have liability under any Environmental Law

"Purchase Price" has the meaning specified in Section 3 1

"Purchased Assets" has the meaning specified in Section 2 1

"Receivables" has the meaning specified in Section 2 1(d)

"Release" includes any and all spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, disposing and any other means by which a substance may be introduced into or travel through the Environment

"Remedial Action" shall include all actions required by a Court order or otherwise by a Governmental Body to (i) clean up, remove, remediate, contain, treat, monitor, assess, evaluate or in any other way address Contaminants, (ii) prevent or minimise the Release or threatened Release of Contaminants, or (iii) investigate and determine if a remedial response is needed and to design such a response and undertake post-remedial investigation, monitoring, operation and maintenance

"Requirements of Law" means any foreign, federal, state or local law, statute, regulation, code or ordinance of any Governmental Body currently in effect applicable to the operation of the Business

"ROW Agreements" has the meaning specified in the Coordinating Agreement

"Seller" means the party specified in the first paragraph of this Agreement on the basis that the party's rights and obligations under this Agreement are strictly limited to those of the Purchased Assets in which it has an interest and those Assumed Liabilities and Seller Employees referrable to it

"Seller Agreements" has the meaning specified in Section 5 17

"Seller Ancillary Agreements" means all agreements, instruments and documents being or to be executed and delivered by the Seller under this Agreement

"Seller Employees" has the meaning specified in Section 9 2(a)

5

"Tax" (and, with correlative meaning, "Taxes" and "Taxable") means any federal, state, county, local or foreign income, alternative or add-on minimum, gross income, gross receipts, capital gains, capital, property, sales, use, transfer, license, excise, premium, lease, estimated, environmental, registration, value added, stamp, real property, franchise, employment, payroll, wage, withholding or minimum tax, ad valorem, or customs duty and any other similar taxes or governmental charges, fees, levies, assessments or liabilities of any kind whatsoever, whether computed on a separate or consolidated, unitary or combined basis or in any other manner, and includes any interest, penalty or fine, or addition to tax imposed by any Governmental Body

"Tax Return" means any return, report, computations and notices or similar statement required to be filed with respect to any Taxes (including any attached schedules) including, without limitation, any information return, claim for refund, amended return and declaration of estimated Tax

"Transferring Employee" means any Deemed Transferring Employee or any Seller Employee who accepts the Buyer's offer of employment under Section 9 2(c)

### ARTICLE 2
### PURCHASE AND SALE

**2 1    Purchased Assets**

Upon the terms and subject to the conditions of this Agreement, on the Closing Date, Seller shall sell, transfer, assign, convey and deliver to Buyer, and Buyer shall purchase from Seller, all of the rights, assets and properties of Seller of every kind and description used in, consumed by or otherwise relating exclusively to the Business, wherever located, real, personal or mixed, tangible or intangible as such assets shall exist on the Closing Date, including such assets reflected in the Final Closing Date Balance Sheet, but excluding the Excluded Assets (herein collectively called the "Purchased Assets")   The Purchased Assets shall include, without limitation, all of the Seller's right, title and interest in and to

    (a)   Real Property   Subject to Section 7 2(b), all interest in the Leased Real Property (if any) occupied by Seller exclusively in relation to the Business, including all fixtures attached thereto,

    (b)   Machinery and Equipment   All machinery and equipment, including machines, data processing hardware and software, vehicles, furniture, fixtures, capital expenditures in process, tools, dies, moulds, and similar tangible personal property, and all interest in any such personal property leased from third parties owned or used by the Seller exclusively in relation to the Business, including specifically, but without limitation, those items listed and described in Schedule 5 10 and Schedule 5 11,  .

*6*

(c)     Inventory   All inventories owned by the Seller exclusively in relation to the Business consisting of raw materials, work in progress and finished goods and supplies as the same may exist on the Closing Date, including goods in transit and stock ordered by and paid for by the Seller prior to the Closing Date but not received by the Closing Date,

(d)     Receivables   All notes, trade and other accounts receivable owed to the Seller exclusively in relation to the Business as the same may exist on the Closing Date (the "Receivables"),

(e)     Proprietary Rights . All patents, patent applications, patent disclosures and inventions, trademarks, service marks, logos, trade dress, designs, trade names, business names and any applications to register any of the foregoing, copyrights and copyright registrations, trade secrets, know-how and confidential business information, computer software, data or documentation, and other proprietary rights or any licences in and from any Person with respect to any of the foregoing developed by or for Seller exclusively in relation to the Business or employed or utilized by the Seller exclusively in the conduct of the Business, and all other intellectual, industrial, proprietary information, rights and interests (including common law rights and interests) employed or utilized by the Seller exclusively in the conduct of the Business including, without limitation, those items listed in Schedule 5.13(A) (the "Intellectual Property"),

(f)     Executory Agreements   The rights of Seller to the extent such rights relate exclusively to the Business under any executory agreement to which Seller is a party in relation to the Business (excluding any agreement giving rise to an Excluded Liability) including, without limitation, those listed or described on Schedule 5.16(A), and the following, if any: any distribution agreement, licence agreement, promissory note, guarantee, loan agreement, security agreement, indemnity agreement, subordination agreement, indenture, mortgage, lease (whether or not capitalized and including, without limitation, those listed in Schedule 5.11), conditional sale or title retention agreement, any purchase order or contract with any customer or supplier of Seller relating exclusively to the Business to the extent that such purchase order or contract is not fulfilled by Seller on the Closing Date,

(g)     Certain Rights of Seller   All claims, rights and causes of action of Seller against third Persons relating exclusively to the Business, including without limitation, the proceeding by Seller against JRC Tenaya Sdn Bhd in the Johor Bahru Sessions Court, and including claims, rights and causes of action against third Persons arising under warranties from vendors and others,

(h)     Books and Records   Except as specified in Section 2.2(g), all Seller's books and records relating exclusively to the Business (including all data and other information stored on discs, hard drives, tapes or other media) including, without limitation, employee records and copies of those books and records, to the extent they relate to

7

the Business, except for those books and records which the Seller is required by law to retain,

(i)    Government Permits   All Governmental Permits held by the Seller in relation to the Business, including those listed in Schedule 5 12(A) or Schedule 5 18(B), and

(j)    Other Assets   All other rights, assets and properties of Seller relating exclusively to the Business, except for Excluded Assets, whether real, personal, tangible, intangible or mixed, including books, records and files (including all personnel files), any prepaid expenses, and any utility deposits, all except as specifically excluded in Section 2.2

## 2.2   Excluded Assets

Notwithstanding the provisions of Section 2 1, the Purchased Assets shall not include the following (herein referred to as the "Excluded Assets")

(a)    Cash   All cash, cash equivalents, bank accounts, certificates of deposit, investment securities, commercial paper and any other marketable securities or similar investments of Seller,

(b)    Corporate Records   All corporate minute books and stock transfer books and the corporate seals of Seller,

(c)    Taxes   All refunds of any Taxes paid by the Seller, and all Tax records and Tax Returns with respect to periods ending on or before the Closing Date, and all claims for Taxes paid by the Seller,

(d)    Certain Rights of Seller   All agreements and all claims, rights and causes of action relating to Excluded Assets or relating to liabilities and obligations not included in Assumed Liabilities,

(e)    Intercompany Loans   Any liabilities or obligations owing to Seller by any Affiliate of Seller that are not effectively eliminated by means of intercompany adjustments effected in connection with the preparation of the Final Closing Balance Sheet and the audit performed in connection therewith,

(f)    Insurance   All business insurance policies of Seller and all rights thereunder, and

(g)    Books and Records   All books and records relating to any of the foregoing and originals of all other books and records which the Seller is required by law to retain

## 2.3   Assumed Liabilities

On and from the Closing Date, Buyer shall assume and agree to discharge and shall keep

8

the Seller indemnified against the following obligations and liabilities of Seller relating to the Business:

(a)  Ordinary Course Liabilities   The current liabilities of Seller relating to the Business or the Purchased Assets as of the Closing Date to the extent provided for in the Final Closing Date Balance Sheet,

(b)  Executory Contracts   Liabilities, obligations, and commitments of Seller arising under the Seller Agreements, and all other contracts, agreements, or commitments entered into in the ordinary course of business to which Seller is a party in relation to the Business or by which it or any of the Purchased Assets is bound that is not required to be set forth on any Schedule to this Agreement,

(c)  Sales Orders   All liabilities, obligations and commitments with respect to sales orders placed with Seller in the ordinary course of business of the Business to the extent such orders have not been fulfilled as of the Closing Date,

(d)  Product Warranties   All obligations of Seller pursuant to product or service guarantees or warranties (whether express or implied) or under Seller's product return policies given in the ordinary course of business of the Business by Seller including, without limitation, all liabilities and obligations for product returns (regardless of whether such products were sold before or after the Closing Date),

(e)  Employees   Employee Leave Benefits and other entitlements due post Closing,

(f)  Actions   Liabilities arising from the Actions referenced in the Disclosure Schedules and Expenses relating to such Actions, and

(g)  Environmental Liabilities   All costs and liabilities of whatever nature arising from or relating to matters disclosed in Schedule 5 18 of the Disclosure Schedules

All of the foregoing liabilities and obligations to be assumed by Buyer hereunder are referred to herein as the "Assumed Liabilities"

2 4   Excluded Liabilities

Buyer shall not assume or be obligated to pay, perform or otherwise discharge any liabilities or obligations of Seller other than the Assumed Liabilities (all such liabilities and obligations not being assumed being herein called the "Excluded Liabilities")   The Excluded Liabilities include

(a)  Taxes   Any Taxes levied against Seller on or prior to the Closing Date or subsequent to the Closing Date but relating to periods ending on or prior to the Closing Date, but only insofar as such Taxes have not been reflected or reserved against in the Final Closing Date Balance Sheet,

9

(b) <u>Intercompany Loans</u> Any liabilities or obligations owing to any Affiliate of Seller that are not effectively eliminated by means of intercompany adjustments effected in connection with the preparation of the Final Closing Date Balance Sheet and the audit performed in connection therewith, and

(c) <u>Excluded Assets</u> Liabilities or obligations in respect of Excluded Assets

## 25 Coordinating Agreement

The parties agree that nothing in this Agreement is intended to exclude, or reduce the operation or effect of, the indemnities and limitations contained in Article 4 of the Coordinating Agreement

## 26 Ownership and Risk

Until Closing, the Seller remains the owner of and bears all risks in connection with the Business and Purchased Assets and Assumed Liabilities  On Closing, property in and risk of the Business and the Purchased Assets and Assumed Liabilities passes to the Buyer

## 27 Taxes

On and from the Closing Date, Buyer agrees to discharge, in accordance with Section 9 1(b), and shall keep the Seller indemnified against all current liabilities for Taxes to the extent reflected or reserved against in the Final Closing Date Balance Sheet

## 28 Defence of Actions

In relation to each of the Actions referred to in Section 2 3(f), the Seller must, using resources provided by the Buyer and subject to it being indemnified by the Buyer against all costs, claims, liabilities and expenses suffered or incurred by the Seller

(a) use its best endeavours to conduct the Action in all respects in accordance with the lawful and proper instructions and directions of the Buyer and must promptly take all lawful and proper action (including execution, lodgment and service of documents and correspondence) required by the Buyer to avoid, defend, compromise or settle the Action,

(b) not do any act other than as instructed or directed by the Buyer, and

(c) provide the Buyer and its representatives and advisors at all times with full and free access (with the right to take copies) of all documents and correspondence relevant to the Action

A-0928

## ARTICLE 3
## PURCHASE PRICE

3 1    Purchase Price

The purchase price (the "Purchase Price") shall be equal to One Million Nine Hundred Thirty Four Thousand United States dollars (US$1,934,000) (subject to the adjustments provided for in the Coordinating Agreement)  At the Closing, Buyer shall pay the Purchase Price to Seller by wire transfer of immediately available funds to such bank account as Seller shall direct in writing  After Closing, the Purchase Price shall be adjusted pursuant to the Coordinating Agreement.

