# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 02-11125 (KJC) |
| EXIDE TECHNOLOGIES, *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | |
| —————————————————— | ) | |
| | ) | |
| PACIFIC DUNLOP HOLDINGS | ) | C.A. No. 05-561 (SLR) |
| (EUROPE) LTD, *et al.*, | ) | |
| Appellants, | ) | Bankruptcy Adv. Proc. No. 04-51299 (KJC) |
| v. | ) | |
| | ) | |
| EXIDE HOLDING EUROPE LTD, *et al.* | ) | |
| Appellees. | ) | |

## APPELLEE'S OPPOSITION BRIEF
## ON APPEAL FROM BANKRUPTCY COURT

Dated: March 13, 2006

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

-and-

PATTON BOGGS LLP
Benjamin G. Chew
Andrew Zimmitti
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Counsel for Appellee Exide Technologies

---

[1] The additional debtors were Exide Delaware, L.L.C., Exide Illinois, Inc., RBD Liquidation, L.L.C., Dixie Metals Company, and Refined Metals Corporation. The cases of these additional debtors were closed by order of the Bankruptcy Court entered June 18, 2004.

**TABLE OF CONTENTS**

INTRODUCTION...................................................................................................................................2

STATEMENT OF RELEVANT FACTS..........................................................................................4

ARGUMENT .......................................................................................................................................9

I.    APPELLANTS DO NOT, BECAUSE THEY CANNOT, ESTABLISH THAT THE
      BANKRUPTCY COURT ABUSED ITS DISCRETION IN DENYING
      APPELLANTS' MOTIONS TO REMAND OR FOR RECONSIDERATION.............................9

II.   THE BANKRUPTCY COURT CORRECTLY RULED THAT IT HAD SUBJECT
      MATTER JURISDICTION OVER *ALL* OF THE PDH ENTITIES' CLAIMS AND
      THAT THE CLAIMS WERE CORE PROCEEDINGS.................................................................11

      A. *By Filing their Proofs of Claim in the Exide Chapter 11 Case, the PDH Entities
         Voluntarily Submitted to the Equitable Jurisdiction of the Bankruptcy Court
         for the Resolution of their Claims* ...................................................................................11

      B. *The PDH Entities Ignore the Overwhelming Weight of Authority Establishing
         that They Submitted to the Equitable Jurisdiction of the Bankruptcy Court By
         Filing Their Proofs of Claim*............................................................................................16

      C. *The PDH Entities Base Their Challenge to the Bankruptcy Court's Subject
         Matter Jurisdiction upon Inapplicable Standards* ............................................................18

III.  THE BANKRUTPCY COURT CORRECTLY RULED THAT BECAUSE    THESE
      PROCEEDINGS ARE CORE, THE FORUM SELECTION CLAUSE IS
      INOPERATIVE.............................................................................................................................21

IV.   THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DENYING
      THE PDH ENTITIES' MOTION FOR RECONSIDERATION....................................................24

      A. *The Bankruptcy Court Correctly Ruled that the PDH Entities Failed to Meet
         the Third Circuit's Heightened Standards for Reconsideration* .........................................24

         1.   The PDH Entities cited no intervening change in controlling      law
              nor offered any new evidence warranting reconsideration.................................25

         2.   The Bankruptcy Court did not abuse its discretion in finding
              no clear error or manifest injustice warranting reconsideration ........................27

              a. The Bankruptcy Court had jurisdiction to interpret the
                 indemnification provisions of the coordinating agreement.........................27

              b. The Bankruptcy Court Correctly Ruled That the agreement, as
                 Modified By Amendment No. 1, Is Clear and Unambiguous,
                 Precluding Consideration of any Extrinsic or Parol Evidence....................30

(1) The Bankruptcy Court's Finding That the Agreement Is Clear
and Unambiguous Was Not an Abuse of Discretion    33

(2) The Bankruptcy Court correctly ruled that, pursuant
to well-established Illinois contract law, consideration of extrinsic
evidence is prohibited if the terms of the contract are unambiguous
and the contract, as here, contains an integration clause    33

c.  The Bankruptcy Court correctly rejected the PDH Entities'
misplaced "latent ambiguity" and "mutual mistake" arguments.................33

V.    THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DENYING
EQUITABLE REMAND AND DISCRETIONARY ABSTENTION....................................37

VI.   THE BANKRUPTCY COURT CORRECTLY RULED THAT MANDATORY
ABSTENTION IS INAPPLICABLE AS A MATTER OF LAW............................................42

VII.  THE PDH ENTITIES FAILED TO ESTABLISH THAT THEY WERE ENTITLED TO
ANY STAY RELIEF AS A MATTER OF LAW....................................................................43

CONCLUSION ....................................................................................................................................45

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re APF Co.*, 264 B.R. 344 (Bankr. D.Del. 2001) ............................................................ 23

*In re Allegheny, Inc.*, 68 B.R. 183 (Bankr. W.D. Pa. 1986) ................................................ 40, 42

*In re American Classic Voyages, Co.*, 298 B.R. 222 (D. Del. 2003) ................................... 44

*In re Ascher*, 128 B.R. 639 (Bankr. N.D. Ill. 1991) .......................................................... 38, 42

*In re Asousa P'ship*, 276 B.R. 55 (Bankr. E.D.Pa. 2002) .................................................. 15, 39

*In re Astropower Liquidating Trust*, 335 B.R. 309 (Bankr. D.Del. 2005) .......................... 20

*Atlantic States Legal Foundation v. Karg Brothers, Inc.*, 841 F. Supp. 51 N.D.N.Y. 1993) ......... 26

*Balcor/Morristown Ltd.*, 181 B.R. 781, 793 (D.N.J. 1995) ................................................ 38

*In re Bennet Funding Group, Inc.*, 259 B.R. 243 (N.D.N.Y. 2001) .................................... 22

*In re Bible Speaks*, 65 B.R. 415, 431 (Bankr.D.Mass. 1986) ............................................. 40

*In re Bill's Dollar Stores, Inc.*, 200 B.R. 18 (Bankr. D.Del. 1994) ................................... 25

*Billing v. Ravin, Greenburg & Zackin, P.A.*, 22 F.3d 1242 (3d Cir. 1994), *cert. denied*, 507 U.S. 1051 (1993) .... 13, 39

*In re Birdsboro Ferrocast, Inc.*, 153 B.R. 154 (Bankr. E.D. Pa. 1993) .............................. 38

*In re Bizfon, Inc.*, No. 01-12547-JMD, 2002 WL 181975 (Bankr. D.N.H. Jan. 29, 2002) ....... 14

*In re Cardinal Industries, Inc.*, 126 B.R. 754 (Bankr. S.D. Ohio 1991) ............................ 40

*In re Chama, Inc.*, 265 B.R. 662 (Bankr. D.Del. 2000) ..................................................... 25

*In re Christie*, 222 B.R. 64 (Bankr. D.N.J. 1998) ............................................................. 24

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190
(3d Cir. 1983) ......................................................................................................... 21, 22, 23

*In Re: Colorado Energy Supply*, 728 F.2d 1283 (10th Cir. 1984) ..................................... 23

*In re Commodore International Ltd.*, 242 B.R. 243 (Bankr. S.D.N.Y. 1999) ....................... 22

*In re Concrete Structures, Inc.*, 261 B.R. 627 (E.D.Va. 2001) .......................................... 43

*In re Continental Airlines, Inc.*, 236 B.R. 318 (D.Del. 1999) ........................................... 43

*In re Continental Airlines*, 125 F.3d 120, 131 (3d Cir. 1997) .......................................... 13

*Dentsply International, Inc. v. Kerr Manufacturing Co.*, 42 F. Supp. 2d 385 (D.Del. 1999) ....... 24, 26

*In re Diaz Contracting, Inc.*, 817 F.2d 1047 (3d Cir. 1987) ............................................. 21, 22, 23

*In re Eagle Enterprises*, 265 B.R. 671 (E.D. Pa. 2001) .................................................... 44

*In re Earle Industries*, 181 B.R. 781, 793 (D.N.J. 1995) .................................................. 40

*In re Edison Brothers, Inc.*, 268 B.R. 409 (Bankr. D.Del. 2001) .................................................. 24, 26, 31

*In re Ellwood City Iron & Wire Co.*, 59 B.R. 53 (Bankr. W.D.Pa. 1986) ........................................... 22

*Envirolite Enterprises, Inc. v. Glastechniche Industrie Peter Lisec Gesellschaft M.B.H.*, 53 B.R. 1007 (S.D.N.Y. 1985) ................................................................................................................. 23

*Fogel v. Zell (In re Madison Mgmt. Group, Inc.)*, 2000 WL 288515, 3 (N.D.Ill. Feb. 23, 2000) .................................. 34

*In re General Datacomm. Industrial, Inc.*, 407 F.3d 616 (3d Cir. 2005) ......................................... 10

*Glassel v. Allegheny International Credit Corp.*, 111 B.R. 495 (W.D.Pa. 1990) ................................. 14

*Gober v. Terra Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996) .............................................. 10

*In re HQ Global Holdings, Inc.*, 293 B.R. 839 (Bankr. D.Del. 2003) ........................................ 13, 16, 39

*Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999) .................................................................. 12

*Harley Hotels, Inc. v. Rain's International Ltd.*, 57 B.R. 773 (M.D. Pa. 1985) ................................. 40

*Harsco Corp. v. Zlotnicki*, 779 F.2d 906 (3d Cir. 1986) .......................................................... 27

*Hays and Co. v. Merrill Lynch*, 885 F.2d 1149 (3d Cir. 1989) ................................................... 23

*In re Insilco Technologies, Inc.*, 330 B.R. 512 (Bankr. D.Del. 2005) ............................................ 20

*In re Iridium Operating LLC*, 285 B.R. 822 (S.D.N.Y. 2002) ...................................................... 22

*Kabacinski v. Bostrom Seating, Inc.*, 98 Fed.Appx. 78, 81 (3d Cir. 2004) ....................................... 25

*In re Kamine/Besicorp Alleghany, L.P.*, 214 B.R. 953 (Bankr. D.N.J. 1997) ...................................... 23

*Karr v. Castle*, 768 F. Supp. 1087 (D.Del. 1991) ................................................................ 25

*Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) ........................................... 13

*Matter of L.B. Trucking, Inc.*, 90 B.R. 81 (Bankr. D.Del. 1988) ................................................. 14

*Langenkamp v. Kulp*, 498 U.S. 42 (1990) ...................................................................... 13, 15

*Lauro Lines v. Chasser*, 490 U.S. 495 (1989) .................................................................... 21

*Livesey v. Kates (In re Mazzocone)*, 1993 WL 340942 (Bankr. E.D.Pa. 1993) ....................................... 18

*In re Marcus Hook Development Park, Inc.*, 153 B.R. 693 (W.D.Pa. 1993) ........................................... 42

*Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1991) ...................................... 14

*Marta Group, Inc. v. County Appliance Co., Inc.*, 79 B.R. 200 (E.D. Pa. 1987) ................................ 10, 24

*Max's Seafood Cafe ex. rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669 (3d. Cir. 1999) ........................... 25

*In re McCarthy*, 230 B.R. 414 (9th Cir. BAP 1999) .......................................................... 10, 24, 41

*In re McLaren*, 990 F.2d 850 (6th Cir. 1993) .................................................................... 14

*In re McRae Fire Protection, Inc.*, 49 B.R. 773 (Bankr. E.D. Mich. 1985) ......................................... 40

*In re Mercury Masonry Corp.*, 114 B.R. 35 (Bankr. S.D.N.Y. 1990) ............................................................ 22

*In re Merry-Go-Round Enterprises, Inc.*, 222 B.R. 254 (Bankr. D.Md. 1998) ............................................. 10

*In re Metropolitan Transport Co.*, 82 B.R. 351 (Bankr. E.D. Pa. 1988) ..................................................... 44

*In re Meyertech Corp.*, 831 F.2d 410 (3d Cir. 1987) ....................................................................... 14, 40

*In re Micro Design, Inc.*, 120 B.R. 363 (E.D.Pa. 1990) .................................................................... 14, 44

*Moro v. Shell Oil Co.*, 91 F.3d 872 (7th Cir. 1996) .............................................................................. 24

*Neuman v. Goldberg*, 159 B.R. 681 (S.D.N.Y. 1993) ........................................................................... 40

*North River Insurance Co. v. Cigna*, 52 F.3d 1194 (3rd Cir. 1995)
    *vacated on other grounds*, 707 F.Supp. 3 (D.D.C. 1989) ........................................... 24, 25, 26, 27

*In re Pabon Rodriguez*, 233 B.R. 212 (Bankr. D.P.R. 1999) ............................................................... 35

*In re Parent, Inc.*, 221 B.R. 609 (Bankr. D.Mass. 1998) .......................................................... 21, 22, 23

*In re Pioneer Development Corp.*, 47 B.R. 624 (Bankr. N.D. Ill. 1985) ................................................. 38

*In re RBGSC Investment Corp.*, 253 B.R. 369 (E.D. Pa 2000) ................................................. 20, 38, 42

*In re RBGSC Investment Corp.*, 240 B.R. 536 (Bankr. E.D.Pa. 1999) ................................................. 14

*In re Resorts International, Inc.*, 372 F.3d 154 (3d Cir. 2004) ...................................................... 19, 20

*In re Rexene Products Co.*, 141 B.R. 574 (Bankr. D. Del. 1992) ......................................................... 44

*In re Robb*, 139 B.R. 791 (Bankr. S.D.N.Y. 1992) ........................................................................ 38, 42

*Ronix Corp. v. City of Philadelphia*, 82 B.R. 19 (E.D.Pa. 1988) ....................................................... 38

*Russell v. Delco Remy*, 51 F.3d 746 (7th Cir. 1995) ........................................................................... 35

*In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702 (2d Cir. 1995) ............................................... 15, 18

*Schering v. Amgen, Inc.*, 25 F.Supp.2d. 293 (D.Del. 1998) ....................................................... 27, 31

*Societe Nationale Algerienne Pour la Recherche v. Distrigas Corp.*, 80 B.R. 606 (D.Mass. 1987) ............. 22

*St Vincent's Hospital v. Norrell (In re Norrell)*, 198 B.R. 987 (Bankr. N.D.Ala. 1996) ......................... 18

*Steinman v. Spencer (In re Argus Group, Inc.)*, 206 B.R. 737 (Bankr. E.D.Pa. 1996), *aff'd*, 206 B.R. 757
    (E.D. Pa. 1997) ....................................................................................................... 17, 18

*In re Sun West Distributors, Inc.*, 69 B.R. 861 (Bankr. S.D.Cal. 1987) ............................................... 42

*In re Talon Holdings, Inc.*, 221 B.R. 214 (Bankr. N.D.Ill. 1998) ................................................. 38, 42

*Travellers International AG. v. Robinson*, 982 F.2d 96 (3d Cir. 1992), *cert. denied*, 507 U.S. 1051 (1993) ...... 15, 16, 39

*In re United Merchants and Mfr., Inc.*, 1992 WL 37498, 1 (Bankr.D.Del. Feb. 18, 1992) ......................... 34

*In re Wheeling-Pittsburgh Steel Corp.*, 108 B.R. 82 (Bankr. W.D.Pa. 1989) ................................... 22, 39

*In re Wood*, 825 F.2d 90 (5th Cir. 1987) .................................................................................. 12, 13

