IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Bk. Case No. 02-11125 (KJC) |
| EXIDE TECHNOLOGIES, INC., *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | |
| ———————————————— | ) | |
| | ) | C.A. No.  05-561- SLR |
| PACIFIC DUNLOP HOLDINGS | ) | |
| (EUROPE) LTD, *et al.*, | ) | |
| Appellants, | ) | Bankruptcy Adv. Pro. No. 04-51299-KJC; |
| v. | ) | |
| | ) | Removed From Circuit Court of Cook |
| EXIDE HOLDING EUROPE, *et al.* | ) | County, Ill. Civ. Action No.: 01L 008460 |
| | ) | |

## APPELLANTS' REPLY BRIEF
## ON APPEAL FROM BANKRUPTCY COURT

MORRIS, JAMES, HITCHENS & WILLIAMS LLP
Brett D. Fallon (ID No. 2480)
Douglas N. Candeub (ID No. 4211)
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, Delaware 19899
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

-and-

GOODELL, DEVRIES, LEECH & DANN, LLP
Linda Woolf, Esquire
Paula Krahn Merkle, Esquire
One South Street, 20th Floor
Baltimore, Maryland 21202
Telephone: (410) 783-4000
Facsimile: (410) 783-4040

Dated:  March 27, 2006

Attorneys for the Appellants, Pacific Dunlop Holdings (USA), Inc., Pacific Dunlop Holdings (Europe) Limited, P.D. International Pty Limited, Pacific Dunlop Holdings (Hong Kong) Limited, and Pacific Dunlop Holdings (Singapore) PTE. Ltd.

---

[1]     Apart from the lead debtor, Exide Technologies, Inc., f/k/a Exide Corporation, the debtors in these proceedings were Exide Delaware, L.L.C.; Exide Illinois, Inc.; RBD Liquidation, L.L.C.; Dixie Metals Company; and Refined Metals Corporation.  The cases of these subsidiary debtors were closed by order entered June 18, 2004 (Bankr. docket No. 4599).

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

REPLY TO EXIDE'S INTRODUCTION SECTION ..........................................5

REPLY TO EXIDE'S ARGUMENTS ...............................................................6

I.  EXIDE WOULD IMPROPERLY HAVE THIS COURT REVIEW ALL THE
    BANKRUPTCY COURT'S RULINGS ON AN ABUSE OF DISCRETION STANDARD.......6

II.  EXIDE'S ARGUMENTS ON SUBJECT MATTER JURISDICTION AND CORE OR
     NON-CORE PROCEEDINGS DEPEND UPON IGNORING THE INDEPENDENT
     STATUS OF THE CLAIMS OF THE PDH FOREIGN ENTITIES AGAINST THE EXIDE
     FOREIGN ENTITIES ...........................................................................7

III.  EXIDE'S ARGUMENTS ON THE FORUM SELECTION CLAUSE DEPEND ON A
      FINDING THAT THE DISPUTE BETWEEN THE PDH FOREIGN ENTITIES AND THE
      EXIDE FOREIGN ENTITIES IS CORE ....................................................13

IV.  IN SUPPORTING THE BANKRUPTCY COURT'S LEGAL ERROR IN ITS READING
     OF THE COORDINATING AGREEMENT, LEADING TO THE DENIAL OF THE
     REMAND MOTION, EXIDE PERSISTS IN IGNORING THE AMBIGUITY IN THE
     COORDINATING AGREEMENT .............................................................14

V.  EXIDE'S ARGUMENTS IN SUPPORT OF THE BANKRUPTCY COURT'S DENIAL OF
    THE PDH ENTITIES' MOTION FOR RECONSIDERATION REST UPON A
    MISREADING OF BOTH THE COORDINATING AGREEMENT AND OF APPLICABLE
    LAW ...............................................................................................16

    A.  Exide Misstates the Standard of Review ..........................................16

    B.  Exide Fails to Address the Court's Inconsistency in Denying
        Reconsideration Pursuant to Bankruptcy Rule 3008 ........................17

    C.  Exide Misstates the Facts and Misconstrues the Law Pertinent to The
        Appellants' Raising of the Mutual Mistake Argument ......................17

    D.  Most of Exide's Other Arguments Concerning the Appeal on The Motion
        for Reconsideration Are Irrelevant or Misleading............................21

VI.  EXIDE'S ARGUMENTS TO SUPPORT THE BANKRUPTCY COURT'S DENIAL OF
     DISCRETIONARY ABSTENTION OR REMAND DEPEND ON THE ERRONEOUS
     CONCLUSION OF CORE STATUS FOR THE PDH FOREIGN ENTITIES' CLAIMS
     AGAINST NONDEBTORS ....................................................................22

VII.  EXIDE'S RESPONSE ON MANDATORY ABSTENTION MISCHARACTERIZES THE
      RECORD ........................................................................................23

VIII.  EXIDE'S RESPONSE ON THE AUTOMATIC STAY ISSUE RELIES ON ITS NOTION
       THAT ALL THE PDH FOREIGN ENTITIES' CLAIMS ARE SOLELY AGAINST THE
       DEBTOR .......................................................................................24

CONCLUSION ..............................................................................................24

## TABLE OF AUTHORITIES

### Cases

*Bank of Naperville v. Holz*, 86 Ill.App.3d 533, 407 N.E.2d 1102 (1980) .......................................... 19

*Beynon Bldg. Corp. v. National Guardian Life Ins. Co.*, 118 Ill. App. 3d 754, 455 N.E.2d
   246 (Ill. App. 1983).................................................................................................................. 19

*Boyer v. Snap-On Tools Corp.*, 913 F.2d 108 (3d Cir. 1990), *cert. denied*, 498 U.S. 108
   (1991) .......................................................................................................................................... 7

*FRG, Inc. v. Manley*, 919 F.2d 850 (3d Cir. 1990) ......................................................................... 6

*Friedman v. Development Management Group, Inc.*, 82 Ill. App. 3d 949, 403 N.E.2d 610
   (Ill. App. 1980)......................................................................................................................... 20

*Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999)............................................................................ 13

*In re Baldwin Park Associates,* 144 B.R. 475 (C.D. Cal. 1992) ..................................................... 6

*In re Cardinal Industries, Inc.*, 126 B.R. 754 (Bankr. S.D. Ohio 1991) ....................................... 23

*In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750 (D.N.J. 1996) .......... 11

*In re Fitzgeralds Gaming Corp.*, 261 B.R. 1 (Bankr. W.D.Mo. 2001) .................................... 11, 12

*In re Insilco Technologies, Inc.*, 330 B.R. 512 (Bankr. D. Del. 2005).......................................... 12

*In re Kamine/Besicorp Allegany, L.P.*, 214 B.R. 953 (Bankr. D.N.J. 1997).................................. 10

*In re McCarthy*, 230 B.R. 414 (9th Cir. BAP 1999) ....................................................................... 7

*In re Mid-Atlantic Handling Systems, LLC*, 304 B.R. 111 (Bankr. D.N.J. 2003) ............................ 9

*In re Professional Video Ass'n, Inc.*, 2005 WL 189733 (D. Del. January 27, 2005)....................... 6

*In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004) .............................................................. 12, 13

*Lukas v Lightfoot*, 131 Ill App 3d 566,  476 N.E.2d 1 (1983)........................................................ 19

*Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1991) ..................................... 7

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669 (3d Cir.1999) ................... 17

*RBGSC Investment Corporation*, 253 B.R. 369 (E.D. Pa. 2000) ................................................... 12

*Schaffner v. 514 West Grant Place Condominium Ass'n, Inc.*,
   324 Ill. App. 3d 1033, 756 N.E.2d 854 (Ill. App. 2001) .................................................. 16, 20

*Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214 (3d Cir. 2005).......................................................... 6

*St. Vincent's Hospital v. Norrell (In re Norrell),* 198 B.R. 987 (Bankr. N.D. Ala.1996)................ 11

*Steinman v. Spencer (In re Argus Group, Inc.)*, 206 B.R. 737 (Bankr. E.D. Pa. 1996), *aff'd,*
   206 B.R. 757 (E.D. Pa. 1997)................................................................................................... 11

*Transamerica Financial Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 302 B.R. 620 (N.D.
   Iowa 2003)................................................................................................................................. 9

*Travellers International AG. v. Robinson*, 982 F.2d 96 (3d Cir. 1992) ......................................... 10

*University of Maryland at Baltimore v. Peat Marwick Main & Co.*, 923 F.2d 265 (3d Cir.
   1991)............................................................................................................................................ 6

**Statutes**

11 U.S.C. § 1141 ................................................................................................................ 24

28 U.S.C. § 157(b)(2)(B) .................................................................................................... 17

**Rules**

Bankruptcy Rule 3008.......................................................................................................... 17

Bankruptcy Rule 7052.................................................................................................... 17, 22

Bankruptcy Rule 9023.................................................................................................... 17, 22

# INTRODUCTION

Appellee Exide's[1] 45-page Opposition Brief is replete with erroneous statements and irrelevant rebuttals to arguments that Appellants have not made.[2]  But ultimately, Exide's arguments rely on a set of "sleight of hand" illusions, without which the lack of merit in their arguments would be transparent.

