# ATTACHMENT E

ATTACHMENT E

Westlaw.

Not Reported in F.Supp.2d    Page 1
Not Reported in F.Supp.2d, 2004 WL 419918 (N.D.Ill.), 42 Bankr.Ct.Dec. 156
**(Cite as: Not Reported in F.Supp.2d)**

C
Briefs and Other Related Documents
In re Resource Technology Corp.N.D.Ill.,2004.
United States District Court,N.D. Illinois, Eastern Division.
In re: RESOURCE TECHNOLOGY CORP.,
Debtor.
**No. 03 C 5785.**

Feb. 13, 2004.

Susan G. Feibus, Claudette P. Miller, Hallie A. Diethelm, Ungaretti & Harris, Susan Valentine, Robinson, Curley & Clayton, P.C., Brian Michael Graham, Katten Muchin Zavis Rosenman, Robert Michael Fishman, Brian L. Shaw, Shaw, Gussis, Fishman,Glantz, Wolfson & Towbin LLC, Chicago, IL, for Appellant.
Mark A. Brand, James Terrence Hultquist, Sachnoff & Weaver, Ltd., Chicago, IL, for Appellee.

*MEMORANDUM OPINION AND ORDER*
KENNELLY, J.
*1 Appellant Gregg E. Szilagyi, Chapter 11 trustee for Resource Technology Corp. ("RTC"), appeals from a bankruptcy judge's June 24, 2003 decision to abstain from hearing a contract dispute between RTC, its former director, and National Seal Corp. ("NSC"). For the reasons stated below, the Court affirms the ruling of the bankruptcy judge.

Background

RTC is in the business of extracting methane gas from landfills for disposal or conversion into usable energy. From 1996 through 1998, RTC contracted with NSC to provide labor and materials to construct methane collection systems at several Illinois landfills; NSC sent RTC invoices for services rendered. On January 20, 1998, Leon Greenblatt, who was an officer and director of RTC, signed a promissory note in favor of NSC for $2,607,067.73 allegedly to induce NSC to hold off suing RTC for unpaid invoices. Under the note's terms, NSC assigned its claims against RTC to Greenblatt to the extent of any payments he made on the note.

On April 29, 1999, NSC sued RTC and Greenblatt in the Circuit Court of Kane County, claiming RTC owed it payments for services rendered and seeking to enforce the note against Greenblatt in the amount of $1,762,927.73. RTC and Greenblatt asserted several affirmative defenses to NSC's contract claim, arguing among other things that NSC did not provide some services contracted for and provided other services inadequately. RTC also argued that Greenblatt's promissory note was a novation superseding the prior contracts between RTC and NSC and, thus, the note released RTC from further liability to NSC.

Involuntary bankruptcy proceedings were initiated against RTC on November 15, 1999 under Chapter 7 of the Bankruptcy Code. The case was later converted to a Chapter 11 case. NSC filed a proof of claim on June 12, 2000 alleging an unsecured claim of $2,231,418 plus interest and costs relating to the contracts that were at issue in the state court proceeding. RTC objected to NSC's proof of claim for the same reasons it disputed NSC's claim in state court and alleged it was entitled to a set off of more than $1 million for costs related to NSC's inadequate performance. NSC increased its claim by $887,585 on February 8, 2002. Greenblatt filed a contingent proof of claim against RTC on April 15, 2003 because if he were found liable on the promissory note, he could pursue NSC's claims against RTC for the amount of the judgment against him. RTC faces a total of $12 million in liquidated unsecured claims.

NSC filed a motion for permissive abstention under 28 U.S.C. § 1334(c)(1) on April 28, 2003, asking the bankruptcy judge to allow the state court to resolve its contract dispute with RTC. The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 2
Not Reported in F.Supp.2d, 2004 WL 419918 (N.D.Ill.), 42 Bankr.Ct.Dec. 156
**(Cite as: Not Reported in F.Supp.2d)**

bankruptcy judge granted the motion on June 24, 2003 in an oral ruling. Appellant appeals from the judge's decision to abstain.

Standard of Review

An order to permissively abstain is treated as a final order and is therefore appealable. *Brizzolara v. Fisher Pen Co.,* 158 B.R. 761, 768 (Bankr.N.D.Ill.1993); *In re Ascher,* 128 B.R. 639, 645 (Bankr.N.D.Ill.1991). "We review the reorganization court's decision to abstain under section 1334(c)(1) for an abuse of discretion." *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 6 F.3d 1184, 1188 (7th Cir.1993) (citations omitted) (hereinafter "*In re Chicago, Milwaukee R.R.*"). Despite this deferential standard, the Court " must nonetheless conduct a 'meaningful review" ' of the bankruptcy judge's decision. *Id.* at 1189 (citation omitted). The Seventh Circuit cautions that "federal courts generally should exercise their jurisdiction if properly conferred and that abstention is the exception rather than the rule." *Id.* (citation omitted).

Analysis

*2 Under 28 U.S.C. § 1334(c)(1), a bankruptcy judge is permitted to abstain "in the interest of justice, or comity with state courts, or out of respect for state law." *In re Carlson,* 202 B.R. 946, 949 (Bankr.N.D.Ill.1996) (citation omitted). The party seeking a permissive abstention has the burden of proving by a preponderance of the evidence that abstention is appropriate. *Brizzolara,* 158 B.R. at 769 (citation omitted). The Seventh Circuit has enumerated twelve factors a bankruptcy judge should consider when deciding whether to abstain:
(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Chicago, Milwaukee R.R.,* 6 F.3d at 1189 (quoting *In Re Eastport Assoc.,* 935 F.2d 1071, 1075-76 (9th Cir.1991)). The Seventh Circuit advises that "[c]ourts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Id.*

Applying this legal standard, the bankruptcy judge found three factors weighed against abstention: the state law at issue was neither difficult nor unsettled; the substance of the dispute was a core proceeding under 28 U.S.C. § 157(b)(2)(B) as a claim against the estate; and the claim had "substantial significance" to the bankruptcy proceeding because of the large amount of money at issue. June 24, 2003 Tr. at 6. But he found that the "substantial majority and weight of the factors favor abstention." *Id.* He reasoned that a resolution of NSC's claims against RTC in state court would enhance the efficient administration of the estate because a state court could consider NSC's claims against both RTC and Greenblatt, whereas if he denied abstention, NSC's claims against RTC would remain in bankruptcy court while NSC's claims against Greenblatt would proceed in state court, resulting in needless duplication and risking the possibility of inconsistent outcomes. *Id.* at 6-7.

Appellant essentially argues that rather than abstaining so that NSC's claims against RTC and Greenblatt could be heard together in state court, the bankruptcy judge should have consolidated all of NSC's claims before him for adjudication. This argument underlies appellant's specific claims that the bankruptcy judge misapplied the law,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 3
Not Reported in F.Supp.2d, 2004 WL 419918 (N.D.Ill.), 42 Bankr.Ct.Dec. 156
(Cite as: Not Reported in F.Supp.2d)

improperly weighed some factors and ignored others. The Court will address each of the appellant's contentions, keeping in mind that we may reverse the bankruptcy judge's decision only if he abused his discretion and need not consider whether we would have found differently in the first instance.

*3 The primary reason the bankruptcy judge decided to abstain from the state court action was efficiency. The judge found that a state court would be better equipped to apply issues of state law, with which he said he was not familiar, and that failure to abstain would result in duplicative litigation. In so finding, the judge synthesized several of the twelve factors that are supposed to guide this decision. Appellant disagrees with how the bankruptcy judge weighed the factors, but, as we discuss below, we do not believe the bankruptcy judge abused his discretion.

