IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 02-11125 (KJC) |
| EXIDE TECHNOLOGIES, *et al.*, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| PACIFIC DUNLOP HOLDINGS | ) | C.A. No. 05-561 (SLR) |
| (EUROPE) LTD, *et al.*, | ) | |
| Appellants, | ) | Bankruptcy Adv. Proc. No. 04-51299 (KJC) |
| v. | ) | |
| | ) | |
| EXIDE HOLDING EUROPE LTD, *et al.* | ) | |
| Appellees. | ) | |

## APPELLEE'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
Bruce Grohsgal (Bar No. 3583)
James E. O'Neill (Bar No. 4042)
17th Floor, 919 North Market Street
P.O. Box 8705
Wilmington, Delaware 19899-8705 (courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

PATTON BOGGS LLP
Benjamin G. Chew
Andrew Zimmitti
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Co-Counsel for Appellee Exide Technologies

# TABLE OF CONTENTS

Page

I. The Coordinating Agreement Contractually Limited Appellants to Filing Suit Only for Indemnification; Because Exide Is the Sole Indemnitor, All Of Appellants' Claims Are "Core" Bankruptcy Matters Squarely within the Jurisdiction of the Bankruptcy Court..................................1

II. Even Assuming *Arguendo* That It Were Contractually Permissible to File Suit Against the Exide Non-Debtor Affiliates, the Bankruptcy Court Still Has Subject Matter Jurisdiction Over Those Claims Because Exide Is Contractually Bound to Indemnify Appellants..................................2

III. Assuming *Arguendo* that Appellants' Claims Originally Asserted Against the Exide Non-Debtor Affiliates Were Contractually Permissible Non-Core Claims, Those Claims Became Core When Appellants Filed Their Proofs of Claim..................................4

# TABLE OF AUTHORITIES

Page

**Cases**

Belcufine v. Aloe, 112 F.3d 633, 636 (3d Cir. 1997) ............................................................... 3

Celotex Corp. v. Edwards,
   514 U.S. 300, 308, n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) ........................................ 2

Cent. Vt. Pub. Serv. Corp. v. Herbert,
   341 F.3d 186, 191 (2d Cir. 2003) ........................................................................................ 4

Granfinanciera, S.A. v. Nordberg,
   492 U.S. 33, 58-59 & n.14 (1989) ....................................................................................... 4

In re Argus Group 1700, Inc.,
   206 B.R. 737, 747-48 (Bankr. E.D.Pa. 1996) ...................................................................... 5

In re Asousa P'ship,
   276 B.R. 55, 67-8 (Bankr. E.D.Pa. 2002) ............................................................................ 5

In re Best Reception Sys., Inc.,
   220 B.R. 932, 944 (E.D. Tenn. 1998) .................................................................................. 5

In re Brentano's,
   27 B.R. 90 (Bankr. S.D.N.Y. 1983) ..................................................................................... 4

In re Combustion Eng., Inc.,
   391 F.3d 190, 226 et seq. (3d Cir. 2005) ............................................................................. 3

In re EXDS, Inc.,
   301 B.R. 436, 440, 443 (Bankr.D.Del. 2003) ...................................................................... 4

In re Federal-Mogul Global, Inc.,
   300 F.3d 368, 382 (3d Cir. 2002) ........................................................................................ 3

In re Mid-Atlantic Handling Systems, LLC,
   304 B.R. 111, 123-124 (E.D.Pa. 2003) ............................................................................... 5

In re Millenium Seacarriers, Inc.,
   419 F.3d 83, 98 (2d Cir. 2005) ............................................................................................ 5

In re Northwestern Corp.,
   319 B.R. 68, 74 ................................................................................................................... 5

In re S.G. Phillips Constructors,
   45 F.3d 702, 706 (2d Cir. 1995) .......................................................................................... 4

Langenkamp v. Kulp,
   498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) ................................................................ 4

Pacor, Inc. v. Higgins,
   743 F.2d 984, 994 (3d Cir. 1994) ............................................................................................ 2, 3, 4

Travellers Int'l AG. v. Robinson,
   982 F.2d 96, 99-100 (3d Cir. 1992) ............................................................................................ 4, 5

**Statutes**

11 U.S.C. § 501 ................................................................................................................................. 4

11 U.S.C. § 101(5)(a) ........................................................................................................................ 5

