IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| EXIDE TECHNOLOGIES, INC., | ) |
| et al., | ) Bk. No. 02-11125 (KJC) |
| | ) |
| Debtors. | ) |
| | |
| PACIFIC DUNLOP HOLDINGS | ) |
| (EUROPE) LTD, et al., | ) |
| | ) |
| Appellants, | ) |
| | ) |
| v. | ) Civ. No. 05-561-SLR |
| | ) Adv. No. 04-51299 (KJC) |
| EXIDE HOLDING EUROPE, et al, | ) |
| | ) |
| Appellees. | ) |

**MEMORANDUM ORDER**

At Wilmington this 22nd day of March, 2007, having reviewed the appeal filed by Pacific Dunlop Holdings (Europe) Ltd., et al., and the papers filed in connection therewith;

IT IS ORDERED that the appeal is denied. The decisions of the bankruptcy court dated December 11, 2003 and June 16, 2005 are affirmed, for the reasons that follow.

1. **Standard of review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's

findings of fact and a plenary standard to that court's legal conclusions. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (quoting Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. In re Hechinger, 298 F.3d 219, 224 (3d Cir. 2002); In re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).

2. **Background facts.** In May and June of 2000, appellants Pacific Dunlop Holdings (USA), Inc. ("PDH USA"), Pacific Dunlop Holdings (Europe) Limited, P.D. International Pty Limited, Pacific Dunlop Holdings (Hong Kong) Limited, and Pacific Dunlop Holdings (Singapore) PTE Ltd. (collectively, "appellants" or the "PDH Entities"), entered into a set of sale agreements to sell their respective interests in the GNB Companies ("GNB"), a global automotive and industrial battery business. PDH USA sold its interests in GNB to debtor, Exide Technologies ("debtor" or "Exide").[1] The remaining PDH entities (the "PDH Foreign Entities") sold their respective interests in the business to three foreign affiliates of Exide (the "Exide Foreign Entities"). On May 9,

---

[1] Exide Technologies was formerly known as "Exide Corporation."

2

2000, Exide (as "Buyer") and PDH USA (as "Seller") entered into a "Coordinating Agreement" which, <u>inter alia</u>, was meant to "provide a single avenue of recourse for indemnification claims arising under the" various sale agreements executed by the PDH entities and the Exide entities. (D.I. 9 at A-0605) Section 4.2 of the Coordinating Agreement, captioned "Indemnification by Buyer," provided, in relevant part, as follows:

> (a) . . . Buyer[2] agrees to indemnify and hold Seller and the International Sellers and their Affiliates[3] harmless from and against any and all Losses and Expenses incurred by Seller or the International Sellers and their Affiliates in connection with or arising from:
>
> > (i) any breach by Buyer of any of its covenants or agreements in the Sale Agreements or in this Agreement;
> >
> > (ii) any breach of any warranty or the inaccuracy of any representation of Buyer contained in the Sale Agreements, in each case without regard to "materiality" or Material Adverse Effect; or
> >
> > (iii) any breach by Buyer of any covenant contained in Section 11.1 or Section 12.2 of the U.S. Agreement or the corresponding provisions in the other Sale Agreements.

(<u>Id.</u> at A-0620) By amendment dated June 19, 2000, section 4.2(a)(i) was amended "to insert the words 'or, for sake of clarification, any International Buyer' after the word 'Buyer' in the first line of such section." (<u>Id.</u> at A-0633) Section 5.2 of the Coordinating Agreement provided that

---

[2]"Buyer" is defined in Section 1.1 as "the meaning specified on the first page of this Agreement. As used in Articles 1 and 3 to 7, inclusive, Buyer shall be deemed to mean Buyer and/or (as the context may require) any International Buyer." "Exide Corporation, a Delaware corporation" is identified as the "Buyer" on the first page. The "International Buyers" are identified on the first page as "certain subsidiaries of Buyer."

[3]The "Seller" is PDH USA and the "International Sellers" are the "PDH Foreign Entities."

3

> any and all disputes, legal actions, suits, or proceedings arising out of or
> relating to claims arising under this Agreement, the Sale Agreements, or
> the transactions contemplated hereby and thereby, whether legal or
> equitable in nature, or arising out of contract, tort, Requirements of Law,
> for contribution or otherwise, shall be brought solely in a state or federal court
> located in the County of Cook, State of Illinois.

(Id. at A-0623)

    3. In July 2001, the PDH Entities filed a complaint in the Circuit Court of Cook County, Illinois under theories of breach of contract, conversion, and unjust enrichment (the "state claims"). This suit subsequently was consolidated with a second complaint filed by PDH USA only against Exide. On April 15, 2002, Exide and certain of its subsidiaries and affiliates filed voluntary Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware. The Exide Foreign Entities were not among the Exide affiliates that filed Chapter 11 petitions. In August 2002, Exide removed the state court actions in their entirety to the bankruptcy court in Illinois, from where they were transferred to Delaware's bankruptcy court. In April 2003, the PDH Entities filed four proofs of claims against Exide, the debtor, requesting approximately $20 million based on the incorporated state claims.[4] In October 2003, the PDH Entities filed a motion to either remand the lawsuits to Illinois state court, or for stay relief from or abstention by the bankruptcy court, to permit the PDH Entities to proceed with their

---

    [4]The proof of claim filed by PDH USA against Exide for approximately $12 million was conceded by counsel to involve "core claims." (D.I. 9 at A-0109) The remaining three proofs of claim for approximately $8 million were "submitted pursuant to the objections of [claimants PDH Europe, PDH Hong Kong and PDH Singapore] to the subject matter jurisdiction of the United States Bankruptcy Court for the District of Delaware to resolve the claims asserted herein," i.e., the state claims. (Id. at A-0964 to A-0972) Each of the latter proofs of claim, however, include the following concession: "[I]f the appropriate court determines that the Debtor is the sole indemnitor, [the claimants have] a direct claim against the Debtor for any breaches." (Id.)

litigation outside of bankruptcy court. The bankruptcy court denied the motion, finding that, because Exide was the sole indemnitor, the state claims constituted core proceedings.