3 2    Allocation of Purchase Price and Assumed Liabilities

The Purchase Price and the value of the Assumed Liabilities shall be allocated among the Purchased Assets as set forth in Exhibit A, attached hereto (subject to the adjustments provided for in the Coordinating Agreement)  The parties agree that the allocation set forth on Schedule 3 2 as amended and re-issued pursuant to the Coordinating Agreement will be used by them and respected for all purposes, including income tax purposes, and that the parties shall follow such allocation for all reporting purposes

## ARTICLE 4
## CLOSING

4 1    Closing

The closing of the purchase and sale of the Purchased Assets (the "Closing") shall be consummated at 10 00 a m  Chicago time on the last business day of the month in which the last of the conditions specified in Article 8 is satisfied or waived, at the offices of Gardner, Carton & Douglas at 321 North Clark Street, in Chicago, Illinois, or at such other time or place as shall be agreed upon by Buyer and Seller  Notwithstanding the foregoing, if the date upon which the last of the conditions specified in Article 8 is satisfied or waived is 5 (or fewer) Business Days before the last day of the month, then the Closing shall be consummated on the fifth (5th) Business Day following the date on which the last of such conditions were satisfied or waived, or such other date as may be agreed upon by Buyer and Seller  The time and date on which the Closing is actually held is referred to herein as the "Closing Date"  The Closing shall be effective as of the close of business on the Closing Date

4 2    Documents to be delivered to Buyer

At the Closing, Seller shall deliver or cause to be delivered to Buyer

(a)     a certificate of Seller in a form reasonably satisfactory to Buyer certifying as to the accuracy of the Seller's representations and warranties at and as of the Closing and

11

that Seller has performed and complied with all of the terms, provisions and conditions to be performed and complied with by Seller at or before the Closing,

(b)     a certificate of the secretary or an assistant secretary of Seller in a form reasonably satisfactory to Buyer dated the Closing Date, certifying as to (i) Seller's Memorandum and Articles of Association, (ii) the resolutions of Seller's board of directors authorizing the execution and performance of this Agreement and the transactions contemplated hereby, and (iii) incumbency and signatures of the officers executing this Agreement and any Seller Ancillary Agreement,

(c)     transfer of ownership and registration forms for any vehicles and any documents necessary to transfer title to other equipment included in the Purchased Assets,

(d)     all Material Consents (it being expressly understood that Seller shall have no obligation to deliver to Buyer any consents other than the Material Consents) and all assignments of other agreements which have been obtained by the Closing Date provided always that it is agreed that any foreign exchange hedging contracts and letters of credit are not to be transferred to the Buyer which must make its own arrangement in respect of the matters concerned with effect from Closing,

(e)     documentation sufficient to convey by transfer or licence Intellectual Property to Buyer from Seller and its Affiliates (the "Intellectual Property Transfer/Licence Documents"),

(f)     the relevant prescribed form (Form D) notifying the Registry of Businesses of the change of the proprietor(s) for all business names included in the Purchased Assets,

(g)     subject to Section 7.2, all necessary documents of title, transfer documents (including registerable transfers, deeds of discharge of Encumbrances and deeds of assignment, as the case may be), licences and any other documents that may be necessary to transfer ownership of the Business, the Purchased Assets and the Assumed Liabilities to Buyer or to permit Buyer to continue to operate the Business uninterrupted after the Closing,

(h)     those of the Purchased Assets capable of transfer by delivery, the title to which shall pass to the Buyer on delivery,

(i)     originals or counterparts of all written agreements referred to in Section 2.1(f) and other documents connected with the Business,

(j)     all of the books, records, files and other relevant information including all electronically stored information and documents relating to the Business, the Purchased Assets and the Assumed Liabilities including lists of customers, suppliers, employees, agents and distributors, and

12

(k)    such other certificates and documents as Buyer or its counsel may reasonably request to effect a transfer of the Purchased Assets

**4 3    Documents to be Delivered to Seller**

At the Closing, Buyer shall, in addition to the payment under Section 3 1 above, deliver to Seller

(a)    a certificate of Buyer in a form reasonably satisfactory to Seller certifying as to the accuracy of the Buyer's representations and warranties at and as of the Closing and that Buyer has performed and complied with all of the terms, provisions and conditions to be performed and complied with by Buyer at or before the Closing,

(b)    a certificate of the secretary or an assistant secretary of Buyer in a form reasonably satisfactory to Seller, dated the Closing Date, certifying as to (i) Buyer's Memorandum and Articles of Association, (ii) the resolutions of Buyer's board of directors authorizing the execution and performance of this Agreement and the transactions contemplated hereby, and (iii) incumbency and signatures of the officers executing this Agreement and any Buyer Ancillary Agreement, and

(c)    such other certificates and documents as Seller or its counsel may reasonably request to effect closing of this transaction

**4 4    Form of Documents**

The documents and instruments referred to in Sections 4 2 and 4 3 shall be satisfactory, as to form, to counsel for the party to whom they are delivered

**ARTICLE 5.
REPRESENTATIONS AND WARRANTIES OF SELLER**

Seller represents and warrants to Buyer as follows

**5 1    Organization**

Seller is a corporation duly organized, validly existing and is duly authorized under the laws of Singapore  Seller is not in violation of any provision of its Memorandum and Articles of Association  Seller is duly qualified or licensed to do business and is in good standing as a foreign corporation in each of the jurisdictions specified in Schedule 5 1  Seller is not required in relation to the Business to be qualified or licensed to do business as a foreign corporation in any jurisdiction other than those specified in Schedule 5 1, except for those jurisdictions where the failure to so qualify is not likely to have a Material Adverse Effect or hinder or impair the ability of Seller to consummate the transactions contemplated by this Agreement or the Seller Ancillary Agreements

13

5 2    <u>Power and Authority; Agreement Binding</u>

Seller has all requisite corporate power and authority to execute and deliver this Agreement and the Seller Ancillary Agreements and to perform its obligations hereunder and thereunder, to own or hold under lease its properties and assets, to carry on the Business as currently conducted, and to operate the properties and assets now being operated by it in relation to the Business  Seller's execution of this Agreement has been duly authorized and approved by all necessary corporate action  This Agreement has been, and the Seller Ancillary Agreements will be, duly executed and delivered by Seller and, assuming due authorization, execution, and delivery by Buyer, is and will be the legal, valid and binding obligation of Seller enforceable against Seller in accordance with its terms, subject to general principles of equity and except as enforceability may be limited by applicable bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium or other similar laws of general application relating to creditors' rights generally

5 3    <u>Absence of Conflicts</u>

Except as set forth in Schedule 5 3, the execution, delivery and performance of this Agreement and the Seller Ancillary Agreements, and the consummation of the transactions contemplated hereby and thereby, will not

(a)    conflict with, result in a breach of the terms, conditions or provisions of, or constitute a default, an event of default or an event creating rights of acceleration, termination or cancellation, or result in the creation or imposition or crystallisation of any Encumbrance upon the Purchased Assets or Assumed Liabilities under  (i) any note, instrument, contract, agreement, mortgage, indenture, lease, licence or franchise to which Seller or any Affiliate of Seller is a party or by which it or any of the assets is bound, (ii) any Court Order, or (iii) any Requirements of Law, except for any of the foregoing which, individually or in the aggregate, is or are not likely to have a Material Adverse Effect or impair the consummation of the transactions contemplated hereby or by the Seller Ancillary Agreements, or

(b)    require the approval, consent, authorization or act of, or the making by Seller of any declaration, notification, filing or registration with any Person, except as contemplated in Section 7 2 and otherwise, except for any of the foregoing which, individually or in the aggregate, is or are not likely to have a Material Adverse Effect or materially hinder or impair the consummation of the transactions contemplated hereby and thereby

5 4    <u>No Litigation</u>

Except as set forth in Schedule 5 4, there is no Action pending or, to the Knowledge of the Seller, threatened against Seller in relation to the Business and there has not been, to the Knowledge of the Seller, any claim asserted by any person that could lead to an Action

14

The Seller is not, in relation to the Business, subject to any currently pending Court Order Except as set forth in Schedule 5 4, to the Knowledge of the Seller, there is no Action pending or threatened against any officer or director of Seller arising out of his or her service in connection with the Business

## 5 5    No Violation

Except as set forth in Schedule 5 5, Seller has complied and is in compliance with all Court Orders and Requirements of Law which are applicable to Seller in the Business, except for such Requirements of Law as to which noncompliance is not likely to have a Material Adverse Effect

## 5 6    Operations Since June 30, 1999

(a)    Except as set forth in Schedule 5 6(A), or except as reflected in the March 31, 2000 Balance Sheet since June 30, 1999, there has been no material adverse change in the Business or Purchased Assets or Assumed Liabilities, taken as a whole    The termination of any Intercompany Agreement not listed on Schedule 7 4 will not have a Material Adverse Effect

(b)    Except as set forth in Schedule 5 6(B), or except as reflected in the March 31, 2000 Balance Sheet, since June 30, 1999, Seller has conducted the Business only in the ordinary course    Specifically, since June 30, 1999, except as set forth in Schedule 5 6(D), Seller has not in relation to the Business

(i)    made any material change in operations,

(ii)    made any capital expenditure or entered into any contract or commitment therefor in excess of the capital expenditures disclosed in the "Fiscal Year 2000 Open Sanction Summary" attached to Schedule 5 7(B) to the Principal US Agreement,

(iii)    sold, leased (as lessor), transferred or otherwise disposed of, or imposed or suffered to be imposed any Encumbrance on, any of the Purchased Assets, except for inventory and other personal property sold, leased or otherwise disposed of for fair value in the ordinary course of business consistent with past practice and except for Permitted Encumbrances,

(iv)    cancelled any debts owed to or claims held (including the settlement of any Action) other than in the ordinary course of business consistent with past practice,

(v)    created, incurred or assumed, or agreed to create, incur or assume, any indebtedness for borrowed money or entered into, as lessee, any finance lease obligations or guaranteed any such indebtedness or leases of others or