## STATE CASES

*Air Safety, Inc. v. Teachers Realty Corp.,*
  185 Ill. 2d 457, 236 Ill. Dec. 8, 706 N.E.2d 882 (1999)........................................................32, 33

*Bank of Naperville v. Holz,*
  86 Ill. App. 3d 533, 41 Ill. Dec. 604, 407 N.E.2d 1102 (1980) ........................................37

*Beynon Building Corp. v. National Guardian Life Insurance Co.,*
  118 Ill. App. 3d 754  74 Ill. Dec. 216, 455 N.E.2d 246 (1983) ........................................36

*Dean Management, Inc. v. TBS Construction, Inc.,*
  339 Ill. App. 3d 263, 790 N.E.2d 934 (Ill. 2003)................................................................31

*Eichengreen v. Rollins, Inc.,*
  325 Ill. App. 3d 517, 259 Ill. Dec. 89, 757 N.E.2d 952 (2001) ........................................33

*Hessler v. Crystal Lake Chrysler-Plymouth, Inc.,*
  38 Ill. App. 3d 1010, 788 N.E.2d 405, 413-414 (Ill. App. 2 Dist. 2003)..........................34

*J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.,*
  162 Ill. 2d 265, 205 Ill. Dec. 98, 642 N.E.2d 1215 (1994) ..........................................33, 34

*Keller v. State Farm Insurance Co.,*
  180 Ill. App. 3d 539, 129 Ill. Dec. 510, 536 N.E.2d 194 (1989) ......................................36

*Lukas v. Lightfoot,*
  131 Ill. App. 3d 566, 86 Ill. Dec. 825, 476 N.E.2d 1 (1985)............................................37

*Napleton v. Ray Buick, Inc.,*
  302 Ill. App. 3d 191, 704 N.E.2d 864, 299 Ill. Dec. 291 (Ill. App. 1st Dist. 1998) .........34

*Pepper Constr. Co. v. Transcontinental Ins. Co.,*
  285 Ill.App.3d 573, 576, 673 N.E.2d 1128 (1996) ...........................................................26

*Village of Oak Park v. Schwerdtner,*
  288 Ill. App. 3d 716, 681 N.E.2d 586, 224 Ill. Dec. 271 (1997) ......................................36

## FEDERAL STATUTES

11 U.S.C. § 105(a) ................................................................................................................43

11 U.S.C. § 362......................................................................................................................44

11 U.S.C. § 501......................................................................................................................13

28 U.S.C. § 157 ............................................................................3, 7, 13, 14, 15, 16, 19, 20, 21

28 U.S.C. § 1334.......................................................................................10, 38, 42, 43

28 U.S.C. § 1452....................................................................................................10, 38

## RULES

Fed.R.Bank.P. 3008

Fed.R.Bank.P. 7052        11, 25

## II.

**Fed.R.Bank.P. 9023    25**

Fed.R.Civ.P. 59(e) and 52(b) ................................................................................................................24, 25

1.    TREATISES

*Collier on Bankruptcy* (15th Ed.) ¶ 3.05[2] (2005)

Appellee Exide Technologies, f/k/a Exide Corporation ("Exide" or "Debtor"), by and through its undersigned counsel, hereby submits its Opposition to Appellants' Opening Brief on Appeal from Bankruptcy Court ("PDH Appeal") by Appellants Pacific Dunlop Holdings (USA), Inc. ("PDH (USA)") and Pacific Dunlop Holdings (Europe) Limited, P.D. International PTY Limited, Pacific Dunlop Holdings (Hong Kong) Limited and Pacific Dunlop Holdings (Singapore) PTE. LTD (the "the Foreign PDH Entities") (collectively, the "PDH Entities"), stating as follows:

## INTRODUCTION

The PDH Entities' arguments on appeal are fundamentally flawed in that they rest entirely upon the incorrect presumptions (1) that the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") lacked subject matter jurisdiction over the Foreign PDH Entities' claims and (2) that, contrary to the clear and unambiguous language of the contract governing the parties' business transactions (the "Coordinating Agreement"), the Foreign PDH Entities somehow have recourse against a party other than the sole indemnitor, the Debtor, Exide.

Indeed, it is undisputed that, in April 2003, the PDH Entities filed four Proofs of Claim against the Exide bankruptcy estate (incorporating claims asserted in prepetition state court litigation which the Debtor removed to the Bankruptcy Court) totaling approximately $20 million. By doing so, pursuant to the clear precedent of the United States Supreme Court and the United States Court of Appeals for the Third Circuit, the PDH Entities voluntarily submitted to the equitable jurisdiction of the Bankruptcy Court as a matter of law.

Nevertheless, in a blatant attempt to circumvent the bankruptcy process and place themselves ahead of other, similarly situated unsecured creditors of the Exide bankruptcy estate, in October 2003, the PDH Entities moved the Bankruptcy Court to remand and/or abstain from hearing their core matter claims and grant relief from the automatic stay to pursue those claims against the estate in a non-bankruptcy court. In denying the PDH Entities' motion to remand, the

Bankruptcy Court correctly ruled that, pursuant to the clear and unambiguous terms of the Coordinating Agreement,[2] the PDH Entities had agreed to limit their remedies against both Exide and certain of Exide's wholly-owned subsidiaries (the "Non-Debtor Entities") to indemnification solely against the Debtor, Exide. Applying the prevailing rules of contract interpretation under Illinois law, the Bankruptcy Court properly declined to hear the proffered live testimony of the PDH Entities' former trial counsel in the prepetition state court litigation as to the PDH Entities' intent behind the relevant contract language. Thus, over the PDH Entities improper objections, the Bankruptcy Court correctly ruled that all of the PDH Entities' claims—including the claims of the Foreign PDH Entities—were solely against the Debtor and, therefore, constituted "core"proceedings under 28 U.S.C. § 157(b)(2). Primarily on that basis, the Bankruptcy Court denied the PDH Entities' motion to remand and/or abstain from hearing the PDH Entities' prepetition claims, and entered an Order to that effect on December 15, 2003.[3]

On December 26, 2003, the PDH Entities moved the Bankruptcy Court to reconsider its ruling that the relevant terms of Coordinating Agreement were clear and unambiguous, and that the Court therefore should admit and consider extrinsic evidence in the form of two affidavits from the PDH Entities' attorneys allegedly involved in drafting the provisions. Following the clear precedent of the Illinois Supreme Court (the governing law of the Coordinating Agreement), the Bankruptcy Court correctly refused to admit the attorney affidavits and denied the PDH Entities' motion for reconsideration by Order entered on June 20, 2005.[4]

The PDH Entities now appeal the Bankruptcy Court's Orders denying remand and

---

[2] Coordinating Agreement, May 9, 2000, contained in Appellants' Appendix at A-0605 – 0649.

[3] Order Denying the Motion of the Pacific Dunlop Holdings Entities for Remand of State Law Action or, In the Alternative, for Abstention and for an Order Granting Relief from the Automatic Stay to Proceed to Liquidate Claim in State Court, Dec. 15, 2003 (docket no. 3325) (the "2003 Order") (A-0001 – 0002).

[4] Memorandum Opinion, entered June 20, 2005 (docket no. 5103) (the "2005 Mem."), at 1 (A-0005).

reconsideration. However, the PDH Entities' appeal lacks any merit and, accordingly, the District

Court should affirm the Bankruptcy Court's Orders for the following reasons:

- In April 2003, the PDH Entities voluntarily submitted to the equitable jurisdiction of
  the Bankruptcy Court by filing four Proofs of Claim wholly incorporating their
  claims from a prepetition lawsuit removed from the Illinois state court. Accordingly,
  the Bankruptcy Court correctly ruled that it had subject matter jurisdiction over the
  PDH Entities' claims as a core proceeding and that the forum selection clause in the
  Coordinating Agreement was inoperative.

- The Bankruptcy Court also correctly ruled that, pursuant to the clear and
  unambiguous terms of the Coordinating Agreement, the PDH Entities' remedies for
  indemnification would lie <u>solely</u> against the Debtor, Exide, and not against any of the
  Exide Non-Debtor Entities. Because the PDH Entities' claims were core
  proceedings directed against the Debtor—including the claims of the Foreign PDH
  Entities by virtue of filing their Proofs of Claim—the Bankruptcy Court did not
  abuse its discretion in denying the PDH Entities' remand motion.

- Pursuant to well-established Illinois law on contract interpretation, the Bankruptcy
  Court also correctly refused to consider the testimony of the PDH Entities' attorneys
  in interpreting the clear and unambiguous terms of the Coordinating Agreement and,
  consequently, did not abuse its discretion in denying the PDH Entities'
  reconsideration motion.

## STATEMENT OF RELEVANT FACTS

### The GNB Transactions

On July 17, 2001, the PDH Entities filed an initial complaint in the Circuit Court of Cook

County, Illinois (the "Illinois State Court"), against the Debtor, Exide, and the Exide Non-Debtor

Entities[5] alleging various counts relating to funds allegedly wrongfully retained by the Debtor and

the Non-Debtor Entities following the sale of the GNB Companies (the "Sweep Case"). On April

15, 2002, the Sweep Case and a second action filed by PDH USA solely against the Debtor (the

"LOC Case") (collectively, the "State Court Actions") were stayed automatically as a result of the

Debtor's voluntary petition for relief under Chapter 11 of the Bankruptcy Code filed in the

Bankruptcy Court. On August 21, 2002, the Debtor and the Non-Debtor Entities removed the

---

[5] The Exide Non-Debtor Entities are Exide Holding Europe, Exide Holding Asia Pte. Ltd., and Exide Singapore Pte.
Ltd.

State Court Actions to the United States Bankruptcy Court for the Northern District of Illinois (the

"Illinois Bankruptcy Court") and, by Order of the Honorable Susan P. Sonderby dated February 4,

2003, transferred the State Court Actions (and the PDH Entities' pending motion to remand the

State Court Actions to the Illinois State Court) to the United States Bankruptcy Court for the

District of Delaware (the "Bankruptcy Court"). In transferring the State Court Actions to the

Bankruptcy Court, Judge Sonderby found that

> [t]he Delaware Bankruptcy Court is obviously more familiar with the
> pending bankruptcy case and the time and resources required for its
> effective administration. It is more efficient and more consistent
> with the goals of the Bankruptcy Code if one court, familiar with the
> estate and the bankruptcy process, hears the action. The action itself
> is not in an advanced stage in any event. The parties have taken one
> deposition, and there has been one discovery dispute regarding the
> timing of third-party discovery. The defendants point out that any
> discovery that has been taken can be used in the Delaware court.
> The State Court has made only one substantive ruling regarding a
> motion to dismiss for failure to state a claim (and that without
> prejudice) and ruled on one discovery dispute involving the timing of
> third-party subpoenas.

Sonderby Opinion at 10-11 (A-0371 – 0372).[6] More importantly, Judge Sonderby recognized that

for the transferee court to resolve the PDH Entities' pending motion to remand, it first would have

to determine whether Section 4.2 ("Indemnification by Buyer") of the Coordinating Agreement

fixed liability arising from the GNB transactions solely upon the Debtor or extended that liability to

the Non-Debtor Entities. *Id.* at 7 (A-0368).

On April 22, 2003, the PDH Entities filed their four Proofs of Claim against the Debtor

totaling approximately $20 million, wholly incorporating the complaints filed by the PDH Entities in

the State Court Actions.[7] On October 3, 2003, the PDH Entities filed a new motion to remand the

---

[6] Memorandum Opinion, Adv. No. 02-A-01106 (Bankr. N.D. Ill. Feb. 4, 2003) (Sonderby, B.J.) (the "Sonderby Opinion"), at 10 – 11 (A-0371 – 0372); Order, Adv. No. 02-A-01106 (Bankr. N.D. Ill. Feb. 4, 2003) (Sonderby, B.J.) (the "Sonderby Order") (A-0361).

[7] Debtor's Opposition to Motion of Pacific Dunlop Holdings (USA) Inc., Pacific Dunlop Holdings (Europe) Ltd., P.D. Int'l PTY Ltd., Pacific Dunlop Holdings (Hong Kong) Ltd. and Pacific Dunlop Holdings (Singapore) PTE LTD for

State Court Actions to the Illinois State Court ("Remand Motion"),[8] and the Bankruptcy Court
heard argument on the Motion to Remand on November 19, 2003.

Among the issues the parties briefed and argued was whether Section 4.2 of the
Coordinating Agreement fixed liability for indemnification solely upon the Debtor or extended that
liability to the Non-Debtor Entities. Although there was no disagreement as to the essential facts in
dispute, the parties disagreed as to the interpretation of the relevant language of Section 4.2. The
PDH Entities argued that the definition of "Buyer" set forth in the Definitions Section of the
Coordinating Agreement, when applied to Section 4.2(a), should be read to include "International
Buyer" (*i.e.*, the Non-Debtor Entities), notwithstanding the clarifying language of Amendment No.
1.[9] Transcript of Hearing Held On 11/19/03 (docket no. 3293) (the "2003 Tr."), contained in the
Record, at 25, *et seq.* The Bankruptcy Court, however, correctly rejected the PDH Entities' improper
interpretation and, instead, reading the clear and unambiguous language of the relevant contract

---

Remand of State Law Action or, In the Alternative, for Abstention and for an Order Granting Relief from the
Automatic Stay to Proceed to Liquidate Claims in State Court filed by Exide Technologies, filed Oct. 27, 2003 (docket
no. 2942) ("Remand Opp."), contained in the Record on appeal (the "Record"), Ex. B (PDH (USA) Proof of Claim),
Ex. C (PDH (Europe) Proof of Claim), Ex. D (PDH (Hong Kong) Proof of Claim), and Ex. E (PDH (Singapore) Proof
of Claim).

[8] Motion of the PDH Entities for Remand of State Law Action or, in the Alternative, for Abstention and for an Order
Granting Relief from the Automatic Stay to Proceed to Liquidate Claim in State Court (A-0106-0307) (the "Remand
Motion"). Exide filed its Opposition (contained in the Record) on October 27, 2003.

[9] The relevant terms of Section 4.2 of the Coordinating Agreement are as follows:

    (a) Subject to Sections 4.2(b), 4.2(c), and 4.2(d), Buyer agrees to indemnify and hold Seller and the International
Sellers and their Affiliates harmless from and against any and all Losses and Expenses incurred by the Seller or the
International Sellers and their Affiliates in connection with or arising from:

        (i)      any breach by Buyer of any of its covenants or agreements in the Sale Agreements or in this
                   Agreement;
        (ii)     any breach of any warranty or the inaccuracy of any representation of Buyer contained in the Sale
                   Agreements, in each case without regard to "materiality" or Material Adverse Effect; or
        (iii)    any breach by Buyer of any covenant contained in Section 11.1 or Section 12.2 of the U.S. Agreement
                   or the corresponding provisions in the other Sale Agreements.

The relevant terms of Amendment No. 1 To Coordinating Agreement are as follows:

    3.       Section 4.2(a)(i) is hereby amended to insert the words "or, for sake of clarification, any International
             Buyer" after the word "Buyer" in the first line of such section.