- A large part of what Exide is trying to hide is the distinction between Exide itself and the three *nondebtor* Exide affiliates – (i) Exide Holding Europe, (ii) Exide Holding Asia Pte. Limited, and (iii) Exide Singapore Pte. Limited (collectively, the "Exide Foreign Entities"), which Exide refers to as the "Non-Debtor Entities." *See* Appellee Brief, p. 3.  Exide makes reference to these nondebtor entities in the Background section of its Brief, but in its 34-page Argument section, Exide mentions them a mere three times in the text and once in a footnote (apart from a small number of times where the words "Non-Debtor" or "nondebtor" were contained within quotations either from the PDH Entities' Opening Brief, from the PDH Entities' counsel in a transcript, or from the lower court's Opinion, or in citations to the titles of motions filed by the PDH Entities). *See* Appellee Brief, pp. 11,12, 31 & n. 40 (p.43).  Of those three mentions in the text of the Argument, the two on pages 11 and 12 appear in the same paragraph.

Why is Exide's scant mention of these affiliated nondebtors significant?  It is because of the context in which their mention would otherwise be expected to appear.  Over and over, Exide's Brief refers to the "claims" of the PDH Entities.  But in virtually each one of those instances, Exide fails to complete the phrase by identifying *whom* the claims in question are *against*.  Exide never distinguishes the PDH Foreign Entities' claims against the Debtor, as set forth in proofs of claim against the Debtor, from their claims against the nondebtor Exide Foreign Entities, which were set

---

[1] Defined terms identified in Appellants' Opening Brief will be used in this Reply Brief, and reference should be made to the Opening Brief for any capitalized terms that are not otherwise defined herein

[2] Despite the Brief's length, Exide still asserts in footnote 30 that it is incorporating by reference all its arguments in its briefs in the lower court.  Appellants are not aware of the basis for such an incorporation by reference, nor what arguments Exide has omitted but is seeking nonetheless to preserve.

forth within a complaint that was filed in Illinois state court. Indeed, by simply referring to the "claims", while omitting whom they are directed against, Exide is hoping to conflate the distinction.

By way of example, Exide argues that the PDH Entities consented to have "their claims" heard by the Bankruptcy Court when they filed their proofs of claim. Appellee's Brief, p. 11. But which claims, against which parties? That consent is of course limited to the claims *against the Debtor*, and not any claims against nondebtors. But Exide does not spell this out. Similarly, Exide argues that when the PDH Foreign Entities filed their proofs of claim, they "waived any right they have had to a jury trial." Appellee's Brief, p. 14. But against whom? Exide neglects to complete the thought, by explaining that the jury trial waiver is with respect to the claims *against the Debtor*. The proofs of claim are *not* a waiver of their jury trial right upon their original causes of action asserted against the nondebtor Exide Foreign Entities. Later again, Exide pronounces that the PDH Foreign Entities "irrevocably submitted to the equitable jurisdiction of the Bankruptcy Court . . . as to all of their claims by filing their Proofs of Claim." Appellee Brief, p. 16. By the phrase "all of their claims," Exide presumably does not just mean "all of their claims *against the Debtor*"; rather, Exide is trying to *imply* that the argument applies to "all of their claims against the Debtor *and the nondebtors*" – but since the law does not support that farfetched contention, Exide is left to the rhetorical device of creating the inference.

•    In this fashion, Exide employs the false premise that, with respect to claims arising from the same sets of facts, a claim against a debtor trumps a claim against a nondebtor. *See, e.g.*, Appellee's Brief, p. 19 (arguing that the fact that the PDH Foreign Entities filed proofs of claim against the Debtor automatically eliminates their rights to proceed, outside of bankruptcy court, against the nondebtor defendants). Yet it is beyond cavil that, when a lawsuit has been brought against multiple parties arising from the same set of facts, and one of the defendant parties files for bankruptcy, the lawsuit is stayed only against the party that filed for bankruptcy. Were Exide one of a dozen asbestos manufacturers sued by an individual with asbestosis, Exide were the only one

in bankruptcy, and the individual filed a proof of claim against it in its bankruptcy case, Exide would be arguing that the claim against it preempts the claims against all the co-defendants.[3]

- Exide does not want to allow the Court to recognize that the PDH Foreign Entities did assert and do have divisible claims *against the nondebtor Exide Foreign Entities*. Those claims were asserted in a duly-filed complaint. The merits of those claims have never been addressed by any court, whether through a motion to dismiss, motion for summary judgment, or trial. On the other hand, the Exide Entities did move, in the original action in Illinois state court, for a stay of the entire action based on Exide's pending bankruptcy, on the principle that Exide was a necessary participant in the litigation; and the Illinois State Court, after issuing a temporary stay and holding three separate hearings pertaining to the matter, terminated the temporary stay and ruled that the action against the Exide Foreign Entities could go forward. A-211, A-0229-0248.   As the case stood when it was removed to federal court, the PDH Foreign Entities were entitled to proceed on the merits with their causes of action against the Exide Foreign Entities, apart from the claims against the Debtor.[4]

- By the same token, Exide continues to try to conflate the claims of PDH(USA) with the claims of the PDH Foreign Entities.  For the most part, the claims of  PDH(USA) are simply not an issue in this appeal.  Appellants have acknowledged that the claims of PDH(USA) are directed solely against Exide, and not the Exide Foreign Entities.  Appellants have not argued that the bankruptcy court lacks subject matter jurisdiction over the claims of PDH(USA) against the Debtor.  The jurisdictional issue here is only concerned with the claims of the PDH Foreign Entities against the nondebtor Exide Foreign Entities.  Exide persists in arguing the misleading canard that "sixty percent of the total $20 million claimed – were directed solely against the

---

[3]  Obviously, there is some irony here, in that it is more typical to expect one co-defendant to try to shift liability to its co-defendants and away from itself.  Here, the reverse is true.
[4]  Neither the subsequent removal of the action to federal bankruptcy court, nor the transfer of the action from Illinois to Delaware, altered or overrode that ruling.

Debtor." Appellee Brief, p. 12. Dollar calculations aside[5], the fact is that *100 percent* of the claims of the PDH Foreign Entities are directed against the nondebtor Exide Foreign Entities. But by conflating the claims which are the basis of this challenge on jurisdictional grounds with those that are not, Exide seeks to play a false numbers game.

- Only by conflating the PDH Entities' claims against the Debtor with the PDH Foreign Entities' claims, as asserted in the Illinois complaint, against the three nondebtor Exide entities, pushing aside the existence of the causes of action that have been duly asserted against the Exide Foreign Entities, and promoting the pretense that they are all just one big, indivisible claim against Exide alone, is Exide able to argue that the PDH Foreign Entities' claims against the nondebtor entities are "core." Otherwise, the logic of Exide's argument would mean, to continue with the hypothetical used above, that where an asbestosis victim has sued multiple asbestos manufacturers, one of which filed for bankruptcy, and that plaintiff files a proof of claim against the one defendant in bankruptcy, then the plaintiff's claims against all the rest of the co-defendants would be "core" matters in the one bankruptcy case!