Efficiency clearly counsels in favor of the consolidation of NSC's claims against RTC and Greenblatt before a single judge. The bankruptcy judge implicitly concluded that it was more appropriate for the state court to hear the entire dispute than for the bankruptcy judge to hear it. Appellant challenges this conclusion on several grounds. First, appellant argues that the bankruptcy judge gave too much weight to the pendency of the state court action given that in the four years since NSC filed its complaint, little progress had been made. Yet appellant concedes that in the state court, the parties have litigated Greenblatt's motion to dismiss or to transfer venue-including an appeal-and RTC's motion for a stay, which has not been ruled on by the state court. Furthermore, the parties have engaged in written discovery. The bankruptcy judge did not abuse his discretion by finding that this progress was not insubstantial and weighed in favor of allowing the state court to finish its work.

Second, appellant argues that the bankruptcy judge gave undue weight to Greenblatt's presence as a defendant in the state court action and erred in stating that he lacked jurisdiction over Greenblatt. Appellant argues that Greenblatt subjected himself to the bankruptcy judge's jurisdiction when he filed his contingent proof of claim. Though it is true that the bankruptcy court has jurisdiction over Greenblatt's contingent claim against RTC, the relevant issue is whether the bankruptcy judge could exercise jurisdiction over NSC's suit against Greenblatt. Bankruptcy judges have jurisdiction to hear four types of matters: "(1) all cases under the bankruptcy code ('title 11')-i.e., bankruptcy petitions; (2) civil proceedings 'arising under' title 11; (3) civil proceedings 'arising in' a case under title 11; and (4) civil proceedings 'related to' a case under title 11." In re Spaulding & Co., 131 B.R. 84, 87 (N.D.Ill.1990) (citing 28 U.S.C. § 1334(b) and In re Wood, 825 F.2d 90, 92 (5th Cir.1987)). The dispute between NSC and Greenblatt is based on state law, not the Bankruptcy Code, therefore it does not fall into the first category. It does not " arise under" title 11 because it does not "involve a cause of action 'created or determined by a statutory provision of title 11.' " Id. at 88 (quoting Wood, 825 F.2d at 96). As the commencement of this suit before RTC filed for bankruptcy shows, the dispute between NSC and Greenblatt does not " arise in" a case under title 11 because it does not involve a matter that "would have no existence outside of the bankruptcy." Id. (citing Wood, 825 F.2d at 97). Thus, the bankruptcy judge would have jurisdiction over NSC's suit against Greenblatt only if it were "related to" RTC's bankruptcy proceeding.

*4 "A controversy is not 'related to' a bankruptcy proceeding unless its resolution 'affects the amount of property available for distribution or the allocation of property among creditors.' " Id. (quoting Home Ins. Co. v. Cooper & Cooper, Ltd., 889 F.2d 746; 749 (7th Cir.1989)). NSC's suit against Greenblatt will affect the allocation of RTC's estate among creditors if NSC prevails against Greenblatt, because Greenblatt will seek indemnification from RTC. In In re Spaulding & Co., the court found that a dispute between two third-parties was not related to the bankruptcy proceeding because the possibility that the losing party would seek indemnification from the debtor was remote, as it had not filed a proof of claim in the bankruptcy proceeding. Id. at 89. In contrast, Greenblatt has filed a proof of claim expressing his intention to seek indemnification from RTC should he be ordered to make good on the promissory note. Thus the bankruptcy judge could have exercised

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2004 WL 419918 (N.D.Ill.), 42 Bankr.Ct.Dec. 156
**(Cite as: Not Reported in F.Supp.2d)**

jurisdiction over the dispute between NSC and Greenblatt had he chosen to do so, because the outcome of NSC's suit against Greenblatt ultimately may affect the allocation of property among RTC's creditors.

But even though it is technically possible for the bankruptcy judge to adjudicate all the claims arising from the contractual relationship between NSC, RTC and Greenblatt, it does not necessarily follow that adjudication by the bankruptcy court would be more efficient than state adjudication. On the contrary, the bankruptcy judge had good reason to believe that he would be unable to resolve the dispute expeditiously. NSC's claim against Greenblatt is not a core proceeding because it neither "invokes a substantive right provided by title 11" nor is it "a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Diamond Mortgage Corp. of Illinois v. Sugar,* 913 F.2d 1233, 1239 (7th Cir.1990) (citing *Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir.1990)). Thus, if the bankruptcy court tried NSC's claims against Greenblatt, it would be limited to submitting " proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1). A final judgment could not be entered until a district court had reviewed the bankruptcy judge's findings *de novo. Id.* This process could take longer than state court adjudication of the claims. Furthermore, it would result in the type of duplication that consolidation of the claims is intended to avoid.

Third, appellant argues that because the value of NSC's claim against RTC comprises a quarter of the total value of the unsecured claims against RTC, the outcome of the suit is too important for the bankruptcy judge to abstain. Appellant's argument is premised on the assumption that the bankruptcy judge will be able to resolve the dispute more expeditiously-and with greater finality-than the state courts. But the bankruptcy judge concluded, and we find no reason to doubt, that "[t]here's no reason to believe that the state court cannot efficiently render a judgment and have the matter returned to bankruptcy court as a final adjudication of the claim that has been asserted by National Seal." June 24, 2003 Tr. at 6. Furthermore, appellant's concern that a scenario may arise in which the state court cannot resolve the disputes entirely does not justify reversing the bankruptcy judge's ruling. We cannot find that the bankruptcy judge abused his discretion by declining to base his decision on the theoretical possibility that the state court would not fully resolve the conflict-especially when the bankruptcy judge definitely could not render a final decision regarding NSC's claim against Greenblatt because it would not be a core proceeding.

*5 Fourth, appellant argues that NSC's suit against RTC is closely related to the main bankruptcy proceeding. The bankruptcy judge recognized this was so and took this factor into account. But the law of abstention did not require the bankruptcy judge to assign controlling weight to this particular factor, and it was not an abuse of discretion for him to decline to do so.

Fifth, appellant argues that because the outcome of the contract dispute will affect who seeks payment from RTC, the contract dispute cannot be easily severed from the main bankruptcy proceeding. But appellant is mistaken. Though the outcome of NSC's claim against RTC will impact the bankruptcy proceeding, the determination of liability and damages can be cleanly severed from the bankruptcy proceeding. The bankruptcy judge will merely enforce the determinations made by the state court.

Appellant also argues that the bankruptcy judge gave the presence of state law too much weight and the fact that the relevant state law was not unsettled or difficult too little weight. Though it is true that " the mere presence of state law issues is not enough to warrant abstention since 'virtually every issue which arises within the context of a bankruptcy case involves state law to at least some degree,' " *In re Ascher,* 128 B.R. at 647 (citation omitted), the bankruptcy judge did not err by including it as one of several factors that weighed in favor of abstention.

Appellant argues that because the relevant state law is neither unsettled nor difficult, abstention was not appropriate. Appellant overstates the Seventh Circuit's assessment of the importance of this factor. The Seventh Circuit has explained that "because

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 5
Not Reported in F.Supp.2d, 2004 WL 419918 (N.D.Ill.), 42 Bankr.Ct.Dec. 156
**(Cite as: Not Reported in F.Supp.2d)**

section 1334(c)(1) is concerned with comity and respect for state law, whether a case involves unsettled issues of state law is always significant." *In re Chicago, Milwaukee R.R.,* 6 F.3d at 1189. Appellant seems to argue that because abstention is best suited for matters involving "novel or unsettled questions of state law," *In re Ascher,* 128 B.R. at 647 (citation omitted), abstention must be denied when no novel or unsettled issue of state law is present. That is a *non sequitur.* Appellant ignores that the Seventh Circuit has emphasized that no one factor is determinative. *In re Chicago, Milwaukee R.R.,* 6 F.3d at 1189. We cannot conclude the bankruptcy judge gave too little weight to the fact that the relevant law was not unsettled.