28 U.S.C. § 1334(b) ...................................................................................................................... 2, 3

*See* 28 U.S.C. § 157(b)(2)(B) .................................................................................................. 2, 4, 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 02-11125 (KJC) |
| EXIDE TECHNOLOGIES, *et al.*, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| PACIFIC DUNLOP HOLDINGS | ) | C.A. No. 05-561 (SLR) |
| (EUROPE) LTD, *et al.*, | ) | |
| Appellants, | ) | Bankruptcy Adv. Proc. No. 04-51299 (KJC) |
| vi. | ) | |
| | ) | |
| EXIDE HOLDING EUROPE LTD, *et al.* | ) | |
| Appellees. | ) | |

**APPELLEE'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES**

Appellee Exide Technologies, f/k/a Exide Corporation ("Exide" or "Debtor"), pursuant to the Court's direction at the hearing on December 18, 2006, hereby submits its Supplemental Memorandum of Points and Authorities:

I.  **The Coordinating Agreement Contractually Limited Appellants to Filing Suit Only for Indemnification; Because Exide Is the Sole Indemnitor, All Of Appellants' Claims Are "Core" Bankruptcy Matters Squarely within the Jurisdiction of the Bankruptcy Court**

The Coordinating Agreement,[1] which governs the various GNB Sale Agreements with Exide and its Non-Debtor Affiliates, expressly provides that the "sole and exclusive remedy" for claims arising from the GNB transactions, including the claims of Appellants at issue in this appeal, "shall be indemnification provided in ... Article 4":

> Section 4.5 **Exclusivity of Remedy**. Except as set forth in Section 9.3 of the U.S. Agreement and the corresponding provisions of the other Sale Agreements, with respect to any breach by any party of its representations, warranties, covenants, or agreements in this Agreement, the Sale Agreements and the agreements, instruments, and documents being or to be executed and delivered hereunder or thereunder, **the sole and exclusive remedy of the other party and its Affiliates (in law, equity, contract, tort, for contribution, under Requirements of Law, or otherwise) shall be the indemnification provided in this Article 4**. In view of this exclusivity of remedy provision, **Buyer [Exide] and Seller [PDH (USA)] covenant and agree for themselves and their respective Affiliates that they will not bring, maintain, join, or prosecute any Action or other proceeding against the other or its Affiliates for breach of the Sale Agreements or indemnity therefor except as provided in this Agreement.** The initiation or maintenance of any Action by any Affiliate of Buyer or Seller in contravention of this Section 4.5 will

---

[1] The Appendix to Appellants' Opening Brief includes a copy of the Coordinating Agreement, A-0605 through A-0649.

constitute a breach of the Buyer or the Seller, as the case may be, of their covenant hereunder. [emphasis added]

Assuming, as the District Court instructed (*see* Dec. 18, 2006 Hearing Tr. at 70, 72),[2] that it is undisputed that Debtor Exide is the sole indemnitor, Section 4.5 contractually limits Appellants to filing suit <u>only</u> for indemnification against Exide. The Coordinating Agreement allows only one avenue for all claims by Appellants—an indemnification suit against Exide—and expressly does <u>not</u> permit separate suits against the Exide Non-Debtor Affiliates—even to determine liability.[3] Accordingly, per Section 4.5, Appellants' claims, including their purported claims against the Exide Non-Debtor Affiliates, can be asserted <u>only</u> as claims for indemnification against the Debtor, which are "core" proceedings over which the Bankruptcy Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B) ("Core" proceedings include the "allowance or disallowance of claims against the estate").[4]

**II.     Even Assuming *Arguendo* That It Were Contractually Permissible to File Suit Against the Exide Non-Debtor Affiliates, the Bankruptcy Court Still Has Subject Matter Jurisdiction Over Those Claims Because Exide Is Contractually Bound to Indemnify Appellants**

Assuming it were contractually permissible for Appellants to sue and obtain a judgment against the Exide Non-Debtor Affiliates, Exide automatically would have to indemnify the Appellants per Section 4.2 of the Coordinating Agreement; a further lawsuit seeking indemnification against Exide would be unnecessary. Under these circumstances, the Bankruptcy Court has, at a minimum, "related to" jurisdiction over those claims under 28 U.S.C. § 1334(b).