5. On reconsideration, the PDH Entities argued, inter alia, that the language of the Coordinating Agreement was ambiguous and, therefore, the bankruptcy court should have examined extrinsic evidence to determine the intent of the parties. According to the PDH Entities, "there was no intent to limit the recourse of the PDH Foreign Entities against the Exide Foreign Entities." (D.I. 9 at 24-25) The bankruptcy court denied the motion for reconsideration and ruled as follows:

> In the case at bar, the use of the term "Buyer" in Section 4.2(a) of the Coordinating Agreement is not ambiguous. "A contract term is ambiguous when it may reasonably be interpreted in more than one way." [citation omitted] If Section 4.2(a) **may** have been ambiguous as to whether, in its various clauses, the context supported a broad definition of "Buyer" to include the Non-Debtor Exide Entities, any uncertainty was resolved by Amendment No. 1 to the Coordinating Agreement. By virtue of Amendment No. 1, the parties specifically and deliberately carved out only one clause of Section 4.2(a) to "clarify." The other parts of Section 4.2(a) remained unchanged. Therefore, the only reasonable inference that arises from Amendment No. 1, is that the parties intended that the term "Buyer," as used in the remainder of Section 4.2(a), means only Exide Corporation.
>
> * * *
>
> Because the Coordinating Agreement is unambiguous and includes an integration clause, the "four corners" rule applies to this case and extrinsic evidence is not admissible to alter or vary its terms.

(Id. at A-0013, A-0015 (emphasis in original)) The PDH Entities thereafter filed the instant appeal.

6. **Questions presented.** Did the bankruptcy court err in its determination that it has jurisdiction over the subject matter of the state claims, as submitted to the

5

bankruptcy court in the appellants' proofs of claim?

7. **Analysis.** The bankruptcy court did not err in its jurisdictional determination. In the first instance, it has long been recognized that a proof of claim is a "core" matter because it invokes the claims allowance process which, by its very nature, could arise only in the context of a bankruptcy case. See Langenkamp v. Culp, 498 U.S. 42, 44 (1990); In re Continental Airlines, 125 F.3d 120, 131 (3d Cir. 1997); Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d 1242, 1251 (3d Cir. 1994); In re HQ Global Holdings, Inc., 293 B.R. 839 (Bankr. D. Del. 2003). Therefore, when the PDH Foreign Entities filed their three proofs of claim against the Exide bankruptcy estate, they irrevocably consented to have their claims heard and decided by the bankruptcy court, and also waived any right they may have had to a jury trial.

8. Having conceded that they have "direct" claims against Exide if it is determined to be the sole indemnitor,[5] the PDH Foreign Entities nonetheless argue that the bankruptcy court was not "the appropriate court" to make that determination. (D.I. 9 at A-0965) The court, however, rejects the contention that it was inappropriate for the bankruptcy court to make the threshold determination of whether it had jurisdiction over the state claims, i.e., determining whether Exide was the sole indemnitor.

9. In reviewing the scope of its jurisdiction, the bankruptcy court did not err in finding that Exide was the sole indemnitor of the state claims. In this regard, the court agrees that the Coordinating Agreement is not ambiguous and, therefore, no extrinsic evidence should be considered in connection with its interpretation. While the term

---

[5]See the proofs of claim filed by the PDH Foreign Entities, D.I. 9 at A-0965, A-0968, A-0972.

6

"Buyer" could refer to "Exide and/or . . . any International Buyer" in Section 4.2, the context of Section 4.2 does not support appellants' broader construction. One of the enumerated purposes of the Coordinating Agreement was to provide "a **single** avenue of recourse for indemnification claims." (Id. at A-0605 (emphasis added)). The June 19, 2000 clarifying amendment addressed only one phrase in Section 4.2, that is, Section 4.2(a)(i), to broaden the scope of the breaches covered by the indemnification provision ("any breach by Buyer **or, for the sake of clarification, any International Buyer**"), not to increase the number of parties responsible for indemnification ("Buyer agrees to indemnify and hold . . . harmless"). The interpretation given Section 4.2 by the bankruptcy court is consistent both with the language of Section 4.1, which describes the indemnification responsibilities of "Seller" (i.e., PDH USA) in the same way, and with the goal of the Coordinating Agreement to have a "**single** avenue of recourse for indemnification claims," that is, "**all** claims for indemnity against losses or claims resulting from breaches of obligations, representations or warranties under the Sale Agreements" shall be brought either against the Buyer or the Seller. (Id. at A-0605 (emphasis added)) It makes no sense whatsoever to have the multiple contracting parties themselves serve as indemnitors.

10. **Conclusion.** Once Exide was identified as the sole indemnitor for the state claims brought by the PDH Foreign Enitities against the Exide Foreign Entities, it follows that the PDH Foreign Entities, through their proofs of claim, have direct claims against

the debtor and its bankruptcy estate and that resolution of the claims through the claims process is a core proceeding subject to the jurisdiction of the bankruptcy court.[6]

_____
United States District Judge

---

[6] Although bankruptcy courts lack jurisdiction to decide disputes between third parties in which the estate of the debtor has no interest, the Third Circuit has recognized that a debtor's agreement to indemnify a third party gives rise to jurisdiction over nonbankruptcy controversies with that third party, especially where the third party has filed a claim against the debtor. See Pacor, Inc. v. Higgins, 743 F.2d 984, 995 (3d Cir. 1984).