15

made any loans other than in the ordinary course of business consistent with past practice,

(vi)   written off as uncollectible or accelerated or delayed collection of notes or accounts receivable in advance of or beyond their regular due dates or the dates when the same would have been collected other than in the ordinary course of business consistent with past practice,

(vii)  delayed or accelerated payment of any accounts payable or other liabilities of Seller beyond or in advance of their due date or the date when such liabilities would have been paid other than in the ordinary course of business consistent with past practice,

(viii) made any increase in the current wages, bonuses and benefits of its employees (other than any increases made in the ordinary course of business consistent with past practice),

(ix)   entered into or, except as set forth in Schedule 5.14(A), amended any employment, severance or similar agreement or arrangement or made any increases in the current wages, bonuses and benefits of its employees (other than any increases made in the ordinary course of business consistent with past practice),

(x)    waived any rights or settled any claims, except for such waivers or settlements granted or entered into in the ordinary course of business,

(xi)   made any change in any method of accounting,

(xii)  suffered or incurred any damage, destruction, fire, explosion, accident, flood or other casualty, loss or act of God (whether or not covered by insurance) to any material operating asset or group of operating assets,

(xiii) entered into or amended any purchase or sale contract outside the ordinary course of business,

(xiv)  suffered any amendment, termination, suspension or revocation of any Governmental Permit,

(xv)   joined any new or amended or modified any already existing superannuation fund applicable to the Employees,

(xvi)  amended its memorandum or articles of association,

(xvii) manufactured inventory in excess of its expected need, or

16

(xviii) where applicable, agreed to do any of the foregoing

## 5 7   Taxes

Except as set forth in Schedule 5 7

(a)  Seller has accurately prepared and timely filed (including all extensions) all Tax Returns to the extent they relate to the Business

(b)  All such Tax Returns have been prepared in compliance with applicable Requirements of Law, to the extent they relate to the Business, are true and correct and properly reflect the Taxes due for the periods covered thereby

(c)  All Taxes due and payable by Seller have been properly paid

(d)  Seller has not in relation to the Business waived any law or regulation fixing, or consented to the extension of, any period of time for assessment of any Taxes which waiver or consent is currently in effect nor requested or been granted an extension of time for filing any Tax Return which has not yet been filed

(e)  There are no material elections, consents or agreements in relation to the Business with tax authorities other than those reflected on tax forms filed with tax authorities

## 5 8   Title to Assets

Seller is the exclusive and absolute owner and has good title to or a valid leasehold interest in, all of the personal property included in the Purchased Assets free and clear of all Encumbrances, except for  (a) Permitted Encumbrances, (b) the lien of current taxes not yet due and payable, and (c) other exceptions disclosed in Schedule 5 8  Except as disclosed in Schedule 5 8, the personal property included in the Purchased Assets is usable in the ordinary course of business of the Business and conforms to all Requirements of Law relating to its construction, use and operation, except where such nonconformity is not likely to have a Material Adverse Effect

## 5 9   Real Property

(a)  Schedule 5 9 sets forth a complete and accurate list including a brief description of the material terms of all material leases, subleases or similar agreements providing for the use of real property under which Seller is lessee of, or holds or operates, any real property owned by any third Person (the "Leased Real Property" and used in connection with the Business)

(b)  The occupation, possession and use of the Leased Real Property by Seller has not been disturbed and, to the Knowledge of the Seller, no claim has been asserted or

17

threatened which is adverse to the rights of Seller to the continued occupation, possession and use of the Leased Real Property, as currently utilized

5 10   **Personal Property**

Schedule 5 10 contains a list of all machinery, equipment and vehicles owned by Seller in relation to the Business having an original cost of S$173,000

5 11   **Personal Property Leases**

Schedule 5 11 contains a brief description of each lease or other agreement or right, whether written or oral (including in each case the annual rental, the expiration date thereof and a brief description of the property covered) under which Seller is lessee of, or holds or operates, any machinery, equipment or vehicle owned by a third Person and used in connection with the Business, except those which are terminable by Seller without cost or penalty on 30 days' or less notice or which provide for annual rentals of less than S$173,000

5 12   **Governmental Permits**

(a)   Except as disclosed in Schedule 5 12(A), Seller owns, holds or possesses all material licenses, certificates, franchises, permits, privileges, immunities, approvals and other authorizations from a Governmental Body which are necessary to entitle them to own or lease, operate and use their assets and conduct the Business substantially as currently operated (herein collectively called "Governmental Permits") Notwithstanding the foregoing, Governmental Permits required under Environmental Laws are addressed solely in Schedule 5 18(B)

(b)   Except as set forth in Schedule 5 12(B)

(i)   Seller has fulfilled and performed its obligations under each of the Governmental Permits, except for such nonfulfillment or nonperformance which is not likely to have a Material Adverse Effect, and

(ii)   no written notice of cancellation, revocation, suspension or default or of any dispute concerning any Governmental Permit has been received by Seller and, to the Knowledge of the Seller, there is no basis for the issuance of such notice except as a result of the consummation of the transactions contemplated hereby or except as is not likely to have a Material Adverse Effect

5 13   **Intellectual Property**

(a)   Except as set forth in Schedule 5 13(A), there are no material patents, patent applications, trademarks or trademark registrations, service marks or service mark

18

A-0936

registrations, trade names, Internet domain names, business names, or any applications to register any of the foregoing, copyrights or copyright registrations, licences to or from any Person with respect to any of the foregoing, used by Seller in the Business substantially as currently conducted

(b)    Each item constituting part of the Intellectual Property has been, to the extent indicated in Schedule 5 13(A), duly registered, filed or issued, as the case may be, as is indicated in Schedule 5 13(A), and such registrations, filings and issuances remain in full force and effect

(c)    Except as set forth on Schedule 5 13(B), Seller owns and possesses all right, title and interest in and to the Intellectual Property, and has not received written notice of any claim by any Person contesting the validity, enforceability, use, or ownership of any Intellectual Property patent disclosures or inventions or asserting that the Seller is infringing the intellectual property rights of others   Schedule 5 13(C) sets forth all technology (including Intellectual Property) owned by third parties and used by Seller in the Business   To the Knowledge of the Seller, except as set forth in Schedule 5 13(B), no Person is infringing the rights of the Seller with respect to any Intellectual Property   Seller uses all reasonable efforts to protect its trade secrets relating to the Business

5 14    **Employees**

(a)    Excepted as described in Schedule 5 14(A), Seller is not a party to or bound by any collective bargaining agreement, employment agreement, severance agreement, consulting, independent contractor or service agreement, deferred compensation agreement, confidentiality agreement or covenant not to compete which is material to the Business

(b)    Except as set forth in Schedule 5 14(B)  In connection with the Business (i) Seller is in compliance with all applicable Requirements of Law with respect to employment, employment practices, terms and conditions of employment and wages, overtime pay, and hours, except for such noncompliance as is not likely to have a Material Adverse Effect, (ii) Seller has not engaged in any unfair labor practice or illegally discriminated with regard to any aspect of employment on the basis of any legally prohibited category or classification, and (iii) with respect to employees and former employees who rendered services to, or participated in conduct or activities in connection with Seller, Seller is not liable for any arrears of wages, salaries or other payments

5 15    **Central Provident Fund Contributions**

Seller has made all the required statutory contributions under the Central Provident Fund Act, Chapter 36 of Singapore

19

A-0937

5 16    <u>Contracts</u>

Except as set forth in Schedule 5 16(A), in connection with the Business, Seller is not a party to or bound by

(a)     any consignment, distributor, dealer, manufacturer's representative, sales agency, advertising representative or advertising or public relations contract, agreement or commitment which is reasonably anticipated by Seller to involve the payment of more than S$173,000 during Seller's current fiscal year,

(b)     any contract, agreement or commitment regarding the sale or other disposition of products or services by Seller or for the purchase of raw materials, products or services by Seller which is reasonably anticipated by Seller to involve the receipt or payment of more than S$173,000 during Seller's current fiscal year,

(c)     any guarantee or indemnification agreement for the benefit of any Person made or given outside of the ordinary course of business,

(d)     any contract, agreement or commitment which provides for the incurrence by Seller of indebtedness for borrowed money,

(e)     any partnership or joint venture agreement,

(f)     any agreement, contract or commitment relating to capital expenditures of an amount or value in excess of S$173,000 in relation to the Business,

(g)     any agreement that restricts or purports to restrict the business activities of Seller or limits Seller's ability to engage in any line of business or compete with any Person in relation to the Business,

(h)     any material license of software or other intellectual property, or

(i)     any agreement in relation to the Business that was not entered into in the ordinary course of the business of the Business consistent with past practice and that involved annual payments in excess of S$173,000

5 17    <u>Status of Contracts</u>

Except as set forth in Schedule 5 17 or in any other Schedule hereto  (a) each of the leases, contracts and other agreements of Seller listed in Schedules 5 9, 5 11, 5 13, 5 14 and 5 16 (collectively, the "Seller Agreements") constitutes a legal, valid and binding obligation of Seller (subject to bankruptcy, insolvency, reorganization, moratorium and similar laws of general application relating to or affecting creditors' rights and to general equity principles) and is in full force and effect, and (b) Seller is not, or, to the Knowledge of the Seller, alleged to be, in material breach of, or material default under, any of the Seller Agreements

20

A-0938

nor, to the Knowledge of the Seller, is any other party thereto in such breach or default and, to the Knowledge of the Seller, no event has occurred which the notice or lapse of time would constitute such a breach or default or permit termination, modification or acceleration of any of the Seller Agreements

5 18    Environmental Matters

Notwithstanding any other provision of this Agreement, this Section 5 18 contains the only representations or warranties of Seller with respect to Environmental Law or Environmental matters, and no other statement in this Agreement, in any Seller Ancillary Agreement or in any other document or information delivered or given to or received by or on behalf of Buyer in connection with the transactions contemplated by this Agreement shall be deemed to be a representation or warranty relating to Environmental Law or Environmental matters

(a)    Except as set forth in Schedule 5 18(A), Seller is, in relation to the Business, in compliance with all applicable Environmental Laws except for such noncompliance as is not likely to have a Material Adverse Effect

(b)    Except as set forth in Schedule 5 18(B), Seller owns, holds or possesses all material Governmental Permits required under Environmental Laws necessary for the occupation and use of the Leased Real Property and the operation of the Business substantially as currently conducted    All Governmental Permits required under Environmental Laws that are currently owned, held or possessed by Seller in relation to the Business are listed in Schedule 5 18(B)    Except as set forth in Schedule 5 18(B), Seller is in compliance and has for the past three (3) years complied, with all Governmental Permits except for such non-compliance as is not likely to have a Material Adverse Effect    Seller shall make commercially reasonable efforts to transfer or cause to be transferred to Buyer all such Governmental Permits at the Closing Date including

(i)    giving notice to all regulatory agencies with respect to the change in ownership or control or responsible officials at the Leased Real Property,

(ii)    completing and submitting notices of termination, and

(iii)    to the extent not transferred by the Closing Date, shall co-operate fully with Buyer in obtaining the transfer of such Governmental Permits as promptly thereafter as possible