Coordinating Agreement (emphasis added) (A-0633).

terms, held as follows:

> It seems to [me] that I do have to first reach a decision about whether there is ambiguity in the coordinating agreement. And it seems to me that, while Judge Sonderby points out that there may be ambiguity, I conclude as a matter of law that there is none. And that Exide is the sole Indemnitor under Section 4.2 and I reach this conclusion, largely as a result of Amendment number 1, where the parties specifically chose to include language which addressed the very issue of what the buyer should mean in that subsection, and it strikes me that there's no other reasonable inference to be drawn from the making of that amendment other than the parties intended to make that clarification with respect to section 4.2(a) small Roman "i", small Roman numeral 1. And specifically chose not to make that {quote} "clarification" with respect to any other part of section 4.2. That's why I make that conclusion. This results in making Exide solely liable for the asserted breaches, which are, in nature, whether they come in through the adversary, or by the filing of Proofs of Claim and counter claims thereto, clearly within the jurisdiction of the Court under 28 USC, Section 157(b)(2)(b) and (b)(2)(c).

2003 Tr. at 64-65. Based primarily upon the facts that the Coordinating Agreement fixed liability solely upon the Debtor and that the PDH Entities—including the Foreign PDH Entities—had submitted to the Bankruptcy Court by virtue of filing their Proofs of Claim against the Exide bankruptcy estate, the Bankruptcy Court properly denied the PDH Entities' Motion to Remand, holding, in relevant part:

> after taking into consideration all of those [remand/abstention] factors, I don't find that remand or abstention is warranted here. And primarily, the overriding consideration, in addition to all of those others that the parties have argued and the Debtor particularly has convincingly argued, is that the bankruptcy system is set up so that the Bankruptcy Court is supposed to be the primary, and sometimes exclusive, forum for the resolution of what are core proceedings. Which is why the Court is given discretion in certain matters to decide whether they should be heard or not. And in exercising that discretion, it seems to be with Exide as the sole Indemnitor, and with the nature of the claims that have been brought, that this forum ought to be the one where the issues are decided.

2003 Tr. at 66. On December 15, 2003, the Bankruptcy Court entered the 2003 Order, embodying its ruling on the record.

At the November 19, 2003 hearing, the PDH Entities attempted to proffer the live testimony of Linda Woolf, Esq., the PDH Entities' trial counsel during the State Court Actions, as to what the PDH Entities meant by the indemnification language in the Coordinating Agreement. 2003 Tr. at 9, 21. The Bankruptcy Court, however, correctly refused to admit Ms. Woolf's testimony because it held that the relevant language in Section 4.2 of the Coordinating Agreement, as modified by Amendment No. 1, was clear, unambiguous and amenable to interpretation by the Court as a matter of law and that, therefore, Ms. Woolf's testimony was not warranted or admissible extrinsic evidence. 2003 Tr. at 22-24.

The PDH Entities moved to reconsider the 2003 Order, urging the Bankruptcy Court "to reconsider its decision not to consider any extrinsic evidence, its apparent decision that there was not even a latent ambiguity in the agreements at issue between the parties, and its narrow interpretation of a portion of Amendment No. 1 to the Coordinating Agreement, without due regard to the agreements between the parties as a whole."[10]    In their Motion for Reconsideration, the PDH Entities attempted to introduce, for the first time, the affidavits of two additional PDH attorneys who participated in drafting the Coordinating Agreement (James McDonough, the PDH Entities' outside counsel, and Martin Hudson, the PDH Entities' in-house counsel) "addressing the matter of the interpretation of the Coordinating Agreement, as well as the legal grounds upon which the court should consider those affidavits."[11]    Among other arguments, the PDH Entities asserted, for the first time, that the relevant language in the indemnification provisions of the Coordinating Agreement allegedly was the product of a "mutual mistake."

After further extensive briefing and oral argument on January 22, 2004, the Bankruptcy

---

[10] Motion of the Pacific Dunlop Holdings Entities for Reconsideration of Order Denying Their Motion to Remand or for Abstention and Stay Relief, And Dismissing Their Causes of Action Against the Non-Debtor, Foreign Exide Entities, filed Dec. 26, 2003 (docket no. 3385) ("Recon. Motion"), at 2 (A-0018).

[11] Appellants' Opening Brief on Appeal From Bankruptcy Court, filed February 13, 2006 (the "PDH Appeal"), at 6.

Court issued its Memorandum and Order denying the Motion for Reconsideration, ruling, in

relevant part:

> In the case at bar, the use of the term "Buyer" in Section 4.2(a) of the
> Coordinating Agreement is not ambiguous. "A contract term is
> ambiguous when it may reasonably be interpreted in more than one
> way." [citation omitted] If Section 4.2(a) <u>may</u> have been ambiguous
> as to whether, in its various clauses, the context supported a broad
> definition of "Buyer" to include the Non-Debtor Entities, any
> uncertainty was resolved by Amendment No. 1 to the Coordinating
> Agreement. By virtue of Amendment No. 1, the parties specifically
> and deliberately carved out only one clause of Section 4.2(a) to
> "clarify." The other parts of Section 4.2(a) remained unchanged.
> Therefore, the only reasonable inference that arises from
> Amendment No. 1, is that the parties intended that the term "Buyer,"
> as used in the remainder of Section 4.2(a), means only Exide
> Corporation.
>
> * * *
>
> Because the Coordinating Agreement is unambiguous and includes
> an integration clause, the "four corners" rule applies to this case and
> extrinsic evidence is not admissible to alter or vary its terms.

2005 Mem. at 9-11 (emphasis added) (A-0013 – 0015).

The PDH Entities now appeal the Orders of the Bankruptcy Court: (1) denying remand

and/or abstention with respect to the State Court Actions; and (2) denying reconsideration of the

Bankruptcy Court's ruling that the Coordinating Agreement was clear and unambiguous, and that

extrinsic evidence therefore should not be admitted. For the following reasons, the PDH Entities'

appeal should be denied and the Bankruptcy Court's rulings should be affirmed.

**ARGUMENT**

**I.    APPELLANTS DO NOT, BECAUSE THEY CANNOT, ESTABLISH THAT THE
BANKRUPTCY COURT ABUSED ITS DISCRETION IN DENYING
APPELLANTS' MOTIONS TO REMAND OR FOR RECONSIDERATION**

Appellants have appealed both the underlying December 15, 2003 Order of the Bankruptcy

Court denying their Motion to Remand, as well as the June 20, 2005 Order denying their Motion for

Reconsideration. Appellants, however, fall far short of showing that the Bankruptcy Court in any

way abused its discretion in denying Appellants' Motions to Remand or for Reconsideration.

Generally, upon reviewing a bankruptcy court's decisions, the District Court "'review[s] the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof.'" *In re General Datacomm. Indus., Inc.*, 407 F.3d 616, 619 (3d Cir. 2005)(*quoting In re Trans World Airlines, Inc.*, 145 F.3d 124, 130-31 (3d Cir. 1998)(further citation omitted)); *see also* Fed.R.Bankr.P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.").[12]

Following these principles, district courts have applied the highly deferential abuse of discretion standard when reviewing bankruptcy court decisions denying motions to reconsider. *See, e.g., Marta Group, Inc. v. County Appliance Co., Inc.*, 79 B.R. 200, 205 (E.D. Pa. 1987)("The standard of review of a bankruptcy judge's denial of a motion for reconsideration is whether the bankruptcy judge abused his discretion.")(citation omitted). Similarly, the abuse of discretion standard applies to bankruptcy court decisions on motions for equitable remand under 28 U.S.C. § 1452(b) and discretionary abstention under 28 U.S.C. § 1334(c)(1). *See, e.g., In re McCarthy*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999) (equitable remand "is committed to the sound discretion of the bankruptcy judge," "the standard of review is abuse of discretion") (citation omitted); *Gober v. Terra Corp. (In re Gober)*, 100 F.3d 1195, 1207 (5th Cir. 1996) (applying abuse of discretion standard to review of bankruptcy court's denial of discretionary abstention); *In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 256 (Bankr. D.Md. 1998) ("a bankruptcy judge's decision to remand, like other discretionary decisions, is reviewable only for abuse of discretion"). Under this highly deferential standard of

---

[12] PDH Entities assert that "there were no factual findings by the bankruptcy court" and that, therefore, the "clear error" standard is inapplicable to this appeal. PDH Appeal at 1. However, the Bankruptcy Court clearly stated in conjunction with its June 2005 Order denying reconsideration that "[t]his Memorandum constitutes the *findings of fact* and conclusions of law required by Fed.R.Bankr.P. 7052." 2005 Mem. at 1 (A-0005) (emphasis added). Thus, to the extent that the Bankruptcy Court's rulings rest upon findings of fact, the "clear error" standard is applicable to this appeal.

review, the reviewing court "must affirm if [it] can find any plausible basis that would support the [lower] court's exercise of discretion to remand." *McCarthy*, 230 B.R. at 417-18 (emphasis added).

As set forth below, the Bankruptcy Court correctly denied both the PDH Entities' Motions to Remand and for Reconsideration on the law and the facts. Thus, it is clear that the Bankruptcy Court's rulings at issue in this appeal must be affirmed not only under the *de novo* standard, but also the highly deferential abuse of discretion standard of review. Accordingly, the PDH Entities' appeal is without merit and the Bankruptcy Court's rulings should be affirmed.

## II.    THE BANKRUPTCY COURT CORRECTLY RULED THAT IT HAD SUBJECT MATTER JURISDICTION OVER *ALL* OF THE PDH ENTITIES' CLAIMS AND THAT THE CLAIMS WERE CORE PROCEEDINGS

Pursuant to the clear holdings of the United States Supreme Court and the United States Court of Appeals for the Third Circuit, the Bankruptcy Court correctly ruled that the PDH Entities voluntarily and irrevocably submitted to the equitable jurisdiction of the Bankruptcy Court, that the PDH Entities' claims are "core" proceedings under 28 U.S.C. § 157(b)(2), and that the PDH Entities waived their right to a jury trial as to all of their claims, including all of the state law claims that the Foreign PDH Entities "conditionally" asserted against the Debtor, Exide, in their Proofs of Claim. The PDH Entities' contention that they somehow did not consent to have their claims heard and decided by the Bankruptcy Court by filing their four Proofs of Claim inexplicably ignores this fundamental jurisprudence.

### A.    By Filing their Proofs of Claim in the Exide Chapter 11 Case, the PDH Entities Voluntarily Submitted to the Equitable Jurisdiction of the Bankruptcy Court for the Resolution of their Claims

On April 22, 2003, the PDH Entities filed four Proofs of Claim against the property of the Exide bankruptcy estate totaling approximately $20 million, virtually all of which consisted of the very same claims that the PDH Entities asserted in the removed State Court Actions against Debtor Exide and the Non-Debtor Entities. *See* n.7, *supra*. Indeed, each Proof of Claim, including those

filed by the three Foreign PDH Entities (Europe, Hong Kong and Singapore), attached and incorporated a file-stamped copy of the Sweep Case complaint, which named the Debtor and the Exide Non-Debtor Entities as defendants. *See id.* Moreover, of the total $20 million in claims asserted by the PDH Entities, PDH's counsel conceded during oral argument that the claims asserted by PDH (USA)—approximately $12 million, or sixty percent of the total $20 million claimed—were directed solely against the Debtor, and that those claims were "core" matters to be decided by the Bankruptcy Court:

> PDH's COUNSEL:    Your Honor, there's a key issue here which was very much intentionally submerged by the Debtors in their responding brief by blending everything together under that Proof of Claim argument. The Proofs of Claim are only against Exide Corporation, the Debtor.
>
> THE COURT: That's only who they could be against.
>
> PDH's COUNSEL:    Your Honor, we would concede that the claims of—first of all, PDH USA only has claims against Exide Corp., the Debtor. We would concede that those are core claims.

2003 Tr. at 12 – 13.; *see also* Remand Motion at 4 (A-0109); PDH Appeal at 19, n.35. Thus, of the total $20 million in claims, the PDH Entities opposed the Bankruptcy Court's jurisdiction as to just $8 million, or forty percent of the total amount claimed, representing the claims of the Foreign PDH Entities. However, even as to those claims, the Bankruptcy Court correctly ruled that it has subject matter jurisdiction by virtue of the fact that the Foreign PDH Entities asserted those claims against the Exide bankruptcy estate in their three Proofs of Claim.

By definition, a proof of claim is a "core" matter because it invokes the claims allowance process which "could arise only in the context of bankruptcy."[13] *In re Wood*, 825 F.2d 90, 97 (5th Cir.

---

[13] For a proceeding to be "core," it must fall within one of the non-exclusive enumerated categories under 28 U.S.C. § 157(b)(2) and must "'invoke[ ] a substantive right provided by title 11'" or be "'a proceeding that, by its very nature, could arise only in the context of a bankruptcy case.'" *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999)(quoting *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996))(additional citations omitted). Here, as the Bankruptcy Court correctly ruled, the PDH Entities' claims against the Exide bankruptcy estate, including those asserted in the State Court

1987).  As the United States Court of Appeals for the Fifth Circuit held:

> A claim against the estate is instituted by filing a proof of claim as
> provided by the bankruptcy rules.  The filing of the proof invokes the
> special rules of bankruptcy concerning objections to the claim,
> estimation of the claim for allowance purposes, and the rights of the
> claimant to vote on the proposed distribution.  <u>Understood in this
> sense, a claim filed against the estate is a core proceeding because it
> could arise only in the context of bankruptcy.</u>  Of course, the state-
> law right underlying the claim could be enforced in a state court
> proceeding absent the bankruptcy, but the nature of the state
> proceeding would be different from the nature of the proceeding
> following the filing of a proof of claim.

*Id.* (emphasis added)(internal citations omitted).  Indeed, as the United States Supreme Court has

held, it is axiomatic that filing a proof of claim triggers the claims allowance process under 11 U.S.C.

§ 501 *et seq.*, which, by its very nature, is a "core" proceeding that can arise <u>only</u> in a title 11 case.  *See*

*Langenkamp v. Kulp*, 498 U.S. 42, 44 (1990)("[B]y filing a claim against a bankruptcy estate the

creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to

the bankruptcy court's equitable power.")(*citing Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 &

n.14 (1989)); *see also Billing v. Ravin, Greenburg & Zackin, P.A.*, 22 F.3d 1242, 1251 (3d Cir. 1994), *cert.*

*denied*, 507 U.S. 1051 (1993)("The reason a creditor loses its jury right by filing a proof of claim is

because its action not only voluntarily submits it to the jurisdiction of the bankruptcy court but also

triggers the claims-allowance process, as described in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15

L.Ed.2d 391 (1966)); *In re Continental Airlines*, 125 F.3d 120, 131 (3d Cir. 1997)("There can be no

dispute that the issue as to whether the bankruptcy claim could be satisfied by a monetary award is a

'core bankruptcy matter.'  By filing a proof of claim against Continental's estate in bankruptcy court,

the Claimants 'invoke[d] the special rules of bankruptcy concerning objections to the claim, [and]

estimation of the claim.'")(*quoting In re Wood*, 825 F.2d at 97); *In re HQ Global Holdings, Inc.*, 293 B.R.

---

Actions, fall within the definition of a core proceeding set forth in § 157(b)(2)(B), which concerns the "allowance or
disallowance of claims against the estate..."  28 U.S.C. § 157(b)(2)(B).

839 (Bankr. D.Del. 2003)(creditor which initially had filed federal district court action for damages against the debtor submitted to the core jurisdiction of the bankruptcy court by filing a proof of claim).