- Unfortunately, the Bankruptcy Court was susceptible to this blending of distinctions. In its 2003 Order, the Bankruptcy Court did not merely deny the PDH Entities' motion seeking remand, abstention or relief from the automatic stay. The Bankruptcy Court made the mistake of overreaching both as to its subject matter jurisdiction and the specific motion placed before it for decision, in concluding that the PDH Foreign Entities "have no right of recovery against the non-debtor Exide entities." While an argument characterizing pre-bankruptcy causes of action in a complaint brought by nondebtors against other nondebtors as "core" should have been recognized as baseless, the Bankruptcy Court nonetheless was led erroneously into accepting it.[6]

---

[5] Exide's characterization of the dollar amounts of the PDH Entities' claims is incorrect, but also immaterial.

[6] Although the Bankruptcy Court may have viewed its jurisdiction initially as having been "core" by reason of the fact that it was presented with a motion that in part sought stay relief, the Court's

- Though most of what is being appealed from here is subject to *de novo* review, Exide's Brief is misleading on this point. *See, e.g.,* Appellee's Brief, pp. 4, 9. The PDH Foreign Entities have never received a hearing or trial on the merits of their causes of action against the nondebtor Exide Foreign Entities. In the Bankruptcy Court, the PDH Entities filed a motion for remand, abstention or stay relief. No party filed in bankruptcy court a motion to dismiss the PDH Foreign Entities' claims against the Exide Foreign Entities, and there was no hearing in which the merits of those claims *could* properly be heard. Furthermore, to the extent that the Bankruptcy Court (improvidently and improperly) addressed the merits of those claims, it did so purely on its reading of a contract on its face. Yet Exide repeatedly urges that the abuse of discretion standard should apply, as if the Bankruptcy Court had held a trial, heard from witnesses, assessed their credibility, and entered a judgment. Since there was no trial, and a reading of the face of a contract is inherently a legal determination, not an evidentiary one, the Bankruptcy Court's decisions based on its reading of the Coordination Agreement, as well as its jurisdictional rulings, are all subject for *de novo* review, and not abuse of discretion.

With that by way of Introduction, this Reply will seek to identify and address the salient points urged by Exide in its Opposition Brief.

## REPLY TO EXIDE'S INTRODUCTION SECTION

In search of harsh adjectives to sling, Exide charges, without explanation or evidentiary support, that the PDH Entities filed the Remand Motion "in a blatant attempt to circumvent the bankruptcy process and place themselves ahead of other, similarly situated unsecured creditors." Appellee Brief, p. 2. It is a feckless complaint given that (a) as a result of the confirmation of the Plan, numerous creditors have already received distributions from the estate, but the PDH Entities

---

actual decision, in ruling substantively on the claims of the PDH Foreign Entities against the nondebtor Exide Foreign Entities, extended well beyond the limits of jurisdiction for denying stay relief. This is especially so because the automatic stay does not apply to causes of action against nondebtors in the first place. The Bankruptcy Court effectively extended the automatic stay to cover these nondebtors, despite the lack of a formal motion from Exide, upon notice to all interested parties and an opportunity to respond.

have been stuck in a holding pattern, and (b) the PDH Entities followed clear, statutorily provided procedures for seeking remand, abstention or stay relief. All of those processes exist precisely to allow for circumstances in which parties are entitled to proceed, or would be better served by proceeding, in a jurisdiction or venue other than bankruptcy court. If a party is found to have a right to collect against another party (other than the debtor) or source (such as insurance), it may do so. But, to the extent that the amount of a claim against the Debtor's estate is determined elsewhere, there is no "circumvention" with respect to actual distributions – if the creditor is only entitled to collect from the estate, the estate will still only make distributions consistent with the Plan or the Bankruptcy Code.

## REPLY TO EXIDE'S ARGUMENTS

I.    EXIDE WOULD IMPROPERLY HAVE THIS COURT REVIEW ALL THE BANKRUPTCY COURT'S RULINGS ON AN ABUSE OF DISCRETION STANDARD

Exide makes passing reference to the fact that the review of all legal determinations are *de novo*, but then proceeds as if everything the bankruptcy court decided is subject to an "abuse of discretion" standard. That is patently not true. Subject matter jurisdiction is a legal determination, and the review of it is plenary. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214 (3d Cir. 2005). The denial of stay relief is a legal determination, subject to plenary review, and is not a matter of discretion. *FRG, Inc. v. Manley*, 919 F.2d 850, 854 (3d Cir. 1990). The interpretation of the language in a contract, in the absence of extrinsic evidence, is a matter for *de novo* review. *In re Professional Video Ass'n, Inc.*, 2005 WL 189733 (D. Del. January 27, 2005). The underlying legal questions presented in connection with an abstention request are subject to plenary review. *University of Maryland at Baltimore v. Peat Marwick Main & Co.*, 923 F.2d 265 (3d Cir. 1991). The denial of a remand motion may be subject to plenary review. *Sikirica,* 416 F.3d at 219-220. Mandatory abstention is a legal issue, subject to plenary review. *In re Baldwin Park Associates,* 144 B.R. 475 (C.D. Cal. 1992).

Exide totally misrepresents the standard of review with respect to the Remand Motion, by arguing that the bankruptcy court's order should be affirmed if there is "any plausible basis" for it. *See* Appellee Brief, pp. 11, 24, 41. Exide relies, in each mention of this "plausible basis" standard, on *In re McCarthy*, 230 B.R. 414 (9th Cir. BAP 1999). In *McCarthy*, the request for remand was *granted,* and that decision in favor of remand was affirmed on appeal. *Id.* at 416. Apart from the fact that *McCarthy* is not the law of this Circuit, that court is very clear that a decision in favor of a remand should be affirmed if it was "plausibly" supported. *Id.* at 417-18. It does not address the standard for reviewing the *denial* of a remand, and thus is inapposite as well. At the same time, Exide ignores the Third Circuit's ruling that that all doubts in determining whether a removed case should be remanded must be resolved in favor of remand. *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied,* 498 U.S. 108 (1991). Thus, discretion exercised in favor of remand is preferred.

II.     EXIDE'S ARGUMENTS ON SUBJECT MATTER JURISDICTION AND CORE OR NON-CORE PROCEEDINGS DEPEND UPON IGNORING THE INDEPENDENT STATUS OF THE CLAIMS OF THE PDH FOREIGN ENTITIES AGAINST THE EXIDE FOREIGN ENTITIES

Virtually every argument that Exide makes in this appeal ultimately relies on the erroneous conclusion that the causes of action asserted in a pre-petition complaint by the PDH Foreign Entities against the *nondebtor* Exide Foreign Entities constituted a "core" proceeding over which the Bankruptcy Court had subject matter jurisdiction. (Never mind that the Bankruptcy Court did not even have personal jurisdiction over the Exide Foreign Entities, as they had never even entered an appearance in that court.) It relies on ignoring the principle of the Third Circuit's *Maritime Electric* case (cited in the Opening Brief at p. 35), along with its jurisdictional consequences, that:

> All proceedings in a single case are not lumped together for purposes of automatic stay analysis. Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case. Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.

*Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204-05 (3d Cir. 1991).

Exide's argument that this prepetition dispute between nondebtor parties in an Illinois court should be a "core" bankruptcy matter in turn relies on the sleights of hand outlined in the Introduction to this Reply – in particular, the purposeful omission of identification of which party a "claim" is directed against. Thus, Exide indignantly asserts: "The PDH Entities' contention that they somehow did not consent to have their claims heard and decided by the Bankruptcy Court by filing their four Proofs of Claim inexplicably ignores this fundamental jurisprudence." Appellee Brief, p. 11.

First of all, only the four PDH Foreign Entities, and *not* PDH(USA), even argue that the Bankruptcy Court lacked subject matter jurisdiction over any of their claims. Appellants had thought it was clear in the Opening Brief that PDH (USA)'s claims, being only against Exide and not the nondebtor Exide Foreign Entities, is not challenging subject matter jurisdiction for itself.