Appellant also contends that the bankruptcy judge misapprehended the relevance of two factors: Greenblatt's right to a jury trial and the lack of forum shopping by the parties. Appellant makes a two step argument regarding the jury-trial factor: first, he assumes NSC's claim against Greenblatt is currently before the bankruptcy judge; second, he argues that Greenblatt does not have a right to a jury trial in the bankruptcy court and his lack of this right weighs against abstention. The bankruptcy judge found that Greenblatt "would have a right to a jury trial irrespective of whether this court holds on to the claim objection proceeding." June 24, 2003 Tr. at 8. Greenblatt certainly is not entitled to a jury trial on his claim against the bankrupt estate, and he likewise would not be entitled to a jury trial were the trustee to assert a preference claim against him (which has not occurred). *Langenkamp v. Culp,* 498 U.S. 42, 44-45, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990). But that does not mean that by filing a proof of claim, Greenblatt forfeited his right to a jury trial on NSC's claims against him. Appellant cites no authority supporting the proposition that a claimant gives up his right to a jury trial on claims made against him by other claimants outside of the bankruptcy proceeding. The bankruptcy judge did not abuse his discretion by determining that Greenblatt's right to a jury trial was a significant factor weighing in favor of abstention; because NSC's claim against Greenblatt had to stay in state court, efficiency and economy dictated that NSC's claims against RTC should be adjudicated in state court as well.

*6 Appellant also argues that the bankruptcy judge was mistaken about how the lack of forum shopping should weigh into his decision. Specifically, appellant claims that abstention is inappropriate when the parties have not engaged in forum shopping. The Seventh Circuit has warned that "[t]he use of the Bankruptcy Code to obtain a favorable forum should not be encouraged." *In re U.S. Brass Corp.,* 110 F.3d 1261, 1265 (7th Cir.1997). Thus if the party opposing abstention filed for bankruptcy to obtain a preferred forum, abstention may be appropriate. But that does not mean that the absence of forum shopping counsels against abstention. Appellant concedes that no forum shopping was involved in this case; RTC was put into bankruptcy involuntarily. But this means only that this factor does not weigh in favor of abstention.

Appellant also questions the bankruptcy judge's omission of three factors from his decision to abstain. First of all, the law does not require a judge to intone in every case each of the multiple factors involved in a determination of this type; a judge is permitted to focus on what is important in the particular case. In any event, none of the factors identified by appellant warrant reversing the bankruptcy judge's decision. The bankruptcy judge did not mention that the sole basis for his jurisdiction over the contract dispute was 28 U.S.C. § 1334. Because this factor weighs in favor of abstention, the judge's decision not to mention this factor is immaterial. The bankruptcy judge did not explicitly mention the relatedness of the contract dispute to the main bankruptcy proceeding. But as discussed above, this factor was synthesized into his conclusion that efficient administration of the estate required abstention. The bankruptcy judge also said nothing about the effect that retention of the contract dispute would have on his docket. Appellant argues that the judge's silence should be read as a concession that the contract case would not overburden his docket. We will not so assume. But even if the dispute would not overburden the judge's docket, the factor does not outweigh those in favor of abstention.

Although federal courts have a responsibility to exercise jurisdiction when they have it, we cannot

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 7 of 7

Not Reported in F.Supp.2d                                                                                                        Page 6
Not Reported in F.Supp.2d, 2004 WL 419918 (N.D.Ill.), 42 Bankr.Ct.Dec. 156
**(Cite as: Not Reported in F.Supp.2d)**

say the bankruptcy judge abused his discretion by determining that abstention would promote the efficient administration of the estate. NSC's claims against RTC and Greenblatt should be litigated in a single proceeding and, because the bankruptcy judge has only "related to" jurisdiction over NSC's claims against Greenblatt and Greenblatt has a right to a jury trial of NSC's claims, the bankruptcy judge did not err in concluding that the state court could handle the consolidated claims more expeditiously than he could.

Conclusion

For the reasons stated above, the Clerk is directed to enter judgment affirming the decision of the Bankruptcy Court.

N.D.Ill.,2004.
In re Resource Technology Corp.
Not Reported in F.Supp.2d, 2004 WL 419918 (N.D.Ill.), 42 Bankr.Ct.Dec. 156

Briefs and Other Related Documents (Back to top)

• 2003 WL 23799601 (Trial Motion, Memorandum and Affidavit) Reply Brief of Appellant (Dec. 19, 2003) Original Image of this Document (PDF)
• 2003 WL 23799589 (Trial Motion, Memorandum and Affidavit) Brief of Appellant (Nov. 7, 2003) Original Image of this Document (PDF)
• 1:03CV05785 (Docket) (Aug. 18, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                          Page 1
Not Reported in F.Supp.2d, 2004 WL 1048239 (S.D.N.Y.), 43 Bankr.Ct.Dec. 22
(Cite as: Not Reported in F.Supp.2d)

C
Briefs and Other Related Documents
Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'shipS.D.N.Y.,2004.
United States District Court,S.D. New York.
KERUSA CO. LLC, Plaintiff,
v.
W10Z/515 REAL ESTATE LTD. P'SHIP, 515/ZGP LLC, W10Z/515 Gen-Par LLC, Zeckendorf Realty, J.A. Jones Const., Frank Williams & Assocs., Jaros Baum & Bolles Consulting Engs., Cantor Seinuk Grp., Arthur W. Zeckendorf, William L. Zeckendorf, Charles Irwin, Daniel Neidich, Stuart Rothenberg, and John Does1-10. Defendants.
BOARD OF MANAGERS OF 515 PARK AVE. CONDOMINIUM, Plaintiff,
v.
W10Z/515 REAL ESTATE LTD. P'SHIP, et al., Defendants.
Richard L. KRAMER, et al., Plaintiffs,
v.
William L. ZECKENDORF, et al. Defendants.
No. 04 Civ. 708(GEL), 04 Civ. 709(GEL), 04 Civ. 710(GEL).

May 7, 2004.

Robert L. Weigel, Jennifer H. Rearden, Julie R. Buxbaum, New York, N.Y. (Gibson, Dunn & Crutcher LLP, New York, NY) for Plaintiff Kerusa Co. LLC.
Eric Seiler, Katherine L. Pringle, Daniel B. Rappaport, Amy C. Brown, New York, N.Y. (Friedman, Kaplan, Seiler & Adelman, LLP, New York, NY) for Plaintiff Board of Managers of 515 Park Avenue Condominium.
Eric L. Siegel, New York, N.Y. (Henrichsen Siegel, P.L.L.C., New York, NY) for Plaintiffs Richard L. Kramer, et al.
Thomas H. Shepherd, New York, N.Y. (Landman Corsi Ballaine & Ford, P.C., New York, NY) for Defendants W10Z/515 Real Estate Ltd. P'ship, 515/ZGP LLC, W10Z/515 Gen-Par LLC, Zeckendorf Realty LP. Arthur W. Zeckendorf. William L. Zeckendorf, Charles Irwin, Daniel Niedich, Stuart Rothenberg, Whitehall St. Real Estate, WH Advisors LLC, and Whitehall IX/X Inc.
Richard Fama, New York, N.Y. (Cozen O'Connor, New York, NY) for Defendant J.A. Jones Construction.
Christopher A. Albanese, White Plains, N.Y. (Milber Makris Plousadas & Seiden, LLP, White Plains, NY) for Defendant Frank Williams & Assocs.
Jessica L. Jamron, New York, N.Y. (Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York, NY) for Defendant Jaros, Baum & Bolles Consulting Engineers.
Franklin K. Chiu, New York, N.Y. (Gogick, Byrne & O'Neill, LLP, New York, NY) for Defendant The Cantor Seinuk Group, Inc.