The test for determining "related to" bankruptcy jurisdiction over an indemnification claim that could be asserted against a debtor was established in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1994),[5] where the plaintiff Higgins filed suit against defendant Pacor in state court seeking damages for asbestos exposure. *Id.* at 985. Pacor, a distributor of asbestos-containing products, thereafter filed a third

---

[2] A copy of the December 18, 2006 hearing transcript is available if required by the Court.
[3] On January 22, 2002, Exide filed a Counterclaim in the prior Illinois State Court action against Appellants for breaching Section 4.5's exclusivity restrictions by filing claims outside the exclusive indemnification remedy.
[4] The Bankruptcy Court cannot effectively adjudicate an objection to the merits of the Appellant's pending proofs of claim until the issues presented in the appeal are decided. The question of whether the chapter 11 estate faces a $20 million claim (as the Bankruptcy Court ruled below) or a $12 million direct claim and an $8 million contingent claim (as Appellants contend) will dictate not only the issues to be addressed by the Bankruptcy Court, but also determine the timing, form and strategy for respondent's objection to the merits of the proofs of claim
[5] *Pacor* is widely-recognized as the leading case establishing the test for "related to" jurisdiction. *See Celotex Corp. v Edwards*, 514 U.S. 300, 308, n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

party complaint seeking indemnification against the manufacturer of the asbestos, Johns-Manville Corporation, which was in bankruptcy. *Id.* Invoking the bankruptcy removal statute, Pacor removed the case to federal court for consolidation with other pending asbestos claims against Manville. *Id.* The district court, however, rejected Pacor's argument that the Higgins suit could "conceivably" have an effect on the Manville bankruptcy (and therefore was "related to" it) because, "[a]t best, [the Higgins suit] [was] a mere precursor to the potential third party claim for indemnification by Pacor against Manville," and Pacor would "still be obligated to bring an entirely separate proceeding to receive indemnification" if Higgins secured a judgment against Pacor. *Id.* at 995. In ruling that the bankruptcy court lacked subject-matter jurisdiction over the Higgins suit, the Third Circuit reasoned as follows:

> In this case, however, there would be no automatic creation of liability against Manville on account of a judgment against Pacor. **Pacor is not a contractual guarantor of Manville, nor has Manville agreed to indemnify Pacor, and thus a judgment in the Higgins-Pacor action could not give rise to any automatic liability on the part of the estate.** All issues regarding Manville's possible liability would be resolved in the subsequent third party impleader action. **Furthermore, Higgins is not a creditor of Manville and has filed no claim against Manville.** Any judgment obtained would thus have no effect on the arrangement, standing or priorities of Manville's creditors. There would therefore be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim.

*Id.* at 995-996 (emphasis added). Here, in direct contrast to *Pacor*, (1) Section 4.2 of the Coordinating Agreement contractually, and automatically, requires Exide to indemnify Appellants for all liability arising from the various Sale Agreements and thus has a direct and immediate effect on Exide's bankruptcy proceeding, and (2) unlike the Higgins plaintiff, Appellants filed Proofs of Claim against the Exide bankruptcy estate incorporating the same claims originally asserted against the Exide Non-Debtor Affiliates. Therefore, applying *Pacor* and its progeny,[6] the Bankruptcy Court has, at a minimum, "related to" subject-matter jurisdiction over all of Appellants' claims including those also originally directed

---

[6] Following *Pacor*, the Third Circuit consistently has held that an indemnification agreement between the debtor and a non-debtor that gives rise to debtor liability without requiring a subsequent lawsuit to determine indemnification brings the underlying dispute between the non-debtor plaintiff and the non-debtor defendant within the bankruptcy court's "related to" jurisdiction under 28 U.S.C. § 1334(b). *See Belcufine v. Aloe*, 112 F.3d 633, 636 (3d Cir. 1997) ("In fact, *Pacor* specifically notes that contractual indemnity claims can have an effect on a bankruptcy estate and thus provide a basis for the exercise of 'related to' jurisdiction.")(citing *Pacor*, 743 F.2d at 995); *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002) (following *Pacor*, in absence of indemnification agreement between defendants and debtors, there was no subject matter jurisdiction over non-debtor plaintiffs' claims against non-debtor defendants "because any indemnification claims that [defendants] might have against Debtors have not yet accrued and would require another lawsuit before they could have an impact on [Debtors'] bankruptcy proceeding"); *In re Combustion Eng., Inc.*, 391 F.3d 190, 226 *et seq.* (3d Cir. 2005) (following *Pacor*, there was no subject matter jurisdiction over non-debtor plaintiffs' claims against non-debtor defendants where there were no "indemnity obligations or express agreements that would automatically give rise to indemnification obligations" by the debtor to the non-debtor defendants).