(c)    Except as set forth in Schedule 5 18(C), Seller is not, in relation to the Business, subject to any pending or, to the Knowledge of the Seller Regarding Environmental Matters, threatened investigation by, order from, claim by, statutory request for information from, or continuing agreement with any Person respecting, (i) any violation of Environmental Law or Governmental Permits, (ii) any Remedial Action, or (iii) any claim of Losses and Expenses in each case arising from the Release or

21

threatened Release of a Contaminant or the presence of any Contaminant on, in, at or beneath the Leased Real Property or the migration of any Contaminant onto or from the Leased Real Property

(d)     Except as set forth in Schedule 5 18(D), Seller is not, in relation to the Business, subject to any pending or, to the Knowledge of the Seller Regarding Environmental Matters, threatened judicial or administrative investigation, proceeding, order, notice of violation, judgment, decree or settlement with any continuing obligation alleging or relating to a violation of or liability under any Environmental Law or Governmental Permits

(e)     Except as set forth in Schedule 5 18(E)

(i)     Seller has not, in relation to the Business, reported a Release pursuant to an Environmental Law,

(ii)    Seller has not, in relation to the Business, filed a notice with respect to the Contamination of land or the generation of hazardous wastes that is required to be filed pursuant to an Environmental Law, or

(iii)   to the Knowledge of the Seller Regarding Environmental Matters, there has not been any disposal by Seller or Release of any Contaminants on, at, in, or beneath the Leased Real Property

(f)     Except as set forth in Schedule 5 18(F), Seller has not received written notice under any Environmental Law to the effect that it is or may be liable to any Person as a result of the generation, storage, transportation, Release, arrangement for disposal or disposal of any Contaminants on, at or, in any Real Property

(g)     Except as set forth in Schedule 5 18(G), to the Knowledge of the Seller Regarding Environmental Matters, there are no underground storage tanks (whether active or abandoned) located at, in, or beneath the Leased Real Property

(h)     Except as disclosed in the Schedules to Section 5 18, to the Knowledge of the Seller Regarding Environmental Matters, as of the Closing Date, there is no condition existing on the premises constituting the Leased Real Property that will give rise to any liability of Seller under any Environmental Laws

(i)     Seller has made available to Buyer true and correct copies of all material environmental audits and consultant's reports relating to the past and current operations, properties and facilities of the Seller with respect to the Business, or any of their respective predecessors, which are in its possession or under its reasonable control

22

(j)     To the Knowledge of the Seller Regarding Environmental Matters, the sites identified on Schedule 5 18(J) constitute, and as such Schedule is updated by Seller from time to time in its sole discretion prior to the Closing Date, will constitute all PRP Sites as of the Closing Date

(k)     Notwithstanding any other provision of this Agreement, no representations and warranties are made or shall be deemed to apply to the PRP Sites

5 19     Insurance

Seller has, and at all times has had, valid insurance coverage in respect of the Business against all risks normally insured against by persons in the same industry, underwritten by one or more well-established and reputable insurers or adequately capitalised Affiliates Schedule 5 19 contains a list of all insurance policies (specifying (i) the insurer, (ii) the amount of the coverage, (iii) the type of insurance, (iv) the policy number and (v) any currently pending claims thereunder) maintained by or on behalf of Seller in connection with the Business or the Purchased Assets  Seller has not failed to give any notice or present any claim under any insurance policy in due and timely fashion

5 20     Product Warranties

All of Seller's unexpired, express product warranties with respect to any product that it manufactures or sells in connection with the Business or that it has heretofore manufactured or sold in connection with the Business are set forth in Schedule 5 20  Seller has not received written notice of any claim and to the knowledge of the Seller, there are no threatened claims against the Seller in relation to the Business based on any product warranty (except claims outstanding as of June 30, 1999, not exceeding the local currency equivalent of U S $200,000

5 21     No Advisor

Neither Seller nor any Affiliate of Seller nor any Person acting on its or their behalf has retained any advisor, broker, investment banker or financial advisor in connection with this Agreement or any transaction contemplated hereby for which the Buyer may be liable

5 22     Accounts and Records

All the accounts, books, ledgers and financial and other material records of the Business have been maintained accurately and in accordance with generally accepted accounting practices

5 23     No Misrepresentation

To the Knowledge of the Seller, the representations and warranties of Seller contained in this Agreement, the Disclosure Schedules attached hereto, and the certificates and other

23

instruments delivered by Seller pursuant hereto, do not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained herein or therein not misleading

### 5 24    Purchased Assets

The Purchased Assets comprise all of the assets now utilised by the Seller which are necessary to enable the Business to be carried on immediately after Closing in substantially the same manner as immediately before the date of this Agreement

### 5 25    Material Consents

Except for the Material Consents, there are no other consents or approvals required by the Seller to consummate this Agreement which if not obtained would have a material and adverse effect on the ability of the Buyer to conduct the Business immediately after Closing in substantially the same manner as immediately before the date of this Agreement

### 5 26    Powers of Attorney

As of Closing, there will not be any outstanding powers of attorney executed on behalf of Seller other than with respect to the filing of taxes, customs and similar matters and intellectual property registrations

### ARTICLE 6
### REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents and warrants to Seller as follows

### 6 1    Organization

Buyer is a corporation duly organized, validly existing and is duly authorised under the laws of Singapore  Buyer is not in violation of any provision of its Memorandum and Articles of Association  Buyer is duly qualified to do business and is in good standing as a foreign corporation in each of the jurisdictions in which Buyer's operations require that it qualify to transact business as a foreign corporation, except for those jurisdictions where the failure to so qualify is not likely to have a material adverse effect on Buyer's business or financial condition or the ability of Buyer to lawfully consummate the transactions contemplated by this Agreement in all material respects

### 6 2    Power and Authority

Buyer has the full corporate power and authority to execute and deliver this Agreement and the Buyer Ancillary Agreements, to perform its obligations hereunder and thereunder, and to own and lease its property and conduct its operation as currently conducted  Buyer's

24

A-0942

execution, delivery and performance of this Agreement has been duly authorized and approved by all necessary corporate action

**6 3    Agreement Binding**

This Agreement and the Buyer Ancillary Agreements have been duly executed and delivered by Buyer, and, assuming due authorization, execution and delivery by Seller, is and will be the legal, valid and binding obligation of Buyer enforceable in accordance with their respective terms, subject to general principles of equity and except as enforceability may be limited by applicable bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium or other similar laws of general application relating to creditor's rights generally

**6 4    Absence of Conflicts**

The execution and delivery of this Agreement and the Buyer Ancillary Agreements and the consummation of the transactions contemplated hereby will not

(a)    conflict with, result in a breach of the terms, conditions or provisions of, or constitute a default, an event of default or an event creating rights of acceleration, termination or cancellation, or result in the creation or imposition of any Encumbrance under (i) any term or provision of the Memorandum and Articles of Association of Buyer, (ii) any note, instrument, contract, agreement, mortgage, indenture, lease, license or franchise to which Buyer is a party of by which it is bound, (iii) any Court Order, or (iv) any Requirements of Law, except in each case, for any of the foregoing which, individually or in the aggregate, is or are not likely to have a material adverse effect on Buyer or its business taken as a whole or hinder or impair the consummation of the transactions contemplated hereby, or

(b)    require the approval, consent, authorization or act of, or the making by Buyer of any declaration, notification, filing or registration with, any Person, except in each case, for any of the foregoing which, individually or in the aggregate, is or are not likely to have a material adverse effect on Buyer or its business taken as a whole or materially hinder or impair the consummation of the transactions contemplated hereby

**6 5    No Litigation**

There is no Action pending or, to the Knowledge of Buyer, threatened which questions the legality or propriety of the transactions contemplated by this Agreement or the Buyer Ancillary Agreements or which would impair the consummation of the transactions contemplated hereby and there has not been to the Knowledge of Buyer, any claim asserted by any Person that could lead to such an Action

A-0943

6 6    No Advisor

Neither Buyer nor any Person acting on its behalf has retained any advisor, broker, investment banker or financial advisor in connection with this Agreement or any transaction contemplated hereby for which Seller may be liable

6 7    No Misrepresentation

To the knowledge of Buyer, the representations and warranties of Buyer contained in this Agreement and the certificates and other instruments delivered by Buyer pursuant hereto do not include any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading

## ARTICLE 7
## – ACTION PRIOR TO THE CLOSING DATE

Buyer and Seller covenant and agree to take the following actions between the date hereof and the Closing Date

7 1    Preserve Accuracy of Representations and Warranties

Buyer and Seller shall refrain from taking any action that would render any representation or warranty contained in this Agreement inaccurate as of the Closing Date   Buyer and Seller shall promptly notify the other of any Action, investigation or other proceeding, that shall be instituted or threatened against such party to restrain, prohibit or otherwise challenge the legality of any transaction contemplated by this Agreement

7 2    Consents of Third Parties, Governmental Approvals

(a)    Seller and Buyer shall act diligently and reasonably to secure, before the Closing Date, the Material Consents and the consent, approval or waiver from any party to any Seller Agreement required to be obtained in contemplation or as a result of the transactions contemplated hereby to secure for Buyer the Seller's rights thereunder Buyer shall cooperate with Seller in securing such consents, approvals and waivers

(b)    During the period prior to the Closing Date, Seller and Buyer shall act diligently and reasonably, and shall cooperate with each other, to secure (i) any consents and approvals of any Governmental Body required to be obtained in order to effect the consummation of the transactions contemplated by this Agreement, (ii) the transfer or grant to Buyer of all Governmental Permits required to allow Buyer to conduct the Business, and (iii) in respect of the Leased Real Property situate at and known as No  6 Loyang Way #02-02, the consent in writing from the landlord of the Leased Real Property (the "Landlord") and all other necessary consents (including but not

26

(iii)   furnish the other with copies of all correspondence received from any taxing authority in connection with any Tax audit or information request with respect to any such taxable period

(iv)   Buyer and Seller further agree, upon request, to use their reasonable best efforts to obtain any certificate or other document from any governmental authority or any other Person as may be necessary to mitigate, reduce or eliminate any Tax that could be imposed (including, without limitation, with respect to the transactions contemplated thereby)

9 2   Employees and Employee Benefit Plans

(a)   Prior to Closing, Seller shall provide Buyer a list of all current employees of Seller who are solely or predominantly engaged in the Business which shall include all employees who are on annual leave, long service leave, sick leave, maternity leave or are absent from work and entitled to reinstatement or reemployment under any applicable statute, contract or policy ("Seller Employees")

(b)   The Seller and Buyer shall cooperate to notify and consult Deemed Transferring Employees on or as soon as practicable after the date of this Agreement, but before Closing, on their transfer of employment under the Employment Act