Applying this well-established authority, Judge Carey correctly ruled that the PDH Entities— including the Foreign PDH Entities—waived any objection they may have had to the subject matter jurisdiction of the Bankruptcy Court when they filed their four Proofs of Claim, thereby invoking the bankruptcy claims resolution process:

> I think I have to tell you at the outset that it's clear to me that by virtue of the filing of the Proofs of Claim that in large measure the matters before me are core, and as a consequence, and as some of the cases also discuss, any right to jury trial has been waived.

2003 Tr. at 11. Thus, when the Foreign PDH Entities filed their three Proofs of Claim against the Exide bankruptcy estate, they not only irrevocably consented to have their claims heard and decided by the Bankruptcy Court, but also waived any right they may have had to a jury trial.[14]

---

[14] Even assuming *arguendo* that the PDH Entities had not filed their Proofs of Claim against the Exide bankruptcy estate, the Bankruptcy Court still had subject matter jurisdiction over the removed State Court Actions as "core" matters under 28 U.S.C. §157(b)(2)(B). Indeed, this Circuit has held that where, as here, a creditor's state law claim against the estate stems from a prepetition action against the debtor in a non-bankruptcy court, a bankruptcy court may hear and determine that claim as a "core" proceeding. *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1207, n.12 (3d Cir. 1991)("A suit for damages pending against a debtor in a non-bankruptcy court when the debtor files his petition, becomes a 'claim' for bankruptcy purposes and may be liquidated by the bankruptcy court in a core proceeding without any final determination of the action by the non-bankruptcy court.")(*citing In re Meyertech Corp.*, 831 F.2d 410, 417-18 (3d Cir. 1987)); *Meyertech*, 831 F.2d at 417 (holding that creditor's claims against the debtor for breach of warranty from prior state court lawsuit was a core proceeding falling within § 157(b)(2)(B)). *See also In re McLaren*, 990 F.2d 850 (6th Cir. 1993)(holding that a third party creditor's action for money damages against the debtor constituted a core proceeding under § 157(b)(2)(B)); *In re Bixfon, Inc.*, No. 01-12547-JMD, 2002 WL 181975 (Bankr. D.N.H. Jan. 29, 2002)(holding that creditor's prepetition state court action against debtor removed to district court and then transferred to bankruptcy court was core matter within § 157(b)(2)(B) even though basis for suit was prepetition contract claim, and that remand motion should be denied); *In re RBGSC Investment Corp.*, 240 B.R. 536 (Bankr. E.D.Pa. 1999)(holding that creditor's prepetition state court action against debtor removed to bankruptcy court as adversary proceeding was, in substance, a proof of claim, and therefore core matter, and that remand motion should be denied); *In re Micro Design, Inc.*, 120 B.R. 363 (E.D.Pa. 1990)(holding that creditor's prepetition state court action against debtor removed to bankruptcy court was core proceeding within § 157(b)(2)(B) because "[i]t states a claim against the Debtor" even though claims based entirely on state law, and that remand and relief from automatic stay motions should be denied; but holding that *debtor's* prepetition state court counteraction against creditor was non-core proceeding because it was personal injury tort within § 157(b)(5)); *Glassel v. Allegheny Int'l Credit Corp.*, 111 B.R. 495 (W.D.Pa. 1990)(holding that creditor's counterclaim against debtor raised in prepetition state court action that was removed to bankruptcy court was core proceeding within § 157(b)(2)(B), denying withdrawal of reference and abstention motions); *Matter of L.B. Trucking, Inc.*, 90 B.R. 81 (Bankr. D.Del. 1988)(holding that creditor's state court action against debtor removed to bankruptcy court was core proceeding within § 157(b)(2)(B), and that debtor's counterclaim against creditor also was core proceeding under § 157(b)(2)(C)).

Attempting to undo their election of the Bankruptcy Court's jurisdiction over their claims, the Foreign PDH Entities argued that they had preserved their right to object to the subject matter jurisdiction of the Bankruptcy Court by inserting "protective" language into their Proofs of Claim stating that their claims were "contingent" upon the "appropriate court determin[ing] that the Debtor [Exide] is the sole indemnitor" under the Coordinating Agreement. *See* n.7, *supra.*; PDH Motion at ¶ 22. However, as the United States Court of Appeals for the Third Circuit held, citing well-established Supreme Court precedent, such "protective" or "contingent" language is of no effect; once a proof of claim is filed, the claimant irrevocably submits to the equitable jurisdiction of the Bankruptcy Court:

> The Supreme Court's holdings in *Granfinanciera* and *Langenkamp* leave no doubt that the equitable jurisdiction of the bankruptcy court is <u>exclusive</u> when its jurisdiction has been invoked by the filing of a claim. Where, as in this case, a creditor has filed a claim, <u>even though the claim is couched in protective language and is contingent,</u> that creditor has submitted to the bankruptcy court's equitable jurisdiction and waived any Seventh Amendment right to a jury trial.

*Travellers Int'l AG. v. Robinson*, 982 F.2d 96, 99-100 (3d Cir. 1992), *cert. denied*, 507 U.S. 1051 (1993)(citing *Langenkamp*, 498 U.S. at 43-44 (citing *Granfinanciera*, 492 U.S. at 58-59))(emphasis added); *see also In re Asousa P'ship*, 276 B.R. 55, 67-8 (Bankr. E.D.Pa. 2002)(refusing to abstain from hearing debtor's removed prepetition state court action and counterclaim where creditor filed "protective" proof of claim and submitted to equitable jurisdiction of bankruptcy court).

It also is irrelevant that the Foreign PDH Entities' Proofs of Claim incorporate prepetition claims exclusively arising under state law; the mere presence of state law claims does not convert what is a core to a non-core matter. *See In re S.G. Phillips Constr., Inc.*, 45 F.3d 702, 705 (2d Cir. 1995)("[W]hen a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, <u>even if it was a prepetition contract claim arising under state law.</u>")(citing *In re*

*Manville Forest Products Corp.*, 896 F.2d 1384, 1389-90 (2d Cir. 1990)(emphasis added)). *See also* 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."); *In re HQ Global Holdings*, 293 B.R. at 842 ("The Bankruptcy Court is not deprived of its core jurisdiction over a claim simply because that claim must be decided under state law.")(*citing* 28 U.S.C. § 157(b)(3)).

Thus, it is clear that the PDH Entities—including the three Foreign PDH Entities—irrevocably submitted to the equitable jurisdiction of the Bankruptcy Court as a matter of law and waived their right to a jury trial as to <u>all</u> of their claims by filing their Proofs of Claim. The Bankruptcy Court, therefore, was correct in ruling that it had subject matter jurisdiction over the removed State Court Actions as "core" proceedings under 28 U.S.C. § 157(b)(2)(B) and (C), which provide core jurisdiction over the allowance of claims against the estate and any counterclaims thereto.

### B.    The PDH Entities Ignore the Overwhelming Weight of Authority Establishing that They Submitted to the Equitable Jurisdiction of the <u>Bankruptcy Court By Filing Their Proofs of Claim</u>

The PDH Entities devote one paragraph of their 36-page brief (on page 18) to the subject of their Proofs of Claim. They assert that "the fact that the PDH Entities filed proofs of claim against the *Debtor* is immaterial." PDH Appeal at 18. Nothing can be further from the truth.

As set forth above, by filing their Proofs of Claim incorporating the same complaints filed in the State Court Actions, the PDH Entities consented to have their claims heard and resolved by the Bankruptcy Court. Moreover, the fact that the Foreign PDH Entities included "protective" language averring that their claims were "contingent" upon a finding that Exide was the "sole indemnitor" under the Coordinating Agreement is of no consequence or effect; by filing their Proofs of Claim they impliedly and irrevocably consented to the Bankruptcy Court's "exclusive" jurisdiction to hear and decide their claims as a matter of law. *Travellers Int'l AG.*, 982 F.2d at 99-

100, *cert. denied*, 507 U.S. 1051 (1993)(citations omitted). Thus, the PDH Entities' assertion that "[w]hile PDH USA's proof of claim, and the PDH Foreign Entities' contingent proofs of claim, would affect whether those entities would be deemed to have 'accepted' the equitable jurisdiction of the bankruptcy court so as to waive a jury trial right in claims by or against the Debtor [citation omitted], it is not a factor in the standard for determining the 'related to' status of their causes of action against *non*debtors," PDH Appeal at 18, is plainly contrary to the controlling law on this issue. *See Travellers*, 982 F.2d at 99-100. The Foreign PDH Entities filed Proofs of Claim against the Debtor and therefore consented to the Bankruptcy Court's exclusive jurisdiction over those claims as "core" proceedings notwithstanding any characterization of those claims as "contingent." Accordingly, it was well within the Bankruptcy Court's "core" matter jurisdiction to determine the extent of possible liability under the Coordinating Agreement against the Debtor for purposes of ruling on the PDH Entities' Motion to Remand.

Moreover, the sole authority upon which the PDH Entities rely for their proposition above—*Steinman v. Spencer (In re Argus Group, Inc.)*, 206 B.R. 737 (Bankr. E.D.Pa. 1996), *aff'd*, 206 B.R. 757 (E.D. Pa. 1997)—actually reinforces the Bankruptcy Court's exercise of "core" matter jurisdiction over the PDH Entities' claims. PDH Appeal at 18. Although, as the PDH Entities state, the court in *Steinman* held that "filing of the proofs of claim did not transform the removed state court litigation into a core proceeding," PDH Appeal at 18, the *Steinman* court expressly based its ruling on the fact that the claimant's proofs of claim did not raise the same claims as asserted in the claimant's state court litigation:

> While Debtors do not dispute Steinman's [the claimant's]
> characterization of the claims which he raised in State Court as purely
> state law causes of action, they contend that because he filed Proofs
> of Claim involving the same claims, he transformed his pre-petition
> state law causes of action against Phoenix [a debtor] into a core
> proceeding arising under Title 11. They base this assertion on §
> 157(b)(2)(B) of the Code which provides that core proceedings
> include 'allowance or disallowance of claims against the estate[.]'

**Debtors' proposition that the filing of a proof of claim in bankruptcy transforms a prepetition state law claim which was filed in state court before the bankruptcy into a core proceeding is sound**. *See, e.g., S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips)*, 45 F.3d 702 (2d Cir. 1995); *Livesey v. Kates (In re Mazzocone)*, 1993 WL 340942 (Bankr. E.D.Pa. 1993). **However, this result only obtains where the proof of claim raises the same claims as the state law action**. *See St Vincent's Hospital v. Norrell (In re Norrell)*, 198 B.R. 987, 993-994 (Bankr. N.D.Ala. 1996)(since the factual basis of creditor's proof of claim is the same as the removed cause of action which the creditor originally filed against the debtor pre-petition and the debtor disputes the validity of the creditor's claim, the removed proceeding involves the allowance and disallowance of a claim against the estate and it constitutes a core proceeding). **Here the Steinman Proofs of Claim do not raise the same claims as those involved in the Steinman Litigation and accordingly, their filing does not convert the Steinman Litigation into a core proceeding**.

*Steinman*, 206 B.R. at 747-748 (emphasis added).

In stark contrast to *Steinman*, the PDH Foreign Entities' claims against Exide not only "raise the same claims as those involved [in the State Court Actions]," *Id.* at 748, but are *exactly* the same because the Proofs of Claim, themselves, attach and incorporate the very complaint filed by the PDH Foreign Entities in the State Court Actions—specifically, the Sweep Case. *See* Remand Opp., Exs. B, C, D, and E. Thus, far from supporting the PDH Entities' argument, *Steinman* erases any doubt that the Foreign PDH Entities converted their State Court Action claims into core proceedings when they filed their Proofs of Claim in Exide's chapter 11 case.

### C.    The PDH Entities Base Their Challenge to the Bankruptcy Court's Subject Matter Jurisdiction upon Inapplicable Standards

The PDH Entities assume throughout their brief that the State Court Action claims of the Foreign PDH Entities "are *not*, on their face, claims against the estate," and that it therefore "does not matter that the bankruptcy court concluded that the PDH Foreign Entities do not have recourse against the nondebtor Exide entities, since the bankruptcy court lacked the requisite authority to

render that conclusion."[15] PDH Appeal at 20.  Of course, the fundamental flaw in that reasoning is that the Foreign PDH Entities, in fact, did assert their State Court Action claims against the Debtor by filing their three (albeit "contingent") Proofs of Claim against the Exide bankruptcy estate, thereby consenting to the jurisdiction of the Bankruptcy Court for the resolution of those claims.  It therefore was well within the Bankruptcy Court's "core" matter jurisdiction to determine the extent of possible liability under the Coordinating Agreement against the Debtor for purposes of ruling on the PDH Entities' Motion to Remand, which is precisely what the Bankruptcy Court did in deciding to deny the Motion to Remand.

Nevertheless, the PDH Entities assert from the outset of their argument that the Foreign PDH Entities' claims not only are not "core" matters under 28 U.S.C. § 157(b)(1), but also do not meet the standard for "related to" jurisdiction under 28 U.S.C. § 157(c)(1).  PDH Appeal at 15.  The PDH Entities begin by identifying *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004) as the controlling standard for "related to" jurisdiction (by-passing altogether the central jurisdictional issue—the Bankruptcy Court's ruling that the PDH Entities' claims are "core" proceedings).  However, even as to the PDH Entities' "related to" jurisdictional argument, it is obvious that the PDH Entities are employing an inapplicable standard.

There is no dispute that *In re Resorts Int'l* is the appropriate Third Circuit standard for "related to" jurisdiction once a plan of reorganization is confirmed.  However, as is evident from a plain reading of that case, that standard applies only to actions filed in a bankruptcy court after a chapter 11 plan of reorganization is confirmed.  The rationale for applying a more restricted standard for "related to" jurisdiction in the post-confirmation period is that a post-confirmation dispute brought in a bankruptcy court case is far less likely to impact the bankrupt debtor's estate because "the

---

[15] The PDH Entities' reliance on *In re Asouza P'ship*, 264 B.R. 376, 391 (Bankr. E.D.Pa. 1991), for this proposition is misplaced.  *In re Asouza* concerns a bankruptcy court ruling on "related to" jurisdiction where, unlike here, no proofs of claim were filed.

debtor's estate ceases to exist once confirmation has occurred." *In re Resorts Int'l*, 372 F.3d at 165 (citation omitted). As the Third Circuit explained, the more restricted "related to" standard is "particularly relevant to situations involving continuing trusts, like litigation trusts, where the plan has been confirmed, but former creditors are relegated to the trust res for payment on account of their claims." *Id.*, 372 F.3d at 167. Thus, it makes sense that bankruptcy courts applying this standard have done so in actions filed by <u>post</u>-confirmation trusts, just as in the underlying case brought by the trustee of a plan-created litigation trust in *In re Resorts Int'l*. *See In re Insilco Technologies, Inc.*, 330 B.R. 512 (Bankr. D.Del. 2005)(adversary proceeding brought by trustee of plan-created liquidating trust); *In re Astropower Liquidating Trust*, 335 B.R. 309 (Bankr. D.Del. 2005)(same).