Second, the PDH Foreign Entities do not make any contention regarding their proofs of claim *against Exide,* and the venue in which they should be heard and decided. None of the PDH Entities' proofs of claim have ever been objected to by the Debtor, and in the absence of either an Objection to their claims under the Bankruptcy Rules, or the litigation of the transferred State Court Action itself, those claims have never been presented to the Bankruptcy Court for determination. At the same time, Appellants have acknowledged that the filing of proofs of claim would effect an acceptance of the bankruptcy court's equitable jurisdiction, in connection with disputes *with the Debtor.* But that acceptance of equitable jurisdiction, and the related jury trial waiver, is limited to the disputes between the claimants and the Debtor, and does not extend to nondebtors. Exide cites much of the standard, familiar case law on the effect of filing a proof of claim, and then simply presumes that those principles should extend to claims against nondebtors, though they do not.

Again, to revisit the hypothetical posed in the Introduction, it would come as a great surprise to an asbestosis plaintiff if, having filed a proof of claim in the bankruptcy case of a

defendant manufacturer, that plaintiff were then told that her jury trial rights against all the other nondebtor co-defendants, in the action that was still proceeding, had been waived. Exide's erroneous argument depends mainly on the fact that Exide never spells out the distinction between claims against the Debtor and claims against nondebtors. *See In re Mid-Atlantic Handling Systems, LLC*, 304 B.R. 111 (Bankr. D.N.J. 2003). In *Mid-Atlantic*, a company had filed a state court action against a forklift manufacturer and the dealer that distributed the forklifts, and the dealer thereafter filed a bankruptcy case, and removed the state court action to the bankruptcy court. The plaintiff moved for remand or abstention, for stay relief, and a declaration that the stay did not apply to the manufacturer. A day before the bar date for filing proofs of claims, the plaintiff filed a proof of claim with an addendum stating it was not consenting to bankruptcy court jurisdiction to adjudicate the pending litigation. 304 B.R. at 119. The court, after concluding initially that the pre-petition state law claims asserted by the plaintiff against the debtor did not "arise under" or "arise in" a case under title 11, but were "related to" the debtor's Chapter 11 case, held that, notwithstanding the plaintiff's proof of claim, the action was "non-core." *Id.* at 120, 124-125.[7] *See also Transamerica Financial Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 302 B.R. 620 (N.D. Iowa 2003) (in action by

---

[7] Notably, the *Mid-Atlantic* court found the plaintiff's reservation of non-consent to bankruptcy court jurisdiction in its proof of claim to have been effective under the circumstances of the case. 304 B.R. at 124. Those circumstances are directly comparable to those here, as the PDH Foreign Entities are in exactly the same situation as the plaintiff in the *Mid-Atlantic* case.

The PDH Entities had filed a remand motion in the Illinois bankruptcy court almost instantly upon the removal of the Illinois State Court Action to that court. The Illinois bankruptcy court did not rule on the remand motion, but transferred it, with the case file, to Delaware, by its order dated February 4, 2003. A-0262. But the case file was inexplicably delayed in its passage to Delaware for nearly a year, and was not received and docketed in Delaware until January 14, 2004. *See* docket, A-0308. In the meantime, Exide had established an early claims bar date in the case of April 23, 2003. A-0479. As a result of the delayed file transfer, the original remand motion was not timely taken up by the Delaware bankruptcy court, and the PDH Entities later filed their renewed Remand Motion, while still waiting for the case file to have been transferred. The proofs of claim were filed on April 22, 2003, the day before the bar date, and well after the original remand motion was filed in Illinois. See Supplemental Appendix, C-01 to C-03. This was explained in both the proofs of claim themselves and in the Remand Motion. The PDH Foreign Entities would not have filed the proofs of claim against the Debtor if their action against the Exide Foreign Entities would have been allowed to proceed.

[The date-stamped proofs of claim, included in the Supplemental Appendix, are part of the Record on appeal, having been included in the exhibits to Exide's Response to the Remand Motion, but were not attached within the Appendix to the Opening Brief.]

investors and investment funds against banks and underwriters that had marketed securities issued by Enron, which the defendants removed to federal court based on Enron's bankruptcy filing, court held that it lacked subject matter jurisdiction over the dispute between nondebtors, even though the defendants asserted a contingent indemnification claim against Enron and even though certain of the plaintiffs filed proofs of claims in the *Enron* case). (The date-stamped proofs of claim are part of the Record on appeal, having been included in the exhibits to Exide's Response to the Remand Motion, but were not attached within the Appendix.)

Exide argues as if the PDH Foreign Entities rely on the contingent nature of their proofs of claim for purposes of arguing that an implied consent to bankruptcy court jurisdiction with respect to the contingent claims against the Debtor is not effective.[8] But the PDH Foreign Entities have not made that argument; this is just one of Exide's many false issues. The reason that Appellants highlight the contingent nature of the proofs of claim *against the Debtor* is to make clear two things. First, it should be evident that the claims of the PDH Foreign Entities are principally directed against the Exide Foreign Entities alone, and only secondarily – as a result of the defendants' contentions about the remedies provisions in the Coordinating Agreement, against the Debtor. Those claims arise out of separate Stock Sale Agreements between each of the PDH Foreign Entities and a corresponding Exide Foreign Entity – contracts to which the Debtor, Exide, was not even a signatory. Second, it is to make clear that their proofs of claim against Exide truly are contingent. Once a proper court – outside of the bankruptcy court – hears and determines the merits of their claims *against the Exide Foreign Entities*, it will be known whether they are entitled to recover from the Exide Foreign Entities. If the PDH Foreign Entities are able to recover from the Exide Foreign Entities, then they will have no remaining claim against the Debtor. If a proper court decides that the PDH Foreign Entities may not recover from the Exide Foreign Entities but

---

[8] In fact, though, the argument that *Travellers International AG. v. Robinson,* 982 F.2d 96 (3d Cir. 1992) stands for the broad proposition that the filing of a defensive proof of claim will always result in the invocation of a bankruptcy court's equitable jurisdiction to adjudicate that claim against the debtor has been expressly rejected. *In re Kamine/Besicorp Allegany, L.P.,* 214 B.R. 953, 970 (Bankr. D.N.J. 1997).

instead must look to the Debtor for recovery, that court might still be in a position to quantify the claims against the Exide Foreign Entities, and then leave the allowance and administration of the claim *against the Debtor* to be handled under the jurisdiction of the Bankruptcy Court.[9]

In comparable cases involving actions against both a debtor and non-debtors that were removed to bankruptcy court, courts have found the actions to be non-core. *See, e.g., In re Fitzgeralds Gaming Corp.*, 261 B.R. 1 (Bankr. W.D.Mo. 2001); *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.,* 194 B.R. 750 (D.N.J. 1996). In *Donington*, a plaintiff had commenced an action against a law firm and three of its attorneys, the law firm thereafter filed for bankruptcy relief and removed the action to the bankruptcy court, and the plaintiff moved for abstention, remand, and stay relief. 194 B.R. at 756. The court held that the action was "related to" the bankruptcy case, but was "non-core." 194 B.R. at 757-759. In *Fitzgeralds Gaming*, the plaintiff, a company that was denied the grant of a license to operate a riverboat gambling casino, brought a state court action against a company that was granted such a license, and that company's parent company, alleging tortious interference with business expectancies. 261 B.R. at 3. Just prior to the filing of the lawsuit, the plaintiff's parent company filed a Chapter 11 bankruptcy petition. The defendants filed a notice of removal, and the plaintiff moved for remand. *Id.* The bankruptcy court held that, as a state law dispute between parties who are nondebtors, the court lacked subject matter jurisdiction, even though, in the event that the plaintiff were to prevail, the