*OPINION AND ORDER*
LYNCH, J.
*1 515 Park Avenue (the "Building") is a luxury condominium development in New York City financed, built, and sold by defendant W10Z/515 Real Estate Limited Partnership (the "Sponsor") and various other entities affiliated with the Zeckendorf family real estate business (*e.g.,* defendants 515/ZGP LLC, W10Z/515 Gen-Par LLC, Zeckendorf Realty LP). The other defendants in these three related lawsuits include the general contractor and construction manager for the Building (J.A. Jones), the architect (Frank Williams & Assocs.), the mechanical engineers (Jaros Baum & Bolles), and the structural engineers (Cantor Seinuk Group), as well as individuals who are principals or employees or agents of the Zeckendorf entities. Plaintiffs are either purchasers of apartment units in the Building, family members of purchasers, or legal representatives of purchasers.

The three complaints, originally filed in New York Supreme Court, allege that, due to design and construction defects, the Building and plaintiffs'

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 2
Not Reported in F.Supp.2d, 2004 WL 1048239 (S.D.N.Y.), 43 Bankr.Ct.Dec. 22
(Cite as: Not Reported in F.Supp.2d)

individual units have suffered severe water damage and toxic mold infestations, all of which have diminished the value of the Building and plaintiffs' units due to actual damage, costs of remediation, and damage to marketability as a result of public awareness of the alleged defects in the Building. Plaintiffs allege that various defendants were aware of the problems during the construction but neglected to take appropriate steps to address and correct them, and failed to inform prospective purchasers of the existence, nature, or extent of the problems. The complaints each state numerous causes of action under New York law, sounding in breach of contract, breach of implied covenant of good faith and fair dealing, breach of implied warranties, negligence, fraudulent inducement, breach of fiduciary duties, false advertising in violation of N.Y.G.B.L. §§ 349 and 350, common law fraud, and fraud in the purchase or sale of securities. The Kramer action also asserts a number of tort claims for personal injury.

Following the bankruptcy filing of defendant J.A. Jones ("Jones"), defendant Sponsor removed these three cases to this Court, invoking its bankruptcy jurisdiction under 28 U.S.C. §§ 1334(b) and 1452(a). Plaintiffs, joined by a number of defendants, move to remand the actions to the New York state courts, arguing that jurisdiction is lacking and, in the alternative, that the Court should exercise its discretion under 28 U.S.C. §§ 1334(c) or 1452(b) to abstain or remand. Defendants Sponsor and Jones (the "Removing Defendants") oppose the motions and cross-move to transfer the actions to the Western District of North Carolina, where the Jones bankruptcy is pending. For the reasons that follow, the motions to remand will be granted and the motions to transfer will be denied as moot.

DISCUSSION

I. *Jurisdiction*

The Removing Defendants argue that this Court has jurisdiction under 28 U.S.C. § 1334, contending that these actions are "core proceedings" as defined in 28 U.S.C. § 157(b)(2), or that at a minimum they are "related to" the Jones bankruptcy proceedings, which, under 28 U.S.C. §§ 157(c)(1) and 1334(b), also gives rise to federal jurisdiction. They are correct that federal jurisdiction exists over these actions, although incorrect in their arguments as to the consequences of that jurisdiction.

*2 To address the constitutional constraints on the bankruptcy court's judicial power articulated by the Supreme Court in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982), Congress distinguished between "core" bankruptcy matters, which do not exist independently of the Bankruptcy Code, and "non-core" matters, which do have independent existence under state law. *See* 28 U.S.C. § 157(b)(2) (non-exclusive list of matters that are "core"); Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333. "A proceeding is encompassed within the bankruptcy court's core ... jurisdiction 'if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.' " *In re Leco Enters., Inc.,* 144 B.R. 244, 249 (S.D.N.Y.1992) (quoting *Wood v. Wood,* 825 F.2d 90, 96-97 (5th Cir.1987)); *accord In re Green,* 200 B.R. 296, 298 (S.D.N.Y.1996). By contrast, a proceeding is non-core if it exists independently under state law and is merely "related to" the bankruptcy case because of a conceivable effect upon the debtor's estate. *See Green,* 200 B.R. at 299. Only a district court, and not a bankruptcy court, may enter final judgment in a non-core, "related to" proceeding. *Compare* 28 U.S.C. § 157(b)(1) ("bankruptcy judges may hear and determine" all core proceedings, subject only to ordinary appellate review), *with* 28 U.S.C. § 157(c)(1) (in "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," final judgment "shall be entered by the district judge" upon *de novo* review of any findings as to which any party objects).

These actions hardly fit the description of a "core" proceeding. They are perfectly ordinary state-law actions that invoke no aspect of bankruptcy law, that proceed against numerous defendants who are not in bankruptcy and who are jointly and severally liable for all claims, and that, even as to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2004 WL 1048239 (S.D.N.Y.), 43 Bankr.Ct.Dec. 22
**(Cite as: Not Reported in F.Supp.2d)**

bankrupt defendant, concern actions taken long before the bankruptcy filing. Even if the proofs of claim filed by the Kerusa and Board of Managers plaintiffs in the Jones bankruptcy render their claims against Jones "core" (a conclusion which the Court need not reach here), they have no effect on the claims against the other defendants, the many cross-claims among defendants other than Jones, or the entirety of the Kramer action (for which no proof of claim has been filed by the plaintiffs), all of which are clearly non-core.

This conclusion, however, does not exhaust the jurisdictional inquiry. Federal courts also have jurisdiction over matters "related to" a pending bankruptcy proceeding. 28 U.S.C. § 1334(b). This jurisdiction is considerably broader, applying to civil proceedings whose "outcome might have any conceivable effect on the bankrupt estate." *In re Cuyahoga Equip. Co.,* 980 F.2d 110, 114 (2d Cir.1992). Although "related to" jurisdiction is not unlimited, federal courts have found jurisdiction under this heading in cases where the debtor is not even a party, such as a proceeding to execute on a bond issued by the debtor's surety, *Celotex Corp. v. Edwards,* 514 U.S. 300 (1995), or proceedings against officers or employees of the debtor that could exhaust the debtor's insurance limits or give rise to claims against the debtor for contribution or indemnity, *see, e.g., In re Worldcom Inc. Sec. Litig.,* 293 B.R. 308, 317 (S.D.N.Y.2003) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively), and which in any way impacts upon the handling and administration of the bankrupt estate."). These cases are clearly "related to" the Jones bankruptcy because they contain claims directly against Jones for potentially millions of dollars in liability, and any finding of liability on the part of any defendant will likely give rise to contribution or indemnity claims against Jones.[FN1]

> FN1. Even if plaintiffs prevail in their efforts to persuade the bankruptcy court to allow them to proceed directly against Jones's insurers (Kerusa Mem. at 5), these actions would still fall within "related to"

jurisdiction in light of the continued debtor and intercreditor disputes that could arise concerning distribution of the policy proceeds in light of the plethora of actions currently proceeding against Jones around the country, and which will have to be resolved as part of Jones's bankruptcy.

*3 Accordingly, this Court does have jurisdiction over these matters and the removal was proper. Unlike most instances of removal jurisdiction, however, this conclusion does not resolve the matter. In contrast to most headings of jurisdiction in which the jurisdiction of the federal courts must be exercised once properly invoked, Congress has recognized that the bankruptcy jurisdiction, particularly in its "related to" aspect, is potentially so broad that federal courts require equally broad discretion to remand cases to the state courts where fairness and judicial efficiency will be better served by litigating the matters in state court than by sucking into the federal courts large and complex actions lacking any specifically federal component merely because they tangentially affect a bankrupt estate.