against the Exide Non-Debtor Affiliates.[7]

### III. Assuming *Arguendo* that Appellants' Claims Originally Asserted Against the Exide Non-Debtor Affiliates Were Contractually Permissible Non-Core Claims, Those Claims Became Core When Appellants Filed Their Proofs of Claim

The filing of a Proof of Claim triggers the claims allowance process under 11 U.S.C. § 501 *et seq.* and automatically subjects the claimant to the equitable jurisdiction of the bankruptcy court,[8] *even if* the Proof of Claim is contingent[9] or is later withdrawn.[10] Further, claim allowance or disallowance by its very nature, and more importantly by statute, is a "core" proceeding that can arise only in a title 11 case. 28 U.S.C. § 157(b)(2)(B). To the extent that Appellants' claims asserted originally in state court against the Exide Non-Debtor Entities may have been non-core, they became core under 28 U.S.C. § 157(b)(2)(B) by Appellants' filing their Proofs of Claim against Exide.[11] *See Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 191 (2d Cir. 2003) ("[T]he proof of claim transforms litigation into a core proceeding; and (2) by filing the proof of claim, the creditor consents to the bankruptcy court's broad equitable jurisdiction.") (citing *In re S.G. Phillips Constructors*, 45 F.3d 702, 706 (2d Cir. 1995) ) (add'l

---

[7] Importantly, the *Pacor* Court distinguished its facts from those in *In re Brentano's*, 27 B.R. 90 (Bankr. S.D.N.Y. 1983), which unlike *Pacor* involved contractual indemnification by the debtor. In *Brentano's*, the plaintiff landlord sued the defendant guarantor (MacMillan) in state court for breach of a lease by the debtor (Brentano's), and MacMillan then removed the case to bankruptcy court as a proceeding "related to" the Brentano's bankruptcy. Because Brentano's had agreed to indemnify MacMillan for any liability or judgments on the MacMillan-Brentano's guarantee agreement, the bankruptcy court found that it had "related to" subject matter jurisdiction over the landlord's underlying claims against the non-debtor guarantor, MacMillan. Contrasting these facts with those in the Higgins-Pacor action, the *Pacor* Court observed that "[i]n Brentano's, however, it is clear that the action between the landlord and MacMillan could and would affect the estate in bankruptcy. By virtue of the indemnification agreement between Brentano's and MacMillan, a judgment in favor of the landlord on the guarantee action would automatically result in indemnification liability against Brentano's." *Pacor*, 743 F.2d at 995. In other words, it was not necessary for MacMillan to file a subsequent indemnification action against Brentano's because an indemnification agreement already existed requiring Brentano's to indemnify MacMillan for any liability or judgments on the guarantee agreement. This is precisely the case here, where the Debtor already is contractually bound under the Coordinating Agreement to indemnify Appellants should there be any liability or judgments against it or its Non-Debtor Affiliates arising from the various GNB Sale Agreements.

[8] *Langenkamp v. Kulp*, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power.")(citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 & n.14 (1989)). *See also* additional cases, Appellee's Opposition Brief at 13.

[9] Travellers Int'l AG v. Robinson, 982 F.2d 96 (3d Cir. 1992), *cert. denied*, 507 U.S. 1051 (1993).

[10] By filing its proof of claim a party causes its disputes "to be subject to the exclusive jurisdiction of the bankruptcy court and withdrawal of the proof of claim would not change that result." In re EXDS, Inc., 301 B.R. 436, 440, 443 (Bankr.D.Del. 2003).