(c)   On or as soon as practicable after the date of this Agreement, but before Closing, Buyer must send to each Seller Employee except the Deemed Transferring Employees a letter in a form agreed with Seller offering to employ the Seller Employee with effect from Closing   Each offer must be for employment on substantially the same terms and conditions under which the Seller Employee is employed by Seller immediately before Closing (including, but not limited to, those relating to retrenchment and redundancy (in each case taking into account length of service with Seller and superannuation)) and without loss of continuity of employment for the purpose of all employee entitlements except where the Seller Employee is legally entitled to and in fact demands payment in cash on transfer

(d)   Each party must use its best endeavours to encourage all of the Seller Employees to accept the offer so made

(e)   On or as soon as practicable after Closing, Seller must

(i)   release all Seller Employees accepting the offer of employment from Buyer under Section 9 2(c), that release to take effect as at the Closing Date, and

(ii)   pay the Transferring Employees all Employment Benefits (other than Employee Leave Benefits) due to or accrued by them as at the Closing Date

34

(f)     After Closing, Buyer must

(i)     pay the Transferring Employees all Employee Leave Benefits and other entitlements due to them after the Closing Date as and when they fall due, and

(ii)    indemnify Seller against any liability for Employee Leave Benefits and other entitlements due to or accrued by a Transferring Employee under their terms of employment or under the Employment Act after the Closing Date and against all Actions in any way connected with the Buyer's employment of a Transferring Employee or termination of that employment

### 9.3    Post-Closing Remittances

If, after the Closing Date, Seller shall receive any remittance from any account debtors with respect to any accounts or Receivables included in the Purchased Assets, Seller shall endorse such remittance to the order of Buyer and forward it to Buyer promptly following receipt thereof

### 9.4    Insurance

If in respect of the obligations and liabilities (including the Assumed Liabilities) assumed by the Buyer under this Agreement Buyer suffers after Closing any Losses or Expenses ("Insured Liabilities"), then

(a)     to the extent the Seller receives or recovers after Closing any amounts in respect of such Insured Liabilities under any policies of insurance maintained by Seller prior to Closing ("Relevant Policy"), Seller shall promptly pay Buyer the lesser of the amount of the Insured Liability paid by Buyer and the amount so recovered by Seller, less all costs and expenses (including, without limitation, any Taxes or increased premium costs) incurred by Seller in connection with such recovery, and

(b)     if permitted under the terms of the Relevant Policy and subject to being indemnified by Buyer for all costs and expenses (including, without limitation, any increased premium costs) which may result, Seller will take such reasonable steps as Buyer may request to ensure that Buyer is subrogated to and enjoys the benefits of the rights of Seller under the Relevant Policies in relation to the Insured Liability concerned

35

A-0953

terminated without further liability of any party to the other, provided that nothing herein shall relieve either party from liability for its willful breach of this Agreement

## ARTICLE 11
## EXCLUSIVITY OF REMEDY

**11 1    Indemnification by Seller**

Seller's sole and exclusive indemnification obligations under this Agreement are set forth in the Coordinating Agreement

**11 2    Indemnification by Buyer**

Buyer's sole and exclusive indemnification obligations under this Agreement are set forth in the Coordinating Agreement

**11 3    Exclusivity of Remedy**

Except as provided in Section 10 3, with respect to any breach by either party of its representations, warranties, covenants or agreements in this Agreement, the respective Buyer Ancillary Agreements or Seller Ancillary Agreements or the ROW Agreements, and the transactions contemplated hereby and thereby, the sole and exclusive remedy of the other party (in contract, tort, for contribution under Requirements of Law or otherwise) shall be the indemnification provided in the Coordinating Agreement  In view of this exclusivity of remedy provision, Buyer and Seller covenant and agree for themselves and their respective Affiliates that they will not bring, maintain, join or prosecute any Action or other proceeding against the other or its Affiliates for breach of this Agreement except as set out in the Coordinating Agreement

## ARTICLE 12
## GENERAL PROVISIONS

**12 1    Notices**

Any notice, request, instruction or other document to be given hereunder shall be in writing and (a) delivered personally, (b) sent by reputable overnight courier, or (c) transmitted by facsimile, according to the instructions set forth below  Such notices shall be sent to the following address and/or facsimile numbers and shall be deemed given (x) if delivered personally, at the time delivered, (y) if sent by reputable overnight courier, at the time sent, or (z) if transmitted by facsimile, at the time when receipt is confirmed by the sending facsimile machine

37

If to Seller, to

    Pacific Dunlop Holdings (Singapore) Pte Ltd
    6 Loyang Way 2
    Singapore 508704
    Attention  Mr Crispus Lee
    Facsimile  65 546 2766

with a copy to

    Pacific Dunlop Limited
    Level 41, 101 Collins Street
    Melbourne
    Attention  Company Secretary
    Facsimile  61 3 9654 4184

If to Buyer, to

    c/o Exide Corporation
    2901 Hubbard Road
    Ann Arbor, Michigan  48105
    United States of America
    Attention  General Counsel
    Facsimile  (734) 827-2575

with a copies to

    Linklaters
    9 Raffles Place
    Republic Plaza #34-00
    Singapore 048619
    Attention  Stephen Bull
    Facsimile  011 65 438 3811

    and

    Kirkland & Ellis
    200 East Randolph Drive
    Chicago, Illinois  60601
    Attention  Mr Carter W. Emerson, P C
    Facsimile  312-861-2200

or to such other address as such party may indicate by a notice delivered to the other parties hereto
in accordance with the provisions of this Section 12 1

38

### 12 2  Confidential Information

Each party agrees that it will treat in confidence all documents, materials and other information which it shall have obtained regarding any of the other parties during the course of the negotiations leading to the consummation of the transactions contemplated hereby (whether obtained before or after the date of this Agreement), the investigation provided for herein and the preparation of this Agreement and other related documents ("Confidential Information") and, in the event the transactions contemplated hereby shall not be consummated, each party will return to the other party all copies of nonpublic Confidential Information which have been furnished in connection therewith  Confidential Information shall not be communicated to any third Person (other than the parties' respective counsel, accountants, financial advisors, or environmental consultants)  No party shall use any Confidential Information in any manner whatsoever except solely for the purpose of evaluating the proposed transaction  Notwithstanding the foregoing, after the Closing, Buyer may use or disclose any Confidential Information related to Business  The Seller shall not at any time after the Closing disclose any Confidential Information relating to the Business  The obligation of each party to treat Confidential Information in confidence shall not apply to any Confidential Information which (i) is or becomes available to such party from a source other than such party, (ii) is or becomes available to the public other than as a result of disclosure by such party or its agents, (iii) is required to be disclosed under applicable law or judicial process, but only to the extent it must be disclosed, or (iv) as to which such party reasonably deems disclosure necessary to obtain any of the consents or approvals contemplated hereby

### 12 3  No Public Announcement

Neither Buyer nor Seller shall, without the approval of the other party, issue any press release or other public announcement concerning the transactions contemplated by this Agreement  Notwithstanding the foregoing, either party may issue a press release or other public announcement concerning the transactions contemplated by this Agreement to the extent that such party or its Affiliates shall be so obligated by law or to comply with accounting, U S  Securities and Exchange Commission, New York Stock Exchange, or Australian Stock Exchange disclosure obligations, provided that such party shall  be obligated to give the other party prior notice of such press release or other public announcement if prior notice is commercially feasible

### 12 4  Entire Agreement, Amendments

This Agreement, the Coordinating Agreement, the ROW Agreements and the Exhibits and  Schedules referred to herein and therein and the Buyer Ancillary Agreements and the Seller Ancillary Agreements contain the entire understanding of the parties hereto with regard to the subject matter contained herein or therein, and supersede all prior written or oral agreements, understandings or letters of intent between or among any of the parties hereto  This Agreement shall not be amended, modified or supplemented except by a written instrument signed by an authorized representative of each of the parties hereto

A-0957

12 5   Successors and Assigns

    (a)   The rights of each party under this Agreement and the Coordinating Agreement shall not be assignable without the written consent of the other party, provided however, that no such assignment shall relieve the assigning party from any of its duties or obligations under this Agreement or the Coordinating Agreement

    (b)   This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors and permitted assigns  Nothing in this Agreement, expressed or implied, is intended or shall be construed to confer upon any Person other than the parties and successors and assigns permitted by this Section 12 5 any right, remedy, benefit or claim under or by reason of this Agreement

12 6   Interpretation

    (a)   Article titles and headings to sections herein are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement  The Schedules and Exhibits referred to herein shall be construed with and as an integral part of this Agreement to the same extent as if they were set forth herein

    (b)   This Agreement and the Schedules and Exhibits hereto have been mutually prepared, negotiated and drafted by each of the parties hereto and thereto  The parties agree that the terms of this Agreement shall be construed and interpreted against each party in the same manner and that no such provisions shall be construed or interpreted more strictly against one party on the assumption that an instrument is to be construed more strictly against the party which drafted the agreement

12 7   Waivers

Any term or provision of this Agreement may be waived, or the time for its performance may be extended, pursuant to a written action by the party or parties entitled to the benefit thereof  Any such waiver shall be validly and sufficiently authorized for purposes of this Agreement if, as to any party, it is authorized in writing by an authorized representative of such party  Subject to Sections 8 1 and 8 2, the failure of any party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of any party thereafter to enforce each and every such provision  No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach

40

A-0958

12 8    Expenses

Subject to the provisions of the Coordinating Agreement or the ROW Agreements, regardless of whether the transactions provided for in this Agreement are consummated, each party hereto will pay its own costs and expenses incident to the negotiation, preparation and performance of this Agreement, including the fees, expenses and disbursements of its counsel, financial advisors, and accountants

12 9    Partial Invalidity

Wherever possible, each provision hereof shall be interpreted in such manner as to be effective and valid under applicable law, but in case any one or more of the provisions contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective to the extent, but only to the extent, of such invalidity, illegality or unenforceability without invalidating the remainder of such invalid, illegal or unenforceable provision or provisions or any other provisions hereof, unless such a construction would be unreasonable

12 10   Execution in Counterparts

This Agreement may be executed in one or more counterparts, each of which shall be considered an original instrument, and shall become binding when one or more counterparts have been signed by each of the parties hereto and delivered to each of Seller and Buyer

12 11   Governing Law

This Agreement shall be governed by and construed in accordance with the internal laws of the State of Illinois, USA, without giving effect to any choice of laws provisions which may direct the application of the laws of another jurisdiction

12 12   Further Assurances and Cooperation

(a)     From and after the date of this Agreement, upon the request of either Seller or Buyer or any of their respective Affiliates, the other party and its Affiliates shall execute and deliver such instruments, documents or other writings as may be reasonably necessary or desirable to confirm and carry out and to effectuate fully the intent and purposes of this Agreement

(b)     After the Closing on reasonable advance notice, Buyer shall provide Seller, Seller's Affiliates, and any advisor retained by Seller or its Affiliates with reasonable access to the management and properties, books, records, and documents (which were in existence on the Closing) relating to the Purchased Assets or the Business during normal business hours and in a manner which does not unreasonably interfere with the Business for any reasonable purpose including, but not limited to, the fulfillment of Seller's responsibilities under Section 4 1(a) of the Coordinating Agreement, the