Obviously, such is not the case where, as here, the PDH Entities filed their pre-petition claims in 2001 in a state court and subsequently filed those claims against the Exide bankruptcy estate. To suggest, as the PDH Entities do, that the mere passage of time since filing their pre-petition claims somehow converts the jurisdictional standard to one which applies only to cases filed after plan confirmation reflects a fundamental misunderstanding or misstatement of the case law and the bankruptcy court's jurisdiction. *See* PDH Appeal at 16. ("[*In re Resorts*] is especially significant because the 2005 Opinion and 2005 Order were issued more than a year after Exide's Plan had been confirmed."). Needless to say, the PDH Entities' analysis of "related to" jurisdiction is irrelevant in any event because, as set forth above, <u>all</u> of the PDH Entities' claims—including those asserted against the Debtor by the Foreign PDH Entities—are "core" proceedings over which the Bankruptcy Court has subject matter jurisdiction.[16]

---

[16] Even assuming *arguendo* that the PDH Entities had not filed their Proofs of Claim against the Exide bankruptcy estate, the Bankruptcy Courtstill would have had subject matter jurisdiction over their claims as "core" proceedings under 28 U.S.C. § 157(b)(2)(B) because they are "in substance a proof of claim against [the debtor]" and the mere "presence of non-debtor defendants does not prevent a state court action from amounting to a proof of claim against the estate," particularly where, as here, "the links between and among the various parties, including the state court plaintiffs and the debtor and non-debtor defendants, are so intertwined by virtue of the many agreements defining these relationships." *In re RBGSC Inv. Corp.*, 253 B.R. 369, 379 (E.D. Pa 2000)(*citing In re Labrum & Doak, LLP*, 1999 WL 138875 at *6-*9 (Bankr. E.D. Pa March 11, 1999)).

Accordingly, the PDH Entities' challenge to the Bankruptcy Court's 2003 Order ruling that the PDH Entities' claims were "core" proceedings over which the Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(b)(2)(B) and (C) is without merit and should be denied.

## III.    THE BANKRUTPCY COURT CORRECTLY RULED THAT BECAUSE THESE PROCEEDINGS ARE CORE, THE FORUM SELECTION CLAUSE IS INOPERATIVE

By filing their Proofs of Claim, the PDH Entities chose their forum for the resolution of the State Court Actions—the Bankruptcy Court. Thus, the Bankruptcy Court correctly ruled that, pursuant to well-established law holding that forum selection clauses are not presumptively valid and enforceable in a core bankruptcy proceeding, the PDH Entities' claims—including the claims asserted by the Foreign PDH Entities against the Exide bankruptcy estate—should be heard and determined by the Bankruptcy Court.

As the PDH Entities assert, PDH Appeal at 29, a forum selection clause is "presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983) (*citing M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10-11 (1972)), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989). This rule has been applied by the Third Circuit Court of Appeals to enforce forum selection clauses in non-core bankruptcy proceedings. *In re Diaz Contracting, Inc.*, 817 F.2d 1047 (3d Cir. 1987)(enforcing forum selection clause in non-core bankruptcy proceeding). Though the PDH entities correctly point out that in non-core proceedings, bankruptcy courts typically have held that the "public policy favor[ing] centralization of bankruptcy proceedings in the bankruptcy court ... 'is not so strong as to mandate that forum selection clauses be abandoned...'" PDH Appeal at 29-30 (*quoting In re Parent,*

*Inc.*, 221 B.R. 609, 620 (Bankr. D.Mass. 1998)), they fail to mention that the same bankruptcy courts

that have enforced forum selection clauses in <u>non-core</u> proceedings also have <u>refused</u> to enforce

forum selection clauses in <u>core</u> proceedings where, as here, strong public policy issues favoring

centralization in bankruptcy courts predominate:

> <u>Retaining core proceedings in this Court, in spite of a valid forum</u>
> <u>selection clause, promotes the well-defined policy goals of</u>
> <u>centralizing all bankruptcy matters in a specialized forum to ensure</u>
> <u>the expeditious reorganization of debtors.</u> [*Societe Nationale Algerienne*
> *Pour la Recherche v. Distrigas Corp.*, 80 B.R. 606, 610 (D.Mass. 1987).]
> By enforcing the forum selection clause in non-core, related claims,
> where the public policy concerns are less clear, this Court also
> upholds the parties' right to contractually decide where to litigate
> their pre-petition contractual disputes.  As a result, <u>only those claims</u>
> <u>which are deemed to be core bankruptcy issues can remain in this</u>
> <u>Court;</u> all non-core claims should be transferred or dismissed to give
> effect to the parties forum selection clause.

*Parent*, 221 B.R. at 622 (emphasis added).  Similarly, other courts have refused to enforce forum

selection clauses in core proceedings.  *See, e.g., In re Iridium Operating LLC*, 285 B.R. 822, 837

(S.D.N.Y. 2002)(refusing to enforce forum selection clause and transfer adversary proceeding where

matter is core); *In re Commodore Int'l Ltd.*, 242 B.R. 243, 261 and n.9 (Bankr. S.D.N.Y. 1999)(also

refusing to enforce forum selection clause and transfer adversary proceeding where matter is core,

distinguishing *Diaz* as applying to non-core matters).[17]

    Although the Third Circuit Court of Appeals has not addressed this precise issue, in *In re*

*Diaz*, cited by the PDH Entities, *see* PDH Appeal at 29, the Court recognized that its holding in

*Coastal Steel* was limited to the <u>non-core</u> context, suggesting that forum selection clauses may be

<u>un</u>enforceable in core bankruptcy proceedings:

---

[17] *See also In re Bennet Funding Group, Inc.*, 259 B.R. 243, 252 (N.D.N.Y. 2001)("[T]he Court is loathe to transfer a
bankruptcy action pursuant to a forum selection clause when the majority of the matters alleged constitute core
proceedings under the bankruptcy code."); *In re Mercury Masonry Corp.*, 114 B.R. 35 (Bankr. S.D.N.Y. 1990)(refusing to
enforce forum selection clause and transfer core proceeding in which creditor filed proof of claim "which must be either
allowed or disallowed by this court"); *In re Wheeling-Pittsburgh Steel Corp.*, 108 B.R. 82, 85 (Bankr. W.D.Pa. 1989)(refusing
to enforce forum selection clause and transfer core matter concerning "disputed claim" against estate on grounds of
public policy and inconvenience); *In re Ellwood City Iron & Wire Co.*, 59 B.R. 53, 54-5 (Bankr. W.D.Pa. 1986)(same).

> [Debtor] has asserted that the adversary proceeding that is the subject
> of this opinion is a 'core' bankruptcy proceeding and that Congress
> could not have intended to permit contractual forum selection
> clauses to override the policy of the Bankruptcy Code to concentrate
> core bankruptcy proceedings in the bankruptcy court in order to
> effectuate the Congressional purpose of speedy rehabilitation of the
> debtor. *This argument is not foreclosed by our decision in Coastal
> Steel.* In view of the fact, however, that the controversy at issue here
> is plainly a "non-core" bankruptcy proceeding, one that could have as
> easily been instituted in a state court as well as a district court, *see In
> Re: Colorado Energy Supply*, 728 F.2d 1283, 1286 (10th Cir. 1984), we
> need not address this question.

*Diaz*, 817 F.2d at 1051, n.9 (emphasis added). [18]

Nevertheless, just like *In re Diaz*, the only cases that the PDH Entities cite in support of

enforcing the Coordinating Agreement's forum selection clause clearly are inapposite because those

cases involved enforcement of forum selection clauses in <u>non-core</u> matters. *See, e.g., Parent*, 221 B.R.

at 628 (court unable to exercise jurisdiction over <u>non-core</u> claims based on forum selection clause);

*In re Kamine/Besicorp Alleghany, L.P.*, 214 B.R. 953 (Bankr. D.N.J. 1997)(enforcing forum selection

clause in <u>non-core</u> matter); *Envirolite Enterprises, Inc. v. Glastechniche Industrie Peter Lisec Gesellschaft

M.B.H.*, 53 B.R. 1007 (S.D.N.Y. 1985)(same).

Thus, contrary to the PDH Entities' assertions, the Bankruptcy Court did <u>not</u> err in ruling

that, pursuant to well-established law, the PDH Entities' claims are "core" proceedings and that,

therefore, the Coordinating Agreement's forum selection clause is inoperative.  Since the PDH

Entities' argument on appeal is based entirely upon the incorrect assumption that the Foreign PDH

Entities' claims are <u>non</u>-core, *see* PDH Appeal at 29 – 30 (which the Bankruptcy Court correctly

ruled clearly is <u>not</u> the case), the PDH Entities' appeal on the issue of the forum selection clause is

---

[18] Additionally, the Third Circuit's holding that arbitration clauses (which are analogous to forum selection clauses) may not be enforceable in core proceedings also is instructive here. *Hays and Co. v. Merrill Lynch*, 885 F.2d 1149 (3d Cir. 1989); *see also In re APF Co.*, 264 B.R. 344, 362 (Bankr. D.Del. 2001)("Although *Hays* did not expressly address whether a bankruptcy court has discretion to enforce an applicable arbitration clause where core bankruptcy issues are at stake, the majority view in this Circuit and others is that bankruptcy courts continue to enjoy discretion to refuse enforcement of an otherwise applicable arbitration provision…")(citing cases).

wholly without merit. Consequently, the Court should affirm the Bankruptcy Court's ruling that the Coordinating Agreement's forum selection clause is inoperative.

## IV. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE PDH ENTITIES' MOTION FOR RECONSIDERATION

Though the PDH Entities do not specify the applicable standard of review for their appeal of the Bankruptcy Court's Order denying reconsideration, district courts apply the highly deferential "abuse of discretion" standard when reviewing bankruptcy court decisions on motions for reconsideration, *see, e.g., Marta Group*, 79 B.R. at 205, requiring that the reviewing court "affirm if [it] can find <u>any</u> plausible basis that would support the [lower] court's exercise of discretion to remand." *McCarthy*, 230 B.R. at 417-18 (emphasis added). Such clearly is the case with this appeal.

### A. The Bankruptcy Court Correctly Ruled that the PDH Entities Failed to Meet the Third Circuit's Heightened Standards for Reconsideration

The PDH Entities had a significant burden to meet the underlying standard for Bankruptcy Rule 9023 (or 7052) reconsideration, "an <u>extraordinary remedy</u> in which the movant <u>must do more than simply reargue the facts or the legal arguments raised previously</u>."[19] *In re Edison Bros., Inc.*, 268 B.R. 409, 412 (Bankr. D.Del. 2001) (emphasis added) (citing *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (internal quotation omitted).[20] Indeed, contrary to the invalid,

---

[19] Motions for reconsideration in the bankruptcy court typically are governed by Bankruptcy Rule 9023, which incorporates Federal Rule of Civil Procedure 59(e), "Motion to Alter or Amend a Judgment." *In re Christie*, 222 B.R. 64, 67 (Bankr. D.N.J. 1998) (citations omitted). On appeal, the PDH Entities again attempt to argue that Fed.R.Bank.P. 3008 somehow should have been applied to their Motion for Reconsideration. PDH Appeal at 23 – 24. However, as the Bankruptcy Court correctly ruled, Rule 3008 was not applicable because it applies <u>only</u> when the court allows or disallows a claim against the estate. When the Bankruptcy Court denied the PDH Entities' Motion to Remand, it "did not make any determination regarding the allowance or disallowance of a claim against the Debtor's estate; instead, it denied the Remand and Relief from Stay Motion because the Coordinating Agreement unambiguously provides that the PDH Entities' only recourse is against the Debtor." 2005 Mem. at 5 – 6 (A-0009 – 0010). Thus, Rule 3008 clearly was not applicable to the PDH Entities' Motion for Reconsideration.

[20] *See also Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F.Supp.2d 385, 417 (D.Del. 1999) ("A motion for reconsideration 'should be granted sparingly and <u>should not be used to rehash arguments already briefed</u> or allow a never-ending polemic between the litigants and the Court.'") (emphasis added); *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) ("[Rule 59(e)] does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.") (citations omitted).

more relaxed standard cited by the PDH Entities in their Motion for Reconsideration,[21] the PDH

Entities could not have obtained reconsideration unless they demonstrated:

> (1) an intervening change in controlling law;
> (2) the availability of new evidence [not available previously]; [or]
> (3) the need to correct clear error [of law] or prevent manifest injustice.

*North River*, 52 F.3d at 1218 (quoting *Natural Resources Defense Council v. U.S. E.P.A.*, 705 F.Supp. 698,

702 (D.D.C. 1989), *vacated on other grounds*, 707 F.Supp. 3 (D.D.C. 1989)) (brackets in the original).[22]

As the Bankruptcy Court correctly ruled, the PDH Entities failed to satisfy <u>any</u> of these three

criteria.

### 1. The PDH Entities cited no intervening change in controlling law nor offered any new evidence warranting reconsideration

As the Bankruptcy Court correctly observed:

> Here, the PDH Entities do not argue that there has been an
> intervening change in controlling law and have not presented any
> new evidence in support of their arguments. Instead, they claim that
> the Court misinterpreted Illinois law regarding consideration of
> extrinsic evidence to construe the parties' intent with respect to the
> indemnification provision of the Coordinating Agreement.

2005 Mem. at 5 (A-0009). Indeed, the PDH Entities simply reargued that extrinsic evidence should

---

[21] As the Bankruptcy Court correctly ruled, the PDH Entities improperly cited an invalid, more relaxed standard for reconsideration. Their citation to *In re Bill's Dollar Stores, Inc.*, 200 B.R. 18 (Bankr. D.Del. 1994) and *Karr v. Castle*, 768 F.Supp. 1087 (D.Del. 1991) was improper because the standard articulated in those cases was overruled by *North River Ins. Co. v. Cigna*, 52 F.3d 1194, 1218 (3rd Cir. 1995), as expressly acknowledged in *In re Chama, Inc.*, 265 B.R. 662, 670 (Bankr. D.Del. 2000) ("These cases were all decided prior to the Third Circuit's decision in *North River*, however, and to the extent they suggest a lower standard, they are no longer good law"). The Bankruptcy Court therefore correctly rejected the PDH Entities' articulation of a more relaxed standard than that set forth in *North River*. *See* 2005 Mem. at 5, n. 7 (A-0009).

[22] It is puzzling that the PDH Entities argue that "[t]he formulation of the standard [on reconsideration], as recited by Judge Carey, based on case law from 1995, is deficient," PDH Appeal at 22, when, in fact, the very case the PDH Entities cite for the allegedly "correct" standard relies upon the <u>very same</u> 1995 case—*North River*—that Judge Carey cited for the proper articulation of the Fed.R.Civ.P. 59(e) or 52(b) reconsideration standard. *See Kabacinski v. Bostrom Seating, Inc.*, 98 Fed.Appx. 78, 81 (3d Cir. 2004) (*quoting Max's Seafood Cafe ex. rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d. Cir. 1999)(*citing North River*, **52 F.3d at 1218**), for the three factors to be considered on reconsideration). Notably, in quoting the Third Circuit standard on reconsideration, *Kabacinski* states that "the standard a party must meet to succeed on a motion for reconsideration <u>is quite high.</u>" *Id.*, 98 Fed.Appx. at 81 (emphasis added). As the Bankruptcy Court correctly ruled, the PDH Entities fell far short of meeting that standard.

be admitted even though they, themselves, recognized that the Illinois four corners and parol
evidence rules were clear and well-established law and had not changed since the Bankruptcy Court
originally considered their Motion to Remand.

At the time of reconsideration, and to this day, the applicable Illinois law is just as the PDH
Entities first cited it in their Motion to Remand: "When contract terminology is unambiguous, it
must be given its plain and ordinary meaning, but where the language is ambiguous, the trial court
may receive parol evidence to decide what the parties intended. *Pepper Constr. Co. v. Transcontinental
Ins. Co.*, 285 Ill.App.3d 573, 576, 673 N.E.2d 1128 (1996)." Remand Motion at 10 (A-0115). In fact,
the PDH Entities cite this same, unchanged authority on appeal. *See* PDH Appeal at 25 (citing same
authority). Nowhere do the PDH Entities suggest that the law had changed on the date the
Bankruptcy Court decided their Motion for Reconsideration; nor do they claim that the law has
changed here on appeal.