---

[9] In this regard, Exide's effort to distinguish *Steinman v. Spencer (In re Argus Group, Inc.),* 206 B.R. 737, 747-48 (Bankr. E.D. Pa. 1996), *aff'd,* 206 B.R. 757 (E.D. Pa. 1997), and appropriate it for supporting its own position, is unavailing. *See* Appellee Brief, p. 18. First, to the extent that Exide argues the result in *Steinman* should be distinguished because the proofs of claim were at variance from the state court claims in that case, the court's statement about what would result if the proof of claim were identical with the state court claim is purely *dicta*. Second, the one case cited within *Steinman* for the point about the impact on a core/non-core finding when the state court action is the same as the proof of claim, *St. Vincent's Hospital v. Norrell (In re Norrell),* 198 B.R. 987 (Bankr. N.D. Ala.1996), is a case in which there were no nondebtors involved. Third, the contingent nature of the PDH Foreign Entities' claims against the Debtor make them substantively different from their claims against the Exide Foreign Entities, which are direct and not contingent.

debtor would "be in a position to share in the proceeds." *Id*. at 7. The court further ruled that, even if there were "related to" jurisdiction, the action would be non-core. *Id*. at 8.[10]

Exide next argues that the post-confirmation standard for determining bankruptcy court "related to" jurisdiction, as set forth in *In re Resorts Int'l, Inc.*, 372 F.3d 154, 164-65 (3d Cir. 2004), is inapplicable. Exide argues, without support, that the standard applies only to actions in a bankruptcy case that were *filed* after a chapter 11 plan has been confirmed. Of course, the argument that the *Resorts* standard applies only to actions based on post-confirmation transactions has already been rejected. *E.g., In re Insilco Technologies, Inc.*, 330 B.R. 512 (Bankr. D. Del. 2005) (the *Resorts* close nexus standard applied to state law causes of action brought by Liquidating Trustee arising from pre-petition transactions). And it is already amply established that pre-petition state court lawsuits are virtually always non-core matters, because they rarely if ever "invoke[] a substantive right" provided by the Bankruptcy Code or constitute a proceeding,

---

[10] The case of *RBGSC Investment Corporation*, 253 B.R. 369 (E.D. Pa. 2000), which is the only case cited by Exide for a contrary proposition (Appellee Brief, p. 20 n. 16), is readily distinguishable. In that case, the debtor was an entity that, approximately one and one-half years before it commenced its Chapter 11 bankruptcy case, was formed to be the owner of two brewery pub restaurants in Philadelphia. It was formed and financed by a related entity, G.S. Capital, L.P., that was a minority-owned investment company funded by the Small Business Administration. The two entities, the Debtor and G.S., together entered agreements with Red Bell Brewing Company and a Red Bell affiliate for construction management and licensing for the two pubs, and for operational management of one of the pubs. They also entered an agreement with another party (Bella's Place) for the management of the other pub. After disputes between the parties arose, the Red Bell companies commenced a state court lawsuit against the Debtor, G.S., and Bella's Place. Soon after that, the Debtor filed its Chapter 11 case, and removed the state court action to the bankruptcy court. *See* 253 B.R. at 372-373, and prior decisions cited therein. In affirming the bankruptcy court's decision that the state court action was a core proceeding, the District Court found that all the state court claims that the Red Bell parties asserted against the debtor and the non-debtor defendants, which included injunction, defamation, and breach of contract, were jointly asserted against all the defendants collectively, such identifying claims that were not directly tied to the Debtor would "present a daunting legal task", which the court was not inclined to "disentangle." 253 B.R. at 379-380 and n.13. That situation is a far cry from the instant one, in which (a) the Debtor was not a party to the Stock Sales Agreements between the PDH Foreign Entities and the Exide Foreign Entities, (b) the amounts asserted to be owed, respectively, by the Exide Foreign Entities are clearly laid out in paragraphs 11 and 12 of the original Complaint, and (c) resolution of the parties' dispute was plainly not critical to the Debtor's reorganizing, since its Plan was confirmed while this matter was "back-burnered" by the Bankruptcy Court.

that "by its nature, could arise only in the context of a bankruptcy case." *See Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (setting forth core proceedings standard).[11]

   Despite Exide's protestation, there is nothing in the logic of *Resorts* that would suggest that the close nexus standard should not be applied to any proceeding which is not yet underway in the bankruptcy court, and for which the question of whether the court's jurisdiction should be exercised remains an open issue. That was certainly the status of the instant matter, by virtue of the PDH Entities' Motion for Reconsideration. That motion effectively stayed the 2003 Order, and it stayed the time within which appeal from that order had to be taken, until the Motion for Reconsideration was resolved. Had a disposition of the dispute between the Debtor and the PDH Entities been critical to the Exide bankruptcy case, the bankruptcy court most certainly would have ruled upon it prior to confirming the Plan, but that was not the case. Given that the Plan was confirmed well before the bankruptcy court rendered a final ruling on reconsideration of the Remand Motion, the close nexus standard should have been applied. Exide mischaracterizes the Appellants' argument as suggesting that "the mere passage of time since filing their pre-petition claims somehow converts the jurisdictional standard to one which applies only to cases filed after plan confirmation." Appellee Brief, p. 20. This is not some fuzzy matter of the passage of time; it is the bright line established pursuant to *Resorts* that a bankruptcy court's jurisdictional limits change after plan confirmation.

III.   EXIDE'S ARGUMENTS ON THE FORUM SELECTION CLAUSE DEPEND ON A
       FINDING THAT THE DISPUTE BETWEEN THE PDH FOREIGN ENTITIES AND
       THE EXIDE FOREIGN ENTITIES IS CORE

   Exide impliedly acknowledges that its arguments in support of the Bankruptcy Court's failure to enforce the forum selection clause, incorporated by reference into each of the Stock Sales Agreements between the PDH Foreign Entities and the Exide Foreign Entities, rely on a finding

---

[11] Here is one of the areas in which Exide sets up a red herring argument that it then rebuts. Appellants do *not* argue that the fact that the PDH Foreign Entities' claims arise under state law *per se* makes them non-core. *See* Appellee Brief, p. 16. Rather, the point is that these are pre-petition state law claims, against nondebtors, already asserted in a pre-petition complaint.

that the prepetition causes of action asserted in the Complaint by the PDH Foreign Entities against the Exide Foreign Entities are "core." Thus, Exide effectively concedes that if those disputes are recognized as non-core, the forum selection clause should be applied.

IV.     IN SUPPORTING THE BANKRUPTCY COURT'S LEGAL ERROR IN ITS READING OF THE COORDINATING AGREEMENT, LEADING TO THE DENIAL OF THE REMAND MOTION, EXIDE PERSISTS IN IGNORING THE AMBIGUITY IN THE COORDINATING AGREEMENT

In its Statement of Relevant Facts, Exide summarizes approvingly the approach that the Bankruptcy Court took with respect to the interpretation of the Coordinating Agreement between the parties. Appellee Brief, p. 3. There, Exide uses the phrase "clear and unambiguous" the first of a dozen different times – plus an additional ten usages of the word "unambiguous" by itself – in describing the Coordinating Agreement and the Bankruptcy Court's interpretation of it, thus making ample use of the rhetorical device or repetition. Exide argues that the Bankruptcy Court "properly declined to hear the proffered live testimony of the PDH Entities' former trial counsel." *Id*. Here as elsewhere, Exide jumps over the fact that, in ruling upon the rights of the PDH Foreign Entities against the nondebtor Exide Foreign Entities, the Bankruptcy Court exceeded the bounds both of its own jurisdiction and of the very motion that was placed before it for consideration. That motion, the Remand Motion, asked the Bankruptcy Court to recognize the unambiguous language of the forum selection clause in the agreement, but did not ask the Bankruptcy Court to decide whether the PDH Foreign Entities had remedies against the nondebtor Exide Foreign Entities.

In any event, all that repetition of the phrase "clear and unambiguous" fails to clear up an obvious ambiguity, which the Bankruptcy Court pointed to, without acknowledging it. That ambiguity, as Appellants laid out in the Statement of Facts of the Opening Brief, arises from two parts of the writing at issue, at two points in time. *First* is the question: how should Section 4.2(a) of the Coordinating Agreement, prior to Amendment No. 2, be read? *Second* is the question, what do the words "for sake of clarification" mean?