### II. *Discretionary Abstention and Remand*

The Court's power to abstain or remand in circumstances such as that presented here is broad. *See* 28 U.S.C. § 1334(c)(1) ("Nothing in this section prevents a district court in the interests of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."); 28 U.S.C. § 1452(b) ("The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."). Courts in this district have treated the analysis under these two statutory provisions as essentially identical, *see, e.g., Worldcom,* 293 B.R. at 334, and have identified a wide variety of factors that bear on this analysis: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity with state courts;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 4
Not Reported in F.Supp.2d, 2004 WL 1048239 (S.D.N.Y.), 43 Bankr.Ct.Dec. 22
**(Cite as: Not Reported in F.Supp.2d)**

(5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of a right to trial by jury; (7) prejudice to the involuntarily removed parties; and (8) the potential for duplicative and uneconomical use of judicial resources and the lessened possibility of inconsistent results. *NEMSA Establishment, S.A. v. Viral Testing Systems Corp.,* 1995 WL 489711, at *7 (S.D.N.Y. Aug. 15, 1995); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 130 B.R. 405, 407 (S.D.N.Y.1991); *In re River Center Holdings, LLC,* 288 B.R. 59, 59 (Bankr.S.D.N.Y.2003).

As discussed more fully below, the majority of these factors point decisively towards remand in these three cases. Of course, the list of factors is non-exclusive and was developed simply as a guide to the required inquiry; the wise exercise of discretion is rarely a matter of score-keeping or bean-counting. Ultimately, the pursuit of "equit[y]," "justice" and "comity" involves a thoughtful, complex assessment of what makes good sense in the totality of the circumstances. An overall assessment of what is at stake in this litigation points toward remand even more decisively than the already lopsided calculation of conventionally-listed factors.

A. *The Effect on the Efficient Administration of the Bankruptcy*

*4 The principal federal interest in any invocation of bankruptcy jurisdiction is in the efficient administration of the underlying bankruptcy estate. Hence, this interest is typically listed first among the factors to be considered in deciding whether to exercise or refrain from exercising that jurisdiction. *See, e.g., In re Adelphia Comm. Corp. Sec. Litig.,* 2003 WL 23018802, at *2 (S.D.N.Y. Dec. 23, 2003); *Stahl v. Stahl,* 2003 WL 22595288, at *2 (S.D.N.Y. Nov. 7, 2003); *see also* Kerusa Mem. at 14, Kramer Mem. at 10, Joint Mem. at 4, Sponsor Mem. at 17. If the Removing Defendants cannot carry the burden on this factor, it is unlikely that the other factors will be of much help to them.

But this factor can hardly be said to weigh in favor of exercising federal jurisdiction. Jones has ceased operation and its bankruptcy plan calls not for reorganization but rather for liquidation to pay the claims of its creditors, including the sale of substantially all the estate's assets and the creation of a liquidation trust to administer the claims process. (Jones Mem. at 6; Siegel Decl. at ¶ 9.) The administration of the Jones estate thus does not involve the complexities of overseeing a company in reorganization, nor the delay of a return to normal operations occasioned by a complicated claims resolution process. Whether in North Carolina or New York, the claims of these plaintiffs will have to be resolved and either denied or reduced to a liquidated amount before there can be any effect on the bankruptcy estate.

Moreover, the debtor defendant (Jones) has itself taken steps to ensure that prosecution of these claims will *not* affect the estate by moving the bankruptcy court to allow actions against Jones to proceed directly against Jones's insurers, disclaiming any estate interest in the proceeds of those insurance policies, and asserting that there is no deductible associated with those policies on at least some of the claims in these actions. (Kerusa Mem. at 5; Rearden Decl., Ex. E; Kramer Reply Mem. at 8; Shepherd Decl., Ex. I.) Likewise, in motion practice over Jones's request to allow certain claimants to proceed directly against its insurance proceeds, the Sponsor also argued that "prosecution of the plaintiffs' and defendants' claims in the Board of Managers, Kramer, and Kerusa actions will not impair the debtors' estates." (Rearden Decl., Ex. G at 1, 5; Ex. H at 1-2, 5.) The inconsistency of the Removing Defendants' positions in front of the bankruptcy court with those taken here strongly suggests that the arguments advanced in opposition to remand are essentially tactical.

The bankruptcy court itself has cautioned the parties against removal of too many state-court actions involving Jones to the federal jurisdiction, citing the overburdened docket of the federal courts in the Western District of North Carolina. The bankruptcy court had imposed a temporary extension of the automatic stay to non-debtor co-defendants, in order to allow Jones time to assess the effects of the many pending actions on its bankruptcy and to make

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2004 WL 1048239 (S.D.N.Y.), 43 Bankr.Ct.Dec. 22
**(Cite as: Not Reported in F.Supp.2d)**

appropriate motions. (Rearden Decl., Ex. F.) When the stay was lifted as to non-debtors on January 21, 2004, the bankruptcy court informed the Sponsor and other assembled parties: "I hope there aren't too many [removals] to come up. As I have told you before, there are some manpower concerns in this district, ... since many of these the bankruptcy court couldn't even try, we have got one of the most overworked districts in the country.... So I would recommend that you be very judicious as to what you remove." (Rearden Decl., Ex. I, at 93.) In contrast, as plaintiffs point out, these cases were pending for nearly a year (four months for the Kerusa action) before the commercial division of the New York Supreme Court, and the judge who has presided over the cases is already familiar with the parties and issues. (Kerusa Mem. at 15, Joint Mem. at 8-9, Kerusa Reply Mem. at 7.) The efficient resolution of these complex cases can thus be expected to proceed more smoothly in the New York courts than if transferred to the bankruptcy court in North Carolina as the Removing Defendants request.

*5 The Removing Defendants argue that administration of the bankruptcy will be impaired if these cases are remanded because the participation of Jones in the litigation in New York will cost the debtor significant time and money. (Sponsor Mem. at 17-18.) This argument is a red herring. The claims against Jones are stayed during the pendency of the bankruptcy. Furthermore, the Sponsor's claim that Jones "has very limited capabilities to participate in discovery outside North Carolina" (*id.*) is likewise unavailing, as the bulk of discovery will take place in New York whether these actions proceed in New York Supreme Court or in federal court in North Carolina, since nearly all of the potential witnesses and documents are located here. To the extent that this argument is essentially a claim that duplicative litigation will be necessary, because the same claim litigated in New York will "inevitably" also be litigated in the bankruptcy proceedings (*id.*), it is disposed of below in part H.

Accordingly, for all of these reasons, the Court does not find that this factor favors federal court jurisdiction.

B. *The Predominance of State Law Issues*

This factor also weighs in favor of remand. While remand is not required solely because an action involves application of state law, see Neuman v. Goldberg, 159 B.R. 681, 688 (S.D.N.Y.1993), and the legal issues in these cases do not appear at first blush to be either unusual or unsettled, the fundamental fact here is that the issues in this litigation exclusively concern state law, and do not implicate any question of bankruptcy law or other matters of uniquely federal interest or expertise.

C. *Difficulty or Unsettled Nature of State Law Issues*

Plaintiffs cite no particularly difficult or unsettled issues of state law that would best be resolved in state court, or that would pose particular difficulties for the bankruptcy or district court. Although toxic mold litigation may be relatively new to New York jurisprudence, plaintiffs have failed to put forth any arguments as to why toxic mold's status as the tort *du jour* will generate any novel or complex legal issues that distinguish mold cases from the generations of tort litigation that have preceded them in the New York courts. This fact, of course, does not argue *for* assertion of federal jurisdiction. Rather, its force is to weaken somewhat the strength of the preceding factor as an argument for remand.