[11] The Foreign PDH Entity Appellants (PDH (Europe), PDH (Hong Kong), and PDH (Singapore)) each filed a Proof of Claim dated April 17, 2003 asserting "protective" or "contingent" claims against the Debtor Exide totaling approximately $8.1 million. *See* Appellants' Appendix to their Opening Brief at A-0964-0972. However, the copies of the three Proofs of Claim in Appellants' Appendix omit the voluminous exhibits attached to each Proof of Claim which include, among other documents, a copy of the Sweep Complaint filed in the Illinois State Court against Exide and its Non-Debtor Affiliates. A fourth Proof of Claim (not included in the Appellants' Appendix) filed by Appellant PDH (USA) for approximately $12 million, which incorporates and asserts the same Sweep Complaint, is not at issue in this appeal as PDH (USA) already conceded that those claims are "core" proceedings.

citations omitted).[12] Moreover, attempting to qualify a proof of claim as "contingent" or "protective" as Appellants have done does not alter the legal consequences of filing a proof of claim. *See Travellers Int'l AG. v. Robinson*, 982 F.2d 96, 99-100 (3d Cir. 1992), *cert. denied*, 507 U.S. 1051 (1993).[13] Accordingly, when the Foreign PDH Entity Appellants filed their Proofs of Claim against Exide incorporating the very same claims they originally asserted against the Exide Non-Debtor Affiliates, they not only submitted to the equitable jurisdiction of the Bankruptcy Court and waived their right to a jury trial, but they also irrevocably converted their purported "non-core" claims to "core" within the meaning of 28 U.S.C. § 157(b)(2)(B).[14]

Respectfully submitted,

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
Bruce Grohsgal (Bar No. 3583)
James E. O'Neill (Bar No. 4042)
17th Floor, 919 North Market Street
P.O. Box 8705
Wilmington, Delaware 19899-8705 (courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

---

[12] *See also In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 98 (2d Cir. 2005) ("This Circuit has clearly established that parties, like lienors, who submit proofs of claim and thereafter actively litigate in the bankruptcy court without contesting personal jurisdiction can transform a non-core proceeding into a core one."); *In re Best Reception Sys., Inc.*, 220 B.R. 932, 944 (E.D. Tenn. 1998) ("[W]here a party has filed a proof of claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding under ... § 157(b)(2)(B)"); *In re Argus Group 1700, Inc.*, 206 B.R. 737, 747-48 (Bankr. E.D.Pa. 1996) (adopting rationale that filing a proof of claim transforms a non-core, pre-petition state law claim filed in state court into a core proceeding), *aff'd*, 206 B.R. 757 (E.D.Pa. 1997). The two cases which suggest, in *dicta*, that filing a proof of claim under certain circumstances might not transform a non-core matter to core are distinguishable on the facts and are outliers among the weight of authorities to the contrary. In *In re Mid-Atlantic Handling Systems, LLC*, 304 B.R. 111, 123-124 (E.D.Pa. 2003), the court allowed plaintiff to withdraw its proof of claim after it had requested to do so, which Appellants have not done here. In *In re Northwestern Corp.*, 319 B.R. 68, 74 and n.1 (D.Del. 2005), the court ruled that because the plaintiff did not file its proof of claim until after it had filed its appeal, the proof of claim "was not implicated at the time the Bankruptcy Court issued its decision," which is the opposite of the facts before this Court. Neither of these cases is applicable here.

[13] "The Supreme Court's holdings in *Granfinanciera* and *Langenkamp* leave no doubt that the equitable jurisdiction of the bankruptcy court is *exclusive* when its jurisdiction has been invoked by the filing of a claim. Where, as in this case, a creditor has filed a claim, *even though the claim is couched in protective language and is contingent*, that creditor has submitted to the bankruptcy court's equitable jurisdiction and waived any Seventh Amendment right to a jury trial." *Travelers*, 982 F.2d at 99-100 (citing *Langenkamp*, 498 U.S. at 43-44 (citing *Granfinanciera*, 492 U.S. at 58-59))(emphasis added). *See also In re Asousa P'ship*, 276 B.R. 55, 67-8 (Bankr. E.D.Pa. 2002) (refusing to abstain from hearing debtor's removed prepetition state court action and counterclaim where creditor filed "protective" proof of claim and submitted to equitable jurisdiction of bankruptcy court). Moreover, the Bankruptcy Code definition of "claim" expressly includes causes of action that are "contingent," "unliquidated," and "disputed." 11 U.S.C. § 101(5)(a).

[14] Doubtless Appellants, having argued and lost the indemnification issue twice, now regret the consequences of their clear and informed choice. However, the law does not permit them a "do-over" (*i.e.* a readjudication of the issue in another forum - Cook County).

-and-

PATTON BOGGS LLP
Benjamin G. Chew
Andrew Zimmitti
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Co-Counsel for Appellee Exide Technologies, Inc.