41

A-0959

enforcement of Seller's and its Affiliates' rights under Article 2 of the Coordinating Agreement and clause (m) of Section 4 2(a) of the Coordinating Agreement  As reasonably necessary, Seller, Seller's Affiliates, and any advisor retained by Seller or its Affiliates shall be entitled to make copies of such books, records and documents at their expense  If Buyer shall desire at any time to dispose of any of such books, records or documents, Buyer shall, prior to such disposition, give Seller a reasonable opportunity to segregate and remove such books and records as Seller may select  The obligations of Buyer pursuant to this Section 12 12(b) shall survive the Closing indefinitely

## 12 13.  No Reliance

The provisions of this Agreement are intended for the sole benefit of Buyer and Seller and shall not inure to the benefit of any other Person, other than successors and permitted assigns of Buyer and Seller, whether as third party or otherwise

## 12 14  Disclosure Schedules

The Disclosure Schedules are hereby incorporated by reference into and made a part of this Agreement  The inclusion of any item in the Disclosure Schedules is intended to qualify the representations and warranties contained in this Agreement, and to set forth other information required by this Agreement  Disclosure of information in any one of the Disclosure Schedules shall be deemed to be a disclosure with respect to every Section of this Agreement, notwithstanding the presence or absence of a cross-reference to Disclosure Schedules under other Sections of this Agreement if the meaning of such disclosure in the context of such other section is reasonably ascertainable  Disclosure of information in the Disclosure Schedules shall not be deemed to be an admission by Seller that such information is material for purposes of this Agreement  Summaries or extracts of any documents, instruments, or other agreements contained in the Disclosure Schedules are for the convenience of reference only and are qualified in their entirety by reference to the applicable document, instrument or other agreement so summarized or extracted from

42

A-0960

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written

**SELLER**

**PACIFIC DUNLOP HOLDINGS (SINGAPORE) PTE LTD**

By its duly appointed attorney

Name  Martin M Hudson
Title    Attorney in Fact

**BUYER**

**BLUEWALL PTE LTD**

By its Director duly authorized

Signature _____

Name _____

Title _____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

SELLER

PACIFIC DUNLOP HOLDINGS (SINGAPORE) PTE LTD

By its duly appointed attorney

_____
Name  Martin M. Hudson
Title    Attorney in Fact

BUYER

BLUEWALL PTE LTD

By its Director duly authorized

Signature _____

Name _____

Title _____

EXHIBIT A

| Purchase Price | US$ | 1,934,000 |
|---|---|---|
| Assumed Liabilities | US$ | 1,600,000 |
| Total | US$ | 3,534,000 |

## Allocation to Purchased Assets

| Real Property | US$ | 13,083 |
|---|---|---|
| Machinery & Equipment | US$ | 24,003 |
| Inventory | US$ | 1,340,906 |
| Receivables | US$ | 1,628,436 |
| Other Assets | US$ | 527,572 |
| Total | US$ | 3,534,000 |

CHI2/22032262.11

A-0963

# TAB 22

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT | DISTRICT OF Delaware | PROOF OF CLAIM |
|---|---|---|

Name of Debtor
**EXIDE TECHNOLOGIES**

Case Number
**02-11125 (KJC)**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

**Pacific Dunlop Holdings (Europe) Limited**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent

**c/o Linda S. Woolf, Esquire
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202**
Telephone number  **(410) 783-6000**

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check here if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor

Check here
if this claim ☐ replaces
☐ amends   a previously filed claim, dated _____

**1  Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other **See attachment**

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Your SS # _____
Unpaid compensation for services performed
from _____ to _____
(date)      (date)

**2  Date debt was incurred and thereafter**

**3  If court judgment, date obtained**

**4  Total Amount of Claim at Time Case Filed**   $ **at least $6,665,051 plus interest and costs** (see attached)
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges   **THIS CLAIM MAY BE AMENDED FROM TIME TO TIME**

**5  Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____
Value of Collateral  $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any  $ _____

**6  Unsecured Priority Claim**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority  $ _____
Specify the priority of the claim:
☐ Wages, salaries or commissions (up to $4,650) * earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,100 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(_).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7  Credits**   The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8  Supporting Documents**   Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien   DO NOT SEND ORIGINAL DOCUMENTS   If the documents are not available, explain   If the documents are voluminous, attach a summary.

**9  Date-Stamped Copy**   To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**FILED**

**APR 22 2003**

**BMC**

Exide Technologies
10251

Date
**4/17/03**

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)
**David P Gracey   Director**   [signature]

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

A-0964

ATTACHMENT TO PROOF OF CLAIM OF
Pacific Dunlop Holdings (Europe) Limited
Case No   02-11125 (KJC)

Pacific Dunlop Holdings (Europe) Limited ("PDH (Europe)") may have a claim against debtor Exide Technologies ("the Debtor") arising out of the sale of certain subsidiary entities or assets of subsidiary entities comprising the GNB world-wide automotive and industrial battery business ("GNB Sale"), which sale closed on September 29, 2000  A copy of the Stock Purchase Agreement With Respect to Pacific Dunlop GNB Corporation, which was entered into by PDH (Europe) and Exide Holding Europe, is attached hereto as Exhibit 1  A copy of the Stock Purchase Agreement With Respect to GNB Technologies NV, which was entered into by P D International Pty Limited, PDH (Europe), and Exide Holding Europe, is attached hereto as Exhibit 2  PDH (Europe), P D International Pty Limited, the Debtor, and the Debtor's subsidiaries involved in the GNB Sale, agreed that all legal actions in connection with the GNB Sale would "be brought solely in a state or federal court located in the County of Cook, State of Illinois" and that the GNB Sale agreements would "be governed by and construed in accordance with the internal laws of the State of Illinois, without giving effect to any choice of law provisions which may direct the application of the laws of another jurisdiction " See Coordinating Agreement, Section 5 2 and stock purchase agreements, Section 11 11

This Proof of Claim is submitted pursuant to the objections of claimant PDH (Europe) to the subject matter jurisdiction of the United States Bankruptcy Court for the District of Delaware to resolve the claims asserted herein  Moreover, PDH (Europe) does not waive its right to a jury trial of any claims it may have against the Debtor

Specifically, PDH (Europe) claims approximately $6,665,051 00, plus allowable interest, expenses, and costs, from the Debtor's subsidiary, Exide Holding Europe, on the grounds set forth in a Complaint filed in Cook County, Illinois, Civil Action No   01L 008460  A copy of this Complaint, without exhibits, is attached hereto as Exhibit 4  The Debtor removed the litigation to the United States Bankruptcy Court for the Northern District of Illinois, and moved to transfer the venue to the United States Bankruptcy Court for the District of Delaware  PDH (Europe) opposed the motion to transfer venue and moved the Bankruptcy Court to remand the case to the Circuit Court for Cook County, Illinois, or in the alternative, to abstain from hearing the case  On February 4, 2003, the United States Bankruptcy Court for the Northern District of Illinois entered a Memorandum Opinion and Order transferring the litigation, including the pending motion to remand or abstain, to the United States Bankruptcy Court for the District of Delaware  A copy of the Memorandum Opinion and Order is attached hereto as Exhibit 5

As set forth in the Memorandum Opinion, the parties disagree regarding the liability of the Debtor for any breaches of the sale agreements  It is PDH (Europe)'s position that Exide Holding Europe is primarily liable for its breaches, and that the Debtor is secondarily liable to the extent that Exide Holding Europe is unable to satisfy PDH (Europe)  The Debtor contends that it is the sole indemnitor for breaches by it or its subsidiaries under the related sales agreements  Accordingly, if the appropriate court determines that the Debtor is the sole indemnitor, PDH (Europe) has a direct claim against the Debtor for any breaches  Conversely, if

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT | DISTRICT OF Delaware | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>FLINT TECHNOLOGIES | Case Number<br>02-11125 (KJC) |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property)<br>**Pacific Dunlop Holdings (Singapore) Pte Ltd.**<br>Name and address where notices should be sent<br>**c/o Linda S. Woolf, Esquire<br>Goodell, DeVries, Leech & Dann, LLP<br>One South Street, 20th Floor<br>Baltimore, Maryland 21202**<br>Telephone number (410) 783-4000 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|

| Account or other number by which creditor identifies debtor | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated:_____ |
|---|---|

| 1. Basis for Claim<br>☐ Goods sold<br>☐ Services performed<br>☐ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☒ Other See attachment<br><br>2. Date debt was incurred<br>September, 2000 and thereafter | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Your SS #: _ _ _ - _ _ - _ _ _ _<br>Unpaid compensation for services performed<br>from _____ to _____<br>(date)          (date)<br><br>3. If court judgment, date obtained |
|---|---|

| 4. Total Amount of Claim at Time Case Filed | $ at least $675,263 plus interest and costs (see attached) |
|---|---|

If all or part of your claim is secured or entitled to priority, also complete item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. **THIS CLAIM MAY BE AMENDED FROM TIME TO TIME**

| 5. Secured Claim.<br>☐ Check this box if your claim is secured by collateral (including a right of setoff).<br>Brief Description of Collateral:<br>☐ Real Estate  ☐ Motor Vehicle<br>☐ Other _____<br>Value of Collateral: $ _____<br>Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____ | 6. Unsecured Priority Claim.<br>☐ Check this box if you have an unsecured priority claim<br>Amount entitled to priority $ _____<br>Specify the priority of the claim:<br>☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).<br>☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).<br>*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
|---|---|

7. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

8. Supporting Documents: *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

9. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br>4/17/03 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br>David J Czeizer  Director  [signature] | This Space is for Court Use Only<br>FILED<br>APR 22 2003<br>BMC |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

A-0970

ATTACHMENT TO PROOF OF CLAIM OF
Pacific Dunlop Holdings (Singapore) Pte Ltd
Case No   02-11125 (KJC)

Pacific Dunlop Holdings (Singapore) Pte  Ltd  ("PDH (Singapore)") may have a claim against debtor Exide Technologies ("the Debtor") arising out of the sale of certain subsidiary entities or assets of subsidiary entities comprising the GNB world-wide automotive and industrial battery business ("GNB Sale"), which sale closed on September 29, 2000  A copy of the Stock Purchase Agreement With Respect to GNB Technologies (India) Private Limited, which was entered into by PDH (Singapore) and Exide Holding Asia Pte  Limited, is attached hereto as Exhibit 1  A copy of the Asset Purchase Agreement between PDH (Singapore) and Bluewall Pte  Ltd to be renamed Exide Singapore Pte Limited, is attached hereto as Exhibit 2 The related Coordinating Agreement is attached hereto as Exhibit 3  PDH (Singapore), the Debtor, and the Debtor's subsidiaries involved in the GNB Sale, agreed that all legal actions in connection with the GNB Sale would "be brought solely in a state or federal court located in the County of Cook, State of Illinois" and that the GNB Sale agreements would "be governed by and construed in accordance with the internal laws of the State of Illinois, without giving effect to any choice of law provisions which may direct the application of the laws of another jurisdiction " *See* Coordinating Agreement, Section 5 2, Stock Purchase Agreement, Section 12 11, and Asset Purchase Agreement, Section 12 11