As the Bankruptcy Court also correctly ruled, the PDH Entities <u>completely</u> failed to present
"any new evidence" on reconsideration that was not previously available through the exercise of due
diligence. 2005 Mem. at 5 (A-0009). It is axiomatic that a movant may be entitled to
reconsideration only if it offers "new evidence [not available previously]," *North River*, 52 F.3d at
1218 (brackets in original), or, in other words, "newly discovered evidence" that would convince the
court that its prior decision was incorrect.[23] *In re Edison*, 268 B.R. at 412. As Exide pointed out in its
Opposition to the PDH Entities' Motion for Reconsideration, the two PDH attorney affidavits (of
McDonough and Hudson, respectively) easily could have been obtained prior to the November 19,
2003, hearing on the Motion to Remand along with the live testimony of Linda Woolf on the

---

[23] "Newly discovered evidence" is that which was "truly unobtainable" at the time of the Motion to Remand and could
not have been found by the exercise of due diligence. *Dentsply Intern.*, 42 F.Supp.2d at 422 (quoting *Schering Corp. v.
Amgen, Inc.*, 25 F.Supp.2d. 293, 298-99 (D.Del. 1998)); *see also Atlantic States Legal Found. v. Karg Bros., Inc.*, 841 F.Supp. 51,
56 (N.D.N.Y. 1993) ("Newly discovered evidence is that which is 'truly newly discovered or ... could not have been
found by due diligence.'") (quoting *United States v. Potamkin Cadillac Corp.*, 697 F.2d. 491, 493 (2d Cir. 1983)).

meaning of the indemnification provisions of the Coordinating Agreement.[24] Recognizing this, the Bankruptcy Court correctly ruled that the self-serving affidavits of the PDH Entities' attorneys did not, as a matter of law, constitute new evidence warranting reconsideration. *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1986) (upholding district court's refusal to consider defendant's own affidavit on motion for reconsideration where affidavit clearly was available prior to summary judgment motion); *Schering Corp.*, 25 F.Supp.2d. at 298-99 (rejecting as newly discovered evidence, evidence that was obtainable by exercise of due diligence prior to hearing).[25]

Thus, it is evident that the PDH Entities failed to establish either of the first two *North River* factors required for reconsideration, and that the Bankrutpcy Court correctly denied their Motion for Reconsideration on that basis.

### 2. The Bankruptcy Court did not abuse its discretion in finding no clear error or manifest injustice warranting reconsideration

Having failed to allege <u>any</u> basis warranting reversal of the Bankruptcy Court's sound ruling on the first two *North River* factors, the PDH Entities assert that the Bankruptcy Court abused its discretion by failing to grant their Motion for Reconsideration "to correct clear error [of law] or prevent manifest injustice." *North River*, 52 F.3d at 1218 (citation omitted). However, the PDH Entities also fail to establish that they were entitled to reconsideration on this third *North River* factor.

#### a. The Bankruptcy Court had jurisdiction to interpret the indemnification provisions of the coordinating agreement

The PDH Entities' allegation that the Bankruptcy Court's 2003 Order was "manifestly unjust" or was based upon a clear error of law is founded upon several false assumptions of fact and

---

[24] Debtor's Opposition to Debtors' Opposition To Motion Of Pacific Dunlop Entities For Reconsideration Of Order Denying Their Motion To Remand Or For Abstention And Stay Relief, And Dismissing Their Causes Of Action Against The Non-Debtor, Foreign Exide Entities, filed Jan. 15, 2004 (docket no. 3465) (the "Recon. Opp."), contained in the Record, at 9 – 10.

[25] For additional authorities on this point, *see* Opp. to Recon., at 10, n.3.

law. The PDH Entities assert that "it was a manifest injustice for the bankruptcy court to reach out and decide a substantive issue affecting the rights of the PDH Foreign Entities <u>that was not presented in their motion papers,</u> and yet one on which <u>they had no right to submit a reply</u> in advance of the hearing." PDH Appeal at 22 (emphasis added). These assertions are baseless, however, because they falsely presume (1) that the Bankruptcy Court did not have subject matter jurisdiction over the claims of the Foreign PDH Entities and (2) that the Bankruptcy Court's interpretation of the plain and unambiguous terms of the Coordinating Agreement in connection with ruling on the Motion to Remand somehow was unexpected.

First, it was the PDH Entities in their Motion to Remand—<u>not</u> Debtor Exide—that first raised the question whether the Debtor was the sole indemnitor under the Coordinating Agreement. *See* Remand Motion, ¶¶ 52-54 (A-0124 – 0125). Indeed, the PDH Entities raised this same issue even earlier in their moving papers on their prior motion to remand (and in argument) before the Illinois Bankruptcy Court. *See* Sonderby Opinion at 3 – 6 (A-0364 – 0367). The PDH Entities also were aware that the Illinois Bankruptcy Court transferred their original motion to remand (which, as Judge Sonderby noted, necessarily addressed the question of liability under the Coordinating Agreement) to the Delaware Bankruptcy Court along with the entire adversary proceeding. *See* Sonderby Opinion at 12 (A-0373) and Sonderby Order (A-0361). Thus, it is disingenuous for the PDH Entities to claim that a manifest injustice occurred because they should not have expected the Bankruptcy Court to address the question of whether the Debtor Exide was the sole indemnitor under the Coordinating Agreement in connection with ruling on their Motion to Remand. Moreover, the mere fact that the PDH Entities "had no right to submit a reply in advance of the hearing" should not in any way, and did not, prevent the PDH Entities from responding to Exide's arguments on the proper interpretation of the Coordinating Agreement either at the November 2003 hearing on the Motion to Remand or on reconsideration. In any event, the PDH Entities

could have moved the Bankruptcy Court for leave to file a reply brief pursuant to the Local Bankruptcy Rules if it wished, but chose not to do so. Thus, the fact that the Bankruptcy Court interpreted the indemnification provisions of the Coordinating Agreement in order to decide the Motion to Remand should have been of no surprise to the PDH Entities, and therefore was no basis for any "manifest injustice" warranting reconsideration of the remand decision.

Second, the PDH Entities incorrectly assume that the Bankruptcy Court lacked subject matter jurisdiction over the claims of the Foreign PDH Entities. As set forth above, the Foreign PDH Entities, themselves, submitted to the equitable jurisdiction of the Bankruptcy Court by filing their "contingent" Proofs of Claim against the Exide bankruptcy estate. *See*, Section II.A, *supra*. It therefore was well within the Bankruptcy Court's "core" matter jurisdiction to determine the extent of possible liability under the Coordinating Agreement for purposes of ruling on the PDH Entities' Motion to Remand, which is precisely what the Bankruptcy Court did. Indeed, even counsel for the PDH Entities agreed that if the Bankruptcy Court found that the Debtor was the sole indemnitor under the indemnification provisions of the Coordinating Agreement, the claims of the Foreign PDH Entities were "core" proceedings properly before the Bankruptcy Court:

> PDH's COUNSEL: ... The fact that we filed—that the PDH foreign entities filed Proofs of Claim against the Debtor does not make the claims against the non-Debtors core, so, in fact, those necessarily have to be noncore at best.
>
> THE COURT: Unless Exide is correct in its interpretation of the coordinating agreement provisions.
>
> PDH's COUNSEL: That would be—yes, that's right, Your Honor.

2003 Tr. at 15 (emphasis added). Thus, any claim that the PDH Entities either lacked an opportunity to be heard before the Bankruptcy Court on the question of the Debtor's liability under the Coordinating Agreement or that the Bankruptcy Court lacked jurisdiction to interpret the Coordinating Agreement in connection with the Motion to Remand is utterly false and in no way

could have constituted "manifest injustice" warranting reconsideration.

>        b.        **The Bankruptcy Court Correctly Ruled That the Agreement, as Modified By Amendment No. 1, Is Clear and Unambiguous, Precluding Consideration of any Extrinsic or Parol Evidence**

The PDH Entities also assert that the Bankruptcy Court should have granted their Motion for Reconsideration to "prevent manifest injustice" because, in denying remand, the Bankruptcy Court failed to consider the PDH Entities' "alternative argument that the pertinent amendment to the Coordinating Agreement [Amendment No. 1] was the result of mutual mistake, for which purposes they were entitled as a matter of law to present extrinsic evidence [*i.e.*, the two, self-serving attorney affidavits]." PDH Appeal at 21 – 22. However, as the Bankruptcy Court correctly ruled, Illinois law strictly prohibits consideration of extrinsic evidence when, as with the Coordinating Agreement, the relevant contract terms are clear and unambiguous. Indeed, the PDH Entities concede that "[w]hen contract terminology is unambiguous, it must be given its plain and ordinary meaning." *See* PDH Appeal at 25. Thus, it is clear that the Bankruptcy Court did not abuse its discretion—or commit any error—in refusing to admit the two PDH attorney affidavits.

>        (1)        **The Bankruptcy Court's Finding That the Agreement Is Clear and Unambiguous Was Not an Abuse of Discretion**

During their argument on the Motion to Remand, on reconsideration and, again, on appeal, the PDH Entities challenge the Bankruptcy Court's ruling that the indemnification provisions of the Coordinating Agreement are clear and unambiguous. However, for the same reasons articulated by the Bankruptcy Court at the November 2003 hearing on remand, in the December 2003 Order denying remand, and in the Bankruptcy Court's Memorandum denying reconsideration, the PDH Entities' reargument of the relevant provisions of the Coordinating Agreement lacks any merit.

The PDH Entities once again assert that the definition of "Buyer" set forth in the

Definitions Section of the Coordinating Agreement, when applied to Section 4.2(a), should have

been read to include the term "International Buyer" (*i.e.*, the Non-Debtor Entities), notwithstanding

Amendment No. 1's clarifying language. *See* PDH Appeal at 26; Remand Motion at 11 – 12 (A-0116

– 0117). Just as they argued before the Bankruptcy Court, the PDH Entities assert that

"Amendment No. 1 did not alter this plain understanding of Section 4.2(a). Rather, it clarified that

Section 4.2(a)(i) applies to the Buyer 'or, for sake of clarification, any International Buyer' ... There

was plainly no expressed intent to alter the meaning of the balance of Section 4.2(a) as it was already

understood." *Id.*

The Bankruptcy Court was correct, however, both on remand and reconsideration when it

held that

> [i]n the case at bar, the use of the term "Buyer" in Section 4.2(a) of
> the Coordinating Agreement is not ambiguous. "A contract term is
> ambiguous when it may reasonably be interpreted in more than one
> way." Dean Management, Inc. v. TBS Construction, Inc., 339
> Ill.App.3d 263, 790 N.E.2d 934, 939 (Ill. 2003). If Section 4.2(a) *may*
> have been ambiguous as to whether, in its various clauses, the
> context supported a broad definition of "Buyer" to include the Non-
> Debtor Entities, <u>any uncertainty was resolved by Amendment No. 1
> to the Coordinating Agreement</u>. By virtue of Amendment No. 1, the
> parties specifically and deliberately carved out only one clause of
> Section 4.2(a) to "clarify." The other parts of Section 4.2(a) remained
> unchanged. <u>Therefore, the only reasonable inference that arises from
> Amendment No. 1, is that the parties intended that the term 'Buyer,'
> as used in the remainder of Section 4.2(a), means only Exide
> Corporation.</u>

2005 Mem. at 10 (A-0014) (emphasis added).

During their argument on the Motion for Reconsideration—and, again, on appeal—the

PDH Entities do little more than "reargue the facts or the legal arguments raised previously"

concerning their interpretation of the relevant contract language, demonstrating how they fell far

short of meeting the stringent requirements for reconsideration. *In re Edison*, 268 B.R. at 412; *see also*

*Schering*, 25 F.Supp.2d at 294 ("It follows that grant of reargument should be denied where the

proponent simply rehashes materials and theories already briefed, argued and decided."). This Court, just like the Bankruptcy Court, therefore should give the PDH Entities no quarter. The PDH Entities are on the wrong side of the contract's interpretation, the reconsideration standard, and now the standard of review on appeal, and their appeal should be denied accordingly.

> (2) **The Bankruptcy Court correctly ruled that, pursuant to well-established Illinois contract law, consideration of extrinsic evidence is prohibited if the terms of the contract are unambiguous and the contract, as here, contains an integration clause**

The Bankruptcy Court correctly ruled that the Illinois Four Corners and Parol Evidence Rules barred the PDH Entities from introducing <u>any</u> extrinsic evidence to interpret the Coordinating Agreement. Under these most basic of Illinois contract law principles, the Bankruptcy Court properly excluded both the live testimony of the PDH Entities' trial counsel (on remand) and the two belatedly-proffered affidavits by the PDH Entities' other attorneys (on reconsideration).

As the Bankruptcy Court correctly recognized, pursuant to the applicable Illinois "four corners" rule,

> [a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence. . . . <u>If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence</u>. If, however, the trial court finds that the language of the contract is susceptible to more than one meaning, then an ambiguity is present. Only then may parol evidence be admitted to aid the trier of fact in resolving the ambiguity.

2005 Mem. at 8 (A-0012). (quoting *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 236 Ill. Dec. 8, 10, 706 N.E.2d 882, 884 (1999) (internal citations omitted)) (emphasis added). Similarly, under the related parol evidence rule,

> extrinsic or parol evidence concerning a prior or contemporaneous agreement is not admissible to vary or contradict <u>a fully integrated writing</u>. A party may not introduce parol or extrinsic evidence to

show additional inconsistent terms of a contract unless the writing is
incomplete or ambiguous.

*Eichengreen v. Rollins, Inc.*, 325 Ill. App. 3d 517, 522, 259 Ill. Dec. 89, 93, 757 N.E.2d 952, 956 (2001)

(emphasis in original).[26]  In light of this well-settled Illinois law and the fact that the Coordinating

Agreement contains an express integration clause (*see* Coordinating Agreement, § 7.3 (A-0629 –

0630)), the Bankruptcy Court correctly ruled that the indemnification language of Section 4.2, as

modified by Amendment No. 1, is clear and unambiguous, and therefore precluded consideration of

the PDH Entities' extrinsic evidence.  Thus, it is clear that the Bankruptcy Court did not err on the

law or in any way abuse its discretion in refusing to admit the PDH attorney testimony.

c.    **The Bankruptcy Court correctly rejected the PDH Entities'
misplaced "latent ambiguity" and "mutual mistake" arguments**

On appeal, the PDH Entities merely rehash their arguments on reconsideration that extrinsic

evidence somehow should have been admitted to show "latent ambiguity" or "mutual mistake."

PDH Appeal at 24 – 28.  Becacuse it was, and is, clear on the law that these arguments are baseless

and untenable, the Bankruptcy Court was correct to reject them.