Appellants submit that the answer to the first question is the language laid out in footnote 23 of the Opening Brief, which incorporates the definition of "Buyer" set forth earlier in the

Coordinating Agreement.  Notwithstanding its reiterations of the word "unambiguous" like a mantra, Exide has not disputed that reading of Section 4.2(a) of the Coordinating Agreement *before* the addition of Amendment No. 1.

Then, the question is what is meant by "clarification."  A common definition is "to make clear or easier to understand; elucidate."  *See* http://dictionary.reference.com/.  But no common definition of "clarification" equates that word with "change", "modification", or "alteration."

The principal part of Amendment No. 1 to the Coordinating Agreement involved a substantive change with regard to the transfer of trademarks – a change that is not an issue between the parties. As an incidental part of Amendment No. 1, it also provided that: : "Section 4.2(a)(i) is hereby amended to insert the words 'or, for sake of clarification, any International Buyer' after the word 'Buyer' in the first line of such section." A-0633.

Appellants maintain that as a result of this amendment, the phrase "and/or any International Buyer" in that subsection, as it was understood prior to the amendment, was simply replaced by the phrase "or, for sake of clarification, any International Buyer." *See* Opening Brief, p. 11.  The reason this is the only, or at least the most, plausible reading of this part of Amendment No. 1 is that it does not ignore or do violence to the phrase "for sake of clarification."  By contrast, the reading that has been proffered by Exide and which was adopted by the Bankruptcy Court ignores that phrase, or presumes that the parties did not mean "clarification" at all, and instead reads it as "change" or "alteration."  Simply put, it would be impossible to have read Section 4.2(a), as it stood prior to Amendment No. 1, the same as the Bankruptcy Court has read it as a consequence of Amendment No. 1, but reading it that way necessitates ignoring or misreading the word "clarification." The Bankruptcy Court alluded to this quandary in the 2005 Opinion, in language quoted at length in Appellee's Brief, where the court wrote:

> If Section 4.2(a) *may* have been ambiguous as to whether, in its various clauses, the
> context supported a broad definition of "Buyer" to include the Non-Debtor Exide
> Entities, any uncertainty was resolved by Amendment No. 1 to the Coordinating
> Agreement.  By virtue of Amendment No. 1, the parties specifically and deliberately

> carved out only one clause of Section 4.2(a) to "clarify." The other parts of Section
> 4.2(a) remained unchanged. [Italics in original.]

2005 Opinion, p. 10. *See* Appellee Brief, p. 31.

The Bankruptcy Court felt compelled to put the word "clarify" in quotation marks because it implicitly recognized that its reading of Amendment No. 1 did not treat this as a "clarification" at all, but instead treated it as a change.[12] This interpretation contravened the rule of construction that a court should not give a construction that "would render the phrase superfluous or meaningless." *Schaffner v. 514 West Grant Place Condominium Ass'n, Inc.*, 324 Ill. App. 3d 1033, 1040, 756 N.E.2d 854, 861 (Ill. App. 2001).

Exide has the temerity to say, more than once, that Appellants' arguments on appeal are a "rehash" – as if to say that, because they argued these points to the Bankruptcy Court, and did not prevail, nothing further need be said. *See* Appellee Brief, pp. 31-32. But Appellants have not appealed these issues before now; and these issues involve legal determinations – a reading of the Coordinating Agreement on its face – rendered by the Bankruptcy Judge in the 2003 Order as well as on reconsideration. They are subject to plenary review by this Court on appeal.

V.    EXIDE'S ARGUMENTS IN SUPPORT OF THE BANKRUPTCY COURT'S DENIAL OF THE PDH ENTITIES' MOTION FOR RECONSIDERATION REST UPON A MISREADING OF BOTH THE COORDINATING AGREEMENT AND OF APPLICABLE LAW

A.    Exide Misstates the Standard of Review

At the outset of its argument in support of the Bankruptcy Court's denial of the Motion for Reconsideration, Exide asserts that "the PDH Entities do not specify the applicable standard of review for their appeal of the Bankruptcy Court's Order denying reconsideration." Appellee Brief, p. 24. Apparently, Exide missed the section titled "Standard of Appellate Review," on page 1 of

---

[12]  The Bankruptcy Court also failed to address the inherent inconsistency of its interpretation with the language in § 4.5 of the Coordinating Agreement, that: "Buyer and Seller covenant and agree for themselves and their respective Affiliates that they will not bring, maintain, join or prosecute any Action or other proceeding against *the other or its Affiliates* for breach of the Sale Agreements or indemnity therefor *except* as provided in this Agreement."

Appellants' Opening Brief.  The standard set forth there, from a 1999 Third Circuit decision,[13] is the correct standard.  The one set forth by Exide, citing to a 1987 case from the Eastern District of Pennsylvania, is not. Appellee Brief, p. 24.

> B.  Exide Fails to Address the Court's Inconsistency in Denying
>     Reconsideration Pursuant to Bankruptcy Rule 3008

With respect to the standards that apply in the hearing of motions for reconsideration in the first instance, it is undisputed that the standard under Bankruptcy Rules 7052 or 9023 are treated as the same, and that the standard under Bankruptcy Rule 3008, which arises when seeking reconsideration of an order allowing or disallowing a claim against the estate, is less limiting. Exide continues to argue that Rule 3008 was inapplicable, and quotes the same language from the 2005 Opinion that Appellants cited in the Opening Brief. *Compare* Appellee Brief, p. 24 *with* Appellants' Brief, p. 23.  But Exide simply ignores the important point raised by Appellants that the Bankruptcy Court's denial of the applicability of Rule 3008 was inconsistent with its assertion of jurisdiction under 28 U.S.C. § 157(b)(2)(B).  If Rule 3008 was not a proper grounding for reconsideration, then nor was § 157(b)(2)(B) for the exercise of jurisdiction.

> C.  Exide Misstates the Facts and Misconstrues the Law Pertinent to
>     The Appellants' Raising of the Mutual Mistake Argument

There are two key, interrelated areas in which the issues presented in the Motion for Reconsideration are distinct from those presented in the Remand Motion, and consequently are subject to the standard of review for motions for reconsideration, a standard distinct from the plenary review to be accorded to all the issues except for discretionary abstention that are on appeal from the 2003 Order denying the Remand Motion.  Exide misconstrues the facts and the law pertinent to these two areas.

One of these areas is highlighted by this erroneous statement made by Exide in its Statement of Relevant Facts: "Among the issues the parties *briefed* and argued [on the  Remand

---

[13].  *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir.1999).  *See* Opening Brief, p. 1.

Motion] was whether Section 4.2 of the Coordinating Agreement fixed liability for indemnification solely upon the Debtor or extended that liability to the Non-Debtor Entities." Appellee Brief, p. 6. That is not true. That issue was neither raised nor briefed by the movants, the PDH Entities, and they did not have an opportunity to brief a response to it. Indeed, if that issue was raised by Exide for the purpose of seeking a judgment upon what if any liability the nondebtor Exide Foreign Entities had to the PDH Foreign Entities, it was improper to have raised it in a response to a motion seeking remand, abstention or stay relief. But that is the judgment the Bankruptcy Court rendered in its 2003 Order.

The other area is in connection with the mutual mistake argument, raised in the Motion of for Reconsideration, with supporting affidavits, which was not a necessary argument for purposes of the PDH Entities seeking remand, abstention or stay relief, but became necessary in connection with the merits of the causes of action brought by the PDH Foreign Entities against the Exide Foreign Entities, which merits were reached by the Bankruptcy Court in the 2003 Order.