D. *Comity*

This factor, understandably virtually ignored by the Removing Defendants, points strongly in the direction of remand. This litigation concerns uniquely local matters of real estate development and residents' health and safety. In any community, questions of land use are of dominant local interest, and, given its scarcity, Manhattan real estate is the subject of even more than usually intense community scrutiny. The Zeckendorf real estate interests are significant corporate citizens in New York City, and play a major role in the New York construction and development industry. The alleged difficulties of this prominent Park Avenue luxury development, and alleged effects on the health and safety of its residents, have been the subject of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 6
Not Reported in F.Supp.2d, 2004 WL 1048239 (S.D.N.Y.), 43 Bankr.Ct.Dec. 22
**(Cite as: Not Reported in F.Supp.2d)**

numerous articles in the New York press. *See* Sam Smith, "Fungus Among Us: Mold Growing into Epidemic on City Walls," N.Y. Post, Nov. 16, 2003, at 9; Blair Golson, "Toxic Mold Gold: Shoddy High-Rises Sold With Flaws," N.Y. Observer, June 23, 2003, at 1; Christina Merrill, " Spreading Mold Lawsuits Threaten N.Y. Infection," Crain's N.Y. Business, Feb. 17, 2003, at 22; Braden Keil, "Escape from Mold Manor," N.Y. Post, Jan. 30, 2003, at 32. Deference to the state courts' interest in resolving disputes regarding such matters is appropriate.

*6 This argument takes on particular urgency in the specific procedural setting of these cases. In most cases, whether a matter of this kind is resolved in state or federal court might have little practical effect on the interest in resolving local disputes locally. In these cases, however, the removal from state to federal court does not simply move the matter to a courtroom across the street. As all parties agree, removal to this Court, if effected, is merely a stepping stone towards transfer of the cases to the federal court in North Carolina. The notion that a federal court in another region of the country, rather than a state court in New York County, should resolve disputes about a residential apartment building in New York City verges on the bizarre. The local significance of these cases argues strongly for returning the matter to the state courts.

E. *The Relatedness of the Proceedings to the Bankruptcy*

As already noted, the overwhelming majority of the claims in these proceedings are not core bankruptcy actions. They are ordinary state-law actions, which involve no questions of bankruptcy law whatsoever. They are implicated in the bankruptcy solely because one of the many defendants has sought the protection of the bankruptcy court, and some of the plaintiffs and non-debtor defendants have filed contingent, unliquidated proofs of claim premised on the future outcome of these actions. The actions involve the rights of three different sets of plaintiffs, and over fifteen defendants, only one of whom is in bankruptcy. Even that party was sued in these actions before it filed for bankruptcy protection, and for actions taken long before that event. While it cannot be denied that the bankrupt debtor, as the general contractor, is a significant party to these actions, the issues in the case are remote from the bankruptcy proceedings and the bulk of the matters in these complicated multi-party disputes have nothing to do with the bankruptcy at all. This factor points strongly toward remand.

F. *Right to a Jury Trial*

Because a bankruptcy court cannot conduct a jury trial absent special designation by the district court and the consent of all parties, 28 U.S.C. § 157(e), the presence of a Seventh Amendment jury trial right in a removed action weighs heavily in favor of remand. *See Drexel,* 130 B.R. at 409. All of the plaintiffs have demanded a jury trial in these actions and none have consented to the bankruptcy court presiding over them. (Kerusa Mem. at 18, Board Mem. at 12, Kramer Mem. at 14.) While the Kerusa and Board plaintiffs may have jeopardized their right to a jury trial on their claims against Jones by filing proofs of claim based on the causes of action in this litigation, *see generally Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (1989), their right to a jury trial on their claims against the many other defendants is unaffected. *Germain v. Conn. Nat'l Bank,* 988 F.2d 1323, 1327 (2d Cir.1993) (filing proof of claim does not strip any party of jury rights over state law claims that do not fall within the equitable "claims-allowance process"). Moreover, the Kramer plaintiffs have not filed a proof of claim in the Jones bankruptcy, and a number of the causes of action in their complaint are personal injury tort claims. Under well-established constitutional and statutory authority, the Kramer action, if removed, must be tried before a jury in a district court and not the bankruptcy court. *See* 28 U.S.C. §§ 157(b)(5) and (e); *Marathon,* 458 U.S. at 73-76; *Granfinanciera,* 492 U.S. at 52-53. The imperative of these plaintiffs' right to a trial by jury, and the effect that protecting that right would have on the interests of efficiency and consistency, discussed above in part A and below in part H, argues in favor of returning these cases to the state courts.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 7
Not Reported in F.Supp.2d, 2004 WL 1048239 (S.D.N.Y.), 43 Bankr.Ct.Dec. 22
**(Cite as: Not Reported in F.Supp.2d)**

### G. *Prejudice to Removed Parties*

*7 An examination of the prejudice to the involuntarily removed parties (all plaintiffs, as well as the non-Sponsor-affiliated, non-debtor defendants) also weighs heavily in favor of remand. With the exception of the debtor Jones, all of the parties in these actions are local to New York and unquestionably will be prejudiced by the greater expense and difficulty of litigating over 600 miles away from where the actions were filed and where all of the relevant events took place. Even as to Jones, the events and actors related to its potential liability in these actions are all connected to New York, and it is at least as likely that many of the potential Jones-related witnesses and documents are still located here as in North Carolina. Furthermore, removal and transfer not only will deny plaintiffs their choice of the state courts as their forum, as is the case in all removals, but also will deprive both plaintiffs and the non-removing defendants of the benefits of pressing their claims before a court (and a jury) in the jurisdiction where the plaintiffs and nearly all defendants reside, where the Building that is the subject of this action is located, and where all of the relevant events took place.

### H. *Duplicative Litigation: Wasted Resources and Inconsistent Results*

The assessment of the likelihood of duplicative litigation, wasted judicial and party resources, and inconsistent results depends on a variety of uncertain predictions. The Removing Defendants base their arguments in opposition to remand on a simplistic scenario in which remand is denied and these actions are transferred directly to the bankruptcy court in the Western District of North Carolina, where all issues will be resolved by the bankruptcy judge as a seamless part of his total resolution of all claims in the Jones bankruptcy. This picture is largely illusory.

First, although the Court need not resolve these issues given the strong arguments in favor of remand, the question of transfer following removal is hotly contested by the plaintiffs and non-removing defendants, and at first glance there appear to be significant questions as to the amenability to transfer of at least the Kramer action. Second, upon transfer to the Western District of North Carolina, although these cases would initially be referred to the bankruptcy court there, a veritable explosion of motion practice before the district court would no doubt ensue. Given the complex questions concerning the effects of the proofs of claim on the "core" nature of some of the claims and on the plaintiffs' rights to a jury trial, the limited jurisdiction of the bankruptcy court to enter judgment on non-core claims, and the unquestioned rights of the Kramer plaintiffs to an Article III court, it is reasonable to expect that motions to withdraw the reference will be filed with the district court in North Carolina immediately upon transfer, and that they will be opposed vigorously by the debtor and Sponsor. *See, e.g., In re Orion Pictures Corp.,* 4 F.3d 1095 (2d Cir.1993); *In re Florida Hotel Properties L.P.,* 163 B.R. 757 (W.D.N.C.1994). This complicated and fact-intensive motion practice will certainly generate additional delay and expense in these actions, and, depending on the outcome, could result in these actions proceeding before the district court or even being divided between the bankruptcy court and district court-either of which would greatly diminish the Removing Defendants' arguments for the benefits of removal and transfer. This Court unfortunately lacks a crystal ball that can reveal the future, but even the hazy view available reveals the flaws in the picture presented by the Removing Defendants.