This Proof of Claim is submitted pursuant to the objections of claimant PDH (Singapore) to the subject matter jurisdiction of the United States Bankruptcy Court for the District of Delaware to resolve the claims asserted herein  Moreover, PDH (Singapore) does not waive its right to a jury trial of any claims it may have against the Debtor

Specifically, PDH (Singapore) claims approximately $675,263 00, plus allowable interest, expenses, and costs, from the Debtor's subsidiaries, Exide Holding Asia Pte  Limited ($396,817) and Exide Singapore Pte Limited ($278,446), on the grounds set forth in a Complaint filed in Cook County, Illinois, Civil Action No   01L 008460  A copy of this Complaint, without exhibits, is attached hereto as Exhibit 4  The Debtor removed the litigation to the United States Bankruptcy Court for the Northern District of Illinois, and moved to transfer the venue to the United States Bankruptcy Court for the District of Delaware  PDH (Singapore) opposed the motion to transfer venue and moved the Bankruptcy Court to remand the case to the Circuit Court for Cook County, Illinois, or in the alternative, to abstain from hearing the case   On February 4, 2003, the United States Bankruptcy Court for the Northern District of Illinois entered a Memorandum Opinion and Order transferring the litigation, including the pending motion to remand or abstain, to the United States Bankruptcy Court for the District of Delaware  A copy of the Memorandum Opinion and Order is attached hereto as Exhibit 5

As set forth in the Memorandum Opinion, the parties disagree regarding the liability of the Debtor for any breaches of the sale agreements  It is PDH (Singapore)'s position that Exide Holding Asia Pte  Limited and Exide Singapore Pte Limited are primarily liable for their breaches, and that the Debtor is secondarily liable to the extent that Exide Holding Asia Pte Limited and Exide Singapore Pte Limited are unable to satisfy PDH (Singapore)  The Debtor contends that it is the sole indemnitor for breaches by it or its subsidiaries under the related sales

agreements  Accordingly, if the appropriate court determines that the Debtor is the sole wrongdoer, PDH (Singapore) has a direct claim against the Debtor for any breaches  Conversely, if the appropriate court determines that Exide Holding Asia Pte  Limited and Exide Singapore Pte Limited are primarily liable for their breaches, PDH (Singapore) has a contingent claim against the Debtor, which is dependent on Exide Holding Asia Pte  Limited's and Exide Singapore Pte Limited's abilities to satisfy PDH (Singapore)'s claims

#475200

2

A-0972

# TAB 23

ORDER

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Pacific Dunlop Holdings
(USA) Inc., et al

v.

Exide Corporation, et al

No. 01 L 008460
01 L 015589

### ORDER

This matter coming to be heard on Defendant Exide's Motion to Consolidate Case No. 01L 15589 and Case No. 01. L. 08460. It is hereby ordered that:

The above captioned cases be consolidated pursuant to 735 ILCS 5/2-1006 into Case No. 01 L 08460 in front of the Honorable Judge Sheldon Gardner.
(please put in place)

Atty. No.: 15956

Name: Eric Rinehart

Atty. for: Exide Corporation

Address: 312 W. Randolph

City/State/Zip: Chicago, IL 60606

Telephone: (312) 701-9300

JUDGE JOHN A. WARD

ENTER:

MAR 2 6 2002

Circuit Court - 1537

Judge                                    Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

CCG-N002-200M-10/29/01 (23480652)

A 0973

# TAB 24

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                              .        Chapter 11

Exide Technologies, et al.,        .

            Debtor(s).             .        Bankruptcy #02-11125 (KJC)

........................................

Philadelphia, PA
January 22, 2004
2:15 p.m.

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE KEVIN J.CAREY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtor(s):                     Matthew Kleiman, Esq.
                                   Kirkland & Ellis, LLP
                                   200 E.Randolph Drive
                                   Chicago, IL 60601

                                   James O'Neill, Esq.
                                   Pachulski, Stang, Ziehl,
                                   Young, Jones & Weintraub
                                   919 North Market Street
                                   Wilmington, DE 19801

                                   Benjamin G. Chew, Esq.
                                   Patton Boggs, LLP
                                   Ste. 500
                                   2550 M. Street, N.W.
                                   Washington, DC 20037

                                   Andrew Zimmitti, Esq.
                                   Patton Boggs, LLP
                                   Ste. 500
                                   2550 M. Street, N.W.
                                   Washington, DC 20037

*Writer's Cramp, Inc.*

*Certified Court Transcribers*

732-329-0191

A 0974

2

| | |
|---|---|
| For Official Committee: of Unsecured Creditors | David Fournier, Esq. Pepper, Hamilton, LLP 1201 Market Street-Ste. 1600 Wilmington, DE 19899 |
| | Fred Hodara, Esq. Akin, Gump, Strauss, Hauer & Feld, LLP 590 Madison Ave. New York, NY 10022 |
| | Mary Masella, Esq. Akin, Gump, Strauss, Hauer & Feld, LLP 590 Madison Ave. New York, NY 10022 |
| Special Counsel To: Creditor's Committee | Charlene D. Davis, Esq. The Bayard Firm 222 Delaware Ave. Wilmington, DE 19899 |
| For EnerSys, Inc.: | Thomas G. Whalen, Jr., Esq. Stevens & Lee, PC 300 Delaware Ave.-Ste. 800 Wilmington, DE 19801 |
| | Robert Lapowski, Esq. Stevens & Lee, PC 1818 Market St.-29th Fl. Philadelphia, PA 19103 |
| For R² Investments: | Steven Levine, Esq. Brown, Rudnick, Berlack & Israels 120 W. 45th St. New York, NY 10036 |
| For Pacific Dunlap Entities: | Douglas N. Candeub, Esq. Morris James Hitchens & Williams, LLP PNC Bank Center 222 Delaware Ave.-10th Fl. Wilmington, DE 19899 |
| For Pre-Petition Lenders: CSFB | William J.F. Roll, III, Esq. Shearman & Sterling, LLP 599 Lexington Ave. New York, NY 10022 |

*Writer's Cramp, Inc.*

Certified Court Transcribers

732-329-0191

A 0975

3

|   |   |
|---|---|
| 1 | Douglas P. Bartner, Esq. |
|   | Shearman & Sterling, LLP |
| 2 | 599 Lexington Ave. |
|   | New York, NY 10022 |
| 3 |   |
|   | Mona A. Touma, Esq. |
| 4 | Shearman & Sterling, LLP |
|   | 599 Lexington Ave. |
| 5 | New York, NY 10022 |

```
 1                                Douglas P. Bartner, Esq.
                                  Shearman & Sterling, LLP
 2                                599 Lexington Ave.
                                  New York, NY 10022
 3
                                  Mona A. Touma, Esq.
 4                                Shearman & Sterling, LLP
                                  599 Lexington Ave.
 5                                New York, NY 10022

 6   For Claimants:              Kathleen Campbell, Esq.
                                  Campbell & Levine, LLC
 7                                One Rodney Square
                                  Wilmington, DE 19899
 8
     For Citibank:               Richard Cobb, Esq.
 9                                Landis, Rath & Cobb
                                  919 Market Street
10                                Wilmington, DE 19801

11   For The St. Paul Companies: Lisa B. Tancredi, Esq.
                                  Venable, LLP
12                                1800 Mercantile Bank
                                  & Trust Bldg
13                                2 Hopkins Plaza
                                  Baltimore, MD 21201
14
     For Douglas N. Pearson:     Barry M. Klayman, Esq.
15                                Wolf Block Schorr
                                  & Solis-Cohen
16                                Wilmington Bank Center
                                  Ste. 1001
17                                1100 North Market Street
                                  Wilmington, DE 19801
18
     For The Bank of New York:   Glenn E. Siegel, Esq.
19                                Dechert, LLP
                                  30 Rockefeller Plaza
20                                New York, NY 10112

21   For HSBC Bank, USA:         Jonathan L. Flazer, Esq.
                                  Golenbock Eiseman Assor
22                                Bell & Peskoe, LLP
                                  437 Madison Ave.
23                                New York, NY 10022

24

25
```

A 0976

```
 1   (Via telephone)

 2   For CitiCapital/Citicorp:        William G. W
                                      Farr Burke (
 3                                    & Wright
                                      211 Benigno
 4                                    Bellmawr, N

 5   For Smith Management:            Andrew Silfe
                                      Arent, Fox,
 6                                    Plotkin & Ka
                                      1050 Connect
 7                                    Washington,

 8   Special Counsel To Committee:   Gary Meyerho
                                      Sonnenschein
 9                                    Sears Tower
                                      233 South Wa
10                                    Chicago, Il

11                                    John Miravic

12   For                             Steven K. Ko
                                      Klehr Harris
13                                    Branzburg &
                                      Mellon Bank
14                                    919 Market S
                                      Wilmington,
15
     For U.S. Trustee:               Mark Kenney
16                                    U.S. Trustee
                                      844 King Str
17                                    Lock Box 35
                                      Wilmington,
18
     Audio Operator:                 Chris Caruso
19
     Transcribing Firm:              Writer's Cra
20                                    6 Norton Rd
                                      Monmouth Jc
21                                    732-329-019

22   Proceedings recorded by electronic sound r
     produced by transcription service.
23

24

25
```

*Writer's Cramp, Inc.*

*Certified Court Transcribers*

*732-329-0191*

A 0977

2

| | | |
|---|---|---|
| 1 | For Official Committee: | David Fournier, Esq. |
| | of Unsecured Creditors | Pepper, Hamilton, LLP |
| 2 | | 1201 Market Street-Ste. 1600 |
| | | Wilmington, DE 19899 |
| 3 | | |
| | | Fred Hodara, Esq. |
| 4 | | Akin, Gump, Strauss, |
| | | Hauer & Feld, LLP |
| 5 | | 590 Madison Ave. |
| | | New York, NY 10022 |
| 6 | | |
| | | Mary Masella, Esq. |
| 7 | | Akin, Gump, Strauss, |
| | | Hauer & Feld, LLP |
| 8 | | 590 Madison Ave. |
| | | New York, NY 10022 |
| 9 | | |
| 10 | Special Counsel To: | Charlene D. Davis, Esq. |
| | Creditor's Committee | The Bayard Firm |
| 11 | | 222 Delaware Ave. |
| | | Wilmington, DE 19899 |
| 12 | For EnerSys, Inc.: | Thomas G. Whalen, Jr., Esq. |
| | | Stevens & Lee, PC |
| 13 | | 300 Delaware Ave.-Ste. 800 |
| | | Wilmington, DE 19801 |
| 14 | | |
| | | Robert Lapowski, Esq. |
| 15 | | Stevens & Lee, PC |
| | | 1818 Market St.-29th Fl. |
| 16 | | Philadelphia, PA 19103 |
| 17 | For R² Investments: | Steven Levine, Esq. |
| 18 | | Brown, Rudnick, Berlack |
| | | & Israels |
| 19 | | 120 W. 45th St. |
| | | New York, NY 10036 |
| 20 | For Pacific Dunlap Entities: | Douglas N. Candeub, Esq. |
| 21 | | Morris James Hitchens |
| | | & Williams, LLP |
| 22 | | PNC Bank Center |
| | | 222 Delaware Ave.-10th Fl. |
| 23 | | Wilmington, DE 19899 |
| 24 | For Pre-Petition Lenders: | William J.F. Roll, III, Esq. |
| | CSFB | Shearman & Sterling, LLP |
| 25 | | 599 Lexington Ave. |
| | | New York, NY 10022 |