As the Bankruptcy Court correctly stated, 2005 Mem. at 10 (A-0014), the Illinois Supreme

Court <u>expressly</u> <u>rejected</u> the PDH Entities' "provisional admission" or "latent ambiguity" approach

when interpreting facially unambiguous contracts which contain integration clauses, like the

Coordinating Agreement.  *See Air Safety*, 185 Ill. 2d 457, 464, 236 Ill. Dec. 8, 11, 706 N.E.2d 882, 885

("considering extrinsic evidence of prior negotiations to create an 'extrinsic ambiguity' where *both*

parties *explicitly* agree that such evidence will *not* be considered ignores the express intentions of the

parties and renders integration clauses null.") (emphasis in original).  Because (a) there was no

---

[26] *See also J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill. 2d 265, 269, 205 Ill. Dec. 98, 100, 642 N.E. 2d 1215,
1217 (1994) (holding that parol evidence rule "generally precludes evidence of understandings, not reflected in a writing,
reached before or at the time of its execution which would vary or modify its terms").

dispute that the Coordinating Agreement contains an express integration clause[27] (Section 7.3) and (b) the Bankruptcy Court correctly ruled that the relevant language in the Coordinating Agreement is facially unambiguous, the Bankruptcy Court correctly determined that the "latent ambiguity" approach was not applicable pursuant to controlling Illinois law and correctly excluded the PDH Entities' self-serving attorney affidavits.[28]

The Bankruptcy Court also neither erred nor abused its discretion in dismissing the PDH Entities' untimely and deficient argument that Amendment No. 1 to the Coordinating Agreement somehow was the product of a "mutual mistake." First, applying controlling law, the Bankruptcy Court correctly ruled that this argument—raised for the first time on reconsideration—should not be heard:

> The PDH Entities, however, did not raise the doctrine of mutual mistake at the hearing on November 19, 2003. A motion for reconsideration is not an opportunity to assert new legal theories that could have been raised previously. *In re United Merchants and Mfr., Inc.*, 1992 WL 37498, *1 (Bankr.D.Del. Feb. 18, 1992). *See also Fogel v. Zell*

---

[27] In an attempt to overcome the hurdles imposed by Illinois law, the PDH Entities cite the inapposite *Hessler* case as alleged support for the proposition that the Bankruptcy Court should have ignored the Coordinating Agreement's integration clause in Section 7.3. See PDH Appeal at 25 (*quoting Hessler v. Crystal Lake Chrysler-Plymouth, Inc.*, 38 Ill.App.3d 1010, 788 N.E.2d 405 (Ill.App.2 Dist. 2003)). As the Bankruptcy Court repeatedly held, however, *see* 2005 Mem. at 11, n.10 (A-0015), Illinois courts do not consider extrinsic evidence to determine whether a contract is integrated in *non-*UCC cases like this one. *See J&B Steel Contractors*, 162 Ill.2d at 271, 642 N.E.2d at 1218 ("The rule in cases not governed by the Uniform Commercial Code (UCC) is that only the subject writing may be considered to determine the integration question. That has been the rule since this court last considered the issue in 1921. ... It remains the standard.") (emphasis added). Accordingly, it is apparent that the Bankruptcy Court neither erred in the law nor abused its discretion in barring consideration of the PDH Entities' extrinsic evidence to determine whether the Coordinating Agreement was integrated.

[28] Moreover, even where Illinois courts might have considered extrinsic evidence based upon the "latent ambiguity" exception, those courts nevertheless have found inadmissible subjective affidavits, such as those proffered by the PDH Entities, regarding the parties' intent. *See Napleton v. Ray Buick, Inc.*, 302 Ill.App.3d 191, 203, 704 N.E.2d 864, 872, 299 Ill.Dec. 291, 299 (Ill. App. 1st Dist. 1998) ("Defendant attempts to establish a latent ambiguity by relying on affidavits of the persons involved in the original lease negotiation. While the affidavits may establish that the parties intended something other than what the language in the contract suggests, the statements of these individuals do not establish a latent ambiguity allowing the court to rely on such statements to interpret the contract. The affidavits do not explain any term in the contract that may have had a specialized meaning or a meaning that is confusing or unknown to the court. The affidavits merely assert the parties' actual intent when signing the lease. Defendant has failed to demonstrate a latent ambiguity.") (emphasis added). Thus, while the Bankruptcy Court neither erred nor abused its discretion in correctly rejecting the PDH Entities' extrinsic evidence to interpret an unambiguous contract, it was similarly correct to reject Plaintiffs' baseless suggestion that some "latent ambiguity" could overcome this basic rule of contract interpretation where subjective affidavits are involved.

> *(In re Madison Mgmt. Group, Inc.)*, 2000 WL 288515, *3 (N.D.Ill. Feb. 23, 2000).

2005 Mem. at 11 (A-0015).[29]  Thus, the Bankruptcy Court neither erred on the law or abused its discretion in rejecting the PDH Entities' untimely mutual mistake argument.

The PDH Entities' only basis for appealing the Bankruptcy Court's rejection of their "mutual mistake" argument is that "under the procedural posture in which the Remand Motion was presented, the PDH Entities did not have a right to file a reply raising that theory prior to the hearing," and that the Bankruptcy Court somehow abused its discretion in not granting their Motion for Reconsideration to prevent "manifest injustice." PDH Appeal at 23.  This assertion, however, is based upon the false assumptions that:  (1) the PDH Entities did not have an opportunity to raise their "mutual mistake" argument in their opening brief; and (2) somehow were deprived the opportunity of raising "mutual mistake" at argument because the Local Bankruptcy Rules do not permit filing of reply briefs.  Of course, as discussed above, the PDH Entities first raised the question whether the Debtor was the sole indemnitor under the Coordinating Agreement in their Motion to Remand, *see* Remand Motion, ¶¶ 52-54 (A-0124 – 0125), and also had every opportunity to raise mutual mistake during their oral argument.  Indeed, the PDH Entities in any event could have moved for leave to file a reply brief pursuant to the Local Bankruptcy Rules, but apparently had chosen not to do so.  Regardless, as set forth below, even assuming *arguendo* that the PDH Entities did not have an opportunity to argue mutual mistake in connection with their Motion to Remand—which assumption is false—they still could not have established the existence of mutual mistake in the Coordinating Agreement as a matter of controlling Illinois law so as to allow into evidence the two self-serving affidavits of the PDH Entities' attorneys.

---

[29] *See also In re Pabon Rodriguez*, 233 B.R. 212, 219 (Bankr. D.P.R. 1999) ("[A] party cannot use a Rule 59(e) motion to cure its own procedural failures or to introduce new evidence or advance arguments that could and should have been presented originally to the court.") (citing *Aybar v. Crispin Reyes*, 118 F.3d 10, 16 (1st Cir. 1997)(further citations omitted)); *Russell v. Delco Remy*, 51 F.3d 746, 749 (7th Cir. 1995) ("[A motion for reconsideration pursuant to Rule 59(e)] may not be used to raise novel legal theories that a party had the ability to address in the first instance.") (citation omitted).

It is well-established in Illinois that "mutual mistake" <u>cannot</u> be "a fundamental mistake relating to an <u>essential element of the contract</u> which would prevent a meeting of the minds of the parties; rather, it occurs when an actual good-faith agreement is reached but, due to error, is not expressed in the written reduction of the agreement." *Beynon Bldg. Corp. v. Nat'l Guardian Life Ins. Co.*, 118 Ill. App. 3d 754 , 760, 74 Ill. Dec. 216, 220, 455 N.E.2d 246, 250 (1983) (emphasis added). Here, there is no doubt that that the PDH Entities' claim of "mutual mistake" went to an "essential element of the contract"—the serious question of which party is liable under the indemnification provisions of the Coordinating Agreement—and that the "mutual mistake" doctrine cannot be applicable even assuming it had been timely raised. *Id.* To the contrary, Illinois cases cited by the PDH Entities hold that the "mutual mistake" doctrine is applicable <u>only</u> in situations involving typographical, mathematical or clerical errors. *See* Remand Motion at 13 (A-0118). (citing cases); PDH Appeal at 27 (same). In contrast to these cases, the contract terms challenged here, including Amendment No. 1, are clearly and unambiguously worded in an intentional and deliberate manner, just as the Bankruptcy Court found.

More importantly, there is nothing "mutual" about the mistake that the PDH Entities claim. If anything, the PDH Entities complain of a <u>unilateral</u> mistake, akin to buyer's remorse. "It is settled law in Illinois that one party's mistaken opinion about the legal effect of a contract is not sufficient to void the contract." *Village of Oak Park*, 288 Ill.App.3d at 718, 681 N.E.2d at 588, 224 Ill.Dec. at 273. As the Illinois courts repeatedly have held,

> [t]o invalidate a contract because of mutual mistake, a party must show by clear and convincing evidence that a mistake has been made by **both** parties relating to a material feature of the contract. *Keller v. State Farm Insurance Co.,* 180 Ill.App.3d 539, 548, 129 Ill.Dec. 510, 536 N.E.2d 194 (1989). A mutual mistake is one where **both** parties understand that the real agreement is what one party alleges it to be; then, unintentionally, a contract is drafted and signed that does not express the true agreement.

*Village of Oak Park v. Schwerdtner*, 288 Ill.App.3d 716, 718, 681 N.E.2d 586, 588, 224 Ill.Dec. 271, 273

(1997) (emphasis added); *see also Bank of Naperville v. Holz*, 86 Ill. App. 3d 533, 538, 41 Ill. Dec. 604,

608, 407 N.E.2d 1102, 1106 (1980) ("A 'mutual mistake' is one common to both contracting parties,

wherein each labors under the same misconception").

In their Motion for Reconsideration, the PDH Entities never alleged—nor do they do so

here—that their "mistake" was mutual.  In fact, even the two attorney affidavits that the PDH

Entities attached in support of their Motion for Reconsideration did not allege that Amendment No.

1 was the product of a mutual mistake—rather a <u>unilateral</u> mistake as to the PDH Entities' own

misunderstanding of the intent and effect of Amendment No. 1 to Section 4.2 of the Coordinating

Agreement.  *See* Recon. Motion, Ex. C, ¶ 5; Ex. D, ¶ 7 (A-0045, A-0050).  Such circumstances

plainly do not rise to the level of <u>mutual</u> mistake as a matter of law.  *See Bank of Naperville*, 86 Ill.

App. 3d at 538, 41 Ill. Dec. at 608, 407 N.E.2d at 1106; *Lukas v. Lightfoot*, 131 Ill. App. 3d 566, 569,

86 Ill. Dec. 825, 827, 476 N.E.2d 1, 3 (1985) (affirming exclusion of parol evidence after finding no

mutual mistake where "parties simply took divergent views of what the contract language meant").

Thus, the Bankruptcy Court correctly rejected PDH Entities' belated attempt to misuse the doctrine

of "mutual mistake" to admit impermissible extrinsic evidence.

Accordingly, the PDH Entities' assertions that the Bankruptcy Court somehow abused its

discretion in denying their Motion for Reconsideration are entirely without merit, and the

Bankruptcy Court's Order denying reconsideration should be affirmed.

## V.    The Bankruptcy Court Did Not Abuse Its Discretion in Denying Equitable Remand and Discretionary Abstention

The PDH Entities' arguments on appeal of the Bankruptcy Court's December 2003 Order

denying equitable remand and discretionary abstention rely entirely upon the assumption that the

Bankruptcy Court lacked subject matter jurisdiction over the PDH Entities' claims as "core"

proceedings.  *See* PDH Appeal at 28, 30 – 34.  Absent this underlying assumption—which is false, *see*

Section II, *supra*—the PDH Entities' appeal on the issues of remand and abstention falls away.

Indeed, for this reason, and for the reasons previously articulated by Exide in its Opposition to the Motion to Remand and on the record during the November 2003 hearing, <u>none</u> of the PDH Entities' arguments on appeal have any merit.[30] Thus, the PDH Entities' appeal fails to demonstrate <u>any</u> abuse of discretion or even error of law in the Bankruptcy Court's decision that neither equitable remand nor discretionary abstention is appropriate or warranted in this case.

Now, upon review, just as before, when decided by the Bankruptcy Court, the equities weigh heavily in favor of the Bankruptcy Court's continued jurisdiction over the PDH Entities' $20 million claims, including the so-called "contingent" Proofs of Claim filed by the Foreign PDH Entities. Indeed, "discretionary abstention and remand are only appropriate to a 'narrow sphere' of cases." *Balcor/Morristown Ltd. Partnership v. Vector Whippany Assoc., et al.*, 181 B.R. 781, 793 (D.N.J. 1995); *In re Birdsboro Ferrocast, Inc.*, 153 B.R. 154, 155 (Bankr. E.D. Pa. 1993) (same).[31] As multiple courts have ruled, absent exceptional circumstances, "core" proceedings these clearly do not fall within that "narrow sphere." *See, e.g., In re RBGSC*, 253 B.R. at 382 (holding that remand and discretionary abstention are not appropriate given the proceeding's core status and its importance to the debtor's reorganization); *In re Robb*, 139 B.R. at 796 (holding that discretionary abstention is "inappropriate" in a core proceeding and declining to abstain from hearing core matter where movant failed to show "exceptional circumstances"); *In re Pioneer Dev. Corp.*, 47 B.R. 624, 628 (Bankr. N.D. Ill. 1985) (concluding that abstention is unwarranted because "there has been a determination that these

---

[30] Exide incorporates herein its arguments, points and authorities as to why the PDH Entities were not entitled to equitable remand under 28 U.S.C. §1452(b) or discretionary abstention under 28 U.S.C. §1334(c)(1) as set forth in its Opposition to Remand, *see* Remand Opp., and the November 2003 hearing transcript, *see* 2003 Tr.

[31] Discretionary abstention, like equitable remand, is "an <u>extraordinary and narrow exception</u> to the federal court's duty to adjudicate a controversy properly before it." *In re Ascher*, 128 B.R. 639, 646 (Bankr. N.D. Ill. 1991) (emphasis added). Courts specifically avoid "'[o]veruse of the abstention power,'" which "'would defeat the clear intent of Congress to expand jurisdiction so as to facilitate the administration of bankruptcy cases.'" *Ronix Corp. v. City of Philadelphia*, 82 B.R. 19, 20 (E.D.Pa. 1988); *In re Talon Holdings, Inc.*, 221 B.R. 214, 221 (Bankr. N.D.Ill. 1998) ("Because federal courts should generally exercise their jurisdiction if properly conferred, abstention is the exception rather than the rule.").

proceedings are core proceedings or otherwise related to the instant bankruptcy").[32]

Even though the PDH Entities argue nearly every conceivable factor for remand and discretionary abstention in their appellate brief—including many never argued below[33]—it is clear that none applies here. First, the PDH Entities assert that "the presence of nondebtor parties" warranted remand and/or abstention. PDH Appeal at 33. Of course, it is precisely because the Foreign PDH Entities filed their "contingent" Proofs of Claim against the Debtor that the Bankruptcy Court held that the Foreign PDH Entities—just like PDH USA—submitted to the equitable jurisdiction of the Bankruptcy Court for the resolution of their claims—a forum which they, themselves, chose—rendering the forum selection clause of the Coordinating Agreement inoperative and waiving any right they had to a jury trial. See 2003 Tr. at 12 ("[B]y virtue of the filing of the Proof of Claim you've—the forum selection issue falls away, because as some of the cases say, once you've done that you've chosen your forum."); see also Section II, supra.[34] For the same reasons, the PDH Entities' cursory arguments corresponding to their "fifth," "sixth," "seventh,"

---

[32] For additional authorities supporting this point, see Opp. to Recon., at 28, n.21.