Exide mischaracterizes the two affidavits submitted by the PDH Entities, from their in-house and outside counsel most closely involved in the drafting and negotiation of the Stock Sale Agreements and Coordinating Agreement, in arguing that they only support an argument for unilateral, not mutual, mistake. That contention is contradicted by the affidavits, one of which expressly describes the "primary purpose" of the parties in Amendment No. 1 – not merely PDH (USA)'s purpose – while the other sets forth his understanding of what "the parties thereby intended."[14] Furthermore, while Exide repeatedly describes these affidavits from third-party

---

[14] Martin Hudson's Declaration (A-0105) states, in part:
    "7.    *The primary purpose* of this Amendment [No. 1] was to assure that the agreements could be enforced in the United States in the forum selected by the parties – state or federal court in Cook County, Illinois. There was no request by, or discussion or negotiation with, Exide concerning limiting the rights of the Seller, or any International Sellers, to seek recourse against the International Buyers for breaches by them of their covenants or agreements under their respective ROW Agreements or the Coordinating Agreement." (Emphasis added.)
    The James D. McDonough Affidavit (A-0045 – A-0046) states in part:
    "5.    At the time Amendment No. 1 was executed, it was not my understanding *that the parties thereby intended* to limit the rights of the Seller or International Sellers to seek recourse

witnesses (neither is or was, at the time of the affidavits, an employee of any of the Appellants) as "self-serving" (Appellee Brief, pp. 27, 30, 34, 35), Exide has nothing to say in factual rebuttal to what these sworn statements or declarations describe as what the parties both intended. Thus, to the extent that a reading of Section 4.2(a) of the Coordinating Agreement such as the Bankruptcy Court gave it is deemed to be correct, the only evidence is that the parties did not intend it to be read that way.

As Appellants have pointed out, the law in Illinois is clear that, where mutual mistake has been raised, the parties have a *right* to present extrinsic evidence of what the parties intended in the contract – regardless how "unambiguous" the contract might otherwise appear. *See, e.g., Beynon Bldg. Corp. v. National Guardian Life Ins. Co.*, 118 Ill. App. 3d 754, 455 N.E.2d 246 (Ill. App. 1983) (parol evidence rule is no bar to admission of evidence on question of mutual mistake, even when instrument to be reformed is clear on its face) (case cited in Appellee Brief, p. 36).[15]  In response, Exide points out case law that under Illinois law, the doctrine of mutual mistake does not apply to "a fundamental mistake relating to an essential element of the contract which would prevent a meeting of the minds of the parties" (Appellee Brief, p. 36), and proceeds to make the frivolous argument that what is at issue here is a "fundamental mistake" which would prevent the parties from ever having a legally enforceable contract. It should be obvious, though, that this rebuttal has nothing to do with the facts presented. The mutual mistake argued here is in no respect

---

against the International Buyers for breaches by them under their respective Sale Agreements." (Emphasis added.)

[The signature page from the McDonough Affidavit is part of the hard copy form of the Appendix as filed, but was inadvertently omitted from the electronically -filed Appendix, and has been included in a supplement filed in pdf format.]

[15]  In support of the exclusion of parol evidence pertaining to mutual mistake, Exide relies on *Lukas v Lightfoot*, 131 Ill App. 3d 566,  476 N.E.2d 1 (1983) and *Bank of Naperville v. Holz*, 86 Ill.App.3d 533, 407 N.E.2d 1102 (1980).  Appellee Brief, p. 37.  But neither support such an exclusion.  In *Lukas*, the appellate court found that the lower court had actually received testimony from both the plaintiffs and the defendant, and had concluded that reformation was not supported after hearing that testimony. 131 Ill App. 3d at 569, 476 N.E.2d at 3  Similarly, *Holz* also was an appeal following a trial on the merits, and the appellate court describes the fact that "much of the testimony at trial concerned the parties' intent in executing these documents." 86 Ill.App.3d at 535, 407 N.E.2d at 1104.

one that would prevent the parties' contracts from ever being enforceable in the first instance. *Cf.*

*Friedman v. Development Management Group, Inc.*, 82 Ill. App. 3d 949, 954, 403 N.E.2d 610 (Ill.

App. 1980) (mutual mistake contention rejected because parties were found never to have entered a

contract). Needless to say, in this case, the Sales Agreements are all contracts that were

consummated, and the issues now presented strictly deal with remedies for breaches.

      Exide also argues that the cases that Appellants have cited regarding mutual mistake only

concern "typographical, mathematical or clerical errors." Appellee Brief, p. 36.  Notably, Exide

does *not* argue that mutual mistake under Illinois law is limited to those situations; it is merely

critical of the fact patterns in the cases cited. But Exide is mistaken about the cases cited by

Appellants; and most certainly is mistaken regarding the applications of the mutual mistake

doctrine. In the *Schaffner* case,[16] an action between condominium owners, the Illinois appellate

court expressly found that the failure to designate two outdoor parking spaces as limited common

elements was *not* mere scrivener's error, but nonetheless held that the defendants were entitled to

proceed with their contention of mutual mistake as a basis to reform the agreement. 324 Ill. App.

3d 1033, 756 N.E.2d 854 (Ill. App. 2001).

      For Exide to argue that the PDH Entities could have sought leave to file a reply brief, or

could have presented additional argument orally at the hearing on the Remand Motion (Appellee

Brief, p. 35), misses the point.  First, neither the issue of whether the PDH Foreign Entities had a

right to proceed in the lawsuit against the Exide Foreign Entities, nor whether the automatic stay

should be extended to those nondebtors, was ever properly presented to the court.  Second, the

PDH Entities simply did not have any reason to believe the Bankruptcy Court was going to rule on

that new matter, since its impact extended well beyond the scope of the grant or denial of the

requested relief of remand, abstention or stay relief.

      The entire case file in the State Court Action was supposed to have been transferred to the

Delaware Bankruptcy Court pursuant to Judge Sonderby's transfer order, and that case file would

---

[16] *See* Appellants' Opening Brief, pp. 12-13.

have included a then-pending motion to dismiss, on the part of the Exide Foreign Entities, for lack

of a necessary party. *See* Sonderby Opinion, A-0252.[17]  As Judge Sonderby noted in her Opinion,

the Exide Foreign Entities' motion for lack of a necessary party, filed in the action prior to the

removal to federal court, would provide an opportunity within the litigation of the action to address

the "contention that Exide was the sole indemnitor under the indemnification provisions of the

Coordinating Agreement." Sonderby Opinion, p. 7, A-0256.[18]  But having alluded to the issue in

her Opinion, Judge Sonderby also importantly concluded that "the Court need not resolve that

issue" in considering the propriety of the removal or the transfer motion. By the same token, the

Bankruptcy Court should have recognized that reaching out to determine the merits of the rights of

the PDH Foreign Entities against the nondebtor Exide Foreign Entities was not necessary to ruling

on the PDH Entities' request for remand, abstention or stay relief (and as to stay relief, the PDH

Entities made clear their understanding in the Remand Motion that the automatic stay only applies

to debtors), and that the issue would later be addressed in the transferred State Court Action

through the Exide Foreign Entities' motion to dismiss the Complaint, which had not yet been fully

briefed or presented to a court for hearing.  Alternatively, to the extent that the Bankruptcy Court

did regard as necessary for resolving the Remand Motion a determination of the meaning of

Section 4.2(a), as amended, in the Coordinating Agreement, then it should have recognized that the

PDH Entities did not have a full and fair opportunity to present all their issues (including mutual

mistake) and their evidence on the matter, and therefore granted the request for its reconsideration,

including the affidavits submitted.

> D.    Most of Exide's Other Arguments Concerning the Appeal on
>       The Motion for Reconsideration Are Irrelevant or Misleading

---

[17]  The Exide entities must have known that motion would be rejected by the state court, in view of the court's termination of the temporary stay to allow the action to proceed against the foreign entities, as they filed their notice of removal before the hearing on that motion could take place.

[18]  Exide cites to that comment in the Sonderby Opinion (Appellee Brief, p. 5) as if it provided a basis for the Bankruptcy Court taking up the issue on the Remand Motion – where the issue was not properly presented – but the opposite is true.  The PDH Entities could reasonably expect that the merits of an issue appropriately raised in a motion to dismiss would not be short circuited through their Remand Motion.