*8 Plaintiffs' efforts to predict the future fare no better. Plaintiffs argue that because motions are pending in the bankruptcy court that would allow plaintiffs to proceed solely against Jones's insurance policies, the plaintiffs, at least, will not have to press any claims against the Jones estate itself, and their contingent proofs of claim will simply fall away, obviating the need for any involvement whatsoever by the Jones estate. (Kerusa Mem. at 5-6,. Board Reply Mem. at 6, Kramer Reply Mem. at 8-9.) Plaintiffs also argue that principles of joint and several liability may suffice to keep the Jones estate at arms-length from these actions. (Kramer Mem. at 9, Kerusa Reply Mem. at 9.) Both of these arguments amount to a prediction that no

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 8
Not Reported in F.Supp.2d, 2004 WL 1048239 (S.D.N.Y.), 43 Bankr.Ct.Dec. 22
**(Cite as: Not Reported in F.Supp.2d)**

duplication of effort or wasted resources will result from the continuation of these actions against the nondebtor defendants while proceedings against Jones are stayed. The Court is less sanguine.

A realistic view of litigation requires a recognition that the future maneuvers of the parties cannot be so clearly foreseen as either side to this debate would like us to believe. The significance of plaintiffs' argument lies less in a confident expectation that events will follow the course that *they* predict, than in a reminder that it cannot be assumed either that the litigation will follow the path predicted by the Removing Defendants. The briefs of the parties argue, with varying degrees of plausibility, that duplicative litigation will result from either remand or the assertion of bankruptcy jurisdiction, and that such wasteful excess can be avoided only by following the course that each party finds preferable for its own reasons. Realistically, some duplication of effort is the inevitable result of Jones's bankruptcy filing and the accompanying automatic stay of proceedings against it. What is certain, however, is that, regardless of the outcome of the present motions, parties of good will should have little difficulty devising ways to avoid or minimize wasteful duplication of effort. Conversely, if any significant parties are inclined to use excessive litigation costs as a tactic, neither remand nor transfer will prevent them from finding a way to engineer duplicative and wasteful proceedings.

Finally, as noted above in part A, the vast majority of the witnesses and documents relevant to these actions are in or near New York, so discovery will proceed primarily in New York regardless of the location of the court presiding over the trial, and thus, to the extent Jones participates in these actions either now or following the conclusion of its bankruptcy proceedings, it cannot avoid the costs associated with New York discovery. Likewise, if the cases were transferred, a trial in North Carolina will either greatly multiply the expense for all other parties, or will lack live witnesses.

Accordingly, this factor certainly does not weigh in favor of retaining jurisdiction, and points at least somewhat in the direction of remand.

I. *Overall Summary*

*9 Although analysis of the individual factors employed by other courts conducting this inquiry points strongly in the direction of remand here, as noted at the outset the exercise of discretion is rarely a mathematical exercise and instead requires a thoughtful assessment of the totality of the circumstances presented by each case. Here, even a brief weighing of those circumstances leads to the conclusion that remand to the state courts of New York is the only sensible outcome. These disputes are based entirely on state law claims, about a very local subject matter, with parties and witnesses and evidence (including the immovable Building that is the central subject of this dispute) that are predominantly located in New York. They involve a large number of parties, only one of which is in bankruptcy, and all claims against that party are pre-bankruptcy claims that had actually been pending in state court for between four and nine months before that party's bankruptcy filing. No bankruptcy law issues are implicated, and the special expertise of federal courts in dealing with such issues will not be called upon. The Removing Defendants nevertheless argue that justice, comity, and equity will be served by removing these cases not merely from the state courts of New York, but from the state entirely, and litigating them before an overburdened bankruptcy court, located hundreds of miles distant, which has already indicated its disinclination to have such matters removed or transferred to its district. There is no merit to their argument. Would that all exercises of discretion were this easy.

*CONCLUSION*

The motions to remand these actions to state court are granted. The cross-motions to transfer are denied as moot.

SO ORDERED:

S.D.N.Y.,2004.
Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship
Not Reported in F.Supp.2d, 2004 WL 1048239

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 9
Not Reported in F.Supp.2d, 2004 WL 1048239 (S.D.N.Y.), 43 Bankr.Ct.Dec. 22
**(Cite as: Not Reported in F.Supp.2d)**

(S.D.N.Y.), 43 Bankr.Ct.Dec. 22

Briefs and Other Related Documents (Back to top)

• 1:04cv00708 (Docket) (Jan. 29, 2004)
• 1:04cv00709 (Docket) (Jan. 29, 2004)
• 1:04cv00710 (Docket) (Jan. 29, 2004)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                                                Page 1
Not Reported in F.Supp., 1996 WL 684463 (E.D.La.)
**(Cite as: Not Reported in F.Supp.)**

▷
Briefs and Other Related Documents
In re Harrah's Entertainment, Inc. Securities LitigationE.D.La.,1996.Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.
In re HARRAH'S ENTERTAINMENT, INC SECURITIES LITIGATION.
CIV.A. No. 95-3925.

Nov. 26, 1996.

*ORDER AND REASONS*
CLEMENT, District Judge.
**\*1** Before the Court is defendants Harrah's Entertainment, Inc. ("HET"), Philip G. Sartre, Colin C. Reed, Lawrence L. Fowler, Michael D. Rose, Ronald Lenczycki, Michael N. Regan and Charles A. Ledsinger, Jr.'s (collectively, the "Harrah's defendants") motion to refer to bankruptcy. For the reason set forth below, the motion is DENIED.

BACKGROUND

Harrah's Jazz Company ("HJC") and Harrah's Jazz Finance Corp. ("HJ Finance") jointly issued and sold $435,000,000 of first Mortgage Notes (the "HJC bonds") through a prospectus dated November 9, 1994 and a registration statement on a Form S-1.

HJC is comprised of three partners: Harrah's New Orleans Investment Company ("HNOIC"), Grand Palais Casino, Inc. ("Grand Palais"), and New Orleans/Louisiana Development Corporation ("NOLDC"). HJ Finance is a wholly owned subsidiary of HJC. HET is a remote corporate parent of HNOIC.

In their Consolidated and Amended Class Action Complaint, plaintiffs allege that the registration statement and the prospectus were misleading because they contained untrue statements of material fact or omissions of material facts and that the defendants engaged in a scheme to defraud purchasers of the HJC bonds all in violation of federal securities laws. Plaintiffs allege that the Harrah's defendants are directly liable because of their own acts or omissions and are secondarily liable as controlling persons of HJC and HJ Finance.

Plaintiffs have not named HJC, HJ Finance, HNOIC or NOLDC as defendants in their Consolidated and Amended Class Action Complaint because each of these entities were (and currently remain) in bankruptcy at the time of plaintiffs' suit. Plaintiffs have filed proofs of claim in the HJC and HJ Finance bankruptcy proceedings. These proofs of claim are based on the same acts or omissions as alleged in their consolidated complaint. Some of the Harrah's defendants also have filed proofs of claim in the HJC bankruptcy proceeding for contribution and indemnification pursuant to the HJC Partnership Agreement. In addition to the Harrah's defendants, plaintiffs also have named three national brokerage and investment banking firms as defendants: Donald, Lufkin & Jenrette Securities Corporation, Salomon Brothers, Inc. and BT Securities Corporation. These firms do not join the Harrah's defendants' motion to refer.

The Harrah's defendants move to refer this case to bankruptcy court claiming that it is "related to" the bankruptcy proceedings currently before Bankruptcy Judge Thomas M. Brahney, III. The Harrah's defendants argue that plaintiffs have submitted themselves to the exclusive jurisdiction of the bankruptcy court and have waived any right to a jury trial by submitting proofs of claim in those bankruptcy proceedings. In opposition to the motion, plaintiffs argue that this non-core case between non-debtor parties is not "related to" the bankruptcy proceedings and that even if "related to" those proceedings, the Court should not refer it to the bankruptcy court because plaintiffs would move for mandatory withdrawal of the reference and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                  Page 2
Not Reported in F.Supp., 1996 WL 684463 (E.D.La.)
**(Cite as: Not Reported in F.Supp.)**

because plaintiffs are entitled to a jury trial.