A 0978

3

```
1                                    Douglas P. Bartner, Esq.
                                     Shearman & Sterling, LLP
2                                    599 Lexington Ave.
                                     New York, NY 10022
3
                                     Mona A. Touma, Esq.
4                                    Shearman & Sterling, LLP
                                     599 Lexington Ave.
5                                    New York, NY 10022

6    For Claimants:                  Kathleen Campbell, Esq.
                                     Campbell & Levine, LLC
7                                    One Rodney Square
                                     Wilmington, DE 19899
8
     For Citibank:                   Richard Cobb, Esq.
9                                    Landis, Rath & Cobb
                                     919 Market Street
10                                   Wilmington, DE 19801

11   For The St. Paul Companies:     Lisa B. Tancredi, Esq.
                                     Venable, LLP
12                                   1800 Mercantile Bank
                                     & Trust Bldg
13                                   2 Hopkins Plaza
                                     Baltimore, MD 21201
14
     For Douglas N. Pearson:         Barry M. Klayman, Esq.
15                                   Wolf Block Schorr
                                     & Solis-Cohen
16                                   Wilmington Bank Center
                                     Ste. 1001
17                                   1100 North Market Street
                                     Wilmington, DE 19801
18
     For The Bank of New York:       Glenn E. Siegel, Esq.
19                                   Dechert, LLP
                                     30 Rockefeller Plaza
20                                   New York, NY 10112

21   For HSBC Bank, USA:             Jonathan L. Flazer, Esq.
                                     Golenbock Eiseman Assor
22                                   Bell & Peskoe, LLP
                                     437 Madison Ave.
23                                   New York, NY 10022

24

25
```

*Writer's Cramp, Inc.*

Certified Court Transcribers

732-929-0191

A 0979

4

```
 1   (Via telephone)

 2   For CitiCapital/Citicorp:      William G. Wright, Esq.
                                    Farr Burke Gambacorta
 3                                  & Wright
                                    211 Benigno Blvd-Ste. 201
 4                                  Bellmawr, NJ 08099

 5   For Smith Management:      .   Andrew Silfen, Esq.
                                    Arent, Fox, Kintner,
 6                                  Plotkin & Kahn, PllC
                                    1050 Connecticut Ave., N.W.
 7                                  Washington, DC 20036

 8   Special Counsel To Committee: Gary Meyerhoff, Esq.
                                    Sonnenschein, Nath & Rosenthal
 9                                  Sears Tower-Ste. 8000
                                    233 South Hacker Drive
10                                  Chicago, IL 60606  .

11                                  John Miravich, Esq.

12   For        .                   Steven K. Kortanek, Esq.
                                    Klehr Harrison Harvey
13                                  Branzburg & Ellers, LLP
                                    Mellon Bank Center
14                                  919 Market St.-Ste. 1000
                                    Wilmington, DE 19801
15
     For U.S. Trustee:              Mark Kenney, Esq.
16                                  U.S. Trustee's Office
                                    844 King Street-Ste. 2313
17.                                 Lock Box 35
                                    Wilmington, DE 19801
18
     Audio Operator:                Chris Caruso
19
     Transcribing Firm:             Writer's Cramp, Inc.
20                                  6 Norton Rd.
                                    Monmouth Jct., NJ 08852
21                                  732-329-0191

22   Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
23

24

25
```

Writer's Cramp, Inc.

Certified Court Transcribers

732-329-0191

44

1          THE COURT:  Thank you.

2          MR. O'NEILL:  Thanks, very much.

3          MR. KLEIMAN:  Your Honor, the next item on the agenda

4    is the Pacific Dunlap Motion for Reconsideration of your

5    Court's prior ruling.  Before I yield the podium to Pacific

6    Dunlap's counsel to present their motion, I would like to

7    advise the Court it was the Debtors' intention to ask the

8    Patton Boggs firm to represent the Debtors in the response to

9    that, and I simply wanted to confirm the Court had no problem

10   with Patton Boggs appearing today, given that its application

11   is pending.

12         THE COURT:  I do not.

13         MR. KLEIMAN:  Thank you, Your Honor.

14         MR. CANDEUB:  Your Honor, we acknowledge that Motions

15   for Reconsideration are not intended to be just a rehashing of

16   arguments made before, and we don't intend to do that with the

17   Court.

18         THE COURT:  Let me ask this, because both -- I've

19   read the papers carefully, and I want to focus myself in on

20   which avenue Pacific Dunlap is taking.  There're really three

21   types of Motions for Reconsideration, Rule 52, Rule 59, and

22   Rule 60.  In one sense, the request is more like a Rule 52

23   request, but in substance I don't really see it that way.  It

24   really looks like a Rule 59 request.  Can you respond to that?

25         MR. CANDEUB:  Well, Your Honor, it's also a Rule 3008

*Writer's Cramp, Inc.*

*Certified Court Transcribers*

*732-929-0191*

45

1    request, which allows Motions for Reconsideration in terms of

2    -- in connection with claims, and in this instance, the affect

3    of the Court's Order was to preclude Pacific Dunlap Entities

4    from going forward against the foreign entities, and so that's

5    an important component here.

6            THE COURT:  But the underpinnings of the motion are

7    that I was wrong in how I applied the law in precluding the

8    admission of extrinsic evidence concerning the meaning of the

9    relevant agreements.  That's the substance of it, isn't it?

10           MR. CANDEUB:  Well, it's -- that's a part of it.

11   That's not all of it, and Your Honor, the standards I should

12   just -- if I may just refer to the standards in Rule 3008 the

13   case law under that, including Motor Freight Express from this

14   Court from 1988, 91 BR 705 is for cause or the equities, and so

15   it's a different standard somewhat from Motions for

16   Reconsideration under Rule 9023, and 9023 includes it's

17   undisputed that standard includes among other things manifest

18   injustice, so that's sort of a form of the equities as well,

19   and although the -- just should note that although the Debtors

20   spent some time arguing that two of the cases we cited were

21   overruled, that's actually factually incorrect.  They were

22   referred to as having been abrogated by a different Court, but

23   the Car vs. Castle case actually was affirmed by the 3rd

24   Circuit and (indiscern.) denied by the Supreme Court, for

25   example, so it's just not accurate to say it was overruled.

A 0982

46

1   But in any case, the only difference that they point out to was

2   as to whether there was the words or fact as in error of fact

3   or law was part of the standard or not, and that wasn't

4   something we relied on, so it's not material.

5          THE COURT:  But isn't -- again, even if you apply a

6   Rule 3008 standard as you articulated, it still comes down to

7   the position of Pacific Dunlap that I was wrong about the law

8   and should have permitted the testimony.

9          MR. CANDEUB:  Well, yes, that's part of it, Your

10  Honor, again, I'm sorry, but there's also -- the contract

11  issues involving coordinating amendment #1 to the Coordinated

12  Agreement were frankly not presented in our motion.  Our motion

13  was a Motion for Remand or for Estate Relief and Abstention.

14  We mentioned the fact that Judge Sonderby had seemed to suggest

15  that it was ambiguous, but we didn't even argue that in our

16  motion.  That was not something we contemplated as having to

17  present all of our contract arguments and issues in connection

18  with the amendment #1 to the Coordinated Agreement.  We focused

19  on the form selection clause, and so in terms of our -- the

20  thing that was presented as the motion for the Court, that was

21  just -- not all the contract issues were really there for the

22  Court to decide we weren't expecting to present everything, and

23  so, for example, when Your Honor ruled as you did, finding that

24  the amendment was not ambiguous in a fashion that excluded our

25  ability to proceed against the other entities, it appeared that

*Writer's Cramp, Inc.*

*Certified Court Transcribers*

*732-989-0191*

1  if that were the case, if it was not ambiguous then it had to

2  be a mutual mistake, because that was just not what the parties

3  meant.  It was just not what they intended, and that was not --

4  the mutual mistake issue is not something that we presented

5  before, but Your Honor, I submit that there's a good reason for

6  that.  We didn't submit it because it wasn't presented in our

7  motion, and so, yes, the Debtors cite case law saying you're

8  not allowed to raise new issues that should have been presented

9  before.  We submit that this -- there was not a good reason to

10  have contemplated that before because it wasn't contemplated

11  within our motion in the first place.  And so, the exclusion of

12  the parol evidence becomes different when you take into account

13  the mutual mistake issue, which -- for which the Parol Evidence

14  Rule does not apply, and that's why we wanted to make sure that

15  Your Honor was aware of that by way of the affidavits.  The

16  affidavits, the Debtors refer to them as attorney affidavits,

17  but of course, one of them was the -- one of the principal

18  drafters, that's Mr. McDonough, the other was the negotiator

19  and signer on behalf of the Pacific Dunlap Entities, Mr.

20  Martin Hudson, and the response from the Debtors was not only

21  was a unilateral mistake, but a glaring absence in their

22  response was an affidavit from them, from somebody from the

23  Debtors, from Exide, saying yes, this is what we intended, and

24  you know, I think that's very telling that there's no one from

25  Exide who has said, yes, this indeed is what we meant, and Your

A 0984

48

1   Honor asked, I believe at the hearing of Mr. Chew, what reason,

2   if any, what business reason, if any, there might have been for

3   the parties to have made this change and to have, as per the

4   interpretation given, to preclude remedies against the foreign

5   entities, and there was, I don't believe, any clear answer

6   given to that.  Mr. Chew, at the hearing, himself suggested at

7   one point that at least if Your Honor were to find the matter

8   ambiguous that we should proceed with discovery, and we submit

9   that considering the finding of nonambiguity raises -- brings

10   to the forefront the question of mutual mistake that we ought

11   to have the opportunity to have discovery on that and present

12   evidence on that in connection with the mutual mistake issue,

13   and that it would be an inequity to deny us that opportunity

14   when it wasn't presented in the first instance to the Court.  I

15   did have, as you know, a witness available at the hearing, but

16   the affidavits really set forth more strongly the factual issue

17   there.  Those are the reasons, Your Honor, and that's, I

18   believe, different from just saying, we think you're wrong in

19   the law.

20          THE COURT:  Thank you.

21          MR. CANDEUB:  Thank you.

22          MR. CHEW:  Good afternoon, Your Honor.  May it please

23   the Court, Ben Chew and Andrew Zimitti for Debtor, Exide.  We

24   oppose Plaintiff, PDH Entities, Motions for Reconsideration on

25   several grounds.  First, Your Honor, is the threshold matter.