[33] In their appellate brief, the PDH Entities modified and augmented the original "well-established" 11 remand factors set forth in their Motion to Remand to 14 factors, essentially making new argument not raised in their Motion to Remand or in argument before the Bankruptcy Court. Compare Remand Motion at 12 (A-0117) with PDH Appeal at 31 – 32. These new or modified factors appear to include, among others: factor (4), "the presence of a related proceeding commenced in state court or other nonbankruptcy court"; factor (7), "the substance rather than form of an asserted 'core' proceeding"; factor (8), "the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court"; and factor (12), "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties." PDH Appeal at 31 – 32. Since none of these new factors were argued below, they do not constitute appropriate grounds for appeal and should not be considered by the District Court.

[34] The mere existence of a forum selection clause is not dispositive of remand or abstention, particularly where, as here, the proceeding involved is a "core" proceeding. See, e.g., HQ Global Holdings, 293 B.R. at 847 (denying abstention despite choice of law and forum selection clause allowing New York court to hear the dispute); Wheeling-Pittsburgh Steel Corp., 108 B.R. at 85 (denying enforcement of forum selection clause on the ground that "[p]ublic policy favors centralization of bankruptcy proceedings in the bankruptcy court"). Moreover, the PDH Entities waived any rights to a jury trial when they filed their Proofs of Claims—including the so-called "contingent" Proofs of Claim of the Foreign PDH Entities, eliminating the jury trial factor from consideration of remand or abstention. See Travellers Int'l, A.G. v. Robinson, 982 F.2d at 100 (holding that filing of a claim by a creditor waives any Seventh Amendment right to a jury trial) (citing Langencamp); Billing, 22 F.3d at 1253 (same); Asousa P'ship, 276 B.R. at 79 ("By filing its Proof of Claim, [creditor] made a conscious decision to preserve its claim against the estate and assumed the risk of foregoing its state court right to a jury trial were I to refuse to abstain from adjudicating the Adversary Complaint.").

"eighth," "tenth," "twelfth," "thirteenth," and "fourteenth" remand/abstention factors are without any merit and fall away. PDH Appeal at 33 – 34.

Likewise, the PDH Entities' cursory arguments concerning the "exclusively state law" nature of their claims and the assertion that the Illinois State Court is more familiar with the PDH Entities' state law claims is without merit. Although the PDH Entities repeatedly emphasize the state law origins of their claims, they did not demonstrate to the Bankruptcy Court—and they fail to demonstrate here—that their state law contract claims against the Debtor involve <u>any</u> complex or unsettled state law questions of the kind warranting remand or abstention. *See In re Cardinal Industries, Inc.*, 126 B.R. 754, 759 (Bankr. S.D. Ohio 1991) (remand or discretionary abstention may be proper <u>only</u> "where adjudication of the proceeding will involve [the bankruptcy] courts in the resolution of <u>unsettled</u> state law questions or state law matters of 'substantial public import'").[35] Indeed, their claims involve only "a simple question of contract law which implicated no important state policies." *In re Earle Industries*, 72 B.R. 131, 133 (Bankr.E.D.Pa. 1987). Of course, "bankruptcy judges are constantly dealing with a myriad of state law issues, particularly with respect to contested claims." *In re Bible Speaks*, 65 B.R. 415, 431 (Bankr.D.Mass. 1986).[36] Nevertheless, where, as here, no unsettled questions of state law or matters of substantial state public import are involved (or even alleged), equitable remand and discretionary abstention are plainly inappropriate. *See In re Cardinal Industries*, 126 B.R. at 759. Thus, the PDH Entities' state law-based arguments corresponding to

---

[35] "The fact that a complaint is based on state law causes of action does not mandate equitable abstention or remand, <u>particularly where the state law claims are not novel or complex</u>." *Neuman v. Goldberg*, 159 B.R. 681, 688 (S.D.N.Y. 1993) (emphasis added). *See also In re Allegheny, Inc.*, 68 B.R. 183, 192 (Bankr. W.D. Pa. 1986) (denying abstention request finding that action did not involve "unique issues of state law"); *In re McRae Fire Protection, Inc.*, 49 B.R. 773, 778 (Bankr. E.D. Mich. 1985) ("The doctrine of abstention does not mean 'a blind deference to 'State Rights'. . . '"). For additional authorities, see Opp. to Recon., at 25, n.18.

[36] *See also Harley Hotels, Inc. v. Rain's Int'l Ltd.*, 57 B.R. 773, 781 (M.D. Pa. 1985) (finding courts reluctant to abstain solely because an action would involve resolving matters of state law and holding that "[w]hile the state courts would no doubt be capable of resolving [state law] disputes, and of course may be expertise in a particular area, there is no reason why the bankruptcy court is any less qualified, if there are no unsettled matters of state law to be resolved."); *In re Meyertech Corp.*, 831 F.2d 410, 417 (3d Cir. 1987) ("virtually every bankruptcy case will entail the alteration or nullification of some state-created right.").

their "second," "third," and "fourth" remand/abstention factors also are without merit and fall

away. PDH Appeal at 33 – 34.[37]

    In short, the Bankruptcy Court properly determined that remand and abstention were not

warranted after analyzing the numerous factors raised by the PDH Entities in their Motion to

Remand, and particularly in light of the fact that the PDH Entities—including the Foreign PDH

Entities—asserted their claims against the Debtor's bankruptcy estate:

> [A]fter taking into consideration all of those factors, I don't find that
> remand or abstention is warranted here. And primarily, the
> overriding consideration, in addition to all of those others that the
> parties have argued and the Debtor particularly has convincingly
> argued, is that the bankruptcy system is set up so that the Bankruptcy
> Court is supposed to be the primary, and sometimes exclusive, forum
> for the resolution of what are core proceedings. Which is why the
> Court is given discretion in certain matters to decide whether they
> should be heard here or not. And in exercising that discretion, it
> seems to me with Exide as the sole Indemnitor, and with the nature
> of the claims that have been brought, that this forum ought to be the
> one where the issues are decided.

2003 Tr. at 66 (emphasis added). Thus, the fact that the PDH Entities' claims—including those of

the Foreign PDH Entities—are "core" proceedings which have a direct impact upon the

administration of the Exide bankruptcy estate, alone, provide ample justification for the Bankruptcy

Court's decision denying remand and abstention of the those claims. Even so, the PDH Entities'

cursory argument of their myriad remand and abstention factors fall far short of raising any

substantive challenge to the exercise of the Bankruptcy Court's discretion. Thus, the District Court

"must affirm"because, at a minimum, there is a "plausible basis that would support the [lower]

court's exercise of discretion to remand." *McCarthy*, 230 B.R. at 417-18.

---

[37] Additionally, the PDH Entities' argument relating to the potential impact of their claims upon the administration of the bankrutpcy estate (their "ninth" remand/abstention factor) is without merit. PDH Appeal at 33-34. Asuming *arguendo* that the PDH Entities were to prevail on the merits of their $20 million claim against Exide, an allowed claim of that magnitude would have a significant impact upon the administration of the estate, and particularly upon distributions available to other holders of allowed claims. Moreover, the mere fact that the Exide Plan calls for distributions to be made in the form of common stock and warrants is irrelevant as the stock and warrants still would need to be funded by the reorganized Debtor to avoid dilution of stock issued to other creditors.

## VI.    THE BANKRUPTCY COURT CORRECTLY RULED THAT MANDATORY ABSTENTION IS INAPPLICABLE AS A MATTER OF LAW

The Bankruptcy Court also correctly ruled that mandatory abstention under 28 U.S.C.

§1334(c)(2) is inapplicable as a matter of law because the PDH Entities' claims are core proceedings.

See 2003 Order (A-0001 – 0002); 2003 Tr. at 12. 28 U.S.C. §1334(c)(2) states:

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title 11
> but not arising under title 11 or arising in a case under title 11, with
> respect to which an action could not have been commenced in a
> court of the United States absent jurisdiction under this section, the
> district court shall abstain from hearing such proceeding if an action
> is commenced, and can be timely adjudicated, in a State forum of
> appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added). Thus, mandatory abstention expressly is not permitted in

core proceedings, which "aris[e] under title 11 or arising in a case under title 11." See also 1 Resnick

and Sommer, Collier on Bankruptcy (15th Ed.) ¶ 3.05[2] (2005) (mandatory abstention not applicable to

core proceedings).[38] The PDH Entities admit as much in that their mandatory abstention argument

rests entirely upon the assumption that their claims "are not 'core' proceedings." PDH Appeal at

35.[39]

---

[38] See also RBGSC, 253 B.R. at 381 ("[T]he state court proceeding here, which is a 'core' proceeding, is not subject to mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2)."); In re Robb, 139 B.R. 791, 796 (Bankr. S.D.N.Y. 1992) (same).

[39] The PDH Entities' assertion in footnote 46 of their brief that "[t]he pre-trial litigation was being moved along expeditiously by Judge Gardner before it was removed by the defendants" is utterly untrue and was expressly refuted by the Illinois Bankruptcy Court in transferring the State Court Actions to the Delaware Bankruptcy Court. See Sonderby Opinion at 11 (A-0372) ("The [State Court] action itself is not in an advanced stage in any event. The parties have taken one deposition, and there has been one discovery dispute regarding the timing of third-party discovery. ... The State Court has made only one substantive ruling regarding a motion to dismiss for failure to state a claim (and that without prejudice) and ruled on one discovery dispute involving the timing of third-party subpoenas."). For these reasons, the PDH Entities also were unable to "provide[ ] information that would enable an assessment as to when the case would be likely to go to trial." In re Talon Holdings, Inc., 221 B.R. 214, 221 (Bankr. N.D. Ill. 1998) (denying request for mandatory abstention because defendants failed to establish that the non-core proceeding could be timely adjudicated in state court); see also In re Marcus Hook Dev. Park, Inc., 153 B.R. 693, 702 (W.D.Pa. 1993) (denying request for mandatory abstention because state action was "in the preliminary stage," "resolution most likely will take several years" and "no trial date has been set in that action"); In re Ascher, 128 B.R. 639, 644 (Bankr. N.D.Ill. 1991) (denying mandatory abstention because case is core proceeding and cannot be timely adjudicated in state court); In re Sun West Distributors, Inc., 69 B.R. 861, 866 (Bankr. S.D.Cal. 1987) (finding no requirement to abstain because the matter is a core proceeding and there was no evidence of timely adjudication in state court); In re Allegheny, Inc., 68 B.R. 183, 192 (Bankr. W.D.Pa. 1986) (same).

Therefore, the Bankruptcy Court did not err in ruling that mandatory abstention was inapplicable to this case. Accordingly, the PDH Entities' appeal on the issue of mandatory abstention is without any merit, warranting that the District Court affirm the Bankruptcy Court's ruling that mandatory abstention under 28 U.S.C. §1334(c)(2) was not applicable.

## VII.   THE PDH ENTITIES FAILED TO ESTABLISH THAT THEY WERE ENTITLED TO ANY STAY RELIEF AS A MATTER OF LAW

By virtue of the Coordinating Agreement's indemnification provisions, the Foreign PDH Entities' claims are solely against the Debtor and, therefore, according to the PDH Entities' own admission, "are still subject to the terms of the Plan." PDH Appeal at 36. Indeed, whether or not the automatic stay terminates upon confirmation is irrelevant since

> section 1141 provides that confirmation of a plan of reorganization discharges the debtor from any pre-confirmation debt . . . The effect of discharge is to enjoin permanently a creditor from collecting the discharged debt.

*In re Continental Airlines, Inc.*, 236 B.R. 318, 327 n. 11 (D.Del. 1999) (citations omitted). *See also In re Concrete Structures, Inc.*, 261 B.R. 627, 645 (E.D.Va. 2001) ("Therefore, '[t]he property, upon confirmation of the plan, became property of the debtor which continues to be protected by the automatic stay provided in § 362(a)(5) until such time as it is terminated ...'") (citations omitted). Thus, the PDH Entities' discussion of cases determining the effect of an automatic stay upon "non-bankrupty co-defendants" is not only moot but entirely inapposite. *See* PDH Appeal at 35 – 36 (citing cases).

As the Bankruptcy Court correctly ruled, the PDH Entities' sole remedy under the Coordinating Agreement is against the Debtor, Exide. As such, all of the PDH Entities' claims—including the claims of the Foreign PDH Entities—are subject to the Plan.[40] Thus, although the

---

[40] Contrary to the PDH Entities' suggestion, *see* PDH Appeal at 36, n. 47, it was not necessary for Exide to seek any injunctive relief under 11 U.S.C. §105(a) with respect to potential claims against the Non-Debtor Entities because, by

PDH Entities would prefer to pursue their entire $20 million unsecured claim against the bankruptcy estate outside the Bankruptcy Court, they cannot; all of their claims are lodged solely against the Debtor. The PDH Entities, therefore, failed to meet their heavy burden of demonstrating "cause" for relief from the automatic stay as to their claims.[41]

---

virtue of the clear and unambiguous terms of the Coordinating Agreement's indemnification provisions, the PDH Entities could seek indemnification only against the Debtor, Exide.

[41] The PDH Entities sought relief from the automatic stay for "cause" pursuant to 11 U.S.C. § 362(d)(1). "To establish cause, the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips significantly in [its] favor.'" *In re American Classic Voyages, Co.*, 298 B.R. 222, 225 (D. Del. 2003)(emphasis added). Unsecured creditors, like the PDH Entities, bear a "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief." *Micro Design*, 120 B.R. at 369 (citations omitted)(emphasis added); *see also In re Metro Transp. Co.*, 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988)(balance of hardship test "'imposes a significant burden upon unsecured creditors . . . which they can rarely, if ever, sustain on the basis of pure allegations . . . .'"). Indeed, "unsecured creditors are entitled to relief from an automatic stay only in extraordinary circumstances." *In re Eagle Enterprises*, 265 B.R. 671, 680 (E.D. Pa. 2001)(emphasis added). In addition to the balance of hardship test, the movant must show that it "has a probability of prevailing on the merits." *In re Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). As the Bankruptcy Court correctly decided, the PDH Entities came nowhere near meeting the "heavy and possibly insurmountable burden of proving that the balance of hardships tip[ped] significantly in favor of granting relief," *Micro Design*, 120 B.R. at 369, and demonstrating that "extraordinary circumstances" existed to warrant relief from the automatic stay. *Eagle Enterprises*, 265 B.R. at 680. The PDH Entities failed to show that they would be substantially prejudiced by denial of relief from the automatic stay any more than any other unsecured creditor participating in this Chapter 11 case. Indeed, other than their right to jury trial argument, which itself lacked any merit, the PDH Entities offered absolutely *no* showing of prejudice. *See* Remand Motion at 26 (A-0131). (citing *In re Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) in stating that "relief from stay should be granted upon a showing that . . . the hardship to the movant by maintenance of the automatic stay considerably outweighs the hardship to the debtor."). The PDH Entities also made no effort whatsoever to show that their claims had "a probability of prevailing on the merits." *Rexene Products*, 141 B.R. at 576.

## CONCLUSION

For the foregoing reasons, Appellee Exide Technologies, respectfully requests that the Court deny the PDH Entities' appeal and affirm the clear and correct rulings of the Bankruptcy Court.

Dated: March ___ , 2006

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

_____

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400

-and-

PATTON BOGGS LLP
Benjamin G. Chew
Andrew Zimmitti
2550 M Street, N.W.
Washington, D.C.  20037
Telephone:  (202) 457-6000
Facsimile:   (202) 457-6315

Counsel for Appellee Exide Technologies