Exide devotes a lot of attention in its brief to issues that have not been raised or argued. Thus, Exide expounds at length about there being no intervening change in controlling law or "new evidence" (as that term is used in connection with motions for reconsideration under Rules 9023 or 7052). Appellee Brief, pp. 25-27. But the PDH Entities have argued only that the Motion for Reconsideration should have been granted to "correct clear error of law or fact or to prevent manifest injustice," for reasons already discussed. *See* Opening Brief, p. 22.

Exide also argues that the Bankruptcy Court's construction of the Coordinating Agreement as "clear and unambiguous" was "not an abuse of discretion." Appellee Brief, pp. 30-33. For reasons discussed above, the Bankruptcy Court's construction of the contract, as rendered in the 2003 Order, was error. The review of that construction remains plenary, as a legal determination, and does not shift to a more relaxed "abuse of discretion" standard simply because the PDH Entities asked the Bankruptcy Court to reconsider before taking their appeal.

VI.    EXIDE'S ARGUMENTS TO SUPPORT THE BANKRUPTCY COURT'S DENIAL OF DISCRETIONARY ABSTENTION OR REMAND DEPEND ON THE ERRONEOUS CONCLUSION OF CORE STATUS FOR THE PDH FOREIGN ENTITIES' CLAIMS AGAINST NONDEBTORS

Consistent with Exide's general approach, Exide misleadingly states that the PDH Entities' arguments regarding equitable remand and discretionary abstention "rely entirely upon the assumption that the Bankruptcy Court lacked subject matter jurisdiction over the PDH Entities' claims as 'core' proceedings." Appellee Brief, p. 37. To the contrary, Appellants have argued that the Bankruptcy Court lacked even "related to" jurisdiction over the causes of action of the PDH *Foreign* Entities *against  nondebtors*, i.e., the Exide Foreign Entities; and that even if those causes of action are deemed "related to" the Exide bankruptcy case (for which, given the post-confirmation status of the case, there must be a close nexus), they would be non-core. But, however inaccurately Exide may have described the Appellants' argument, the inverse of it certainly appears to be true: Exide relies on the correctness of a finding that those claims against nondebtors are "core" matters in its bankruptcy case, for purposes of its arguments on remand and discretionary abstention.

Unconvincingly, Exide argues that *none* of the numerous factors that are considered by courts in considering a request for remand or discretionary abstention apply. Appellee Brief, p. 39.[19] Little need be said about most of this non-credible argument. However, it should be mentioned that Exide misstates the law in contending that only "unsettled state law questions or state law matters of 'substantial public import'" are entitled to be remanded. *Id.*, p. 40. *See* Opening Brief, pp. 30-32, and cases cited therein. In *In re Cardinal Industries, Inc.*, 126 B.R. 754 (Bankr. S.D. Ohio 1991), a case relied upon by Exide (Appellee Brief, p. 40), it is noteworthy that the court found only that it had "related to," *i.e.*, non-core jurisdiction, and the action at issue was an adversary proceeding that had been brought in the first instance in bankruptcy court, where the court denied a motion to dismiss or for abstention. 126 B.R. at 756.

Exide makes a passing argument that the PDH Foreign Entities' claims (against the Exide Foreign Entities) have a "significant impact upon the administration of the estate." Appellee Brief, p. 41 & n.37. Exide argues that the Plan's provision for distributions in the form of common stock and warrants is "irrelevant" because the stock and warrants "would need to be funded . . . to avoid dilution." *Id.* But this argument is made without any citation to the record, and is without support. To the contrary, however, pursuant to the Confirmation Order, the Debtor has already fully reserved stock and warrants to distribute to all holders of Disputed Claims such as the PDH Entities (A-0584), so there is no prospect of dilution. Moreover, the irony is that if the PDH Foreign Entities are allowed to recover from the nondebtor Exide Foreign Entities, then their contingent claims against Exide would be eliminated. Exide has no comment whatsoever about the fact that the Plan Confirmation Order provides that: "any claims of the Pacific Dunlop Holdings Entities against Non-Debtor subsidiaries of the Debtor are not affected hereby." A-0570.

VII.    EXIDE'S RESPONSE ON MANDATORY ABSTENTION MISCHARACTERIZES THE RECORD

On the issue of mandatory abstention, Exide principally relies on its contention that the

---

[19] In footnote 33 of its brief, Exide appears to object to Appellants' citation to case law not cited in its Remand Motion. Appellee Brief, p. 39. No support for that objection is cited.

dispute between the PDH Foreign Entities and the nondebtor Exide Foreign Entities is a "core" proceeding to avoid the clear application of mandatory abstention under 28 U.S.C. § 1334(c)(2). Apart from that issue, already amply addressed, the only other element that Exide disputes is that the action can be "timely adjudicated" in state court. In this regard, Exide wantonly argues that the prospect of timely adjudication in the Illinois courts is "expressly refuted" by the Sonderby Opinion. Appellee Brief, p. 42. But the quoted passage from the Sonderby Opinion merely addresses the level of discovery that had already taken place in the litigation, and says nothing about the ability of the state court to reach trial in reasonably timely fashion. At the same time, timeliness is a relative matter, and Exide completely disregards the fact, pointed out in the Opening Brief at footnote 43, that the Bankruptcy Court took one and one-half years merely to decide the Motion for Reconsideration. Given that fact, and bearing in mind that the Plan was confirmed roughly two years ago, the Court should find that, as a matter of law, mandatory abstention applies.

VIII.    EXIDE'S RESPONSE ON THE AUTOMATIC STAY ISSUE RELIES ON ITS NOTION THAT ALL THE PDH FOREIGN ENTITIES' CLAIMS ARE SOLELY AGAINST THE DEBTOR

Exide has simply no argument to make in favor of the application or extension of the automatic stay, two years after Plan confirmation, to the claims of the PDH Foreign Entities against the Exide Foreign Entities. The automatic stay itself ended. In its place, there is a Plan injunction in force, pursuant to 11 U.S.C. § 1141 and the Confirmation Order, but it only applies to claims *against the Debtor.*

Nonetheless, Exide's brief elaborates at length on the standards for stay relief and their application here. Appellee Brief, p. 44, n. 41. That discussion is irrelevant to this appeal.

## CONCLUSION

For the foregoing reasons as well as those set forth in the Opening Brief, Appellants respectfully request this Court to reverse the Orders of the bankruptcy court, and hold that the bankruptcy court lacks either "core" or "related to" jurisdiction over the claims of the PDH Foreign Entities asserted against the Exide Foreign Entities in the State Court Actions, such that those

claims cannot be tried in bankruptcy court.  Appellants further request this Court to direct the

remand of the claims asserted by PDH USA against the Debtor, so that they may be tried jointly

with the claims of the PDH Foreign Entities in Illinois state court, together with such other relief as

would be just and proper.

Respectfully submitted,

Dated: March 27, 2006                    MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Brett D. Fallon (ID No. 2480)
Douglas N. Candeub (ID No. 4211)
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, Delaware 19899
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: bfallon@morrisjames.com
Email: dcandeub@morrisjames.com

-and-

Linda Woolf, Esquire
Paula Krahn Merkle, Esquire
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
Telephone: (410) 783-4000
Facsimile: (410) 783-4040

Attorneys for the Appellants, the Pacific Dunlop
Holdings Entities

## CERTIFICATE OF SERVICE

I, Douglas N. Candeub, hereby certify that on this 27th day of March, 2006, I caused to be served a true and correct copy of the foregoing Appellants' Reply Brief on Appeal from Bankruptcy Court and the Appendix to Appellants' Reply Brief upon the following counsel, in the manner indicated:

**VIA HAND DELIVERY**
James E. O'Neill, III, Esquire
Pachulski, Stang, Ziehl,
 Young, Jones & Weintraub P.C.
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(Attorneys for Appellees,
Exide Technologies, Inc., et al.)

**VIA FIRST CLASS MAIL**
Benjamin Chew, Esquire
Patton Boggs LLP
2550 M. Street, NW
Washington, DC 20037
(Attorneys for Appellees,
Exide Technologies, Inc., et al.)

Douglas N. Candeub