### ANALYSIS

*2 28 U.S.C. § 1334(b) provides:
... the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

In determining whether "related to" jurisdiction exists under § 1334(b), the Court should read that section as a broad grant of jurisdiction. *Matter of Majestic Energy Corp.,* 835 F.2d 87, 90 (5th Cir. 1988). The test to establish "related to" bankruptcy jurisdiction is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Matter of Wood,* 825 F.2d 90, 93 (5th Cir. 1987) (emphasis in original). Even though the current suit involves non-debtor parties and federal securities law, the presence of an indemnification agreement between several of the Harrah's defendants and debtor HJC means that any adverse outcome in this suit against the Harrah's defendants could conceivably have an effect on the administration of the bankruptcy estate. *See Davis v. Merv Griffin Co.,* 128 B.R. 78, 99 (D.N.J. 1991)(finding that contractual right to indemnification from debtor establishes "related to" jurisdiction); *Philippe v. Sharpe,* 103 B.R. 355, 358 (D. Me. 1989) ("related to" jurisdiction where "apparently unconditional duty to indemnify" would result in automatic liability on the part of the debtor). *Compare Pacor, Inc. v. Higgins,* 743 F.2d 984, 995 (3rd Cir. 1984) (no "related to" jurisdiction because controversy at issue would have no effect on the bankruptcy estate due to lack of contractual right to indemnification, controversy at issue was "at best, a mere precursor to the potential third party claim for indemnification); *Matter of Zale,* 62 F.3d 746, 755 (5th Cir. 1995)(no jurisdiction based solely on presence of indemnification agreement which is procedural in nature). Accordingly, the Court finds that this consolidated action is "related to" the bankruptcy proceedings.

Having found that "related to" bankruptcy jurisdiction exists, the question becomes whether that bankruptcy jurisdiction should be placed in the bankruptcy court or retained in the district court. 28 U.S.C. § 157(a) and Local Rule 22.01E authorize the Court to refer "related to" cases to the bankruptcy court. Plaintiffs argue that the Court should not refer this non-core proceeding between non-debtors to the bankruptcy court because plaintiffs would be entitled to withdraw the reference. The Court agrees.

Section 157(d) requires the Court to withdraw a bankruptcy proceeding when "the resolution of the proceeding requires consideration of both title 11 and other laws of the United States." 28 U.S.C. § 157(d). The parties do not contest that resolution of the consolidated complaint will involve substantial and material considerations of federal securities laws. The Harrah's defendants argue, however, that these considerations will only involve the simple application of established federal securities laws. The Court disagrees. The consolidated complaint alleges a class action suit claiming violations of several federal securities laws. Plaintiffs seek to hold defendants directly liable and secondarily liable based on a "controlling person" theory for certain acts and omissions. This federal securities litigation involves more than simple application of federal securities laws and will be complicated enough to warrant mandatory withdrawal under § 157(d). *See In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2nd Cir. 1990)(mandatory withdrawal where substantial and material consideration of non-code federal statutes is necessary for the resolution of the proceedings); *In re Rannd Resources, Inc.,* 175 B.R. 393, 396 (D.Nev. 1994) (mandatory withdrawal where resolution of various issues will require application of the federal securities laws and will likely require substantial and material consideration of those laws rather than a simple application thereof).

*3 Even if not subject to mandatory withdrawal, the Court finds that good cause would exist for permissive withdrawal of this proceeding should the Court refer it to the bankruptcy court. *See* 28 U.S.C. § 157(d)(authorizing district court to withdraw reference on its own motion or motion of any party for cause shown). As discussed below, the Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                           Page 3
Not Reported in F.Supp., 1996 WL 684463 (E.D.La.)
**(Cite as: Not Reported in F.Supp.)**

finds that plaintiffs have not waived their right to a jury trial and that the existence of that right would represent good cause for a permissive withdrawal of the reference. *In re Clay,* 35 F.3d 190, 197 (5th Cir. 1994)(agreeing with five other circuits that bankruptcy courts lack the statutory authority to conduct jury trials); *In re White,* 172 B.R. 841, 843-844 (S.D. Miss. 1994)(concluding that trustee's right to jury trial presents a sufficient cause for withdrawal of non-core adversary proceeding); *Davis v. Merv Griffin Co.,* 128 B.R. 78, 102 (D.N.J. 1991)(accepting bankruptcy court report and recommendation that the case be remanded from bankruptcy court to the district court because of jury trial right by non-debtor plaintiff against non-debtors).

Relying on the *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 492, 109 S.Ct. 2782 (1989), and its progeny, the Harrah's defendants argue that the plaintiffs have voluntarily submitted themselves to the bankruptcy court's exclusive jurisdiction by filing proofs of claim in the bankruptcy proceeding. The Harrah's defendants read these cases too broadly. In *Granfinanciera,* the Supreme Court, after finding that Congress' designation of a fraudulent conveyance action as a core proceeding did not convert such an action into an equitable one without a right to a jury trial, found that the filing of a proof of claim by a creditor divested the creditor of its jury trial right. *Id.* at 2799-800. Similarly, the other cases relied upon by the Harrah's defendants involved core proceedings where a creditor had submitted a proof of claim against the debtor in those core proceedings. *See Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330 (1990)(preference action); *Travellers Inter. AG. v. Robinson,* 982 F.2d 96, 98 (3rd Cir. 1992)(creditor waived jury trial right in preference action by submitting proof of claim); *Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d 1242 (3rd Cir. 1994)(legal malpractice action where parties conceded it was a core proceeding). While these cases might stand for the proposition that plaintiffs have waived their jury trial right against HJC by submitting a proof of claim in the HJC bankruptcy proceedings, these cases do not stand for the broader proposition that plaintiffs have waived their jury right in a non-core proceeding involving federal securities laws against non-debtor defendants simply by filing a proof of claim against a debtor in a related bankruptcy case. Accordingly, the Court finds that plaintiffs are entitled to a jury trial against the Harrah's defendants.

The Harrah's defendants also argue that because this suit and the claims before the bankruptcy court involve common facts and legal determinations, the Court should refer this consolidated case to the bankruptcy court to avoid potentially inconsistent results. This potential inconsistency, which may never materialize, does not justify referral to the bankruptcy court. Moreover, even if that risk should materialize, this Court would be the more appropriate forum for resolution of the underlying dispute rather than the bankruptcy court. *See In re Clay,* 35 F.3d 190, 195 (5th Cir. 1994) (noting that "district courts have far more expertise than bankruptcy courts do [in conducting jury trials]").

CONCLUSION

*4 Although "related to" bankruptcy jurisdiction exists over the non-debtor plaintiffs' non-bankruptcy federal securities claims against non-debtor defendants, placing that bankruptcy jurisdiction in the bankruptcy court is inappropriate because plaintiffs would be entitled to a mandatory withdrawal of the reference. Rather than waste judicial resources on a meaningless referral to bankruptcy court, the Court will retain jurisdiction over this suit. For the reasons set forth above,

IT IS ORDERED that the Harrah's defendants' motion to refer to bankruptcy is DENIED.

E.D.La.,1996.
In re Harrah's Entertainment, Inc. Securities Litigation
Not Reported in F.Supp., 1996 WL 684463 (E.D.La.)

Briefs and Other Related Documents (Back to top)

• 2:95cv03925 (Docket) (Nov. 27, 1995)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.